**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

ALCOA INC.,                                                )
                                                           )
                    Plaintiff,                             )
                                                           )        C.A. No. 06-451-SLR
v.                                                         )
                                                           )
ALCAN INC., ALCAN ROLLED PRODUCTS-                         )
RAVENSWOOD LLC, f/k/a PECHINEY                             )
ROLLED PRODUCTS LLC, PECHINEY CAST                         )
PLATE INC., and CENTURY ALUMINUM                           )
COMPANY,                                                   )
                                                           )
                    Defendants.                            )
                                                           )

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO**
**TRANSFER VENUE AND ENLARGE TIME TO ANSWER OR OTHERWISE PLEAD**

ASHBY & GEDDES
Steven J. Balick (# 2114)
John G. Day (# 2403)
Tiffany Geyer Lydon (# 3950)
222 Delaware Ave., 17th Floor
P.O. Box 1150
Wilmington, DE 19899
Telephone: (302) 654-1888
Facsimile: (302) 654-2067

*Of Counsel:*

Richard P. Steinken (*pro hac vice*)
Shelley Smith (*pro hac vice*)
JENNER & BLOCK LLP
One IBM Plaza
Chicago, IL 60611
Telephone: (312) 222-9350
Facsimile: (312) 840-7631

Dated: October 13, 2006

# TABLE OF CONTENTS

I.    NATURE AND STAGE OF PROCEEDINGS ................................................................ 1

II.    SUMMARY OF ARGUMENTS .................................................................................... 1

III.    CONCISE STATEMENT OF FACTS ........................................................................... 2

IV.    ARGUMENT ................................................................................................................. 3

    A.    This Case Could Originally Have Been Brought in the Central District of California. ................................................................................................... 4

    B.    The Convenience of the Parties and Witnesses and the Interest of Justice Mandate Transfer to the Central District of California. ................................ 5

        1.    Plaintiff's Choice of Forum is Entitled to Less Deference Because It is Not the Plaintiff's "Home Turf." ............................................ 5

        2.    Alcoa's Claims Arise Directly Out of a Dispute Over Responsibility for Remediation of Environmental Contamination Located in Vernon, California. .................................. 6

        3.    The Vast Majority of the Witnesses to Be Called at Trial Will Be Inconvenienced By Venue in Delaware. ........................................ 7

        4.    Sources of Proof Can Be More Easily Accessed in the Central District of California. ................................................................. 11

        5.    The Central District of California Has a Significant Interest in Adjudicating This Local Controversy in Its Home Forum. ............ 12

        6.    Transfer to the Central District of California Would Not Create Any Practical Problems Regarding the Ease, Speed, or Expense of Trial. ...................................................................................... 14

        7.    The Relative Congestion in the Courts of the Two Forums Favors Transfer to the Central District of California. ............................... 15

        8.    The Central District of California is Well-Equipped to Apply the Law Applicable to Each of the Sales Agreements. ....................... 15

    C.    DEFENDANTS' TIME TO ANSWER OR OTHERWISE PLEAD SHOULD BE ENLARGED. ................................................................... 16

CONCLUSION ........................................................................................................................ 16

i

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Affymetrix, Inc. v. Synteni, Inc.,*
28 F. Supp. 2d 192 (D. Del. 1998) ........................................................................ 12, 15

*Airport Investors Ltd. P'ship v. Neatrour,*
No. 03-831 GMS, 2004 U.S. Dist. LEXIS 1391, at *4-6 (D. Del. Feb. 3, 2004) .............. 6

*Anic v. DVI Fin Servs.,*
No. 04-170 JJF, 2004 U.S. Dist. LEXIS 11562, at *8 (D. Del. June 23, 2004) ................ 8

*Arrow Commun. Labs., Inc. v. John Mezzalingua Assocs.,*
No. 05-357-SLR, 2005 U.S. Dist. LEXIS 25004, at *4-5 (D. Del. Oct, 25, 2005) ... passim

*Bell. Tel. Laboratories, Inc. v. Int'l Business Machines Corp.,*
630 F. Supp. 373 (D. Del. 1984) ........................................................................ 6

*Burstein v. Applied Extrusion Techs. Inc.,*
829 F. Supp. 106 (D. Del. 1992) ........................................................................ 6

*Gulf Oil Corp. v. Gilbert,*
330 U.S. 501 (1947) ........................................................................ 13

*Inter-City Products Corp. v. Insurance Co. of North America,*
No. 90-717-SLR, 1993 U.S. Dist. LEXIS 886, at *18-19 (D. Del. Jan. 26, 1993) ......... 7, 8

*Jumara v. State Farm Ins. Co.,*
55 F.3d 873 (3d Cir. 1995) ........................................................................ 4, 5

*Memminger v. Infocure Corp.,* No. 00-707-JJF, 2000 U.S. Dist. LEXIS 22077 at *12-13
(D. Del. Nov. 14, 2000) ........................................................................ 7

*Mentor Graphics Corp. v. Quickturn Design Sys.,*
77 F. Supp. 2d 505 (D. Del. 1999) ........................................................................ 15

*Nez Perce Tribe v. Nat'l Oceanic & Atmospheric Admin. Fisheries,*
CV 04-60-RE, 2004 U.S. Dist. LEXIS 10166, at *7-9 (D. Or. May 27, 2004) ............... 13

*Nilssen v. OSRAM Sylvania, Inc.,*
No. 06-108-JJF, 2001 U.S. Dist. LEXIS 25570, at *8 (D. Del. May 1, 2001) .................. 8

*Original Creatine Patent Co., Ltd. v. Kaizen, Inc.,*
No. 02-471-SLR, 2003 U.S. Dist. LEXIS 988, at *11 (D. Del. Jan. 22, 2003) ............... 15

*Pennwalt Corp. v. Purex Industries, Inc.*,
    659 F. Supp. 287 (D. Del. 1986) .................................................................... 8

*Ricoh Co., Ltd. v. Aeroflex Inc.*,
    279 F. Supp. 2d 554 (D. Del. 2003) ............................................................... 4

*S. Utah Wilderness Alliance v. Norton*,
    315 F. Supp. 2d 82 (D.D.C. 2004) ............................................................... 13

*Sierra Club v. Flowers*,
    276 F. Supp. 2d 62 (D.D.C. 2003) ............................................................... 13

*Stewart Org., Inc. v. Ricoh Corp.*,
    487 U.S. 22 (1988) ......................................................................................... 4

*Stratos Lightwave, Inc. v. E2O Communs., Inc.*,
    No. 01-309 JJR, 2002 U.S. Dist. LEXIS 5653, at *6-7 (D. Del. Mar. 26, 2002) ............... 6

*Textron Innovations, Inc. v. Toro Co.*,
    No. 05-486 GMS, 2005 U.S. Dist. LEXIS 23561, at *4-5 (D. Del. Oct. 14, 2005) ........... 6

*Transcanada Power Mktg., Ltd. v. Narragansett Elec. Co.*,
    402 F. Supp. 2d 343 (D. Mass. 2005) .......................................................... 13

*Trout Unlimited v. United States Dep't of Agric.*,
    944 F. Supp. 13 (D.D.C. 1996) .................................................................... 13

*Tsoukanelis v. Country Pure Foods, Inc.*,
    337 F. Supp. 2d 600 (D. Del. 2004) ............................................................... 6

*Van Dusen v. Barrack*,
    376 U.S. 612 (1964) ....................................................................................... 4

*Virgin Wireless, Inc. v. Virgin Enters., Ltd.*,
    201 F. Supp. 2d 294, 300 (D. Del. 2002) .................................................. 6, 7

*Wheeling-Pittsburgh Steel Corp. v. United States EPA*,
    No. 98-4654, 1999 U.S. Dist. LEXIS 2130, at *13-14 (D. Pa. Mar. 3, 1999) ............... 14

