IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ALCOA INC.,                                          )
                                                     )
                    Plaintiff,                       )
                                                     )
          v.                                         )          C.A. No. 06-451-SLR
                                                     )
ALCAN INC., ALCAN ROLLED                             )
PRODUCTS-RAVENSWOOD LLC, f/k/a                       )
PECHINEY ROLLED PRODUCTS, LLC,                       )
PECHINEY CAST PLATE, INC., and                       )
CENTURY ALUMINUM COMPANY,                            )
                                                     )
                    Defendants.                      )
                                                     )

**OPENING BRIEF IN SUPPORT OF
CENTURY ALUMINUM COMPANY'S MOTION TO
DISMISS FOR FAILURE TO JOIN A PARTY UNDER RULE 19**

                              YOUNG CONAWAY STARGATT & TAYLOR, LLP
                              Christian Douglas Wright (No. 3554)
                              Mary F. Dugan (No. 4704)
                              The Brandywine Building
                              1000 West Street, 17th Floor
                              P.O. Box 391
                              Wilmington, DE  19899-0391
                              (302) 571-6600

                              *Attorneys for Century Aluminum Company*

OF COUNSEL:

LATHAM & WATKINS LLP
Robert M. Howard
James R. Barrett
Robyn L. Ginsberg
555 Eleventh St., N.W., Suite 1000
Washington, D.C.  20004-1304
(202) 637-2200


Dated:  October 27, 2006

# TABLE OF CONTENTS

INTRODUCTION AND SUMMARY OF ARGUMENT ...............................................................1

STATEMENT OF FACTS ..........................................................................................................4
    A.    The City of Vernon ...........................................................................................4
    B.    History of the Vernon Facility and The City's Cleanup Orders .....................5
    C.    Alcoa's Complaint ...........................................................................................9

ARGUMENT ...........................................................................................................................10
    A.    The City of Vernon Is a Necessary Party under Rule 19(a) .................................12
         1.    This Court's Decision In *Acierno* Demonstrates That The City Is A
             Necessary Party.....................................................................................12

         2.    The City's Absence Will Impede Its Ability To Protect Its Interests........16

         3.    The City's Absence Could Leave Other Parties Subject To Risk Of
             Inconsistent Obligations.........................................................................16

    B.    Joinder is Not Feasible Because Delaware Lacks Personal Jurisdiction
        over the City of Vernon ..................................................................................17
         1.    Alcoa Cannot Establish Jurisdiction Under 10 Del. C. § 3104(c) .............18

         2.    Alcoa Cannot Establish Personal Jurisdiction Under the Due
             Process Clause ........................................................................................20

    C.    The City Is an Indispensable Party under Rule 19(b)..........................................21
         1.    The Parties to the Action Would be Prejudiced By a Judgment
             Rendered in the City's Absence..............................................................22

          2.    The City Will Be Prejudiced If It Is Not Joined, and There Are No
             Protective Provisions That Will Lessen That Prejudice ..........................22

         3.    Judgment Rendered in the City's Absence Will Be Inadequate...............24

          4.    Alcoa Will Have An Adequate Remedy if This Action is
             Dismissed ...............................................................................................24

CONCLUSION.........................................................................................................................26

# TABLE OF AUTHORITIES

## CASES

*Acierno v. Preit-Rubin Inc.*, 199 F.R.D. 157 (D. Del. 2001) ...................................... passim

*Blue Ball Properties, Inc. v. McClain*, 658 F. Supp. 1310 (D. Del. 1987) .................18, 20

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) ....................................................21

*Carteret Savings Bank, FA v. Shusham*, 954 F.2d 141 (3d Cir. 1991) ..............................18

*Chadwick v. Arabian America Oil Co.*, 656 F. Supp. 857 (D. Del. 1987).........................24

*Estrada v. Sea-Land Serv., Inc.*, 939 F. Supp. 129 (D.P.R. 1996)...................15, 17, 22, 23

*Ethypharm S.A. France v. Bentley Pharmaceuticals, Inc.*, 388 F. Supp. 2d 426 (D. Del. 2005) ......................................................................................................................11

*Gehling v. St. George's School of Medicine, Ltd.*, 773 F.2d 539 (3d Cir. 1985) ...............21

*Hanson v. Denckla*, 357 U.S. 235 (1958) .........................................................................21

*Intel Corp. v. Silicon Storage Technology Inc.*, 20 F. Supp. 2d 690 (D. Del. 1998).........19

*Johnson & Johnson v. Coopervision, Inc.*, 720 F. Supp. 1116 (D. Del. 1989) ...........12, 24

*Provident National Bank v. Ca. Federal Sav. & Loan Association*, 819 F.2d 434 (3d Cir. 1987)...........................................................................................................18, 21

*Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102 (1968)...................12

*Red Sail Easter Ltd. Partners, L.P. v. Radio City Music Hall Productions, Inc.*, C.A. No. 12036, 1991 WL. 129174 (Del. Ch. July 10, 1991) ...............................19, 20

*Ricci v. State Board of Law Examiners*, 569 F.2d 782 (3d Cir. 1978) .............................17

*In re Rouge Industries, Inc.*, 326 B.R. 55 (Bkrtcy. D. Del. 2005) ....................................17

*Sanitec Industrial, Inc. v. Sanitec Worldwide, Ltd*, 376 F. Supp. 2d 571 (D. Del. 2005) .............................................................................................................................18

*Sears, Roebuck & Co. v. Sears plc*, 744 F. Supp. 1289 (D. Del. 1990).............................19

*Snyder v. City of Cayce, S.C., No. Civ. A. 02-234*, 2002 WL. 31758053 (D. Del. Dec. 6, 2002)..............................................................................................18, 20, 21

*The Bootery, Inc. v. Washington Metropolitan Area Transit Authority*, 326 F. Supp. 794 (D.D.C. 1971) ............................................................................................16

*Ware v. Ball Plastic Container Corp.*, 432 F. Supp. 2d 434 (D. Del. 2006) ....................18

ii

## STATUTES AND RULES

Cal. Code. Regs. Tit. 27, § 15100 - 15620...........................................................................4

10 Del. C. § 3104(c)(1)-(6) ..............................................................................................19

Fed. R. Civ. P. 12(b)(7) ............................................................................................1, 2, 4

Fed. R. Civ. P. 19.......................................................................................................11, 12

Fed. R. Civ. P. 19(a) ..........................................................................11, 12, 16, 17, 21, 22

Fed. R. Civ. P. 19(b) ..........................................................................11, 12, 21, 22

## MISCELLANEOUS

7 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*, §
    1617 (2006).................................................................................................................17

## INTRODUCTION AND SUMMARY OF ARGUMENT

Defendant, Century Aluminum Corporation ("Century"), by and through its counsel, and pursuant to Federal Rules of Civil Procedure ("FRCP") 12(b)(7) and 19, hereby submits this Opening Brief in Support of Its Motion to Dismiss for Failure to Join a Party Under Rule 19. Century seeks dismissal of this action, without prejudice.

