IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ALCOA INC., )
)
Plaintiff, )
)
v. )   C.A. No. 06-451-SLR
)
ALCAN INC., ALCAN ROLLED )
PRODUCTS-RAVENSWOOD LLC, f/k/a )
PECHINEY ROLLED PRODUCTS, LLC, )
PECHINEY CAST PLATE, INC., and )
CENTURY ALUMINUM COMPANY, )
)
Defendants. )

## REPLY BRIEF IN SUPPORT OF
## CENTURY ALUMINUM COMPANY'S MOTION TO
## DISMISS FOR FAILURE TO JOIN A PARTY UNDER RULE 19

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Christian Douglas Wright (No. 3554)
Mary F. Dugan (No. 4704)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE  19899-0391
(302) 571-6600

*Attorneys for Century Aluminum Company*

OF COUNSEL:

LATHAM & WATKINS LLP
Robert M. Howard
James R. Barrett
Robyn L. Ginsberg
555 Eleventh St., N.W., Suite 1000
Washington, D.C. 20004-1304
(202) 637-2200

Dated:  March 8, 2007

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ ii

INTRODUCTION AND SUMMARY OF ARGUMENT ............................................ 1

ARGUMENT ................................................................................................ 2

    A.    Alcoa Ignores Issues Central To The Rule 19 Analysis ......................... 3

    B.    Century Has Met Its Burden To Establish That The City Is A Necessary And Indispensable Party ....................................................................... 6

        1.    The City is a Necessary Party Under *Acierno* ........................... 7

        2.    The City Has a Central Role in this Contract Dispute ................ 9

        3.    Alcoa's Assertions Reinforce the City's Indispensability to this Action ............................................................................... 12

        4.    The City's Interests as a Private Party Purchaser Must Also Be Considered Under Rule 19 ...................................................... 15

        5.    Exhaustion of State Law Administrative Process is Not Required and Would Not Alter the Need to Join the City to this Federal Action ............................................................................... 16

    C.    Alcoa's Action Must Be Dismissed Because Joinder Is Not Feasible, And The City Is An Indispensable Party ...................................................... 17

        1.    The Parties Will Be Prejudiced By a Judgment Rendered in the City's Absence ..................................................................... 17

        2.    The City Will Be Prejudiced if Not Joined to this Action and Judgment Rendered in Its Absence Would Be Inadequate ......... 18

        3.    Alcoa Will Have a More Than Adequate Remedy if this Action is Dismissed ........................................................................... 19

CONCLUSION ............................................................................................. 20

# TABLE OF AUTHORITIES

## FEDERAL CASES

Abbott Labs. v. Gardner,
    387 U.S. 136 (1967).................................................................................17

Acierno v. Preit-Rubin Inc.,
    199 F.R.D. 157 (D. Del. 2001) ......................................................... Passim

AT&T Communications-East, Inc. v. BNSF Ry. Co.,
    2006 U.S. Dist. LEXIS 85781 (D. Or. Nov. 27, 2006)..........................11

Baliles v. Donovan,
    549 F. Supp. 661 (W.D. Va. 1982) .......................................................17

Bell Atl. Corp. v. MFS Commc'ns Co.,
    901 F. Supp. 835 (D. Del. 1995).............................................................11

Beverly Hills Fed. Sav. & Loan Ass'n v. Webb,
    406 F.2d 1275 (9th Cir. 1969) ...............................................................12

Chrysler Corp. v. Ford Motor Co.,
    972 F. Supp. 1097 (E.D. Mich. 1997).....................................................11

Coastal Modular Corp. v. Laminators, Inc.,
    635 F.2d 1102 (4th Cir. 1980) ...............................................................11

D'Imperio v. U. S.,
    575 F. Supp. 248 (D.N.J. 1983) .............................................................11

Delpro Co. v. Nat'l Mediation Bd. of the U.S.A.,
    509 F. Supp. 468 (D. Del. 1981).............................................................17

Equal Employment Opp. Comm'n v. Peabody W. Coal Co.,
    400 F.3d 774 (9th Cir. 2005) .................................................................11

Estrada v. Sea-Land Serv., Inc.,
    939 F. Supp. 129 (D.P.R. 1996)...............................................................8

Johnson & Johnson v. Coopervision, Inc.,
    720 F. Supp. 1116 (D. Del. 1989)............................................................9

McKart v. U.S.,
    395 U.S. 185 (1969)................................................................................16

Meyer Mfg. Co. Ltd. v. Cuisine-Ware, Inc.,
    1987 U.S. Dist. LEXIS 209 (N.D. Ill. Jan. 13, 1987) .............................17

Northrop Corp. v. McDonnell Douglas Corp.,
    705 F.2d 1030 (9th Cir. 1983) ...............................................................10

065500.1001

Provident Tradesmens Bank & Trust Co. v. Patterson,
    390 U.S. 102 (1968) ......................................................................................................9

The Torrington Co. v. Yost,
    139 F.R.D. 91 (D.S.C. 1991) ......................................................................................10

U.S. Aircraft Ins. Group v. Dwiggins, L.L.C.,
    2004 U.S. Dist. LEXIS 266 (D. Del. Jan. 5, 2004) ....................................................3

## STATE CASE

Henry George School of Soc. Science v. San Diego Unified Sch. Dist.,
    183 Cal. App. 2d 82 (Cal. App. 1960) .......................................................................16

## FEDERAL STATUTES

28 U.S.C. § 2201 .............................................................................................................11, 16

28 U.S.C. § 2202 ....................................................................................................................16

## STATE STATUTES

10 Del. C. § 6511 ....................................................................................................................13

Cal. Gov't Code § 11523 .........................................................................................................16

Cal. Health & Safety Code § 25187(d) ...................................................................................16

Cal. Health & Safety Code § 25187(i) .....................................................................................16

## OTHER AUTHORITY

Fed. R. Civ. P. 19 ............................................................................................................ Passim

065500.1001

## INTRODUCTION AND SUMMARY OF ARGUMENT

The critical issue to be decided in this action is whether the City's July 26, 2006 order ("the Order") constitutes a "directive or order" sufficient to trigger Alcoa's duty to indemnify and defend Century for environmental cleanup costs incurred in relation to the Vernon Facility. The critical issue to be decided for purposes of this motion is whether the City is necessary and indispensable to that determination.

