IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ALCOA INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 06-451-SLR |
| | ) |
| ALCAN INC., et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM ORDER**

At Wilmington this 2nd day of July, 2007, having considered defendants' motion and the papers submitted in connection therewith;

IT IS ORDERED that defendants' motion to transfer venue and enlarge time to answer or otherwise plead (D.I. 14) is denied, for the reasons that follow:

1. **Introduction.** Plaintiff Alcoa, Inc. ("plaintiff") filed this declaratory judgment action against Alcan, Inc. ("Alcan"), Alcan Rolled Products-Ravenswood LLC ("ARP"), f/k/a Pechiney Rolled Products LLC ("PRP"), Pechiney Cast Plate Inc. ("PCP"), and Century Aluminum Company ("Century") (collectively, "defendants") on July 25, 2006. (D.I. 1) The present case involves a dispute over who is responsible for paying to remedy environmental contamination present at a cast aluminum manufacturing and sales facility in Vernon, California ("the Vernon facility"). Plaintiff seeks a declaratory judgment that it owes no liability to Century or Alcan for the cost to remedy the contamination, and that plaintiff is entitled to indemnification from Century for any such liability. (Id.) Plaintiff also seeks attorney fees. (Id.)

2. **Background**. Plaintiff owned and operated the Vernon facility prior to December 1998. (Id. at ¶ 11) Plaintiff entered into an acquisition agreement with Century ("the acquisition agreement") on December 22, 1998, pursuant to which Century purchased the Vernon facility.[1] (Id. at ¶ 13) The acquisition agreement provided that the Vernon facility was conveyed to Century in "as is" condition, however, plaintiff agreed to perform certain specified remedial actions to the property. (Id. at ¶¶ 16-17; D.I. 26, ex. 1 at 25) Plaintiff agreed to "remediate to the levels required by an authorized governmental agency to obtain a 'no further action' statement" or its equivalent. (D.I. 26, ex. 1 at 25) Plaintiff claims that it completed the remedial tasks and provided to Century documentation of its completion, including a "no further action" letter obtained from the City of Vernon Environmental Health Department ("Vernon EHD") dated September 2, 1999. (D.I. 1 at ¶ 18) The acquisition agreement provides a twelve-year indemnification of Century by plaintiff for environmental liabilities, except as associated with the operation of Century's cast plate business. (D.I. 26, ex. 1 at 24, 26)

3. Century sold the Vernon facility to PRP on July 26, 1999 pursuant to a stock and asset purchase agreement. (D.I. 1 at ¶ 20) Century and PRP entered into a separate indemnification agreement, dated September 20, 1999, which also named PCP, a wholly-owned subsidiary of PRP, as an indemnified party. (Id. at ¶ 21) PCP is incorporated under the laws of the State of Delaware and has its principal place of

---

[1]On June 12, 1998, plaintiff was ordered by the United States District Court for the District of Columbia to divest the Vernon facility in order to maintain competition within the cast aluminum plate market. (D.I. 1 at ¶ 12) Plaintiff was required to sell the Vernon facility to a competitor who had the capability and intent to continue its business in the cast plate market. (Id.)

2

business in California. (Id. at ¶ 4)

4. Alcan subsequently acquired PRP, which is now known as ARP, a wholly-owned subsidiary of Alcan. (Id. at ¶ 22) ARP is incorporated under the laws of the State of Delaware and has its principal place of business in West Virginia. (Id. at ¶ 3) Alcan is a Canadian company with corporate offices in Montreal, Quebec, Canada. (D.I. 13 at 1 & ex. A)

5. In November of 2005, Alcan announced that it was closing the Vernon facility and was in negotiations to sell its equipment and real estate to potential buyers. (D.I. 1 at ¶ 23) According to plaintiff, Alcan and/or its potential buyers intend to conduct demolition, excavation, and construction work on the site and to change its use. (Id. at ¶ 24) Particular environmental pollutants called polychlorinated biphenyls ("PCB"s) have been allegedly detected at the Vernon facility.[2] (Id. at ¶ 26) Century asserted a demand for indemnity pursuant to the Century agreement to plaintiff on May 8, 2006; plaintiff rejected its demand on June 2, 2006 because the proposed development by Alcan is not "required by directives and/or orders of the Vernon [EHD]." (Id. at ¶¶ 27-28, 36)

6. **Standard of review.** Under 28 U.S.C. § 1404(a), a district court may transfer any civil action to any other district where the action might have been brought for the convenience of parties and witnesses and in the interests of justice. Congress intended through § 1404 to place discretion in the district court to adjudicate motions to transfer

---

[2] Alcan has purportedly requested information from Century regarding the source of the PCBs, and has informed it that, as part of any demolition work to take place at the Vernon facility, a work plan for the disposal of waste containing PCBs must be submitted to the United States Environmental Protection Agency. (D.I. 1 at ¶ 26)

3

according to an individualized, case-by-case consideration of convenience and the interests of justice. Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988); Affymetrix, Inc. v. Synteni, Inc., 28 F. Supp. 2d 192, 208 (D. Del. 1998).