*Zoetics, Inc. v. Yahoo!, Inc.*,
    No. 06-108-JJF, 2006 U.S. Dist. LEXIS 46910, at *12-13 (D. Del. Jul. 6, 2006) ......... 7, 8

**Statutes**

28 U.S.C. § 1391(b) ............................................................................................ 4

28 U.S.C. §1404(a) ................................................................................... passim

**Rules**

Fed. R. Civ. P. 45(b)(2) ................................................................................................ 8

Fed. R. Civ. P. 6(b) .............................................................................................. 1, 16

Local Rule 7.1.1 ......................................................................................................... 1

## I.    NATURE AND STAGE OF PROCEEDINGS

On July 25, 2006, Alcoa Inc. ("Alcoa") filed a complaint ("Compl.") seeking a declaratory judgment that it is not responsible for the remediation of PCBs and other environmental contaminants that are located at a manufacturing and sales facility in Vernon, California. Defendants were granted an extension of time until October 13, 2006 to respond to Alcoa's Complaint. Alcan Inc., Alcan Rolled Products-Ravenswood LLC and Pechiney Cast Plate Inc. (the "Alcan Defendants") now move this Court pursuant to 28 U.S.C. §1404(a) to transfer this action to the United States District Court for the Central District of California.[1] Pursuant to Fed. R. Civ. P. 6(b), the Alcan Defendants also request that the date for the Alcan Defendants to file an answer or other responsive pleading to the Complaint be set by the transferee court. Pursuant to Local Rule 7.1.1, the Alcan Defendants made a reasonable effort to obtain concurrence in the transfer of venue sought, but were not successful.

## II.    SUMMARY OF ARGUMENTS

Venue in the Central District of California is more appropriate than in the District of Delaware primarily because: (1) the claim arose in Vernon, California, in the Central District of California; (2) the majority of the party and non-party witnesses are in the Central District of California, and no witnesses are located in Delaware; (3) the majority of the relevant documents are in Vernon, California, and no relevant documents are in Delaware; and (4) the Central District of California has a significant interest in regulating the remediation of environmental contaminants located within its jurisdiction.

---

[1]    Alcan Inc. has concurrently filed a motion to dismiss for lack of personal jurisdiction. Alcan Inc. is a Canadian holding company that has no contacts with Delaware or California.

## III.    CONCISE STATEMENT OF FACTS

The present case involves a dispute over responsibility for the remediation of environmental contamination present at a cast aluminum plate manufacturing and sales facility in Vernon, California (the "Vernon facility"), and the appropriate remediation efforts that should be taken. Alcoa is seeking a declaratory judgment that it is not responsible for environmental liabilities related to the Vernon facility and that all liabilities related to that site are the responsibility of Century Aluminum Company ("Century") or the Alcan Defendants.

Alcoa owned and operated the Vernon facility before selling it to Century in 1998, and does not deny that it would be liable for environmental hazards arising from its own use of the site under the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 et seq. ("CERCLA") (Compl. ¶¶ 11, 39-47). Alcoa's only claim for relief against the Alcan Defendants is a claim for a declaratory judgment that Alcoa is not liable under CERCLA for any of the costs of Alcan's "development activities," at the Vernon facility, or in the alternative, for a declaratory judgment as to the allocation of responsibility among the parties for those costs. (*Id.* ¶¶ 46-47.)

Under the terms of Alcoa's sale of the Vernon facility to Century, Alcoa agreed to indemnify Century against certain environmental liabilities, and to perform specified remedial actions. (Compl. ¶¶ 17, 27.) Alcoa claims that it performed these actions and that the Vernon facility was in compliance with all environmental regulations at the time of the closing of the sale to Century in December of 1998. (*Id.* ¶¶ 18-19.) However, as discussed below, Century has asserted a claim for indemnification against Alcoa on the grounds that the City of Vernon has ordered remediation of environmental contaminants found at the Vernon facility. (*Id.* ¶ 27.)

In July of 1999, Century sold the Vernon facility to Pechiney Rolled Products, LLC. (Compl. ¶ 20.) In connection with this transaction, Century provided an indemnification to

Pechiney Rolled Products, LLC, and to its subsidiary, Pechiney Cast Plate Inc. (*Id.* ¶¶ 4, 21.)

Pechiney Cast Plate Inc. is the entity that now owns the Vernon facility. (Affidavit of Eileen

Burns Lerum, attached hereto as Exhibit A, ¶ 14, referred to hereinafter as "Lerum Aff. ¶ __".)

In November of 2005, Alcan announced that it was closing the Vernon facility and was

engaged in negotiations for its sale. (Compl. ¶ 23.) Alcoa alleges that Alcan or the potential

buyers of the site intend to conduct demolition, excavation and construction work on the site, and

to change its use. (*Id.* ¶ 24.) In April of 2006, Alcan demanded that Century indemnify Alcan

for losses incurred due to environmental conditions at the Vernon facility. (*Id.* ¶ 25.) Alcoa also

asked Century to identify the source of PCBs found at the site, and informed Century that these

PCBs would have to be removed and disposed of by demolition contractors under work plans

approved by the United States Environmental Protection Agency. (*Id.* 26.)

In a letter dated May 8, 2006, Century asserted a claim for indemnification against Alcoa

relating to the hazardous substances at the Vernon facility. (Compl. ¶ 27.) According to

Century, Alcoa was required to indemnify Century under the terms of the parties' agreement for

the sale of the Vernon facility because the remediation activities at the Vernon facility were

required by directives and/or orders of the Vernon Environmental Health Department. (*Id.* ¶ 36.)

Based on these allegations, all of which relate to activities taking place in Vernon,

California, Alcoa has filed this action in a venue which has no significant nexus to this dispute.

## IV.    ARGUMENT

Transfer of venue is governed by 28 U.S.C. § 1404(a), which provides:

> For the convenience of parties and witnesses, in the interest of
> justice, a district court may transfer any civil action to any other
> district or division where it might have been brought.

28 U.S.C. § 1404(a).  Transfer of venue should be ordered to prevent avoidable "waste of time, energy and money" and to "protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964).  As an initial matter, transfer under Section 1404(a) is possible only if venue would originally have been proper in the desired district of transfer. Once this threshold requirement has been met, Section 1404(a) vests a district court with broad discretion to transfer venue in accordance with individualized, case-by-case considerations of convenience and fairness. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).

The Third Circuit has outlined a number of private and public interest factors relevant for determining whether transfer would best serve the convenience of the parties and witnesses and the interest of justice. *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir. 1995). Significantly, the court has consistently held that "the public and private interests are sufficient to tip the balance of convenience strongly in favor of transfer" where, like here, "no party maintains any facilities, personnel, or documents in Delaware" and "no relevant third-party witnesses . . . reside in Delaware." *Ricoh Co., Ltd. v. Aeroflex Inc.*, 279 F. Supp. 2d 554, 558 (D. Del. 2003).

### A.     This Case Could Originally Have Been Brought in the Central District of California.

Venue is proper in a judicial district where a substantial part of the events or omissions giving rise to the claim occurred or where a substantial part of the property that is the subject of the action is situated.  28 U.S.C. § 1391(b).  In the present case, venue is proper in the Central District of California for both reasons.  First, as described above, all of the alleged events or omissions giving rise to Alcoa's claims for declaratory judgment occurred in Vernon, California. Second, the property that is the subject of the action is the facility located in Vernon, California.

Venue is also proper in the Central District of California because that Court has personal jurisdiction over Century and all of the Alcan Defendants except Alcan Inc.[2]  The grounds for this jurisdiction are that Pechiney Rolled Products LLC does business in California (Compl. ¶¶ 20-22), Defendant Pechiney Cast Plate Inc. maintains its principal place of business in California (Compl. ¶ 4), and Defendant Century Aluminum Company maintains its principal place of business in California (Compl. ¶ 2).