On July 25, 2006, Aluminum Company of America ("Alcoa"), filed a Complaint for Declaratory Judgment in the District of Delaware against Alcan Inc., Alcan Rolled Products – Ravenswood LLC ("Alcan"), f/k/a Pechiney Rolled Products, LLC, Pechiney Cast Plate, Inc. ("Pechiney" or "Alcan"), and Century Aluminum Company ("Century"). Among other things, Alcoa demands the Court to declare that Alcoa is not liable to Century, or to Alcan, for losses Century could incur arising from environmental cleanup orders issued by the City of Vernon, California ("the City of Vernon" or "the City") with respect to a manufacturing facility that Alcoa formerly owned for nearly sixty years in the City of Vernon (the "Vernon Facility").

In its suit to evade its indemnity obligation to Century, Alcoa has neglected to join a party that is necessary and indispensable to this action as a matter of law—namely, the City of Vernon. As this Court's prior rulings establish, if the Court will need to evaluate and effectively overturn a municipality's actions in order to fashion a remedy in the plaintiff's favor, the municipality is a necessary and indispensable party pursuant to FRCP 12(b)(7). See Acierno v. Preit-Rubin Inc., 199 F.R.D. 157, 164 (D. Del. 2001). As described below, this is the case here.

By way of background, the following key facts illustrate the City's close and indispensable involvement to the issues to be litigated in this matter:

- *First*, Alcoa has filed an action to avoid indemnity obligations to pay environmental cleanup costs associated with its former Vernon Facility, which as stated above is located in the City of Vernon. When Alcoa sold the Vernon Facility to Century, it specifically provided Century with defense and indemnity

1

relating to environmental cleanup costs that are "required by a governmental order or directive" – which would include any orders or directives issued by the City.

- **Second**, when Alcoa sold the Vernon Facility to Century, Alcoa undertook certain remedial obligations for which it sought and received a "no further action" letter from the City ("the NFA letter") that Alcoa apparently contends has absolved it of further liability at the Vernon Facility.

- **Third**, seven months after it acquired the Vernon Facility, Century sold it to Pechiney (aka Alcan). Pechiney, in turn, recently agreed to sell the Vernon Facility to the City of Vernon. In its contract with the City, Pechiney has agreed to decommission the Vernon Facility and remediate contamination at the site.

- **Fourth**, pursuant to Pechiney's decision to decommission the Vernon Facility, the City has issued an **order** to Pechiney to perform certain environmental cleanup activities at the site (the "Order"). Pechiney has demanded that Century and Alcoa reimburse Pechiney for the environmental cleanup costs Pechiney incurs. Century, in turn, has tendered an indemnity claim against Alcoa because the City's Order has triggered Alcoa's express obligation to defend and indemnify Century against environmental cleanup costs required by governmental "orders or directives." Alcoa, however, has denied its indemnity obligation to Century.

- **And fifth**, the state of California has delegated to the City the authority to administer certain environmental laws. It has exercised that authority in relation to the Vernon Facility in the past, and is presently exercising such authority by, among other things, seeking to establish the cleanup requirements applicable to the site. The standards to which the site is required to be cleaned up, in turn, may be the driving factor in the total cleanup costs incurred at the site (i.e., more stringent cleanup standards typically result in higher costs).

Under this Court's precedents, the foregoing facts compel a finding that the City of

Vernon is an indispensable party under Federal Rule of Civil Procedure 12(b)(7):

- **First**, because Alcoa has a bright-line indemnity obligation to Century regarding environmental liabilities triggered by a governmental "order or directive," and the City has issued such an Order, Alcoa has no choice (should it continue to reject its indemnification obligation) but to contest the validity of the City's Order. In other words, Alcoa must collaterally attack the City's Order, because to prevail Alcoa must ask this Court to rule that the City's Order is, in fact, not an Order (i.e., that no such "order" exists).[1] The City, however, is not a party to this proceeding, and therefore is not in a position to litigate the validity, effectiveness

---

[1]    If Alcoa does not challenge the existence of the Order, Alcoa's case against Century evaporates because of its *per se* indemnity obligation to defend and indemnify Century against environmental liabilities arising out of "governmental agency orders or directives."

2

065500.1001

and existence of its Order, let alone its authority to administer environmental laws within its territorial boundaries, before the Court.

- **_Second_**, because Alcoa has taken the position that the NFA letter it received from the City absolves it of further responsibility at the Vernon Facility, Alcoa necessarily will ask this Court to rule that the NFA letter, in fact, constitutes such a release of liability by the City of Vernon (notwithstanding the absence of any such "release" language). Alcoa's argument inevitably will require an examination, by this Court, of the City's intent and actions in issuing the NFA letter, the scope and meaning of the NFA letter with respect to any such alleged release of liability, and the City's authority to issue NFA letters (let alone its authority to "release" a third party from liability through an NFA letter). The City, however, is not a party to this proceeding, and therefore will not be in a position to litigate the legal consequences of the NFA letter that the City issued to Alcoa.

- **_Third_**, because Alcoa has taken the position that Pechiney's cleanup activities relate to development activities, rather than environmental cleanup requirements, Alcoa necessarily will ask this Court to evaluate the City's authority as an environmental regulator versus its rights as a private party purchaser. This is so because the City has mandated Pechiney's cleanup both in the context of its Order and its purchase agreement with Pechiney. The City, however, is not a party to the proceeding, and therefore will not be in a position to litigate questions central to the manner in which it is mandating environmental cleanup of the Vernon Facility.

- **_Fourth_**, Alcoa's action goes to the heart of the City's rights and interests as a purchaser of the Vernon Facility. The City has – by contract with Pechiney – agreed to acquire the Vernon Facility. Alcoa contends that the contract evinces a development plan that is unrelated to any prior environmental issues for which Alcoa might have responsibility, and that any environmental cleanup costs are therefore the responsibility of others. As above, this theory will require the Court to parse the City's authority to require cleanup, on the one hand, and its interests as a private party purchaser, on the other. The City of Vernon, however, is not a party to this proceeding, and therefore will not be present when the parties litigate the foregoing cluster of issues before this Court.

- **_Finally_**, Alcoa's Complaint contends that, even if the Court were to find that Alcoa bears some responsibility for site contamination, the other parties bear responsibility as well under "CERCLA" and related precedents. Alcoa's argument necessarily will require the Court to evaluate (i) the City's potential responsibility for cleanup costs at a site that it is acquiring, (ii) the City's legal authority to mandate stringent cleanup standards and direct cleanup regarding historic site conditions, (iii) the extent to which the cleanup requirements imposed by the City fall within the City's purported legal authority, (iv) whether the City's cleanup requirements triggered costs that were necessary and reasonable, and (v) whether the City has mandated cleanup that is otherwise the responsibility of

Alcoa under applicable law. The City, however, is not a party to this proceeding, and therefore will not be present to explain and defend its determinations regarding remediation of the Vernon Facility.