Alcoa contends that the City need not be joined because this case "hinges entirely on contractual indemnification." Answering Brief at 1. But Alcoa ignores the relevant contract language that, to the extent Alcoa disputes its indemnity obligation, makes the City necessary and indispensable to this dispute. In the Acquisition Agreement, Alcoa promises to "indemnify, defend and hold [Century] harmless from and against any and all Environmental Liabilities." Acquisition Agreement between Alcoa and Century Aluminum Co., Section 10.03(a) ("Acquisition Agreement") (Ex. B).[1] The Acquisition Agreement defines "Environmental Liabilities" as "all Losses…incurred or required to be paid as a result of or arising out of (i) Hazardous Substances that are or were at, upon, in or under the [Vernon Facility] prior to the Closing due to the actions or inactions of [Alcoa]…the Cleanup of which…is *required by a directive or order of a governmental agency*." Id. at Section 10.01(e)(i) (emphasis added).

Thus, per the plain terms of the Acquisition Agreement, the issue of *who* must provide indemnification in this action is intertwined with the question of whether a governmental agency (in this instance, the City) has issued an "order or directive" requiring the cleanup of hazardous substances at the Vernon Facility. Because Alcoa appears to dispute the fact that the City has issued an "order or directive" triggering cleanup costs at the site, the Court will be asked to make

---

[1]    Unless otherwise indicated, all references to exhibits are to those exhibits attached to the Declaration of Christine F. Roussel, filed contemporaneously with Century Aluminum Company's Opening Brief.

rulings on the existence and scope of the City's Order, determinations that necessarily implicate the City's actions and authority regarding its Order and the cleanup.

Alcoa also argues that the City's "no further action letters" (or "NFAs") addressing Alcoa's prior remedial work at the Vernon site prove that it has no further responsibility at the site. Explicit re-opener language in the NFAs and the City's Order, however, refute Alcoa's contention. Nonetheless, Alcoa has asked this Court to rule on the legal effect of the NFAs and the City's Order on Alcoa's and Century's respective rights and duties. We respectfully submit that the City has an interest in how this Court interprets the City's actions concerning the NFAs, its Order, and site remediation.

Moreover, Alcoa's brief illustrates that the question of "who pays" is driven, at least in Alcoa's view, by how the cleanup costs are characterized: namely, as non-environmental development costs or as environmental costs. Alcoa's complaint, therefore, puts the City's actions as both a regulator and a developer at issue. Alcoa has essentially asked this Court to rule that the City is *not* properly exercising environmental enforcement powers, but instead is no more than a private party developer, and that therefore Alcoa is somehow excused from responsibility at the Vernon site.

Simply put, Alcoa's action puts the City's prior and current decisions and actions on trial. Pursuant to controlling precedents of this Court, the City is therefore a necessary and indispensable party. Because, as Alcoa concedes, the City cannot be joined, this action must be dismissed.

## ARGUMENT

As set forth in Century's Opening Brief, under Federal Rule of Civil Procedure 19 ("Rule 19"), the Court applies a two-part test to determine whether the City is an indispensable party. First, the Court must determine whether the City is a necessary party. A party is deemed

necessary when (1) in the person's absence complete relief cannot be accorded among those already parties; or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may impede the person's ability to protect that interest, or leave any of the persons already parties subject to substantial risk of incurring inconsistent obligations by reason of the claimed interest.[2] Fed. R. Civ. P. 19(a).

Second, if joinder is not feasible (and Alcoa plainly concedes that it is not),[3] the Court must determine whether the party is indispensable under Rule 19(b). The four factors to consider under Rule 19(b) include: (1) the extent to which a judgment rendered in the person's absence might be prejudicial to the person or those already parties; (2) the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudices can be lessened or avoided; (3) whether a judgment rendered in the person's absence will be adequate; and (4) whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder. Fed. R. Civ. P. 19(b).

## A.    Alcoa Ignores Issues Central To The Rule 19 Analysis

Alcoa's brief ignores issues that are central to the Rule 19 indispensability determination. These omissions are discussed below.

First, Alcoa cites to no Third Circuit or District of Delaware case law in support of *any* of its arguments.[4] Alcoa provides no controlling authority in support of its contentions because it

---

[2]    In fact, Alcoa admits that the parties to this action will be subject to inconsistent obligations if the City is not joined, stating "[t]he judgment of this Court will have no effect on the City's authority to order more or different clean-up activities....Before, during, and even after judgment is entered in this case, the City can pursue whomever it wants for any remediation that needs to occur at the Vernon Facility site." Answering Brief at 12-13. This is exactly Century's point. Failure to join the City will subject the parties to multiple and potentially inconsistent obligations because the City can, and likely will, take further California-based actions respecting the Vernon Facility, which will implicate the parties in this action.

[3]    Alcoa concedes that joinder is not feasible. See Answering Brief at 6 ("Because the City is not subject to service in this case, Rule 19(b) becomes relevant").

[4]    Alcoa does cite to one District of Delaware case, U.S. Aircraft Ins. Group v. Dwiggins, L.L.C.,

3

cannot. Acierno is the controlling case law in the District of Delaware on the indispensability of a government body, and that case dictates the outcome in this case. See Acierno v. Preit-Rubin Inc., 199 F.R.D. 157, 164 (D. Del. 2001). Under Acierno, Century prevails on this motion.