7. The burden of establishing the need to transfer rests with the movant "to establish that the balance of convenience of the parties and witnesses strongly favors the defendants." Bergman v. Brainin, 512 F. Supp. 972, 973 (D. Del. 1981) (citing Shulte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970). "Unless the balance is strongly in favor of a transfer, the plaintiff's choice of forum should prevail". ADE Corp. v. KLA-Tencor Corp., 138 F. Supp. 2d 565, 567 (D. Del. 2001); Shutte, 431 F.2d at 25.

8. The deference afforded plaintiff's choice of forum will apply so long as plaintiff has selected the forum for some legitimate reason. C.R. Bard, Inc. v. Guidant Corp., 997 F. Supp. 556, 562 (D. Del. 1998); Cypress Semiconductor Corp. v. Integrated Circuit Systems, Inc., No. Civ. A. 01-199, 2001 WL 1617186 (D. Del. Nov. 28, 2001); Continental Cas. Co. v. American Home Assurance Co., 61 F. Supp. 2d 128, 131 (D. Del. 1999). Although transfer of an action is usually considered as less inconvenient to a plaintiff if the plaintiff has not chosen its "'home turf' or a forum where the alleged wrongful activity occurred, the plaintiff's choice of forum is still of paramount consideration, and the burden remains at all times on the defendants to show that the balance of convenience and the interests of justice weigh strongly in favor of transfer." In re M.L.-Lee Acquisition Fund II, L.P., 816 F. Supp. 973, 976 (D. Del. 1993).

9. The Third Circuit Court of Appeals has indicated that the analysis for transfer is very broad. Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995). Although emphasizing that "there is no definitive formula or list of factors to consider,"

4

id., the Court has identified potential factors it characterized as either private or public interests. The private interests include: "(1) plaintiff's forum preference as manifested in the original choice; (2) defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." Id. (citations omitted).

10. The public interests include: "(1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases." Id. (citations omitted).

11. **Discussion**. Defendants assert that their choice of forum should be given greater deference because plaintiff did not file suit on its "home turf." (D.I. 15 at 5-6) Plaintiff is incorporated under the laws of the Commonwealth of Pennsylvania and has its principal place of business in the State of New York. (D.I. 1 at ¶ 1) Defendants argue that the present dispute arose in California, and litigation in the Central District of California would be more convenient because "[m[ost if not all of the party and non-party witnesses who will testify at trial" reside in that district, which is outside of the subpoena power of this court. (D.I. 15 at 7-11) Defendants state that "none of the relevant documents are located in Delaware." (Id. at 12) Defendants characterize the

5

present action as a "[suit] involving environmental regulation" which should be resolved in the forum closest to those directly impacted by the suit. (Id. at 13) Finally, defendants claim that transfer to the Central District of California "will be more efficient" because cases proceed more quickly in that jurisdiction. (Id. at 15)

12. Plaintiff does not contest that Delaware is not its "home turf," but claims that its choice should nonetheless be afforded deference in view of the following reasons it selected Delaware as the forum: (1) Century, PCP, and ARP are incorporated in Delaware; (2) Delaware law governs the acquisition agreement, which was also entered into in Delaware; (3) Delaware is close in proximity to plaintiff's place of business;[3] and (4) defendants are amenable to jurisdiction in Delaware, "evidenced by their decision to incorporate here." (D.I. 25 at 2, 5-6) Plaintiff characterizes the present dispute as a contract dispute, i.e., a dispute over who has to pay for the necessary clean-up as per the terms of the acquisition agreement – not an environmental case. (Id. at 10) Plaintiff argues that the location of the parties' documents is not compelling because documents will ultimately be copied and mailed. (Id. at 9) Plaintiff urges the court to "ignore the portion of [defendants'] argument based on the location of party witnesses," and consider that defendants did not present sufficient evidence that non-party witnesses would be unwilling to travel to Delaware to testify.[4] (Id. at 8) According to plaintiff,

---

[3] The court notes that in its complaint, plaintiff states that it is incorporated in Pennsylvania and has principal place of business is in the state of New York (D.I. 1 at ¶ 1), yet in its answering brief, plaintiff states that its "principal place of business is in the neighboring state of Pennsylvania" (D.I. 25 at 6).