**B.     The Convenience of the Parties and Witnesses and the Interest of Justice Mandate Transfer to the Central District of California.**

Courts in the Third Circuit consider a number of factors when evaluating a motion to transfer venue under Section 1404(a), including: (1) the plaintiffs' choice of forum, (2) whether the claim arose elsewhere, (3) the convenience of the witnesses, (4) accessibility of sources of proof, (5) the local interest in deciding local controversies in the home forum, (6) practical considerations regarding the ease, speed, or expense of trial, (7) the relative congestion in the courts of the two forums, and (8) the relative familiarity of the two courts with the applicable law. *Jumara*, 55 F.3d at 879; *Arrow Commun. Labs., Inc. v. John Mezzalingua Assocs.*, No. 05-357-SLR, 2005 U.S. Dist. LEXIS 25004, at *4-5 (D. Del. Oct. 25, 2005).

**1.     Plaintiff's Choice of Forum is Entitled to Less Deference Because It is Not the Plaintiff's "Home Turf."**

While a plaintiff's choice of forum is generally entitled to significant deference, it is well-settled that

> when the plaintiff has chosen to bring suit in a district that is not plaintiff's 'home turf' and that has no connection to any acts giving rise to the lawsuit, convenience to the plaintiff is not as great as it would be were plaintiff litigating at or near plaintiff's principal place of business or at the site of activities at issue in the lawsuit.

---

[2]  *See* note 1, *supra.*

*Arrow Commun. Labs., Inc.*, 2005 U.S. Dist. LEXIS 25004 at *7-8 (*citing Burstein v. Applied Extrusion Techs. Inc.*, 829 F. Supp. 106, 110 (D. Del. 1992)); *see also Textron Innovations, Inc. v. Toro Co.*, No. 05-486 GMS, 2005 U.S. Dist. LEXIS 23561, at *4-5 (D. Del. Oct. 14, 2005) ("The court will afford less deference to [plaintiff's] choice of Delaware as a forum because it is not its 'home turf,' or principal place of business."); *Tsoukanelis v. Country Pure Foods, Inc.*, 337 F. Supp. 2d 600, 604 (D. Del. 2004) ("Because plaintiffs did not bring the action on their 'home turf,' their choice of forum is accorded less weight than it would had they chosen . . . a state where the incidents at issue arose."); *Virgin Wireless, Inc. v. Virgin Enters., Ltd.*, 201 F. Supp. 2d 294, 300 (D. Del. 2002) ("plaintiffs' preference for Delaware is not given as much deference because they have not chosen their 'home turf.'"); *Stratos Lightwave, Inc. v. E2O Communs., Inc.*, No. 01-309 JJF, 2002 U.S. Dist. LEXIS 5653, at *6-7 (D. Del. Mar. 26, 2002) ("[plaintiff's] preference for Delaware is not given as much deference because it, admittedly, has not chosen its home turf.").

Alcoa is incorporated under the laws of the Commonwealth of Pennsylvania and has its principal place of business in the State of New York. (Compl. ¶ 1.) Therefore, it is clear that Delaware is not Alcoa's "home turf." Because Alcoa did not bring this action on its "home turf," its choice of venue is entitled to diminished deference, and "it will be easier for the Defendant to show that the balance of convenience favors transfer." *Bell. Tel. Laboratories, Inc. v. Int'l Business Machines Corp.*, 630 F. Supp. 373, 376 (D. Del. 1984).

### 2. Alcoa's Claims Arise Directly Out of a Dispute Over Responsibility for Remediation of Environmental Contamination Located in Vernon, California.

When a dispute arises in another forum and has no significant nexus to Delaware, transfer of venue to the forum with the most significant connection to the dispute is appropriate. *Airport Investors Ltd. P'ship v. Neatrour*, No. 03-831 GMS, 2004 U.S. Dist. LEXIS 1391, at *4-6 (D.

Del. Feb. 3, 2004) (granting motion to transfer venue where "[n]o acts relating to the present dispute took place in Delaware, nor do the parties appear to maintain any facilities or documents in Delaware."). The present dispute has no significant nexus to Delaware. As discussed above, no aspect of Alcoa's requests for declaratory relief arise out of any acts or omissions that occurred in Delaware, and all of the alleged acts and omissions giving rise to Alcoa's claims occurred in the Central District of California. Under these circumstances, transfer to the Central District of California is appropriate. *See Virgin Wireless, Inc.*, 201 F. Supp. 2d at 300 (finding that "the center of operative facts in the action favors transfer to New York" because a declaratory judgment action arose out of conduct that took place in that forum).

3.    **The Vast Majority of the Witnesses to Be Called at Trial Will Be Inconvenienced By Venue in Delaware.**

The vast majority of the party and non-party witnesses who possess first-hand knowledge of the facts at issue in this case reside in the Central District of California and will be inconvenienced by traveling more than 2,500 miles to Delaware. This court has held that "[c]onvenience of the expected trial witnesses is the most important factor to consider when determining whether or not transfer is appropriate." *Memminger v. Infocure Corp.*, No. 00-707-JJF, 2000 U.S. Dist. LEXIS 22077 at *12-13 (D. Del. Nov. 14, 2000) (internal citations omitted). Furthermore, "the availability of 'fact witnesses who possess first-hand knowledge of the events giving rise to the lawsuit' are the most important type of witnesses for purposes of venue transfer analysis." *Zoetics, Inc. v. Yahoo!, Inc.*, No. 06-108-JJF, 2006 U.S. Dist. LEXIS 46910, at *12-13 (D. Del. Jul. 6, 2006). The importance of witness testimony is heightened when, as here, a jury trial is demanded and "the actual appearance of the witnesses on the stand will be a crucial factor in the jury's evaluation of the credibility of their testimony." *Inter-City Products Corp. v. Insurance Co. of North America*, No. 90-717-SLR, 1993 U.S. Dist. LEXIS 886, at *18-19 (D.

Del. Jan. 26, 1993) (*citing Pennwalt Corp. v. Purex Industries, Inc.*, 659 F. Supp. 287, 291 (D. Del. 1986)).

While some courts have held that the convenience of witnesses is only relevant to the extent that the witnesses may be unavailable for trial, this court has recently confirmed that "it is sufficient for purposes of venue transfer analysis if the witness is not subject to a Court's subpoena power." *Zoetics, Inc.,* No. 06-108-JJF, 2006 U.S. Dist. LEXIS 46910, *at *12-13; *see also Nilssen v. OSRAM Sylvania, Inc.*, No. 00-695-JJF, 2001 U.S. Dist. LEXIS 25570, at *8 (D. Del. May 1, 2001); *Anic v. DVI Fin. Servs.*, No. 04-170-JJF, 2004 U.S. Dist. LEXIS 11562, at *8 (D. Del. June 23, 2004). This Court has the power to subpoena any witness who can be served within its District, or at a place within 100 miles of the courthouse. Fed. R. Civ. P. 45(b)(2); *see also Zoetics, Inc.*, No. 06-108-JJF, 2006 U.S. Dist. LEXIS 46910 at *12-13. When a witness resides beyond the court's subpoena power, as do the relevant witnesses in this case, "Defendant bears no burden to show that the witnesses it plans to subpoena would be 'reluctant' to testify." *Zoetics, Inc.* at *15.

Most if not all of the party and non-party witnesses who will testify at trial reside in the Central District of California, which is well beyond the range of this Court's subpoena power. None of the witnesses who will testify at trial reside in Delaware. Therefore, the convenience of the witnesses in the Central District of California is relevant regardless of whether these witnesses will be unavailable for trial in Delaware. *Zoetics, Inc.,* at *12-13. And because Alcoa has demanded a jury trial, the importance of the testimony of these witnesses is heightened. *Inter-City Products Corp.*, No. 90-717-SLR, 1993 U.S. Dist. LEXIS 886 at *19. A number of the party and non-party witnesses who will be called to testify by one or more of the litigants are identified below.