In short, to succeed in this case, Alcoa must prevail on the Court to (a) evaluate and effectively overturn the City's Order, (b) evaluate the City's NFA letter and rule that it has the legal effect of releasing Alcoa from any further responsibility at the Vernon Facility, and (c) evaluate and make rulings on the City's decisions and authority regarding the applicable cleanup standards at the Vernon Facility (which, per above, will be the key cost driver). In addition, Alcoa is asking the Court to make rulings regarding the cleanup of the very property the City of Vernon is acquiring from Pechiney, which in turn could affect the City's interests as a private party purchaser of the Vernon Facility. And all of this in the City's absence. Regardless of Alcoa's rationale for failing to join the City of Vernon, the law is clear: the City of Vernon must be joined. Because the Court cannot exercise jurisdiction over this California municipality, however, the City cannot be joined in this action as an indispensable party. Consequently, pursuant to FRCP 12(b)(7), Alcoa's action must be dismissed.

## STATEMENT OF FACTS

### A.    The City of Vernon

In 1905, the City of Vernon was incorporated in Los Angeles County, California as the first industrial city in the Southwestern United States. Vernon is an exclusively industrial city, which provides government services uniquely tailored to the industrial needs of the community.

The State of California has designated Vernon as a Certified Unified Program Agency ("CUPA"), thereby authorizing the City to administer state laws and regulations relating to hazardous substances and materials within city limits. See CAL. CODE. REGS. TIT. 27, § 15100 – 15620 (outlining CUPA responsibilities regarding the monitoring and regulating of hazardous waste and materials and enforcement of related laws).

4

The City has also promulgated municipal ordinances governing a wide range of subject matters. See City of Vernon Ordinance, No. 961 ("the Ordinance") (Ex. A).[2] City of Vernon Ordinance No. 961 extends to hazardous substances used within the City's borders. For instance, Article IV of the Ordinance states that the City may "provide for the establishment of a program to monitor establishments where hazardous materials are produced, stored, handled, disposed of, treated, emitted, discharged, or recycled". See City of Vernon Ordinance No. 961, Article IV, Section 13.48, Hazardous Materials Monitoring Program (Ex. A). In addition, under Sections 13.66, 13.67, and 13.68 of the Ordinance, the City is authorized to determine whether the owner or operator of a facility located within Vernon has adequately cleaned up hazardous materials and hazardous material residues prior to closure of the facility. See id. at Sections 13.66-68. Under its Ordinance, the City has retained the authority to require the removal of hazardous materials and material residues from facilities located within the City, see id. at Sections 13.66-67, and to require facilities, prior to cessation of operations, to submit to the City a certification of closure of hazardous material activities, see id. at Section 13.68.

## B.    History of the Vernon Facility and the City's Cleanup Orders

From 1937 until 1998, Alcoa operated the Vernon Facility, a cast plate facility in the City of Vernon. On December 22, 1998, Alcoa agreed to sell the Vernon Facility to Century pursuant to an Acquisition Agreement. See Acquisition Agreement between Alcoa and Century Aluminum Co. ("Acquisition Agreement") (Ex. B). Under the Acquisition Agreement, Alcoa promised to "indemnify, defend and hold Century harmless from and against any all environmental liabilities." See Century Acquisition Agreement, Section 10.03(a) (Ex. B). The Acquisition Agreement defines "Environmental Liabilities" as "all losses…incurred or required

---

[2]    All designations to Exhibits herein refer to the Exhibits attached to the Declaration of Christine F. Roussel, filed contemporaneously with this brief.

065500.1001

to be paid as a result of or arising out of (i) Hazardous Substances that are or were at, upon, in or under the Real Property prior to the Closing due to the actions or inactions of Seller or an Affiliate of Seller, the Cleanup of which either is *required by a directive or order of a governmental agency*." See id. at Section 10.01(e)(i) (emphasis added).

In addition to the broad indemnification obligation stated above, Alcoa also agreed to perform certain remediation activities under the Acquisition Agreement. In particular, Sections 10.03(c)(1)-(4) and (6) of the Acquisition Agreement require Alcoa to remediate certain hazardous substances to the levels that would enable Alcoa to secure from an authorized governmental agency a "no further action" (i.e., NFA) statement.[3]

In connection with Alcoa's remediation activities referenced immediately above, on September 2, 1999, the City of Vernon issued the NFA letter to Alcoa, in which it concluded that, at that time, no further remediation action was required. See NFA letter (Ex. C). In the NFA letter, the City stated that further action may be required:

> Based on our review of the documents, we concur with your recommendations to close the subject site with no further environmental assessment or remedial action at this time, and consider the site remediation project closed. The City of Vernon Environmental Health Department will continue to monitor Alcoa's acknowledgement of its continuing responsibilities regarding the Stoddard Solvent issues.[4]
>
> Our acknowledgement of a satisfactory closure is based on the

---

[3]    Note that nothing in the Acquisition Agreement or the NFA letter purports to limit or otherwise curtail Alcoa's responsibility for costs triggered by governmental orders.

[4]    Per the terms of the Acquisition Agreement, Alcoa agreed to remediate Stoddard solvent system contamination at the Vernon Facility to the levels required to obtain an NFA letter. See Ex. B, Acquisition Agreement, at 10.03(c)(1) (listing, as one of the activities assumed by the seller, the "cleanup of all Releases of TPH and VOC known or suspected at the [Vernon Facility] arising out of Stoddard solvent system contamination") (Ex. B). As the City's NFA letter expressly indicates, Alcoa's obligations respecting Stoddard solvent contamination were not extinguished by the City's issuance of its NFA letter. In fact, on April 17, 2001, the City sent another letter to Alcoa, requesting that Alcoa continue to monitor Stoddard solvent contamination at the Vernon Facility at least once every five years. Alcoa's remediation of Stoddard solvent contamination at the Vernon Facility continues to this day.

6

> assumption that the information submitted in the documentation is
> complete and accurate. <u>Further review or determinations may be</u>
> <u>necessary if subsequent information, which significantly affects any</u>
> <u>decision, is found.</u>

<u>See</u> NFA letter (emphasis added) (Ex. C).

On July 26, 1999, after operating the Facility for seven months, Century sold the Facility

to Pechiney Rolled Products, LLC, pursuant to a Purchase Agreement. <u>See</u> Stock and Asset

Purchase Agreement between Century Aluminum Co. and Pechiney Rolled Products LLC

("Purchase Agreement") (Ex. D). In connection with the Purchase Agreement, Century and

Pechiney entered into an indemnity agreement under which Century agreed to indemnify

Pechiney to the same extent that Alcoa had agreed to indemnify Century with respect to historic

environmental issues at the Facility.[5] <u>See</u> Vernon Indemnification Agreement between Century

Aluminum Company and Pechiney Rolled Products, LLC, Section 10.01(e)(i) (Ex. E).