Second, Alcoa argues that this dispute "hinges entirely on contractual indemnification," Answering Brief at 1, but remarkably fails to cite or address the key indemnity language in the Acquisition Agreement. As stated above, under that Agreement, Alcoa promises to "indemnify, defend and hold [Century] harmless from and against any and all Environmental Liabilities." Acquisition Agreement, Section 10.03(a) (Ex. B). "Environmental Liabilities" are defined as "all Losses…incurred or required to be paid as a result of or arising out of (i) Hazardous Substances that are or were at, upon, in or under the [Vernon Facility] prior to the Closing due to the actions or inactions of [Alcoa]… *the Cleanup of which…is required by a directive or order of a governmental agency.*" Id. at Section 10.01(e)(i) (emphasis added) (Ex. B). By the plain terms of this contract provision, Alcoa's indemnity obligations *turn on the actions of the City.* Yet Alcoa ignores it.

Third, Alcoa contends that "[t]he City has not issued *any* official order to Alcoa….[and] [a]s such Alcoa is not seeking through this action to 'overturn' any order." Answering Brief at 9 (emphasis in original). Alcoa misses the point. The Order triggers cleanup costs for which Century is alleged to be responsible, and therefore triggers Alcoa's indemnity obligation to Century under Section 10.03(a) of the Acquisition Agreement.[5] That Order states:

> Because [the current owner] is vacating the [Vernon Facility] and there is

---

2004 U.S. Dist. LEXIS 266, at *9 (D. Del. Jan. 5, 2004), as authority for the undisputed procedural two-part test under Rule 19.

[5]    Nothing in Section 10.01(e)(i) suggests that Alcoa's indemnity obligation is limited to "directives or orders" directed to Alcoa; indeed, such a reading would eviscerate the broad scope of the indemnity, which is designed to protect Century against any environmental liabilities associated with remedial actions mandated by a governmental directive or order. See Acquisition Agreement, Section 10.01(e)(i) (Ex. B).

4

> documentation of contamination at the site, we are sending you this letter
> as an ***official notice, ordering*** [current owner] to perform the following
> actions relative to the property at 3200 Fruitland Avenue, Vernon:
>
> - Adequately remove any hazardous material
> - Adequately remove any hazardous material residue
> - Properly remedy any hazardous material contamination from the
>   subsurface structures, soil, or ground water at the site
> - Properly dispose of any hazardous waste generated by the clean-
>   up, demolition or site remediation.

See Order (emphasis added) (Ex. I).  Not only does the Order trigger Alcoa's contractual

indemnity to Century, to the extent Century is liable to the existing facility owner,

Alcan/Pechiney, it also explicitly qualifies the City's prior closure letters relating to the Vernon

Facility, including the City's prior NFAs (upon which Alcoa relies as a defense to liability).

Notably, the Order further provides:

> Compliance with this order will bring Pechiney into accord with the Code
> of the City of Vernon, Section 13.67....[C]ompliance with...Section
> 13.67...is required, *irrespective of any previous closure letters issued with
> respect to this property, to the extent that subsequently discovered
> information (as is the case here) affects any prior closure decision.*

Id. (emphasis added).  In all events, the point here is that the City's Order is central to Alcoa's

indemnity obligation to Century, and Alcoa can only argue around its indemnity obligation by

collaterally attacking the City's Order.  By doing so, Alcoa will force the Court to evaluate and

make rulings with respect to the City's Order.  Under Acierno, the City is therefore an

indispensable party.  199 F.R.D. at 163.

Finally, Alcoa contends that this dispute centers around the issue of "contractual

indemnification" but fails to acknowledge that there are *two other* contracts at issue here besides

the Acquisition Agreement, and all three contracts in combination are central to the City's

indispensability to this action.  The Vernon Facility ownership sequence is as follows: (1) Alcoa

(1930s-1998);  (2) Century (seven months during 1998-1999); (3) Pechiney/Alcan (1999-

2006/2007);  and (4) the City (approx. 2007).  In the 1999 Vernon Indemnification Agreement,

5

065500.1001

Century agreed to indemnify Pechiney with respect to historic environmental liabilities to the same extent that Alcoa agreed to indemnify Century less than one year earlier in 1998; therefore, the back-to-back indemnity provisions are substantially identical and are implicated by the City's Order to the same degree. See Vernon Indemnification Agreement between Century Aluminum Company and Pechiney Rolled Products, LLC, Section 1.2, dated Sept. 20, 1999 (Ex. E). Additionally, Alcoa disregards the 2006 purchase agreement between Pechiney and the City, in which Pechiney promises to decommission the Vernon Facility and perform remediation to the City's satisfaction and standards. See Purchase Agreement (Ex. F); Addendum to Pechiney/Vernon Sales Agreement, Sections 26.7(a)-(c), dated March 20, 2006 (Ex. G). By ignoring the 2006 purchase agreement, Alcoa ignores the City's potential interests in this action as a third-party purchaser of the Vernon Facility, even though those interests are central to the Rule 19 analysis. See Fed. R. Civ. P. 19; see also Acierno, 199 F.R.D. at 163 (holding "disposition in this action could also impair the County's interests as a practical matter").

   In summary, Alcoa's Answering Brief fails to address the issues and facts that compel a finding that the City is necessary and indispensable to this action.

### B.    Century Has Met Its Burden To Establish That The City Is A Necessary And Indispensable Party

   Throughout its Answering Brief, Alcoa repeatedly states that this action is about *who must pay* for any required remediation, even though the remediation plan has yet to be developed and the extent of remediation is presently unknown. See, e.g., Answering Brief at 9. But Alcoa appears not to understand that the issue of *who* must pay is determined, as between Alcoa, Century and Pechiney, by the City's Order and the City-mandated cleanup levels presently under development. Century contends that the City's Order triggers Alcoa's indemnity obligation. Alcoa disputes this point – presumably under the theory that the Order is not a "directive or

6

order," notwithstanding that it is an order. Again, therefore, the Court will have to decide the following issues *before* it can rule on the parties' respective obligations: (i) is the Order in fact an "order or directive"?; (ii) does the City have authority to issue such an Order?; (iii) what is the scope of the Order?; and (iv) is the Order valid? Because the Court will inevitably have to review the City's actions in order to resolve this dispute, the City is a necessary and indispensable party. Acierno, 199 F.R.D. at 163.