[4] Defendants provided the declaration of Eileen Burns Lerum, corporate secretary of ARP and PCP, in which Ms. Lerum identified non-party witnesses who, according to Ms. Lerum, would be inconvenienced by venue in Delaware. (D.I. 15, ex. A) With its

6

videotaped deposition testimony of unavailable non-party witnesses could be admitted at trial. (Id. at 8-9)

13. As an initial matter, the court notes that venue is proper in Delaware as three of four defendants are incorporated under the laws of the State of Delaware; Alcan is a Canadian corporation, which does not favor either jurisdiction. Defendants' complaints about litigating here are outweighed by the fact that ARP and PCP, both subsidiaries of Alcan, have enjoyed the benefits and protections of incorporation in Delaware and that the state has an interest in litigation regarding companies incorporated within its jurisdiction.

14. The resolution of this case will turn on the interpretation of the acquisition agreement. (D.I. 26, ex. 1 at 30) This will ultimately involve a comparison of plaintiff's remedial acts at the Vernon facility to its contractual obligations. This court has previously recognized that "in actions seeking insurance coverage for defense and remediation costs arising from environmental damage, factual aspects of the underlying environmental incidents frequently are of considerable or greatest significance in determining whether a pollution exclusion clause or other contract provision precludes coverage." Inter-City Prods. Corp. v. Ins. Co. of North Am., No. Civ. A. 90-717, 1993

---

reply brief, defendants provided three declarations from the following non-party witnesses, each stating that they have personal knowledge of facts related to this litigation, however, due to the nature of their civic duties, are unwilling to travel to Delaware: (1) Leonis C. Malberg, Mayor of the City of Vernon; (2) Lewis J. Pozzebon, Director and Health Officer of the City of Vernon EHD; and (3) Thomas A. Ybarra, Mayor pro tem of the City of Vernon. (D.I. 31, exs. A-C) Defendants have also riled a declaration by Leonard Grossberg, Senior Environmental Health Specialist for the Vernon EHD, stating that he is unwilling to travel to Delaware. (D.I. 40)

WL 18948, *7 (D. Del. Jan. 26, 1993) (citation omitted).[5] This is one factor which weighs in favor of transfer. Notably, however, the acquisition agreement is to be construed in accordance with Delaware law. For obvious reasons, the state has an interest in litigation involving the interpretation of a contract under Delaware law, which weighs against transfer.

15. Defendants originally identified four party witnesses and over a dozen non-party witnesses whom they asserted would be inconvenienced by venue in Delaware; of these non-party witnesses, only four provided affidavits stating that they are unwilling to travel to Delaware for trial. (D.I. 31, exs. A-C) The court does not find that this Jumara factor tips in favor of transfer, as most discovery will be taken in the same fashion regardless of where trial will proceed, and trial testimony is as often comprised of recorded depositions as it is of witnesses appearing live to testify. Moreover, the travel expenses and inconveniences incurred for trial here, by Delaware defendants conducting world-wide business, is not overly burdensome.

16. The court does not find the fact that books and records may reside in California at Century's and PCP's principal places of business carries great weight,

---

[5] In Inter-City, this court granted transfer to the Middle District of Tennessee not solely based on the locus of the pollution but rather, based on several additional factors, including: (1) Delaware was no more convenient to witnesses located in North Carolina, Pennsylvania, California, and London than Tennessee; (2) the "purported significance of [the Pennsylvania and London] witnesses' testimony [was] in substantial doubt"; (3) plaintiff's property and operations were in Tennessee, and defendant had its corporate headquarters in a variety of locations, none of which were in Delaware; and (4) Delaware law was unlikely to control in the action. 1993 WL 18948 at *6-9. Notwithstanding the location of non-party witnesses in California, significant connections to the plaintiff's chosen forum are present in the case at bar which distinguish the present case from Inter-City on its facts.

insofar as defendants have not identified any documents that would be too burdensome to ship to Delaware. Alcan and ARP's documents presumably reside at their principal places of business in Canada and in West Virginia, which does not favor either jurisdiction. Additionally, document production may be in electronic format.

17. Finally, the court affords little weight to defendants' arguments relating to the comparative expeditiousness of the courts in this district, insofar as the median time from filing to disposition for civil cases in both districts differs by only a few months. The court notes as a general matter that the parties, through their conduct in discovery and commitment to streamlining the issues, may greatly influence the relative complexity and length of litigation.

18. Weighing the arguments against the Jumara balancing test, the court finds that the asserted advantages of moving the case to the Central District of California do not weigh strongly enough to warrant transfer in this case in view of other factors such as defendants' incorporation here and the choice of law of the contract at issue. For the reasons stated, defendants' motion to transfer (D.I. 14) is denied. ARP and PCP will file their answers or responsive pleadings within twenty (20) days.[6]

                                                           */s/ Sue L. Robinson*
                                                       United States District Judge

---

[6]Alcan responded to the complaint by filing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) on October 16, 2006. (D.I. 12) Century filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(7) on October 27, 2006. (D.I. 19) The court will address these motions in due course.