### i.    The Non-Party Witnesses

Given the localized nature of this dispute, there are a number of non-party witnesses who live in the Central District of California who possess critical knowledge of facts at issue, and who will be inconvenienced by venue in Delaware:

- Geomatrix is an environmental consulting firm located in Newport, California that conducted a thorough analysis of the contaminants located at the Vernon facility. (*See* Lerum Aff. ¶ 4.) The reports prepared by Geomatrix were provided to the City of Vernon Environmental Health Department in connection with the proposed plant closure, and are referenced in City of Vernon orders concerning the site. (*Id.*) Linda Conlan, Anthony Daus, and Craig Stewart are Geomatrix employees who authored several environmental reports assessing the environmental conditions at the site and proposing a plan for remediation that were provided to the City of Vernon Environmental Health Department. (*Id.*) These witnesses have first-hand knowledge of the Vernon facility and the environmental conditions that form the basis of the present dispute, and will likely be called to testify regarding their investigation of environmental conditions at the site, their findings, and their plan for remediation. (*Id.*)

- American Analytics Inc., is a laboratory that was engaged by Geomatrix to oversee the accuracy and quality of the analysis of soil, soil vapor, groundwater, concrete and other media samples collected as part of Geomatrix's investigation of the Vernon facility. (Lerum Aff. ¶ 5.)  Viorel Vasile is the laboratory project manager at American Analytics Inc. who is responsible for managing and overseeing the analytical work for the Vernon facility, and will likely be called as a witness to testify concerning the results and conclusions derived from this work. (*Id.*)

- Aurora Industrial Hygiene ("AIS") is a firm retained by Geomatrix to oversee and manage the hazardous building materials (including asbestos-containing materials, PCB-contaminated materials, and metals-containing debris/residue and lead-based paint) surveys, abatement monitoring and demolition conducted at the Vernon facility. (Lerum Aff. ¶ 6.)  Grace Rink and Bob Rink were responsible for these projects at AIS, and will likely be called to testify concerning the presence of these hazardous materials at the Vernon facility and the methods used for their removal. (*Id.*)

- Environmental Protection and Compliance ("EPC") is an environmental consulting firm based in California that was hired to advise Pechiney Cast Plate Inc. on the closure of the Vernon facility. (Lerum Aff. ¶ 7.) A.J. Ursic, Jr. is an employee of EPC who worked with Pechiney Cast Plate Inc. on this matter and will likely be called to testify regarding the plant closure. (*Id.*)

- Enviro-Wise Consulting is an environmental consulting firm that prepared one of the reports on the environmental conditions at the Vernon site that Alcoa provided to Century when Alcoa sold the Vernon site to Century (the "Phase I Environmental, Health & Safety Assessment Report," dated August 13, 1998). (Lerum Aff. ¶ 10.) Terry L. Fearington was the principal consultant responsible for this environmental report, and will likely be called to testify concerning the findings in the report on the environmental hazards present at the Vernon site when Alcoa sold it to Century. (*Id.*)

- McCulley, Frick & Gillman, Inc. is an environmental consulting firm that prepared one of the reports on the environmental conditions at the Vernon site that Alcoa provided to Century when Alcoa sold the Vernon facility to Century (the "Limited Phase II Report" dated September 15, 1998 and revised October 5, 1999.) (Lerum Aff. ¶ 11.) Edward B. Sirota was the principal consultant on this report, and will likely be called to testify concerning the findings in the report on the environmental hazards present at the Vernon site when Alcoa sold it to Century. (*Id.*)

- The Director and Health Officer of the City of Vernon Environmental Health Department, Lewis J. Pozzebon, ran the governmental review process for ensuring that the plant closure complied with environmental regulations and issued the orders directing Pechiney Cast Plate Inc. to submit and execute the remediation plan for the site. (Lerum Aff. ¶ 8.) These orders trigger indemnification obligations for clean-up costs under the contracts described in the Complaint. Mr. Pozzebon will likely be called as a witness to testify with regard to the dealings between the City of Vernon and Pechiney Cast Plate for the remediation of the facility and the reasons the remediation was required. (*Id.*)

- The Senior Environmental Health Specialist of the City of Vernon Environmental Health Department, Leonard Grossberg, has provided periodic on-site oversight for the City of Vernon for the investigation, remediation, demolition, and closure activities at the Vernon facility. (Lerum Aff. ¶ 9.) He has also conducted periodic site visits during the Phase II investigation work and facility demolition, reviewed reports and work plans for approval and provided final recommendations to Mr. Pozzebon for final approvals. (*Id.*) Mr. Grossberg will likely be called to testify regarding the factual bases for the remediation orders concerning the site that were issued by the City of Vernon Environmental Health Department. (*Id.*)

- The Mayor of Vernon, Leonis C. Malbury, will likely be called to testify regarding the negotiation of the agreement, which he signed, for the sale of the Vernon facility by Pechiney Cast Plate Inc. to the City of Vernon. (Lerum Aff. ¶ 12.) The sales agreement, and the amendment thereto, contain numerous provisions relating to environmental conditions and remediation at the site. (*Id.*)

- The Mayor Pro Tem, Thomas Ygarra, will likely be called to testify regarding an amendment to this sales agreement which he signed. (Lerum Aff. ¶ 13.)

10

ii.    **The Party Witnesses**

Numerous current and former employees of the Alcan Defendants who possess critical

knowledge of the facts at issue work and reside in the Central District of California (Lerum Aff.

¶¶ 15-18), and will therefore also be inconvenienced by venue in Delaware.  These witnesses

include:

- Greg Sutherland, the Plant Manager for Pechiney Cast Plate Inc. for the last two years.  Mr. Sutherland will likely be called to testify regarding the steps taken towards closing the Vernon facility, including site investigation, demolition activities and dealings with the City of Vernon Environmental Health Department. (Lerum Aff. ¶ 15.)

- Earl Clinkenbeard, a former Engineering Specialist for Pechiney Cast Plate Inc. Mr. Clinkenbeard will likely be called as a witness to testify regarding his work with environmental consultants Geomatrix and EPC, and his dealings with the City of Vernon Environmental Health Department in connection with complying with the City's environmental regulations for plant closures.  (Lerum Aff. ¶ 16.)

- George Walrath, a former Senior Engineer for Pechiney Cast Plate Inc. who worked on the plant closure project.  Mr. Walrath will likely be called to testify regarding his extensive communications with the City of Vernon Environmental Health Department concerning the environmental reports on the site, remediation of the site, and compliance with environmental regulations. (Lerum Aff. ¶ 17.)

- Tom Reynolds was the Facility Manager for the Vernon facility from the time the facility was acquired from Century in 1999 until he retired from Pechiney Cast Plate Inc. in October of 2004.  Mr. Reynolds will likely be called to testify regarding his knowledge concerning this transaction, the activities at the Vernon site, the investigation conducted at the Vernon site by the environmental consultants, and his interactions with the City of Vernon Environmental Health Department concerning the proposed plant closure. (Lerum Aff. ¶ 18.)

**4.    Sources of Proof Can Be More Easily Accessed in the Central District of California.**

This court has recognized that the location of documents and other sources of proof can

be relevant to the transfer analysis, despite the fact that recent technological advances have

significantly reduced the weight to be given to this factor. *Arrow Commun. Labs., Inc.*, No. 05-

357-SLR, 2005 U.S. Dist. LEXIS 25004 at *7-8 (transferring venue in part because "most of

11

defendant's documents . . . are maintained in central New York"); *Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 205 (D. Del. 1998) (where the majority of relevant documents were located in California, this factor weighed "minimally in favor of transfer"). The easy access to documents and other sources of proof makes the Central District of California the more convenient venue in which to litigate the present action.