In November 2005, Pechiney decided to cease manufacturing operations at the Vernon

Facility, and sell the facility. <u>See</u> Complaint at ¶ 23. On March 20, 2006, Pechiney and the City

executed an agreement under which the City agreed to acquire the Vernon Facility. <u>See</u>

Purchase Agreement (Ex. F). Per the terms of this agreement, Pechiney agreed to perform

remediation, and Pechiney and the City agreed to mutually establish a remediation work plan

sufficient to allow the City's Health Department to issue a certificate of closure. <u>See</u> Addendum

to Pechiney/Vernon Sales Agreement, Sections 26.7(a)-(c) (Ex. G).

On March 28, 2006,[6] the City sent Pechiney a letter, requiring, among other things, that

---

[5]    Subsequent to Pechiney's purchase of the Facility on July 26, 1999, Alcan Inc. acquired
Pechiney, S.A, and Pechiney Rolled Products, LLC became Alcan Rolled Products - Ravenswood LLC, a
wholly-owned subsidiary of Alcan Inc.

[6]    According to the City's March 28, 2006 letter, the cleanup directives were issued pursuant to the
City's authority to monitor hazardous materials under Sections 13.66, 13.67, and 13.68 of City of Vernon
Ordinance # 961. <u>See</u> City of Vernon Ordinance No. 961, Article IV, Sections 13.66-68, Hazardous
Materials Monitoring Program (articulating requirements for termination of hazardous materials activities

Pechiney prepare a closure work plan for the Vernon Facility:

>This letter is an **Official Notice** to provide us with the details of a closure work plan by April 25, 2006. In the case of your facility, an acceptable closure work plan should include the following items:
>
>- A list of the identities and quantities of hazardous materials moved from the premises. The list must include the items currently listed on the Hazardous Materials Inventory on file in our office.
>- Address of location where hazardous materials were relocated.
>- Statement describing efforts that assure proper cleanup of the equipment and facility.
>- A description of the steps necessary to identify the hazardous materials and waste used or stored on the premises.
>- Plans for closure of underground structures (clarifier, sumps, etc.,).
>- Sampling and testing protocols to determine the presence or absence of hazardous materials/wastes residues on equipment, structures and premises.
>- Remediation plans, if necessary.

See March 28th letter, at 1-2 (emphasis in original) (Ex. H).

Finally, on July 26, 2006, the Vernon Health Department issued the Order to Pechiney.

In its Order, the City states that:

>Because Pechiney is vacating the subject property and there is documentation of contamination at the site, we are sending you this letter as an ***official notice, ordering*** Pechiney to perform the following actions relative to the property at 3200 Fruitland Avenue, Vernon:
>- Adequately remove any hazardous material
>- Adequately remove any hazardous material residue
>- Properly remedy any hazardous material contamination from the subsurface structures, soil, or ground water at the site
>- Properly dispose of any hazardous waste generated by the clean-up, demolition or site remediation.

See Order (emphasis added) (Ex. I). The City's Order expressly supersedes any prior decisions

the City had made with respect to site closure and remediation matters:

>Compliance with this order will bring Pechiney into accord with the

___

and removal requirements) (Ex. A).

> Code of the City of Vernon, Section 13.67, which specifies that upon
> termination of hazardous material activity at a property, all hazardous
> materials and hazardous material residues shall be properly removed
> from equipment, structures, and premises. Please be advised that
> compliance with the Code of the City of Vernon, Section 13.67,
> which is part of Vernon Ordinance No. 961, is required, <u>irrespective
> of any previous closure letters issued with respect to this property, to
> the extent that subsequently discovered information (as is the case
> here) affects any prior closure decision.</u>

See Order (emphasis added) (Ex. I). In sum, the Order mandates cleanup at the Vernon Facility.
It does so notwithstanding the City's prior NFA Letter issued to Alcoa regarding matters
addressed in 1997.

### C.    Alcoa's Complaint

In its Complaint, Alcoa asks this Court to excuse it from liability relating to demands
made by Pechiney on Century concerning environmental cleanup costs that Pechiney has
incurred, and will continue to incur, at the Vernon Facility. On April 17, 2006, Pechiney sent
two letters to Century, asserting claims against Century for costs relating to its cleanup activities
at the Vernon Facility. See Letter from Pechiney to Century (April 17, 2006) (Ex. J); see also
Letter from Pechiney to Century (April 17, 2006) (Ex. K). According to Alcoa's Complaint, in
May 2006, Alcan (aka Pechiney) telephoned Alcoa on two occasions to state that, in addition to
pursuing indemnification from Century, Pechiney may also seek to recover costs directly from
Alcoa. See Complaint at ¶ 29.

Because Pechiney has made a demand against Century for environmental cleanup costs
triggered by a governmental order or directive, Pechiney's demands for indemnification from
Century in turn triggered Century's express indemnification rights against Alcoa. Thus, on May
8, 2006, Century tendered an indemnity notice to Alcoa with respect to such costs. See Letter
from Century to Alcoa (May 8, 2006) (Ex. L). In a letter dated June 2, 2006, Alcoa rejected
Century's request for indemnification, see Letter from Alcoa to Century (June 2, 2006) (rejecting

9

all of Alcoa's claims for indemnification) (Ex. M), and, on July 25, 2006, filed its Complaint for Declaratory Judgment with this Court. Subsequently, on August 4, 2006, Century tendered a second request for indemnification to Alcoa, notifying Alcoa of the City's Order and Alcoa's indemnity obligation in respect of environmental cleanup costs arising from the Order. <u>See</u> Letter from Century to Alcoa (August 4, 2006) (Ex. N).

In its Complaint, Alcoa asserts three claims for declaratory relief, including: (1) a declaration that it has fulfilled its remediation obligations under the terms of the Century Acquisition Agreement and therefore has no indemnity obligation toward Century (notwithstanding its express indemnity obligation under the contract), <u>see</u> Complaint at ¶¶ 34-36; (2) a declaration that it has fulfilled its remediation obligations at the Vernon Facility and has no further liability to any other Party in relation to any cleanup of hazardous substances that may be required, <u>see</u> Complaint at ¶¶ 39-40, 43-46; and (3) a declaration that Century is liable to Alcoa under the Century Acquisition Agreement (again, notwithstanding its indemnity obligation to Century in respect of costs triggered by governmental orders or directives), <u>see</u> Complaint at ¶¶ 49-50. In asserting those claims, Alcoa names all subsequent owners of the facility as parties to the suit. <u>See</u> Complaint at ¶¶ 1-3. Alcoa, however, does not name the City of Vernon as a party, notwithstanding that the City (i) is acquiring the Vernon Facility and (ii) has regulated and is regulating cleanup at the Vernon Facility through administrative orders and actions that are central to the disposition of this case, as discussed above.

**ARGUMENT**

Under Federal Rule of Civil Procedure 19, this Court utilizes a two-step process to determine whether the City is an indispensable party. See <u>Ethypharm S.A. France v. Bentley Pharms., Inc.</u>, 388 F. Supp. 2d 426, 431 (D. Del. 2005); <u>see also Acierno v. Preit-Rubin Inc.</u>, 199 F.R.D. 157, 164 (D. Del. 2001). *First*, the Court must determine whether the City is a

10

"necessary" party. A party is necessary when (1) in the person's absence complete relief cannot be accorded among those already parties; or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may impede the person's ability to protect that interest, or leave any of the persons already parties subject to substantial risk of incurring inconsistent obligations by reason of the claimed interest. Fed. R. Civ. P. 19(a). If deemed a necessary party, then the City must be joined if feasible. See Ethypharm, 388 F. Supp. 2d at 431.