### 1.    The City is a Necessary Party Under *Acierno*

Alcoa contends that the Acierno decision is "clearly distinguishable" from this dispute because in Acierno "the plaintiff was asking the Court to take action that directly implicated the ability of a governmental body to perform its duties." Answering Brief at 8. Yet this is *exactly* what Alcoa has asked this Court to do. On July 26, 2006, the City of Vernon expressly invoked its authority under the Vernon Ordinance and issued the Order requiring Pechiney to perform certain cleanup activities at the Vernon Facility. See Order (Ex. I). Notwithstanding this Order, Alcoa (1) seeks a declaration that it has no duty to indemnify Century because the proposed development is not "required by directives and/or orders" issued by the City, Complaint at ¶¶ 34-36; and (2) openly challenges the mere existence of the Order by stating that "[t]he City has not issued *any* Order." Answering Brief at 9. Alcoa cannot seriously contend that its allegations do not "directly implicate" the City's actions in issuing the Order (and its authority to issue such an Order in the first instance). They plainly do.

Alcoa makes further attempts to distinguish Acierno, alleging that in that case "plaintiffs wanted the Court to effectively adopt a new land development plan *without the county's input*." Id. at 8 (emphasis added). Alcoa's endeavor to distinguish Acierno on such grounds is unconvincing, given that a ruling in Alcoa's favor would require this Court to effectively

7

overrule the City's Order *without any input from the City.*

Contrary to Alcoa's assertions, this case is *exactly* like Acierno.[6] In Acierno, the parties disputed the *effect* of the County's decision to exclude Acierno's property from a traffic impact study ("TIS"). Acierno, 199 F.R.D. at 161. The plaintiff, in that case, alleged that defendant's misrepresentations caused the County to reverse its decision to include the plaintiff's property in the TIS. Id. Defendant argued that the County was necessary and indispensable to the suit because plaintiff's allegations were, in effect, a "collateral challenge to the County's approval" of the proposed land development, and therefore the court's judgment could impair the County's interests as a practical matter. Id. at 162. The court agreed, holding that "because the court would have to review the County's actions in order to fashion a remedy, the County is a necessary and indispensable party." Id. at 163. See also Estrada v. Sea-Land Serv., Inc., 939 F. Supp. 129, 133 (D.P.R. 1996) (finding Puerto Rico Port Authority to be an indispensable party because "this Court would undoubtedly have to examine PRPA's actions in order to render a judgment...since it was PRPA who banned plaintiff from piloting defendants' vessels").

---

[6] Alcoa argues that Acierno is distinguishable because in that case "plaintiff effectively [sought] injunctive relief against the government. Here, Alcoa does not seek an order which would stop the City from doing anything." Answering Brief at 8, n.3. Alcoa's assertion is misguided. First, Alcoa confuses the *relief* sought by the plaintiffs in Acierno (injunctive relief and damages) with the *effect* on the County if not joined. In Acierno, plaintiff sought injunctive relief directing that all construction at the relevant development site be declared illegal. Acierno, 199 F.R.D. 157. The court declined to issue such an injunction, reasoning that "[t]his relief would have the effect of overruling the County's [prior] approval of Christiana, Phase I's development. Thus because the court would have to review the County's actions in order to fashion a remedy, the County is necessary and indispensable." Id. at 163. Similarly, in order to grant Alcoa its requested relief, *i.e.,* a declaration that Alcoa owes no indemnity obligation to Century, the Court would necessarily have to review the City's actions in the context of the "triggering" Order. Finally, contrary to Alcoa's assertion that it does not seek to "stop the City from doing anything," Alcoa's request for relief would, among other things, directly or indirectly impede the City's enforcement of its Order, (*e.g.,* how can the City enforce an order that is deemed by a Delaware federal court not to be an order?).

Here, the parties also disagree as to the *effect* of the City's Order on Alcoa's

indemnification obligations.  Century contends that the City's Order triggers Alcoa's duty to

indemnify Century per the explicit terms of Sections 10.01(e)(i) and 10.03(a) of the 1998

Acquisition Agreement.  See Acquisition Agreement, Sections 10.01(e)(i), 10.03(a) (Ex. B).

Alcoa disagrees and, in fact, denies that any such Order exists.  See Answering Brief at 9.

Alcoa's contention that no such Order exists is undoubtedly "a collateral challenge" to the City's

Order and its authority to issue such an Order at all, and on this basis alone the City is a

necessary and indispensable party.  Because the Order is the very mechanism that triggers

Alcoa's indemnity obligations, Alcoa's assertion that no such order exists puts the Order, and

therefore the City, at the very heart of this dispute.

### 2.    The City Has a Central Role in this Contract Dispute

Alcoa styles this action as a dispute regarding contractual indemnification and contends

that "the only necessary parties to the adjudication of rights and obligations under contracts are

*the parties to the contract themselves.*"  Answering Brief at 9 (emphasis in original).  Once

again, Alcoa's argument misses the mark.  First, even if Alcoa's contention were accurate (and it

is not), there are actually three contracts at issue here.  The City is a party to one of these

contracts and is an integral – indeed pivotal –  factor in understanding the parties' respective

obligations under all three contracts.

Second, determining whether a party is indispensable under Rule 19 is "a fact-specific,

flexible analysis," Johnson & Johnson v. Coopervision, Inc., 720 F. Supp. 1116, 1121 (D. Del.

1989) (citing Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 118 (1968)),

and thus it cannot be said that the only necessary parties to every contract dispute are the

contracting parties.  See Johnson & Johnson, 720 F. Supp. at 1128 (holding that a subsidiary of

9

plaintiff that was not a party to the contract at issue was nevertheless indispensable to breach of contract dispute); see also The Torrington Co. v. Yost, 139 F.R.D. 91, 93-94 (D.S.C. 1991) (finding defendant's current employer to be indispensable to a contract-based trade secret dispute between defendant and his former employer). The facts of each case must be independently considered, and the facts of this case compel a finding that the City is a necessary party. And, even if the Acquisition Agreement were the only contract at issue in this dispute (obviously it is not), the very language of that contract makes the City, and its Order, central to this dispute. See Acquisition Agreement, Section 10.01(e)(i) (Ex. B).