Pechiney Cast Plate Inc., the current owner of the Vernon facility, maintains its documents in Vernon, California and in Chicago, Illinois. (Lerum Aff. ¶ 19.) Alcan Rolled Products-Ravenswood LLC's documents are maintained at its facilities in Ravenswood, West Virginia. (*Id.*) Alcan Inc. is based in Montreal, Canada, and does not have any offices or facilities in the United States where documents could be maintained. (Affidavit of Roy Millington, attached hereto as Ex. B, ¶ 7.) Century's documents would presumably be kept in California, where it maintains its principal place of business. Documents relating to the case from Geomatrix, EPC and the City of Vernon Environmental Health Department are all located in California. (Lerum Aff. ¶ 19.)

Therefore, the majority of the relevant documents are located in or around Vernon, California, while none of the relevant documents are located in Delaware, which has no significant nexus to the present dispute. Under these circumstances, the ease of access to sources of proof makes the Central District of California the more convenient venue in which to litigate.

### 5. The Central District of California Has a Significant Interest in Adjudicating This Local Controversy in Its Home Forum.

The subject matter of the present lawsuit has significant local interest in Vernon, California, while "the District of Delaware has no connection to the subject matter . . . except that defendant is incorporated there." *Arrow Commun. Labs., Inc.*, No. 03-357-SLR, 2005 U.S. Dist. LEXIS 25004 at *7-8. The Supreme Court has held that:

> In cases which touch the affairs of many persons, there is reason
> for holding the trial in their view and reach rather than in remote
> parts of the country where they can learn of it by report only. There
> is a local interest in having localized controversies decided at
> home.

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947). It is also well-settled that "[l]and is a

localized interest because its management directly touches local citizens." *S. Utah Wilderness*

*Alliance v. Norton*, 315 F. Supp. 2d 82, 88 (D.D.C. 2004).

Based on this principle, courts have recognized that suits involving environmental

regulation directly affect local residents and have held that such suits "should be resolved in the

forum where the people 'whose rights and interests are in fact most vitally affected by the

suit' . . ." *Trout Unlimited v. United States Dep't of Agric.*, 944 F. Supp. 13, 19-20 (D.D.C.

1996) (transferring venue of an environmental dispute involving National Forest land in

Colorado); *Sierra Club v. Flowers*, 276 F. Supp. 2d 62, 63 (D.D.C. 2003) (transferring venue of

an environmental dispute affecting certain Everglades wetlands because "the depth and extent of

Florida's interest is indisputable"); *S. Utah Wilderness Alliance*, 315 F. Supp. 2d at 88-89

(transferring venue of a case involving oil and gas leases in Utah, because "consequences would

be most particularly felt in Utah, and thus that the courts of Utah would have a clear interest in

resolving the dispute"); *see also Nez Perce Tribe v. Nat'l Oceanic & Atmospheric Admin.*

*Fisheries*, CV 04-60-RE, 2004 U.S. Dist. LEXIS 10166, at *7-9 (D. Or. May 27, 2004)

(transferring venue of "a timber sale case involving a National Forest located entirely in Idaho"

because the local residents had an interest in resolving the challenged activity at home);

*Transcanada Power Mktg., Ltd. v. Narragansett Elec. Co.*, 402 F. Supp. 2d 343, 354 (D. Mass.

2005) (recognizing that the local interest factor "has played a significant role in controversies

involving land-use and environmental regulations").

Resolution of this dispute over the responsibility for the removal of hazardous waste at the Vernon facility will directly affect the people of California, because they are the ones who "will face the consequences of any contamination originating at the facility." *Wheeling-Pittsburgh Steel Corp. v. United States EPA*, No. 98-4654, 1999 U.S. Dist. LEXIS 2130, at *13-14 (D. Pa. 1999). In *Wheeling-Pittsburgh Steel Corp.*, the court transferred venue of a case involving the clean-up of hazardous waste at a coke production facility in West Virginia, because the people of West Virginia would be directly affected by the environmental contaminants and had a greater interest in the dispute. *Id.*

The present case also involves a dispute over responsibility for environmental remediation. Because the people of the Central District of California have a significant interest in the resolution of liability for the remediation of hazardous contaminants located in their home venue and the appropriate remediation efforts that should be taken, the Court should transfer venue to the Central District of California.

6. **Transfer to the Central District of California Would Not Create Any Practical Problems Regarding the Ease, Speed, or Expense of Trial.**

There are no practical problems associated with trying this case in the Central District of California. This case is in the earliest stages of litigation, no defendant has answered the Complaint, and no discovery has been conducted. Under these circumstances, no undue delay or prejudice will result from transferring this case to the Central District of California. Regardless, when circumstances require it, this court has transferred cases even when the parties have taken steps to advance the litigation in Delaware by exchanging disclosures, exploring settlement, and setting a litigation schedule. *Arrow Commun. Labs., Inc.*, No. 05-357-SLR, 2005 U.S. Dist. LEXIS 25004 at *10-11.

7.    **The Relative Congestion in the Courts of the Two Forums Favors Transfer to the Central District of California.**

This court has held that "[t]he relative congestion of the dockets is a legitimate factor to be weighed in a venue transfer analysis." *Mentor Graphics Corp. v. Quickturn Design Sys.*, 77 F. Supp. 2d 505, 514 (D. Del. 1999); *Affymetrix, Inc.*, 28 F. Supp. 2d at 206. Transfer to the Central District of California will be more efficient because cases in the Central District of California proceed more quickly from filing to disposition than do cases in the District of Delaware. *Compare* Central District of California Judicial Profile *with* District of Delaware Judicial Profile (See Affidavit of Shahid U. Haque, attached as Ex. C). In 2005, the median time from filing to disposition for civil cases in the Central District of California was 7.3 months. In contrast, the median time from filing to disposition for civil cases in the District of Delaware in 2005 was 14 months. Similarly, the median time from filing to trial for civil cases in the Central District of California was 17.8 months. The median time from filing to trial for civil cases in the District of Delaware was 26 months. This reveals that despite the smaller number of filings in the District of Delaware, the Central District of California is capable of resolving this dispute faster than the District of Delaware.

8.    **The Central District of California is Well-Equipped to Apply the Law Applicable to Each of the Sales Agreements.**

This dispute requires interpretation of a number of contracts that are governed by the laws of several different states. The sales agreement between Alcoa and Century is governed by Delaware law. However, the sales agreement between Century and Pechiney Rolled Products LLC is governed by New York law, and the sales agreement between Pechiney Rolled Products LLC and the City of Vernon is governed by California law. Regardless of the applicable law, the Central District of California is well-equipped to apply the relevant law and determine the parties' liability under the agreements at issue. *See Original Creatine Patent Co., Ltd. v. Kaizen,*

15

*Inc.*, No. 02-471-SLR, 2003 U.S. Dist. LEXIS 988, at *11 (D. Del. Jan. 22, 2003) (transferring venue and noting that "the Central District of California is well-equipped to decide the issues implicated by this case").

### C.    DEFENDANTS' TIME TO ANSWER OR OTHERWISE PLEAD SHOULD BE ENLARGED.

Plaintiff filed its Complaint on July 25, 2006, and the Alcan Defendants' time to answer or otherwise plead is currently set for October 13, 2006.  As discussed above, this case should be transferred to the Central District of California for the convenience of the parties and witnesses and in the interest of justice.  Accordingly, the Alcan Defendants request that the date by which the Alcan Defendants shall answer or otherwise plead in response to the Complaint be set with the transferee court.

## CONCLUSION

For the foregoing reasons, the Alcan Defendants respectfully request that this Court exercise its discretion under 28 U.S.C. § 1404(a) to transfer this action to the U.S. District Court for the Central District of California.  Pursuant to Fed. R. Civ. P. 6(b), the Alcan Defendants also request that the date by which the Alcan Defendants shall answer or otherwise plead in response to the Complaint be set with the transferee court.