*Second*, if joinder is not feasible, the Court must determine whether the party is an indispensable party under Rule 19(b)—in other words, whether "in equity and good conscience the action should proceed among the parties before it, or should be dismissed." Fed. R. Civ. P. 19(b); see also Ethypharm, 388 F. Supp. 2d at 431. The factors to consider under Rule 19(b) include: (1) the extent to which a judgment rendered in the person's absence might be prejudicial to the person or those already parties; (2) the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; (3) whether a judgment rendered in the person's absence will be adequate; and (4) whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder. Fed. R. Civ. P. 19(b).

The foregoing four factors should be balanced to determine if the action should be dismissed. Acierno, 199 F.R.D. at 164. These four factors, however, "are not intended to exclude other considerations which may be applicable in particular situations." Fed. R. Civ. P. 19 Advisory Committee's Note; see also Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 118-19 (1968) (explaining that factors to consider in indispensability analysis vary from case to case, and include both procedural and substantive inquiries). Indeed, the

11

indispensability determination "requires a fact-specific, flexible analysis," Johnson & Johnson v. Coopervision, Inc., 720 F. Supp. 1116, 1121 (D. Del. 1989), and additional considerations may factor into the indispensability determination. See Acierno, 199 F.R.D. at 164 ("There is no prescribed formula for determining whether a person is an indispensable party and courts are given substantial discretion when making a determination under Rule 19") (internal quotation omitted).

For ease of reference, the argument below is presented in three parts: First, whether the City is a necessary party under Rule 19(a). Second, whether joinder of the City is feasible. And third, whether the City is an indispensable party such that Alcoa's action must be dismissed in favor of a jurisdiction where the City may be joined.

### A.    The City of Vernon Is a Necessary Party Under Rule 19(a)

#### 1.    This Court's Decision In *Acierno* Demonstrates That the City is a Necessary Party

This Court's precedents leave no doubt that the City of Vernon is a necessary party under the Rule 19(a) test outlined above. In Acierno v. Preit-Rubin Inc., 199 F.R.D. 157 (D. Del. 2001), this court decided a case that is remarkably similar to the instant action. In Acierno, a landowner brought suit against an adjacent landowner, alleging that the adjacent landowner misled the County of New Castle ("County") into approving a land development plan. The plaintiff alleged that defendant's misrepresentations caused the County to reverse its decision to include the plaintiff's property in a traffic impact study ("TIS"). Id. at 160-61. The defendant moved for summary judgment on the ground that the plaintiff failed to join the County as a party to the suit. In so moving, the defendant argued that the County was a necessary and indispensable party under Rule 19, because the plaintiff's allegations regarding defendant's conduct were, in effect, a "collateral challenge to the County's approval" of the proposed

12

development. Id. at 162. The Court agreed, stating that "*because the court would have to review the County's actions* in order to fashion a remedy, the County is a necessary and indispensable party." Id. at 163 (emphasis added). In finding that the County was a necessary and indispensable party, the Court further found that the plaintiff's claims "depend upon a belief that the County's decision was incorrect," and that "disposition of this case could ultimately turn on further action by the County." Id.

As in Acierno, Alcoa's requests for declaratory relief will force this Court to evaluate and make determinations regarding numerous actions taken by the City of Vernon, a California municipality. *First*, Alcoa's case against Century cannot survive unless Alcoa convinces this Court that the City's Order – *which on its face triggers Alcoa's defense and indemnity obligations to Century* – is not an "order." If it is an order, Alcoa has an indisputable obligation to defend and indemnify Century against Pechiney's demand for reimbursement of environmental cleanup costs at the Vernon Facility. This Court, therefore, necessarily will be asked to make rulings on a potential range of issues relating to the City's Order: (i) *is it an order?*; (ii) *does the City have authority to issue a cleanup order?*; (iii) *is the order valid?*; and so forth. In turn, to fashion a remedy in Alcoa's favor, this Court would need to find that the City's Order is not an order (notwithstanding that it was issued as an order). As in Acierno, Alcoa's "claims depend upon a belief that the [City's] decision is incorrect." Id. at 163. As in Acierno, the relief sought by Alcoa against Century (i.e., that is has no indemnity obligation to Century) "would have the effect of overruling" the City's Order. Id. Thus, as in Acierno, "because the court would have to review the [City's] actions in order to fashion a remedy, the [City] is a necessary and indispensable party." Id.

*Second*, Alcoa alleges in its Complaint that the NFA letter absolves it of any further

13

responsibilities regarding the Vernon facility. See Complaint at ¶¶ 18, 34, 40. Setting aside whether Alcoa's contention is consistent with the NFA letter (it is not), to fashion a remedy in Alcoa's favor this Court would have to review the City's actions with respect to the NFA letter to answer several questions central to Alcoa's theory: (i) *does the NFA letter release Alcoa from further obligations or liability with respect to environmental problems at the Vernon Facility?*; (ii) *did the City intend for its NFA letter to release Alcoa from any such obligations and liability?*; (iii) *does the City have the authority to release Alcoa?*; (iv) *do the City's later actions mandating further cleanup (e.g., issuing the Order) supersede its earlier actions (e.g., issuing the NFA letter)?*; and so forth. Under Acierno, these considerations alone demonstrate that the City of Vernon is a necessary party. See Acierno, 199 F.R.D. at 163-64.

      **Third**, because Alcoa has taken the position that Pechiney's cleanup activities relate to "development" activities rather than environmental cleanup requirements, see Complaint at ¶¶ 35-36, 44, Alcoa's Complaint raises two additional issues that will require the Court to closely evaluate the City's actions: (i) *whether Pechiney is performing the cleanup solely as part if its decommissioning obligations under the sales agreement with the City*; and (ii) *whether the cleanup requirements are the result of the City's governmental directives or orders*. The answer to either question would require the Court to evaluate both the City's commercial relationship with Pechiney and the City's use of its police powers to order Pechiney to perform remedial activities at the Vernon Facility. Indeed, to fashion a remedy in Alcoa's favor, the Court would have to effectively vacate the City's cleanup Order and instead rule that the cleanup is a private party matter between Pechiney and the City, unrelated to contamination first occurring during Alcoa's ownership and operation of the site. Under Acierno, because this Court would have to evaluate (and, in this case, overrule) the City's actions, the City is a necessary party to this

14

action. Acierno, 199 F.R.D. at 163.

*Fourth*, Alcoa is taking the position that, even if the Court were to find that it bears some responsibility for site contamination, the other parties bear responsibility as well. See Complaint at ¶¶ 47, 49. One of those parties, however, could be the City of Vernon.[7]  In that respect, this Court could be asked to evaluate the City's actions in relation to the redevelopment project to determine the City's own potential liability at the site. Again, under Acierno, the City is thus a necessary party. Acierno, 199 F.R.D. at 163.