Furthermore, the case law from other jurisdictions cited by Alcoa is inapposite (and is not binding on this Court). For example, Northrop Corp. v. McDonnell Douglas Corp., 705 F.2d 1030 (9th Cir. 1983), was primarily an unfair competition dispute between two aircraft manufacturers who each alleged that the other was interfering with their business with the government. The United States government was not a party to any of the contracts at issue in that dispute and had "meticulously observed a neutral and disinterested posture." Id. at 1043-44. Additionally, the Court found that the government was not a necessary party because the party requesting joinder "[did] not directly contend that the Government's absence would preclude the district court from being able to fashion meaningful relief as between the parties." Id. at 1043. Here, the City is a party to one of the contracts at issue in this dispute and the City's actions govern every aspect of this dispute, including contract obligations and whether cleanup is required and to what extent. For example, the City (1) issued and then, via its Order, superseded the September 2, 1999 NFA letter (the "NFA Letter") which Alcoa contends absolves it of any further remediation obligations; (2) issued the Order that explicitly triggers Alcoa's indemnification obligations under the Acquisition Agreement; and (3) entered into a contract

with Pechiney to purchase the Vernon Facility upon completion of cleanup to yet-to-be-determined City standards.  Most importantly, unlike the party seeking joinder in <u>Northrop</u>, Century has consistently argued, and has amply shown, that the City's absence *will* preclude this Court from fashioning meaningful relief among the parties.[7]

Finally, Alcoa contends that it need not join the City to this action because it cannot assert any "cause of action" against the City, and therefore could not have named the City in its Complaint.[8]  Answering Brief, at 10.  But there is nothing in Rule 19, or in the federal Declaratory Judgment Act or any cases for that matter, to suggest that joinder in a federal Declaratory Judgment Act case depends upon contractual privity of all interested parties.[9]  <u>See Equal Employment Opp. Comm'n v. Peabody W. Coal Co.</u>, 400 F.3d 774, 781 (9th Cir. 2005) (holding in a declaratory relief case that "a plaintiff's inability to state a direct cause of action

---

[7]    Alcoa also cites to several other (non-binding) cases, each of which is readily distinguishable from Alcoa's action.  For example, in <u>Coastal Modular Corp. v. Laminators, Inc.</u>, 635 F.2d 1102, 1108, n. 3 (4th Cir. 1980), the court held that the Navy was not a necessary party because the moving party was not likely to be subject to inconsistent obligations, and the Navy and plaintiff had agreed that plaintiff would litigate the matter and thus "Navy's interests were being effectively protected by [plaintiff]."  The same cannot be said for the City in this action.

[8]    Alcoa's legal support is again off the mark.  For example, <u>D'Imperio v. U.S.</u>, 575 F. Supp. 248 (D.N.J. 1983), had nothing to do with Rule 19, but rather centered around whether plaintiff's declaratory judgment action against the EPA was ripe.  The court held that the matter was not ripe because the EPA had only effectuated a "preliminary" agency action, rather than a final (and hence reviewable) agency action.  <u>Id.</u> at 252.  In contrast, the City of Vernon has issued a final Order to Pechiney, requiring that certain environmental cleanup actions be taken, and that Order triggers Alcoa's indemnification duties.

[9]    Alcoa's assertion that it lacks a viable cause of action against the City under a contract or an order is nothing more than an attempt to distract the Court.  No such cause of action is required to join a party to a federal declaratory judgment action.  It is enough if Alcoa can assert "a case of actual controversy" within the jurisdiction of the federal court.  28 U.S.C. § 2201(a);  <u>Bell Atl. Corp. v. MFS Commc'ns Co.</u>, 901 F. Supp. 835, 842 (D. Del. 1995).  Moreover, the federal Declaratory Judgment Act ("DJA") permits suit against a municipal corporation when it is an interested party in the interpretation of a contract.  <u>See Chrysler Corp. v. Ford Motor Co.</u>, 972 F. Supp. 1097, 1099-1100 (E.D. Mich. 1997) (Chrysler declaratory action contesting existence of successor liability based on acquisition agreement against consent decree parties, including Ypsilanti Township); <u>AT&T Communications-East, Inc. v. BNSF Ry. Co.</u>, 2006 U.S. Dist. LEXIS 85781, *3-7, 20-24 (D. Or. 2006) (declaratory action to determine AT&T's liability under contract includes transit district despite fact that district was not party to contract).  Indeed, the City is a party to its purchase agreement with Pechiney and shall establish cleanup levels, and has a clear interest in the interpretation of the other contracts at issue here.

against an absentee does not prevent the absentee's joinder under Rule 19"); Beverly Hills Fed.

Sav. & Loan Ass'n v. Webb, 406 F.2d 1275, 1279 (9th Cir. 1969) (stating a party may be joined

under Rule 19(b) for "the sole purpose of making it possible to accord complete relief between

those who are already parties, *even though no present party asserts a grievance against such*

*person*") (emphasis added).  Under Rule 19(a) it is sufficient if complete relief cannot be

accorded in the person's absence or the person claims an interest relating to the subject of the

action.  See Fed. R. Civ. P. 19; see also Acierno, 199 F.R.D. at 163 (finding County to be

necessary party because complete relief could not be accorded in its absence and disposition in

its absence "could…impair [its] interests as a practical matter").

### 3.    Alcoa's Assertions Reinforce the City's Indispensability to this Action

Several of Alcoa's own arguments reinforce why the City is necessary and indispensable

to this dispute.  Alcoa contends as follows:

> The City has not issued *any* official order to Alcoa.  As such, Alcoa is
> not seeking through this action to "overturn" any order.  Further, Alcoa's
> Complaint does call into question the City's municipal ordinances, as
> Century suggests.  To the extent Alcoa will cite NFA ("No Further
> Action") orders in this case,[10] it will be to show that Alcoa complied
> with its *contractual* duties to *Century.* . . .As was emphasized before, this
> action is about *who* must pay for the current remediation activities, not
> *whether* anyone will.