ASHBY & GEDDES

*/s/ Steven J. Balick*

Steven J. Balick (# 2114)
John G. Day (# 2403)
Tiffany Geyer Lydon (# 3950)
222 Delaware Ave., 17th Floor
P.O. Box 1150
Wilmington, DE 19899
Telephone:  (302) 654-1888
Facsimile:  (302) 654-2067

16

*Of Counsel:*

Richard P. Steinken (*pro hac vice*)
Shelley Smith (*pro hac vice*)
JENNER & BLOCK LLP
One IBM Plaza
Chicago, IL 60611
Telephone: (312) 222-9350
Facsimile: (312) 840-7631

Dated:  October 13, 2006

174200.1

## CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of October 2006, the attached **MEMORANDUM OF**

**LAW IN SUPPORT OF DEFENDANTS' MOTION TO TRANSFER VENUE AND**

**ENLARGE TIME TO ANSWER OR OTHERWISE PLEAD** was served upon the below-

named counsel of record at the addresses and in the manner indicated:

Allen M. Terrell, Jr., Esquire                                          HAND DELIVERY
Richards Layton & Finger LLP
One Rodney Square
920 North King Street
Wilmington, DE  19801

Thomas G. Rohback, Esquire                                   VIA FEDERAL EXPRESS
LeBoeuf, Lamb, Greene & MacRae LLP
Goodwin Square
225 Asylum Street
Hartford, CT  06103

Christian D. Wright, Esquire                                          HAND DELIVERY
Young, Conaway, Stargatt & Taylor
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE  19801


*/s/ Steven J. Balick*
_____
Steven J. Balick

172155.1

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ALCOA INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 06-451-SLR |
| v. | ) | |
| | ) | |
| ALCAN INC., ALCAN ROLLED PRODUCTS- | ) | |
| RAVENSWOOD LLC, f/k/a PECHINEY | ) | |
| ROLLED PRODUCTS LLC, PECHINEY CAST | ) | |
| PLATE INC., and CENTURY ALUMINUM | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

## AFFIDAVIT OF EILEEN BURNS LERUM

I, Eileen Burns Lerum, being duly sworn, hereby depose and state:

1.      I am currently the Corporate Secretary of Alcan Rolled Products-Ravenswood

LLC and Pechiney Cast Plate Inc. and have held these positions since June of 1999 and

September of 1999, respectively.  I have personal knowledge, based on the books and records of

the companies discussed herein, of the matters set forth in this Affidavit and would be competent

to testify concerning these matters if called upon to do so.

2.      The present case involves a dispute over the responsibility for remediation of

environmental contaminants located at a cast aluminum plate manufacturing and sales facility in

Vernon, California (the "Vernon facility") and the appropriate remediation efforts that should be

taken.  Due to the localized nature of the dispute, the vast majority of the relevant documents and

witnesses are located in or around Vernon, California, which is located in the Central District of

California.

3.     The vast majority of the party and non-party witnesses who possess first-hand knowledge of the facts at issue in this case reside in the Central District of California and will be inconvenienced by traveling more than 2,500 miles to Delaware.

4.     Geomatrix is an environmental consulting firm located in Newport, California which has conducted several investigations of the contaminants in the soil, groundwater and building structures at the facility.  In addition, Geomatrix is overseeing demolition of the facility buildings and the associated disposal of contaminated building materials and the remediation of the soil.  The reports prepared by Geomatrix were provided to the City of Vernon Environmental Health Department in connection with the proposed plant closure, and are referenced in City of Vernon remediation orders concerning the Vernon facility.  Linda Conlan, Anthony Daus, and Craig Stewart  are Geomatrix employees who authored several environmental reports that were relied upon by the City of Vernon Environmental Health Department.  These witnesses have first-hand knowledge of the environmental conditions at the Vernon, California facility that form the basis of the present dispute, and will likely be called to testify regarding their investigation of these conditions, their findings, and their plan for remediation.  Ms. Conlon resides in Laguna Beach, California, Mr. Daus resides in Huntington Beach, California, and Mr. Stewart resides in Irvine California.  These witnesses will all be inconvenienced by venue in Delaware.

5.     American Analytics Inc., is a laboratory that was engaged by Geomatrix to oversee the accuracy and quality of the analysis of soil, soil vapor, groundwater, concrete and other media samples collected as part of Geomatrix's investigation of the Vernon facility. Viorel Vasile is the laboratory project manager at American Analytics Inc. who is responsible for managing and overseeing the analytical work for the Vernon facility, and will likely be called as

a witness to testify concerning the results and conclusions derived from this work. Mr. Vasile

resides in Los Angeles, California and will be inconvenienced by venue in Delaware.

6.    Aurora Industrial Hygiene is a firm retained by Geomatrix to oversee and manage

the hazardous building materials (including asbestos-containing materials, PCB-contaminated

materials, and metals-containing debris/residue and lead-based paint) surveys, abatement

monitoring and demolition conducted at the Vernon facility. Grace Rink and Bob Rink were

responsible for these projects at Aurora Industrial Hygiene, and will likely be called to testify

concerning the presence of these hazardous materials at the Vernon facility and the methods used

for their removal. Mr. and Ms. Rink both reside in Los Angeles, California, and will be

inconvenienced by venue in Delaware.

7.    Environmental Protection and Compliance ("EPC") is an environmental

consulting firm located in Upland, California that was hired to advise Pechiney Cast Plate Inc. on

the closure of the Vernon facility and the required permits and reports on the disposal of

hazardous wastes at the Vernon facility. A.J. Ursic, Jr. is an employee of EPC who worked with

Pechiney on this matter and will likely be called to testify regarding the plant closure. Upon

information and belief, A.J. Ursic, Jr. resides in or near Los Angeles, California and will be

inconvenienced by venue in Delaware.

8.    The Director and Health Officer of the City of Vernon Environmental Health

Department, Lewis J. Pozzebon, ran the governmental review process for ensuring that the plant

closure complied with environmental regulations and issued the orders directing Pechiney Cast

Plate, Inc. to submit and execute the remediation plan for the Vernon facility. These orders

triggered indemnification obligations for environmental remediation costs as described in

Alcoa's Complaint. Mr. Pozzebon will likely be called to testify regarding his knowledge of the

3

dealings between the City of Vernon and Pechiney Cast Plate Inc. for the remediation of the

Vernon facility and of the reasons the remediation was required.  Mr. Pozzebon resides in

Carlsbad, California and will be inconvenienced by venue in Delaware.

9.      The Senior Environmental Health Specialist of the City of Vernon Environmental

Health Department, Leonard Grossberg, has provided periodic on-site oversight for the City of

Vernon for the investigation, remediation, demolition, and closure activities at the Vernon

facility.  He has also conducted periodic site visits during the Phase II investigation work and

facility demolition, reviewed reports and work plans for approval and provided final

recommendations to Mr. Pozzebon for final approvals.  Mr. Grossberg will likely be called to

testify regarding the factual bases for the remediation orders concerning the Vernon facility that

were issued by the City of Vernon Environmental Health Department.  Mr. Grossberg resides in

Oceanside, California and would be inconvenienced by venue in Delaware.

10.     Enviro-Wise Consulting is an environmental consulting firm that prepared one of

the reports on the environmental conditions at the Vernon site that Alcoa provided to Century

when Alcoa sold the Vernon site to Century (the "Phase I Environmental, Health & Safety

Assessment Report," dated August 13, 1998). Terry L. Fearington was the principal consultant

responsible for this report, and will likely be called to testify concerning the findings of the

report on the environmental hazards present at the Vernon site when Alcoa sold it to Century.

(*Id.*)  Mr. Fearington resides in Yorba Linda, California and will be inconvenienced by venue in

Delaware.