*Finally*, because the City of Vernon has established regulatory authority over the remediation, Alcoa's and the other defendants' liability at the Vernon Facility may well be tied to *future* orders, which could dramatically increase the cost and scope of the remedial activities. Indeed, it is foreseeable that the City would issue orders that directly or indirectly purport to allocate or establish responsibility for pre-existing contamination at the Vernon Facility.  In other words, there are a variety of ways in which "disposition of this case could ultimately turn on further action by the [City]." Acierno, 199 F.R.D. at 163.[8]

---

[7]  As an owner of the site, the City of Vernon arguably could be responsible for costs associated with contamination, whether or not it was responsible for the release or discharge of such contamination. Moreover, the facts may also show that the City of Vernon bears responsibility for contamination in connection with the redevelopment of the property (e.g., with respect to releases caused by redevelopment activities, etc.).

[8]  In its analysis, the Acierno Court relied on the United States District Court for the District of Puerto Rico's decision in Estrada v. Sea-Land Serv., Inc., 939 F. Supp. 129, 133 (D.P.R. 1996).  In Estrada, a harbor pilot licensed by the Puerto Rico Ports Authority ("PRPA") brought suit against vessel owners alleging that they banned him from piloting their vessels without procedural due process. The defendants moved for summary judgment on the ground that the plaintiff failed to join the PRPA to the action.  The court granted defendants' motion, holding that the PRPA was a necessary and indispensable party.  In so ruling, the Court reasoned that complete relief could not be accorded among those already parties because, among other things, "as the state agency which determines who is competent to pilot vessels into the various Puerto Rico harbors, PRPA does have an interest in ensuring that its determinations are subsequently enforced." Id. at 133.  As in Estrada, it is reasonable to conclude that the City has a considerable interest in seeing its orders and directives enforced.  But, to fashion relief in Alcoa's favor, a Court sitting in Delaware would have to effectively overrule a California municipality's orders on environmental cleanup matters.  Thus, as with Acierno, the Estrada precedent demonstrates that the City of Vernon is a necessary (and, indeed, indispensable) party to this proceeding.

15

### 2.    The City's Absence Will Impede Its Ability To Protect Its Interests

As stated above, a ruling in Alcoa's favor would effectively overrule the City's Order and

other actions.  In that respect, any such ruling could leave the City of Vernon in the unusual, and

awkward, position of having a Delaware federal court overrule its orders and directives on

environmental cleanup matters.  The City, therefore, is a necessary party under Rule 19(a)

because it has an obvious interest relating to the subject of the action, and its absence, by

definition, impedes its ability to protect that interest.  See Acierno, 199 F.R.D. at 163 (stating

that "disposition in this action could also impair the County's interests as a practical matter.");

The Bootery, Inc. v. Washington Metro. Area Transit Auth., 326 F. Supp. 794, 808 (D.D.C.

1971) (holding that District of Columbia was a necessary party in a suit against WMATA where

plaintiffs sought injunctive and declaratory relief regarding a proposed subway system, because

DC's interest was "of such a nature that a final decree [could not] be made without…affecting

that interest") (internal citation omitted).

### 3.    The City's Absence Could Leave Other Parties Subject To Risk Of Inconsistent Obligations

Acierno and other precedents establish that the City is a necessary party under Rule 19(a)

because the absence of the City could leave any of the persons already parties to this action

subject to substantial risk of incurring inconsistent obligations by reason of the claimed interest.

Here, this Court will be asked to make rulings with respect to liability, allocation of cleanup

costs, the appropriateness of cleanup costs, and the meaning and scope of the City's cleanup

orders and directives, among other things.  The City, however, could (and we expect will) take

further actions that implicate the interests of all present parties to this action, as discussed above.

See discussion, supra, at 14-15.

In sum, because Alcoa must ask this Court to review and make determinations on City of

16

Vernon actions that are central to the underlying case, the City is a necessary party under Rule 19(a).  See Acierno, 199 F.R.D. at 163 ("[B]ecause the court would have to review the County's actions in order to fashion a remedy, the County is a necessary and indispensable party"); Estrada, 939 F. Supp. at 133 (holding that the PRPA was a necessary and indispensable party, in part, because the court "would undoubtedly have to examine PRPA's actions in order to render a judgment in this case, since it was PRPA who banned plaintiff from piloting defendants' vessels"); Ricci v. State Bd. of Law Examiners, 569 F.2d 782 (3d Cir. 1978) (holding that Supreme Court of Pennsylvania was an indispensable party in suit by an attorney regarding admission to the Pennsylvania bar, where plaintiff essentially asked the Court to invalidate an admission rule).  See also 7 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 1617 (2006) ("Joinder [of cities and local governments] will be required when they will be affected by the action").

### B.    Joinder is Not Feasible Because Delaware Lacks Personal Jurisdiction over the City of Vernon

If the City is a necessary party (which it is), this Court next determines whether joinder is feasible.  Acierno, 199 F.R.D. at 163-64.  Where, as here, a court lacks jurisdiction over a party, joinder is not feasible. See, e.g., In re Rouge Indus., Inc., 326 B.R. 55, 60 (Bankr. D. Del. 2005) ("For joinder to be feasible, the Court must have both personal and subject matter jurisdiction"); see also Acierno, 199 F.R.D. at 163-64 (stating where joinder raises problems of personal or subject matter jurisdiction joinder is not feasible).  Century's research has not revealed a single instance in which a Delaware court has exercised jurisdiction over an out-of-state municipality where, as here, the events or omissions giving rise to the claim occurred outside of Delaware.  In all events, because this Court does not appear to have personal jurisdiction over the City of Vernon (a California municipality), joinder is not feasible.

17

In determining the presence or absence of personal jurisdiction, the Court must engage in a two-step analysis. Snyder v. City of Cayce, S.C., No. Civ. A. 02-234, 2002 WL 31758053, at *1 (D. Del. Dec. 6, 2002); Blue Ball Props., Inc. v. McClain, 658 F. Supp. 1310, 1315 (D. Del. 1987). First, the Court must decide whether the Delaware long-arm statute authorizes jurisdiction. See id. Second, if the long-arm statute authorizes jurisdiction, the Court must determine whether jurisdiction comports with the requirements of the Due Process Clause of the Fourteenth Amendment.[9] See id. To satisfy the second prong of this test, the City must have sufficient "minimum contacts" with the State of Delaware. Snyder, 2002 WL 31758053, at *1. Yet the City, a California municipality, lacks the continuous, systematic, and substantial contacts with Delaware required to make such a showing. See Blue Ball Props., 658 F. Supp. at 1318 (holding that defendant's contacts with Delaware were not sufficiently "numerous, continuous or of a substantial quality" to establish "minimum contacts").