Answering Brief at 9 (emphasis in original).

First, Alcoa's statement that "[t]he City has not issued *any* official order" hits dead-center

on the main reason why the City is necessary and indispensable to this action.  Id.  Century

contends that the City has issued an official order which triggers Alcoa's indemnification and

defense obligations under the Acquisition Agreement, and the facts support Century's

---

[10]    In the very same breath, Alcoa argues that "the City has not issued *any* official order to Alcoa"
and then relies on City-issued "NFA orders" to argue that it has fulfilled its duties to Century.  See
Answering Brief at 9.  Alcoa simply cannot have it both ways.

contention. See 1998 Acquisition Agreement, Section 10.01(e)(i) (Ex. B); see also Order (Ex. I). Despite the evidence to the contrary, Alcoa argues that no such order has been issued. See Complaint at ¶¶ 34-36; see also Answering Brief at 9. Alcoa's assertions directly call into question the validity – indeed even the very existence – of the "triggering" Order, and thus will require this Court to answer a variety of questions regarding the Order before it can begin to define the City's cleanup levels and cleanup costs, and allocate remediation costs among the parties. Thus, despite its contentions to the contrary, Alcoa's *own words* show that the Order is central to this dispute and that the City must be joined.

Alcoa next asserts that its "Complaint *does* call into question the City's municipal ordinances, as Century suggests." Answering Brief at 9 (emphasis added). Century agrees. Here, Alcoa directly challenges the City's authority to act pursuant to its own Ordinance. Alcoa also indirectly does so by contending that the City's Order – issued pursuant to the Vernon Ordinance – is not an order and by questioning the manner in which the City seeks cleanup of the Vernon Facility. This Court's binding precedent therefore requires that the City be joined to this action. See Acierno, 199 F.R.D. at 160-63. Additionally, Delaware statutory law requires that "in any [declaratory relief] proceeding which involves the validity of a [Delaware] municipal ordinance...such municipality shall be made a party, and shall be entitled to be heard." 10 Del. C. § 6511. This requirement is persuasive and should also extend to out-of-state municipalities, especially where, as is the case here, a municipal ordinance is overtly being "call[ed] into question." See Answering Brief at 9.

Alcoa next states that "[t]o the extent Alcoa will cite NFA ("No Further Action") orders in this case, it will be to show that Alcoa complied with its *contractual* duties to *Century*." Answering Brief at 9 (emphasis in original). But this is yet another reason why the City is

13

necessary and indispensable to this dispute. Any assessment of whether Alcoa has fulfilled its

contractual remediation obligations under Section 10.03(c) of the 1998 Acquisition Agreement –

by virtue of Alcoa's allegations – involves an evaluation of the scope and meaning of the NFA

Letter, the City's intent in issuing the Letter, and whether later orders or directives (*i.e.*, the

Order) modified the NFA Letter.

Moreover, Alcoa's statement that the NFA Letter evinces its "compliance" with its duties

to Century is simply not true:

- First, to the extent the NFA Letter relieves Alcoa of any duties to Century (and Century expressly rejects any such contention), that letter would only address certain *remediation* obligations listed in Section 10.03(c), and in no sense relieves Alcoa of its continuing obligations at the site, nor its *indemnification* obligations under Section 10.03(a). See Acquisition Agreement (Ex. B).

- Second, the content of the NFA Letter is clear that the City's determination that no further action was required at that time did not extend to all of Alcoa's future remediation obligations. Per the terms of the Acquisition Agreement, Alcoa agreed to remediate Stoddard solvent system contamination at the Vernon Facility to the levels required to obtain a "no further action" letter. See Acquisition Agreement, Section 10.03(c)(1) (Ex. B). The NFA Letter states that the City "will continue to monitor Alcoa's acknowledgment of its *continuing responsibilities* regarding the Stoddard Solvent issues" (emphasis added). See NFA Letter (Ex. C). Thus, as the letter specifically indicates, Alcoa's obligations respecting Stoddard solvent contamination were not extinguished.[11]

---

[11]     While Alcoa at times seems to be styling this action as a dispute over remediation of Stoddard solvents, the focus of *this* motion is the City's indispensability to this Delaware-based action. For now, Century simply wishes to correct Alcoa's misstatements regarding its continuing duty to cleanup Stoddard solvents. First, Alcoa alleges that it is no longer obligated to remediate Stoddard solvents because those costs relate to a "change in use" of the Facility that "was not contemplated by Alcoa's contract with Century." Answering Brief at 9. Yet nothing in the Acquisition Agreement conditions Alcoa's obligations to Century on a continued use of the Vernon Facility as a cast plate facility. To the contrary, Century only warranted that, at the time of contracting with Alcoa, Century had "no commitment or present intention to liquidate…or otherwise discontinue operation of the Cast Plate Business." Acquisition Agreement, § 5.04 (Ex. B). In no sense does Pechiney's decision to close the facility and sell it to the City extinguish Alcoa's continuing obligation to indemnify Century against liabilities associated with the Stoddard issue. Second, Alcoa contends that the City's July 18, 2006 letter regarding Stoddard solvent cleanup is proof that "the Stoddard issue was adequately addressed." See Answering Brief at 4. But the opposite is true. In that letter the City states that, due to the pending closure of the Vernon Facility and "plans for removal of equipment and structures that lie over the remaining contamination….the conditions which limit physical removal of the [Stoddard solvent] contamination will soon no longer exist," and therefore Alcoa must "submit…a plan for active remediation of the Stoddard solvent contamination." Letter from City of Vernon Environmental Health

- Finally, "subsequent information" has caused the City to modify its NFA Letter. In the NFA Letter, the City expressly qualified its finding that no further environment assessment or remedial action was required at that time, stating that "[f]urther review or determinations may be necessary if subsequent information, which significantly affects any decision, is found." See NFA Letter (Ex. C). The City's July 26, 2006 Order leaves no doubt that subsequently discovered information indeed caused the City to reconsider its earlier NFA Letter. See Order ("[C]ompliance. . .is required, *irrespective of any previous closure letters* issued with respect to this property, *to the extent that subsequently discovered information (as is the case here)* affects any prior closure decision") (emphasis added) (Ex. I).