11.     McCulley, Frick & Gillman, Inc. is an environmental consulting firm that

prepared one of the reports on the environmental conditions present at the Vernon site that Alcoa

provided to Century when Alcoa sold the Vernon facility to Century (the "Limited Phase II

4

Report" dated September 15, 1998 and revised October 5, 1999.) Edward B. Sirota was the principal consultant on this environmental report, and will likely be called to testify concerning the findings of the report on the environmental hazards at the Vernon site when Alcoa sold it to Century. (*Id.*) Mr. Sirota resides in Santa Ana, California and will be inconvenienced by venue in Delaware.

12.    The Mayor of the City of Vernon, Leonis C. Malbury, will likely be called to testify regarding the negotiation of the agreement, which he signed, for the sale of the Vernon facility by Pechiney Cast Plate, Inc. to the City of Vernon. The sales agreement, and the amendment thereto, contain numerous provisions relating to environmental conditions and remediation at the Vernon facility. Mr. Malbury resides in Vernon, California and will be inconvenienced by venue in Delaware.

13.    The Mayor Pro Tem, Thomas Ygarra, may also be called to testify regarding an amendment to this sales agreement which he signed. Mr. Ygarra resides in Vernon, California and will be inconvenienced by venue in Delaware.

14.    The party witnesses for the Alcan/Pechiney defendants are either currently employed by Pechiney Cast Plate Inc. or were employed by Pechiney Cast Plate at the time the relevant events took place. Pechiney Cast Plate, Inc. is the current owner of the Vernon facility.

15.    Greg Sutherland, the Plant Manager for Pechiney Cast Plate Inc. for the last two years, will likely be called to testify regarding the steps taken towards closing the Vernon facility, including site investigation, demolition activities and dealings with the City of Vernon, Environmental Health Department. Mr. Sutherland resides in Laguna Niguel, California and will be inconvenienced by venue in Delaware.

16.     Earl Clinkenbeard, a former Engineering Specialist for Pechiney Cast Plate Inc., will likely be called to testify regarding his work with environmental consultants Geomatrix and EPC, and his dealings with the City of Vernon Environmental Health Department in connection with complying with the City's environmental regulations for plant closures.  Mr. Clinkenbeard resides in Cerritos, California and will be inconvenienced by venue in Delaware.

17.     George Walrath, a former Senior Engineer for Pechiney Cast Plate Inc. who worked on the plant closure project, will likely be called to testify regarding his extensive communications with the City of Vernon Environmental Health Department regarding the environmental reports on the Vernon facility, on remediation of the facility, and on compliance with environmental regulations.  Mr. Walrath resides in Hacienda Heights, California and will be inconvenienced by venue in Delaware.

18.     Tom Reynolds was the Facility Manager for the Vernon facility from the time the facility was acquired from Century Aluminum Company in 1999 until he retired from Pechiney Case Plate Inc. in October of 2004.  Mr. Reynolds will likely be called to testify regarding his knowledge concerning this transaction, the activities at the Vernon facility while under Pechiney ownership, the investigation conducted at the Vernon facility by the environmental consultants, and his interactions with the City of Vernon Environmental Health Department concerning the proposed plant closure.  Mr. Reynolds resides in Huntington Beach, California and will be inconvenienced by venue in Delaware.

19.     The majority of the relevant documents are located in Vernon, California. Pechiney Cast Plate Inc. maintains its documents in Vernon, California and Chicago, Illinois. Other relevant documents are maintained by Geomatrix, EPC and the City of Vernon Environmental Health Department, and are all located in California. Alcan Rolled Products-Ravenswood LLC has no relevant documents, and the documents it does have are kept in its facilities in Ravenswood, West Virginia.

FURTHER AFFIANT SAYETH NOT.

_____
Eileen Burns Lerum

SUBSCRIBED and SWORN to before me
this 13th day of October, 2006.

_____
Notary Public

OFFICIAL SEAL
RACHEL BENNER
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES: 03-05-07

# EXHIBIT B

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ALCOA INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 06-451-SLR |
| v. | ) | |
| | ) | |
| ALCAN INC., ALCAN ROLLED PRODUCTS-<br>RAVENSWOOD LLC, f/k/a PECHINEY<br>ROLLED PRODUCTS LLC, PECHINEY CAST<br>PLATE INC., and CENTURY ALUMINUM<br>COMPANY, | )<br>)<br>)<br>)<br>)<br>) | |
| | ) | |
| Defendants. | ) | |

### AFFIDAVIT OF ROY MILLINGTON

I, Roy Millington, being duly sworn, hereby depose and state:

1.    I am currently the Corporate Secretary of Alcan Inc. and have held that position since June 28, 2001. I have personal knowledge, based on the books and records of the company discussed herein, of the matters set forth in this Affidavit and would be competent to testify concerning these matters if called upon to do so.

2.    Defendant Alcan Inc. is a Canadian corporation with corporate offices in Montreal, Quebec, Canada. Alcan Inc. is a holding company and has no operations in the United States.

3.    Alcan Inc. is not a resident of the United States and has no permanent establishment in the United States, including Delaware and California.

4.    Alcan Inc. has never been qualified, authorized, or otherwise chartered or registered to conduct or transact business in Delaware or California.

5.    Alcan Inc. has no registered agents in Delaware or California.

6.      Alcan Inc. is not engaged in business in Delaware, California or the United States and has never entered into any contracts within the state of Delaware or the state of California.

7.      Alcan Inc. does not maintain any offices, manufacturing plants, warehouses or other facilities in the state of Delaware or the state of California.  Additionally, Alcan Inc. has no telephone listings anywhere in Delaware or in California.

8.      Alcan Inc. does not lease or own any real property in the state of Delaware or the state of California.

9.      Alcan Inc. does not maintain bank accounts in Delaware or in California.

10.      Alcan Inc. does not have any employees working in the state of Delaware or in the state of California.

11.      Alcan Inc. does not pay any taxes or franchise fees in Delaware or in California.

FURTHER AFFIANT SAYETH NOT.

_____
Roy Millington

SUBSCRIBED and SWORN to before me
this _10th_ day of October, 2006.

_____
Notary Public

2

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ALCOA INC.,      ) | |
|      ) | |
| Plaintiff,      ) | |
|      ) | C.A. No. 06-451-SLR |
| v.      ) | |
|      ) | |
| ALCAN INC., ALCAN ROLLED PRODUCTS-      ) | |
| RAVENSWOOD LLC, f/k/a PECHINEY      ) | |
| ROLLED PRODUCTS LLC, PECHINEY CAST      ) | |
| PLATE INC., and CENTURY ALUMINUM      ) | |
| COMPANY,      ) | |
|      ) | |
| Defendants.      ) | |

## AFFIDAVIT OF SHAHID U. HAQUE

I, Shahid U. Haque, hereby declare under penalty of perjury:

1.    I am associated with Jenner & Block LLP, counsel for Defendants, and submit this declaration in support of Defendants' Motion to Transfer the above-captioned case to the Central District of California pursuant to 28 U.S.C. § 1404(a).

2.    Attached is a true and correct copy of two pages from the 2005 Judicial Caseload Profile, showing caseload statistics for the District of Delaware and the Central District of California. These documents were located on a publicly-accessible website maintained by the Administrative Office of the U.S. Courts, and can be located at:  http://www.uscourts.gov/cgi-bin/cmsd2005.pl.

Shahid U. Haque

Subscribed and sworn to before me
this _12ᵗᵉ_ day of October, 2006.