1.    **No Party Can Establish Jurisdiction Over the City of Vernon, a California Municipality, Under 10 Del. C. § 3104(c)**

Under the Delaware long-arm statute, a non-resident entity is deemed to submit to the jurisdiction of Delaware courts if it commits one of the following acts:

> (1) Transacts any business or performs any character of work or service in Delaware;
>
> (2) Contracts to supply services or things in Delaware;
>
> (3) Causes tortious injury in the State by an act or omission in this State;

---

[9]    Once a defendant raises a jurisdictional defense, the plaintiff must establish the existence of jurisdiction by a preponderance of the evidence. Carteret Savs. Bank, FA v. Shusham, 954 F.2d 141, 146 (3d Cir. 1991) (stating plaintiff has burden to prove personal jurisdiction through affidavits or other competent evidence once defendant raises the defense); Sanitec Indus., Inc. v. Sanitec Worldwide, Ltd, 376 F. Supp. 2d 571, 573 (D. Del. 2005) (same); Ware v. Ball Plastic Container Corp., 432 F. Supp. 2d 434, 437-38 (D. Del. 2006) (citing Provident National Bank v. Ca. Fed. Sav. & Loan Assoc., 819 F.2d 434, 437 (3d Cir. 1987)). Arguably, then, as plaintiff, Alcoa would have the burden to establish that personal jurisdiction over Vernon exists.

(4) Causes tortious injury in the State or outside of the State by an act or omission outside of the State if [it] regularly does or solicits business, engages in any other persistent course of conduct in Delaware or derives substantial revenue from services, or things used or consumed in Delaware;

(5) Has an interest in, uses, or possesses real property in this State; or

(6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation or agreement located, executed or to be performed within the State at the time the contract is made, unless the parties provide otherwise in writing.

See 10 Del. C. § 3104(c)(1)-(6).  In interpreting Section 3104(c), the Court must "defer to the interpretations of the Delaware state courts."  Intel Corp. v. Silicon Storage Technology Inc., 20 F. Supp. 2d 690, 694 (D. Del. 1998).  The Delaware long-arm statute should be "given a liberal construction so that its purpose is achieved," but it cannot be stretched beyond "the common usage of the English language" in an effort to acquire personal jurisdiction over a party.  Red Sail Easter Ltd. Partners, L.P. v. Radio City Music Hall Prods., Inc., C.A. No. 12036, 1991 WL 129174 at *2-3, (Del. Ch. July 10, 1991).

Neither the record nor Century's own diligence has turned up anything to suggest that the City has had the requisite contacts with the state of Delaware.  See Declaration of Christine F. Roussel, ¶¶ 16-18.  For the Court to have specific jurisdiction over the City under subsections (1)-(3) and (5)-(6) of Section 3104(c), not only must the City have engaged in one of those acts, but that act must have given rise to the present cause of action.  See Sears, Roebuck & Co. v. Sears plc, 744 F. Supp. 1289, 1292 (D. Del. 1990) (explaining that the specific jurisdiction subsections of Section 3104(c) require the cause of action to "arise out of the defendant's alleged contacts with the forum").  There is nothing in the record, or otherwise, to suggest that the City has had any contact with the State of Delaware, much less contacts sufficient to establish jurisdiction under sections (1)-(3) or (5)-(6).  The City, an incorporated municipality located in

19

California, appears never to have been authorized, registered or qualified to do business in Delaware, does not have an agent for service of process in Delaware, does not appear to advertise in or solicit business from persons or businesses in Delaware, and does not appear to maintain any offices, mailing addresses, or telephone listings in Delaware. See Declaration of Christine F. Roussel, ¶¶ 16-18. It is equally apparent, therefore, that there is no basis for this Court to establish general jurisdiction over the City under Section 3104(c)(4).

Delaware courts typically will not exercise general jurisdiction unless there is evidence of contacts "so extensive and continuing that it is fair and consistent with state policy to require that the defendant appear here and defend a claim." Red Sail Easter, 1991 WL 129174, at *3 (emphasis in original); see also Snyder, 2002 WL 31758053, at *1 (citing Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414-15 (1984)). The City's absence of contacts with the state of Delaware falls far short of the continuous, persistent and regular contact required under Section 3104(c)(4). See Snyder, 2002 WL 31758053, at *2 (holding that Delaware lacked personal jurisdiction over the City of Cayce, South Carolina in a breach of contract suit because the City had no contacts and "*no* connection to Delaware") (emphasis in original).

### 2. The Named Parties Cannot Establish Personal Jurisdiction Over the City of Vernon, a California Municipality, Under the Due Process Clause

Even if the Court determines that personal jurisdiction is somehow proper under the Delaware long-arm statute, the exercise of jurisdiction would not comport with the requirements of the Due Process Clause of the Fourteenth Amendment. See Snyder, 2002 WL 31758053, at *1; Blue Ball Props., 658 F. Supp. at 1317. To satisfy the Due Process Clause, the Court must find the existence of "minimum contacts" between the City of Vernon and Delaware, such that "the maintenance of the suit does not offend 'traditional notions of fair play and substantial

20

justice.'" Snyder, 2002 WL 31758053, at *1 (quoting International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (citation omitted)).  To establish the requisite "minimum contacts" with Delaware, it must be shown that the City of Vernon "'purposefully avail[ed] itself of the privilege of conducting activities'" within the state of Delaware.  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)).

No party can meet such a burden.  As stated above, the City conducts *no known* business in the State, see Declaration of Christine F. Roussel, ¶ 16-18, much less business sufficient to establish the requisite minimum contacts under the Due Process Clause.  See Provident National Bank v. Ca. Fed. Sav. & Loan Ass'n, 819 F.2d 434, 437 (3d Cir. 1987) (recognizing that "a plaintiff must show significantly more than mere minimum contacts" for the exercise of general personal jurisdiction to comport with the Due Process Clause); see also Gehling v. St. George's School of Medicine, Ltd., 773 F.2d 539, 541 (3d Cir. 1985) (requiring showing that defendant "carried on a 'continuous and substantial part' of their business in [the forum]").  Finally, because the City has not performed any acts *in Delaware* relative to the subject matter of this dispute, the exercise of jurisdiction over the City simply would not pass constitutional muster. Snyder, 2002 WL 31758053, at *2.

In short, because the City has no known contacts with the state of Delaware, this Court cannot exercise personal jurisdiction over the City; therefore, joinder is not feasible.

**C.    The City Is an Indispensable Party under Rule 19(b)**

As stated above, because the City is a necessary party under Rule 19(a), and because joinder is not feasible, the Court must then determine whether the City is an indispensable party under Rule 19(b) such that the case must be dismissed.  See Fed. R. Civ. P. 19(b).  In making the indispensability determination, Courts evaluate the following factors under Rule 19(b):  (1) the

extent to which a judgment rendered in the person's absence might be prejudicial to the person or those already parties; (2) the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; (3) whether a judgment rendered in the person's absence will be adequate; and (4) whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder. See id.

As discussed above, this Court's decision in Acierno demonstrates that where, as here, a court will have to review and effectively overrule a local government's action in order to fashion a remedy for the plaintiff, the local government is a necessary *and indispensable* party. Acierno, 199 F.R.D. at 163-64. Absent joinder, the case must be dismissed.