*Id.* And yet, despite this evidence to the contrary, Alcoa contends that the NFA Letter somehow "show[s] that Alcoa complied with its *contractual* duties to Century." Answering Brief at 9. Because the legal significance of the NFA Letter is in question, this Court will have to address at least the following issues: (i) the City's intent in issuing the NFA Letter; (ii) the scope and meaning of the NFA Letter with respect to any potential release of Alcoa's contractual liabilities; and (iii) the impact of the subsequently issued Order on the NFA Letter, in general, and on Alcoa's obligations to Century in particular.

### 4.    The City's Interests as a Private Party Purchaser Must Also Be Considered Under Rule 19

Alcoa argues that what is at issue here is "*who must pay* for…remediation for the new use that was not contemplated by Alcoa's contract with Century." Answering Brief at 9 (emphasis in original). As an initial matter, Alcoa mischaracterizes the nature of the remediation ordered by the City. The City's Order calls for remediation and removal of hazardous substances "[b]ecause Pechiney is vacating the subject property and there is documentation of contamination at the site" and not because of any planned development activities. See Order (Ex. I).

Furthermore, Alcoa fails to understand how its very position on this issue, (*i.e.*, that the dispute is one over the costs of remediation resulting from development activities rather than environmental cleanup requirements), directly implicates the City's interests. The City is both

---

Department to Jamie MacKay, dated July 18, 2006 (attached as Ex. 9 to Alcoa's Answering Brief).

the purchaser of the Vernon Facility and the regulatory body authorized by California law to oversee its environmental cleanup, and has mandated cleanup of the Vernon Facility both in the context of its Order and its 2006 purchase agreement with Pechiney. See Addendum to Pechiney/Vernon Sales Agreement, Sections 26.7(a)-(c) (Ex. G). Thus, the Court will have to assess the City's authority to require cleanup, the extent of the cleanup, as well as the City's interests as a private party purchaser. In essence, the Court will have to determine which "hat" the City was wearing when it demanded that Pechiney remediate the Vernon Facility and whether such costs are recoverable. Yet the party most essential to these determinations, namely the City, is not a party to this dispute and therefore cannot litigate these issues or vindicate its actions.

5.    **Exhaustion of State Law Administrative Process is Not Required and Would Not Alter the Need to Join the City to this Federal Action**

Alcoa argues that it must exhaust state law administrative remedies under the California Administrative Procedure Act prior to naming the City as a party to this federal action, and that therefore the City cannot be joined. Even if state law exhaustion were required to frame a federal action (which it is not),[12] Alcoa's alleged failure to exhaust its administrative remedies under California law would not eliminate the need to join the City to this action. If anything,

---

[12]    Alcoa argues the City cannot be joined to a declaratory judgment action unless Alcoa first exhausts state administrative remedies under the California Administrative Procedure Act. This simply is not so. First, the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, does not require exhaustion of *state* administrative remedies, nor do any of the contracts at issue in this action. Second, the City's Order is final, and thus exhaustion of administrative remedies is not required. See McKart v. U.S., 395 U.S. 185, 194 (1969). Third, although the Order triggers Alcoa's duties to Century under the 1998 Acquisition Agreement, Alcoa cannot challenge the City's Order because *it was issued to Pechiney*, and thus only the consequences of the Order affect Alcoa. See Cal. Health & Safety Code § 25187(d) (only party served with order can request hearing). Finally, the authority Alcoa cites is inapposite. Judicial review of the City's Order falls under Cal. Gov't Code § 11523, rather than § 11350. See Cal. Health & Safety Code § 25187(i). Moreover, Henry George School of Soc. Science v. San Diego Unified Sch. Dist., 183 Cal. App. 2d 82, 86-87 (Cal. App. 1960), concerns state (not federal) declaratory relief and does not apply the doctrine of exhaustion of administrative remedies.

federal courts are less likely to exercise their discretion to grant federal declaratory relief when interested parties (even parties that are not *per se* "indispensable") have not been joined. See, e.g., Delpro Co. v. Nat'l Mediation Bd. of the U.S.A., 509 F. Supp. 468, 476 (D. Del. 1981) ("A court may in its discretion decline to grant declaratory relief because of the non-joinder of an interested party, regardless of whether the absent party is indispensable within the meaning of Rule 19(b)"); see also Meyer Mfg. Co. Ltd. v. Cuisine-Ware, Inc., 1987 U.S. Dist. LEXIS 209, *3 (N.D. Ill., Jan. 13, 1987) (same); Baliles v. Donovan, 549 F. Supp. 661, 668, n.6 (W.D. Va. 1982) ("Courts may even refuse declaratory relief for the nonjoinder of interested parties who are not, technically speaking, indispensable") (quoting Abbott Labs. v. Gardner, 387 U.S. 136, 155 (1967)). Thus, the very nature of this action and the multi-faceted role of the City make the City all the more critical to this dispute.

### C.    Alcoa's Action Must Be Dismissed Because Joinder Is Not Feasible, And The City Is An Indispensable Party

Because the City is a necessary party and joinder is not feasible, the Court must determine if the City is indispensable under Rule 19(b). This Court's precedent in Acierno demonstrates that the City is indispensable to this action, and therefore Alcoa's suit must be dismissed.