Notary Public

"OFFICIAL SEAL"
JOYCE MARBURY
Notary Public, State of Illinois
My Commission Expires 10/28/2009

# U.S. DISTRICT COURT - JUDICIAL CASELOAD PROFILE

| | | | | 12-MONTH PERIOD ENDING SEPTEMBER 30 | | | | | Numerical Standing | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **DELAWARE** | | | | 2004 | 2003 | 2002 | 2001 | 2000 | 1999 | U.S. | Circuit |
| OVERALL CASELOAD STATISTICS | | Filings* | | 1,797 | 1,362 | 2,028 | 1,004 | 1,303 | 1,033 | | |
| | | Terminations | | 1,516 | 1,507 | 1,478 | 1,020 | 955 | 861 | | |
| | | Pending | | 2,085 | 1,836 | 1,999 | 1,477 | 1,502 | 1,154 | | |
| | % Change in Total Filings | Over Last Year | | | 31.9 | | | | | 5 | 2 |
| | | Over Earlier Years | | | | -11.4 | 79.0 | 37.9 | 74.0 | 4 | 2 |
| | Number of Judgeships | | | 4 | 4 | 4 | 4 | 4 | 4 | | |
| | Vacant Judgeship Months** | | | .0 | 1.9 | 3.1 | .0 | .0 | .0 | | |
| ACTIONS PER JUDGESHIP | FILINGS | Total | | 449 | 340 | 507 | 251 | 326 | 258 | 52 | 3 |
| | | Civil | | 414 | 306 | 462 | 233 | 307 | 240 | 29 | 3 |
| | | Criminal Felony | | 29 | 25 | 38 | 18 | 19 | 18 | 91 | 6 |
| | | Supervised Release Hearings** | | 6 | 9 | 7 | - | - | - | 90 | 4 |
| | Pending Cases | | | 521 | 459 | 500 | 369 | 376 | 289 | 20 | 2 |
| | Weighted Filings** | | | 534 | 424 | 516 | 379 | 389 | 320 | 31 | 1 |
| | Terminations | | | 379 | 377 | 370 | 255 | 239 | 215 | 64 | 4 |
| | Trials Completed | | | 19 | 23 | 18 | 16 | 19 | 13 | 47 | 2 |
| MEDIAN TIMES (months) | From Filing to Disposition | Criminal Felony | | 9.1 | 8.3 | 9.8 | 8.0 | 6.6 | 6.0 | 68 | 2 |
| | | Civil** | | 14.0 | 11.2 | 8.2 | 12.6 | 10.9 | 11.5 | 93 | 5 |
| | From Filing to Trial** (Civil Only) | | | 26.0 | 24.0 | 22.5 | 21.0 | 24.0 | 19.7 | 58 | 3 |
| OTHER | Civil Cases Over 3 Years Old** | Number | | 65 | 66 | 99 | 77 | 70 | 38 | | |
| | | Percentage | | 3.4 | 3.9 | 5.4 | 5.5 | 4.9 | 3.5 | 43 | 3 |
| | Average Number of Felony Defendants Filed Per Case | | | 1.2 | 1.3 | 1.1 | 1.3 | 1.2 | 1.3 | | |
| | Jurors | Avg. Present for Jury Selection | | 38.50 | 34.98 | 33.84 | 32.68 | 35.75 | 30.23 | | |
| | | Percent Not Selected or Challenged | | 20.9 | 24.0 | 24.4 | 19.9 | 28.5 | 15.1 | | |

| 2004 CIVIL AND CRIMINAL FELONY FILINGS BY NATURE OF SUIT AND OFFENSE | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Type of | TOTAL | A | B | C | D | E | F | G | H | I | J | K | L |
| Civil | 1655 | 20 | 1 | 238 | 10 | 5 | 28 | 72 | 56 | 198 | 135 | 2 | 890 |
| Criminal* | 115 | 9 | 5 | 40 | - | 4 | 24 | ** | 2 | 19 | - | 6 | 6 |

\*  Filings in the "Overall Caseload Statistics" section include criminal transfers, while filings "By Nature of Offense" do not.
\*\* See "Explanation of Selected Terms."

Page 1 of 1

# U.S. DISTRICT COURT - JUDICIAL CASELOAD PROFILE

| | | 12-MONTH PERIOD ENDING SEPTEMBER 30 | | | | | | Numerical Standing | |
|---|---|---|---|---|---|---|---|---|---|
| **CALIFORNIA CENTRAL** | | 2004 | 2003 | 2002 | 2001 | 2000 | 1999 | | |
| | | | | | | | | U.S. | Circuit |
| OVERALL CASELOAD STATISTICS | Filings* | 16,938 | 14,720 | 15,440 | 15,342 | 17,888 | 16,232 | | |
| | Terminations | 15,269 | 15,800 | 16,936 | 16,906 | 13,988 | 12,874 | | |
| | Pending | 14,720 | 13,129 | 14,525 | 16,142 | 17,670 | 14,043 | | |
| | % Change in Total Filings — Over Last Year | | 15.1 | | | | | 12 | 2 |
| | % Change in Total Filings — Over Earlier Years | | | 9.7 | 10.4 | -5.3 | 4.3 | 56 | 10 |
| Number of Judgeships | | 28 | 28 | 27 | 27 | 27 | 27 | | |
| Vacant Judgeship Months** | | 2.3 | 23.6 | 63.9 | 57.3 | 46.5 | 62.0 | | |
| ACTIONS PER JUDGESHIP | FILINGS — Total | 605 | 526 | 572 | 568 | 663 | 601 | 16 | 5 |
| | FILINGS — Civil | 515 | 451 | 490 | 521 | 612 | 558 | 10 | 3 |
| | FILINGS — Criminal Felony | 60 | 49 | 58 | 47 | 51 | 43 | 58 | 12 |
| | FILINGS — Supervised Release Hearings** | 30 | 26 | 24 | - | - | - | 22 | 9 |
| | Pending Cases | 526 | 469 | 538 | 598 | 654 | 520 | 19 | 3 |
| | Weighted Filings** | 651 | 590 | 584 | 557 | 592 | 571 | 6 | 2 |
| | Terminations | 545 | 564 | 627 | 626 | 518 | 477 | 20 | 6 |
| | Trials Completed | 12 | 14 | 12 | 14 | 11 | 12 | 80 | 12 |
| MEDIAN TIMES (months) | From Filing to Disposition — Criminal Felony | 8.2 | 9.4 | 8.6 | 9.1 | 8.8 | 8.1 | 49 | 9 |
| | From Filing to Disposition — Civil** | 7.3 | 7.5 | 7.9 | 7.1 | 7.5 | 7.1 | 14 | 3 |
| | From Filing to Trial** (Civil Only) | 17.8 | 21.2 | 20.0 | 21.0 | 18.0 | 20.0 | 15 | 2 |
| OTHER | Civil Cases Over 3 Years Old** — Number | 624 | 609 | 650 | 541 | 408 | 393 | | |
| | Civil Cases Over 3 Years Old** — Percentage | 5.0 | 5.4 | 5.2 | 3.8 | 2.6 | 3.1 | 61 | 6 |
| | Average Number of Felony Defendants Filed Per Case | 1.4 | 1.4 | 1.4 | 1.5 | 1.5 | 1.5 | | |
| | Jurors — Avg. Present for Jury Selection | 49.01 | 49.49 | 54.63 | 61.75 | 57.63 | 55.38 | | |
| | Jurors — Percent Not Selected or Challenged | 49.4 | 51.6 | 55.5 | 58.8 | 49.8 | 31.9 | | |

| 2004 CIVIL AND CRIMINAL FELONY FILINGS BY NATURE OF SUIT AND OFFENSE | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Type of | TOTAL | A | B | C | D | E | F | G | H | I | J | K | L |
| Civil | 14415 | 1415 | 207 | 2716 | 251 | 66 | 795 | 1337 | 2487 | 1287 | 2066 | 38 | 1750 |
| Criminal* | 1662 | 688 | 16 | 135 | 2 | 109 | 143 | ** | 56 | 303 | 13 | 44 | 153 |

* Filings in the "Overall Caseload Statistics" section include criminal transfers, while filings "By Nature of Offense" do not.
** See "Explanation of Selected Terms."