      1.    **The Parties to the Action Would be Prejudiced By a Judgment Rendered in the City's Absence**

While this Court adjudicates the parties' rights in Delaware, the City of Vernon could take actions in California that implicate the parties' interests. As discussed above, the City presumably could issue further orders that increase cleanup costs and implicate the parties' respective liabilities. See discussion, supra, at 14-15. Regardless of how the Court rules in terms of liability, the City's absence deprives the parties of the ability to litigate *in this lawsuit* past, present and future City actions which could result in conflicts and unnecessarily high and inappropriate cleanup costs. In short, the parties to this action could face extreme prejudice by the City's absence. See Acierno, 199. F.R.D. at 164 (reasoning that "judgment in the absence of the County could be prejudicial to the county and may not be adequate"); Estrada, 939 F. Supp. at 133 (same).

      2.    **The City Will Be Prejudiced If It Is Not Joined, and There Are No Protective Provisions That Will Lessen That Prejudice**

It is difficult to see how the City is not prejudiced in an action that, in the City's absence, calls for judicial review of its prior (and perhaps future) actions. See discussion, supra, at 14-15;

see also Acierno, 199 F.R.D. at 164 (finding that the County would be prejudiced if not joined because it was the only entity able to accept traffic plans and approve or disapprove development plans); Estrada, 939 F. Supp. at 133 (stating that "a judgment in this case could be prejudicial to PRPA" and that "little can be practically done to reduce the possibility of prejudice."). It is telling that Delaware, by statute, requires that "in any [declaratory relief] proceeding which involves the validity of a [Delaware] municipal ordinance...such municipality shall be made a party, and shall be entitled to be heard." See 10 Del. C. § 6511. The Delaware legislature has made it plain that in-state municipalities must be joined if their ordinances are called into question. See id. *The same rule must extend to out-of-state municipalities.* Alcoa's request for relief will trigger the Court's review of the City of Vernon's actions made pursuant to a municipal ordinance (i.e., issuance of the Order), and therefore potentially a review of that same ordinance.

Moreover, no protective provisions in a judgment can lessen the prejudice that will result from making determinations regarding the City's prior directives and orders without joining the City to this action. To succeed in its action against Century and Pechiney, Alcoa *must* collaterally attack the existence and/or validity of the City's Order, and Alcoa *must* litigate the scope of the City's NFA letter to substantiate its position that the City previously extinguished Alcoa's liability at the Vernon facility. By definition, any judgment in Alcoa's favor means that Alcoa will have prevailed in its collateral attack against the City's prior actions. Therefore, any such judgment could not lessen the prejudice to the City.[10]

---

[10]    Moreover, insofar as the City is acquiring the Vernon Facility, and Alcoa's lawsuit raises questions about the remedial activities at the Vernon site, in addition to the City's prior orders and directives, it is difficult to see how the City – as a private party purchaser of the facility – is not prejudiced if not joined to this action.

23

### 3.    Judgment Rendered in the City's Absence Will Be Inadequate

As discussed above, a judgment rendered in the City's absence will not be adequate since complete relief necessarily turns on actions by the City with respect to the scope of cleanup it orders at the Vernon Facility. See Acierno, 199 F.R.D. at 164 (stating that "relief necessarily depends" on action by the County and that relief therefore would not be adequate); see also Estrada, 939 F. Supp. at 133 (holding that relief was inadequate because PRPA was the only entity that could determine whether to reinstate Estrada as a pilot).

### 4.    Alcoa Will Have An Adequate Remedy if This Action is Dismissed

In determining whether dismissal is appropriate, "Rule 19(b) directs the court to consider a number of factors, the most important being whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder." Chadwick v. Arabian Am. Oil Co., 656 F. Supp. 857, 863 (D. Del. 1987). If this case were to be dismissed, Alcoa would have access to a more-than-adequate remedy: it could bring suit in California, seeking the same relief from Defendants as it now seeks, in the venue in which this case arises (and where Alcoa owned and operated the Vernon Facility *for more than sixty years*).[11]

Moreover, a California court would have personal jurisdiction over the parties, including the City of Vernon. There is no question that California is a far more convenient forum for this suit, as the Alcan Defendants' motion for a change of venue sets forth; the facts giving rise to this action arise solely in California, and most, if not all, of the witnesses are located in California. Thus, not only would a California court be able to provide an adequate remedy, a

---

[11]    On October 13, 2006, Pechiney filed a motion to transfer venue to the United States District Court for the Central District of California, see Defendant's Motion to Transfer Venue and Enlarge Time to Answer or Otherwise Plead, arguing that the Central District of California is a more convenient forum and that "the Central District of California has a significant interest in regulating the remediation of environmental contaminants located within its jurisdiction," see Memorandum of Law in Support of Defendants' Motion to Transfer Venue and Enlarge Time to Respond or Otherwise Plead at 1. Century hereby joins Pechiney's motion to transfer venue and adopts Pechiney's arguments in support thereof.

California forum would be significantly more convenient for all parties.  <u>See</u> <u>Johnson & Johnson</u>, 720 F. Supp. at 1128 (dismissing the case for failure to join an indispensable party in part because California courts provided a remedy that was "not only *adequate*, but indeed *preferable*") (emphasis in original).

## CONCLUSION

For the foregoing reasons, Century respectfully requests that this Court dismiss Plaintiff's

Complaint for Declaratory Judgment, without prejudice, based on Plaintiff's failure to join an

indispensable party under Federal Rule of Civil Procedure 19.

.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_Christian Douglas Wright_

Christian Douglas Wright (No. 3554)
Mary F. Dugan (No. 4704)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE  19899-0391
(302) 571-6600

*Attorneys for Century Aluminum Company*

OF COUNSEL:

LATHAM & WATKINS LLP
Robert M. Howard
James R. Barrett
Robyn L. Ginsberg
555 Eleventh St., N.W., Suite 1000
Washington, D.C.  20004-1304
(202) 637-2200

Dated:  October 27, 2006

## CERTIFICATE OF SERVICE

I hereby certify that on October 27, 2006, I electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Allen M. Terrell, Jr., Esquire
> Steven J. Fineman, Esquire
> Richards, Layton & Finger, P.A.
> One Rodney Square
> 920 North King Street
> P.O. Box 551
> Wilmington, DE 19899-0551
>
> Steven J. Balick, Esquire
> John G. Day, Esquire
> Tiffany Geyer Lydon, Esquire
> Ashby & Geddes
> 222 Delaware Avenue, 17th Floor
> Wilmington, DE 19801

I further certify that on October 27, 2006, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record.

> Mary F. Dugan (No. 4704)
> YOUNG CONAWAY STARGATT & TAYLOR, LLP
> The Brandywine Building
> 1000 West Street, 17th Floor
> Wilmington, DE 19801
> (302) 571-6600
> mdugan@ycst.com
>
> *Attorneys for Defendant Century Aluminum Company*