### 1.    The Parties Will be Prejudiced By a Judgment Rendered in the City's Absence

Alcoa contends that the City will not be prejudiced in the absence of joinder because "[t]he City cannot alter the parties' respective contractual obligations; hence, its participation is not necessary to complete relief." Answering Brief at 11. Although the City may not be able to alter the parties' contractual obligations, those obligations in large part *turn on the actions of the City*. The City's actions have "triggered" Alcoa's *indemnification* obligations, *i.e.*, the City has issued a "directive or order" mandating cleanup in relation to the Vernon Facility. See

17

Acquisition Agreement, Sections 10.01(e)(i), 10.03(a) (Ex. B). The City's actions will also

define the nature and extent of cleanup at some point in the future and are dispositive of Alcoa's

*remediation* obligations. See Acquisition Agreement at 10.03(c) ("With respect to the remedial

activities set forth in Sections 10.03(c)(1)-(4) and (6), [Alcoa] will remediate to the levels

required by an authorized governmental agency to obtain a 'no further action' statement") (Ex.

B); see also Order (Ex. I). Thus, contrary to Alcoa's assertions, the Court *must* wrestle with the

City's actions prior to declaring the parties respective obligations relative to the Vernon Facility.

Because the City is fundamentally intertwined with the parties contractual indemnity and

remediation duties, the parties *and* the City would be severely prejudiced if the City is not joined

to the action.[13]

## 2. The City Will Be Prejudiced if Not Joined to this Action and Judgment Rendered in Its Absence Would Be Inadequate

Alcoa argues that "[t]his litigation only seeks to resolve which of the private parties will

fund [remediation at the Vernon site]," and therefore the City will not be prejudiced if not joined

and a judgment in its absence will be adequate. Answering Brief at 13. This simply is not so.

The City will most certainly be prejudiced in the absence of joinder because its authority to

regulate hazardous substances, and its actions pursuant to that authority, is being overtly

challenged by Alcoa in this action. Alcoa admits as much when it explicitly states that it is

questioning the City's ordinances. See Answering Brief at 9. Moreover, because the Order *on

its face* triggers Alcoa's indemnity to Century, Alcoa's denial of its indemnity duties is, at once,

a challenge to the scope, legitimacy, efficacy, adequacy, and potential relevancy of the Order.

---

[13]     Century is not arguing that all regulatory bodies will be indispensable parties in all private party
disputes involving indemnity obligations. But where, as here, the parties' respective indemnity
obligations *turn on the actions of the City*, which is a party to one contract, the regulatory authority
establishing cleanup, and the future property owner, then the City is indeed fundamental to any dispute
regarding *who* will bear the costs of the ordered cleanup.

See <u>Acierno</u>, 199 F.R.D. at 163. And, if that is not sufficient cause for prejudice in and of itself, Alcoa's open disavowal of the Order's existence and its validity surely must be. <u>See</u> Answering Brief at 9. Finally, Alcoa's assertion that the NFA Letter evinces its fulfillment of its contractual duties to Century requires that the scope of the NFA Letter be litigated in this action. Surely the City has a right to litigate these issues and adjudicate its own decisions. Because a victory for Alcoa would mean that it prevailed in its attack against the City's Order, in the absence of joinder there is simply no way to lessen the resulting prejudice to the City and no way to style relief so as to be adequate. <u>See</u> <u>Acierno</u>, 199 F.R.D. at 164 ("[A] judgment in the County's absence would not constitute adequate relief since that relief necessarily depends on whether the County will allow further development…or accept a new TIS").

### 3.    Alcoa Will Have a More Than Adequate Remedy if this Action is Dismissed

Alcoa argues that it will not have an adequate remedy if this action is dismissed because it will have "no cause of action in California against the City under any contract." Answering Brief at 13. As has already been discussed, Alcoa need not assert a cause of action against the City to join the City to this dispute. <u>See</u> discussion <u>supra</u> Section B.2. Moreover, Alcoa disproves its own argument: Alcoa has no cause of action against Pechiney under any contract, but that did not stop Alcoa from naming Pechiney as a party to this action. <u>See</u> Complaint. Alcoa further contends that it will not have an adequate remedy because "there are no ripe environmental causes of action against the City by Alcoa." Answering Brief at 13. This argument also must fail. <u>See</u> discussion <u>supra</u> B.5. Alcoa can proceed with its declaratory judgment action in California, where a court would have federal jurisdiction over the City.

## CONCLUSION

For the foregoing reasons, Century respectfully requests that this Court dismiss Plaintiff's Complaint for Declaratory Judgment, without prejudice, based on Plaintiff's failure to join an indispensable party under Federal Rule of Civil Procedure 19.

Respectfully submitted,

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*Christian Douglas Wright*

Christian Douglas Wright (No. 3554)
Mary F. Dugan (No. 4704)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE  19899-0391
(302) 571-6600

*Attorneys for Century Aluminum Company*

OF COUNSEL:

LATHAM & WATKINS LLP
Robert M. Howard
James R. Barrett
Robyn L. Ginsberg
555 Eleventh St., N.W., Suite 1000
Washington, D.C.  20004-1304
(202) 637-2200

Dated:  March 8, 2007

065500.1001

## CERTIFICATE OF SERVICE

I hereby certify that on March 8, 2007, I electronically filed a true and correct copy of

the foregoing document with the Clerk of the Court using CM/ECF, which will send notification

that such filing is available for viewing and downloading to the following counsel of record:

> Allen M. Terrell, Jr., Esquire
> Steven J. Fineman, Esquire
> Richards, Layton & Finger, P.A.
> One Rodney Square
> 920 North King Street
> P.O. Box 551
> Wilmington, DE 19899-0551

> Steven J. Balick, Esquire
> John G. Day, Esquire
> Tiffany Geyer Lydon, Esquire
> Ashby & Geddes
> 222 Delaware Avenue, 17th Floor
> Wilmington, DE 19801

I further certify that on March 8, 2007, I caused a copy of the foregoing document to be

served by hand delivery on the above-listed counsel of record.

> Christian Douglas Wright (No. 3554)
> YOUNG CONAWAY STARGATT
>     & TAYLOR, LLP
> The Brandywine Building
> 1000 West Street, 17th Floor
> Wilmington, DE 19801
> (302) 571-6600
> cwright@ycst.com

> *Attorneys for DefendantCentury Aluminum Company*