IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ALCOA INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 06-451-SLR |
| | ) |
| ALCAN INC., et al., | ) |
| | ) |
| Defendants. | ) |

Allen M. Terrell, Jr., Esquire and Steven J. Fineman, Esquire of Richards Layton & Finger, Wilmington, Delaware. Counsel for Plaintiff. Of Counsel: Thomas G. Rohback, Esquire, James J. Reardon, Esquire, and Partick J. Sweeney, Esquire of LeBoeuf, Lamb, Greene & MacRae LLP, Hartford, Connecticut.

Steven J. Balick, Esquire, John G. Day, Esquire and Tiffany Geyer Lydon, Esquire of Ashby & Geddess, Wilmington, Delaware. Counsel for Defendant Alcan Inc. Of Counsel: Richard P. Steinken, Esquire and Shelley Smith, Esquire of Jenner & Block LLP, Chicago, Illinois.

**MEMORANDUM OPINION**

Dated: July 17, 2007
Wilmington, Delaware

ROBINSON, Judge

## I. INTRODUCTION

Plaintiff Alcoa, Inc. ("plaintiff") filed this declaratory judgment action against Alcan, Inc. ("Alcan"), Alcan Rolled Products-Ravenswood LLC ("ARP"), f/k/a Pechiney Rolled Products LLC ("PRP"), Pechiney Cast Plate Inc. ("PCP"), and Century Aluminum Company ("Century") (collectively, "defendants") on July 25, 2006. (D.I. 1) The present case involves a dispute over who is responsible for paying to remedy environmental contamination present at a cast aluminum manufacturing and sales facility in Vernon, California ("the Vernon facility"). Plaintiff seeks a declaratory judgment that it owes no liability to Century or Alcan for the cost to remedy the contamination, and that plaintiff is entitled to indemnification from Century for any such liability. (Id.) Plaintiff also seeks attorney fees. (Id.) Presently before the court is Alcan's motion to dismiss for lack of personal jurisdiction. (D.I. 12) For the reasons that follow, the court grants Alcan's motion.

## II. BACKGROUND

In its memorandum opinion of the same date, the court has detailed many of the facts relevant to the present dispute.

Plaintiff owned and operated the Vernon facility prior to December 1998. (Id. at ¶ 11) Plaintiff thereafter sold the Vernon facility to Century pursuant to an acquisition agreement, which provides a twelve-year indemnification of Century by plaintiff for environmental liabilities outside of those associated with the operation of Century's cast plate business. (D.I. 26, ex. 1 at 25) The Vernon facility was sold "as is," however, plaintiff agreed to remediate certain hazards on the property and provide proof of

remediation to Century as part of the sale. (Id.) Plaintiff claims that it complied with these provisions. (D.I. 1 at ¶ 18) Century subsequently sold the Vernon facility to PRP and entered into a separate indemnification agreement which also named PRP's subsidiaries (including PCP) as indemnified parties. (Id. at ¶ 21; D.I. 21, exs. D, E) Alcan subsequently acquired PRP, which is now known as ARP, a wholly-owned subsidiary of Alcan. (D.I. 1 at ¶ 22) Alcan seeks to close and sell the Vernon facility, however, environmental pollutants called polychlorinated biphenyls ("PCBs") have been allegedly detected at the Vernon facility. (Id. at ¶¶ 24, 26) Alcan sought indemnification from Century (D.I. 21, ex. J); Century sent a demand for indemnification to plaintiff (id., ex. L); and plaintiff rejected Century's demand because, in its view, the proposed development by Alcan is not contemplated by the acquisition agreement. (D.I. 1 at ¶¶ 35-36)

Alcan is a Canadian company with corporate offices in Montreal, Quebec, Canada. (D.I. 13 at 1 & ex. A) In its complaint, plaintiff generally avers that Alcan "derives substantial revenue from products or services consumed in the United States, including in the State of Delaware"; "engages in persistent corporate operations in the State of Delaware, including through numerous subsidiaries that are incorporated in the State"; and "operates in the United States and around the world through a complicated web of interlocking corporations" including co-defendant subsidiaries ARP and PCP.[1]

---

[1]According to plaintiff, this "complicated web" involves "at least 33 subsidiaries (directly and/or indirectly) which are incorporated in the State of Delaware." (D.I. 23 at 2) The document cited by plaintiff, Alcan's 2005 10-K report, does not support this claim. (Id., citing D.I. 24 at 57-66 (document is 56 pages long and does not list all Alcan subsidiaries)) On the present record, the breadth and nature of Alcan's holdings is unclear.

2

(D.I. 1 at ¶¶ 6-7) Alcan has provided an affidavit by its corporate secretary, Roy Millington, which states that Alcan is a holding company with no operations in the United States, and which does not do business in, or have operations, property or employees in the State of Delaware. (D.I. 13, ex. A) Alcan does not, and in fact cannot, dispute that this court has jurisdiction over its subsidiaries, PCP and ARP, which are incorporated under the laws of the State of Delaware.

## III. STANDARD OF REVIEW

A Rule 12(b)(2) motion is inherently a matter which requires resolution of factual issues outside the pleadings regarding whether in personam jurisdiction exists. See Patterson by Patterson v. F.B.I., 893 F.2d 595, 603 (3d Cir. 1990). Once defendant properly raises a jurisdictional defense, plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence. See North Penn Gas Co. v. Corning Natural Gas Corp., 897 F.2d 687, 689 (3d Cir. 1990). Plaintiff may not rely on the pleadings alone in order to withstand defendant's Rule 12(b)(2) motion and, once the motion is made, plaintiff must respond with actual proofs, not mere allegations. See Patterson by Patterson, 893 F.2d at 604. Though plaintiff ultimately bears the burden of establishing this court's jurisdiction over Alcan, plaintiff need only establish a prima facie case of personal jurisdiction, and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor. See Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004) (citations omitted).

## IV. DISCUSSION

### A. The Delaware Long Arm Statute

The Delaware long arm statute permits the exercise of personal jurisdiction over a nonresident who, in person or through an agent:

> (1) Transacts any business or performs any character of work or service in the State;
> (2) Contracts to supply service or things in this State;
> (3) Causes tortious injury in the State by an act or omission in this State;
> (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State;
> (5) Has an interest in, uses or possesses real property in the State; or
> (6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation or agreement located, executed or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

10 Del. C. § 3104(c). Pursuant to subsections (c)(1)-(3) and (5)-(6), specific jurisdiction may be established if the cause of action arises from contacts with the forum. Applied Biosystems, Inc. v. Cruachem, LTD, 772 F. Supp. 1458, 1466 (D. Del. 1991). Subsection (c)(4) provides for general jurisdiction, which requires a greater extent of contacts, but which provides jurisdiction even when the claim is unrelated to the forum contacts. Id. There are two established theories that would allow this court to establish jurisdiction over Alcan based upon its jurisdiction over any of its Delaware subsidiaries: the "alter ego theory" and the "agency theory." See C.R. Bard, Inc. v. Guidant Corp., 997 F. Supp. 556, 559 (D. Del. 1998) (citation omitted).

Under the alter ego theory, a court may attribute the actions of a subsidiary to its parent and ignore corporate boundaries if the court finds that the subsidiary is a mere

4

Case 1:06-cv-00451-SLR-SRF   Document 46   Filed 07/17/07   Page 6 of 10 PageID #: 807

"alter ego" of the parent. Id. (citation omitted). In order to "pierce the corporate veil" in this manner, the party asserting jurisdiction must establish some fraud, injustice, or inequity in the use of the corporate form. Id. (citations omitted).

As explained in Applied Biosystems, Inc., 772 F. Supp. 1458, the agency theory

> examines the degree of control which the parent exercises over the subsidiary. . . . The factors relevant to this determination include the extent of overlap of officers and directors, methods of financing, the division of responsibility for day-to-day management, and the process by which each corporation obtains its business. No one factor is either necessary or determinative; rather it is the specific combination of elements which is significant. . . .
>
> If any agency relationship is found to exist, courts will not ignore the separate corporate identities of parent and subsidiary, but will consider the parent corporation responsible for specific jurisdictional acts of the subsidiary.

Id. at 1463. "An agency relationship alone, however, is not sufficient to confer jurisdiction. Rather, the result of finding such an agency relationship is simply that we may attribute certain of [ARP's and/or PCP's] acts to [Alcan] in assessing whether the requirements of the Delaware long-arm statute have been satisfied." Id. at 1464.

### B. Plaintiff's Arguments Regarding Alcan and its Subsidiaries

In response to Alcan's motion to dismiss, plaintiff has provided only a few facts in support of its prima facie case of personal jurisdiction, namely: (1) Alcan "owns at least 33 subsidiaries (directly and/or indirectly) in the State of Delaware"; (2) Alcan's regulatory filings present the assets, liabilities, and financial earnings of its subsidiaries "as one indistinguishable whole"; and (3) Alcan's website "presents a unified picture of Alcan and its several subsidiaries." (D.I. 23 at 5) These relationships, according to plaintiff, "evidence substantial and continued contact with the State of Delaware." (Id.) Plaintiff further argues that, since all of the facts regarding the relationships between

5

these corporations are uniquely within Alcan's knowledge, the court should assume that Alcan's failure to fully disclose the exact nature of these relationships "indicates that the facts do not refute the assertion of in personam jurisdiction." (Id. at 5-6)

The present action is a declaratory judgment claim invoking the laws of contracts. Plaintiff does not assert any tort claims against Alcan or its subsidiaries, and has not alleged any claims arising out of actions taken by Alcan or its subsidiaries in Delaware. The mere incorporation of ARP and PCP in Delaware, without more, is insufficient to create jurisdiction over Alcan under Delaware's long arm statute in the context of a contract action. See Ace & Co., Inc. v. Balfour Beatty PLC, 148 F. Supp. 2d 418, 424-25 (D. Del. 2001); Applied Biosystems, Inc. v. Cruachem, Ltd., 772 F. Supp. 1458, 1467-68 (D. Del. 1991) ("[T]he incorporation of [a related corporation] in Delaware would provide specific jurisdiction over any tort causes of action related to the act of incorporation. . . . the act of incorporation does not confer jurisdiction for unrelated torts") (granting motion to dismiss in patent infringement case). Plaintiff points to no impropriety in the formation of ARP or PCP or in the conduct of these defendants' corporate affairs which would tend to suggest that ARP or PCP were mere instrumentalities of Alcan. Plaintiff, therefore, has not demonstrated that ARP or PCP are mere "alter egos" of Alcan.

In addition, plaintiff has put forward no evidence that tends to shed light on "the arrangement between [Alcan and either subsidiary], the authority given in that arrangement, and[/or] the relevance of that arrangement to the plaintiff's claim."[2] C.R.

---

[2]As the court noted in its memorandum opinion of the same date, it is unclear from the record whether the Vernon facility was considered an asset of PRP or its

6

Bard, 997 F. Supp. at 560 ("A company that sets up an agent to sell its products, or who creates a network of independently-owned distributorships is 'undoubtedly amenable to suit' in Delaware.") (citations omitted); compare Reynolds Metals Co. v. Alcan, Inc., No. Civ. A. 04-0175, 12/7/2004 Order Denying Motion to Dismiss (found at D.I. 24, ex. 2) (Alcan's motion to dismiss denied where "[t]he uncontested evidence provided by plaintiffs indicat[ed] that [Alcan's subsidiary] Alancorp's primary role [ ] was to facilitate the sale of Alcan products to U.S. customers"). Notwithstanding, plaintiff has not identified any actions allegedly performed by ARP or PCP on Alcan's behalf that took place in Delaware. See Ace & Co., 148 F. Supp. 2d at 425 ("The agency theory requires not only that the precise conduct shown to be investigated by the parent be attributable to the parent, but also that such conduct satisfy § 3104(c)(1); i.e., that the jurisdictional conduct take place in Delaware.").

Finally, plaintiff cites Munsell v. La Brasserie Molson du Quebec Limité, 618 F. Supp. 1383 (E.D.N.Y. 1985), for the proposition that Alcan's failure to "illuminate" the relationships between itself, ARP, and PCP somehow creates a basis for this court to deny Alcan's motion; it does not. As the Munsell court recognized, it is not defendants' burden to make an affirmative showing that there is no basis for personal jurisdiction. See id. at 1386. This burden is plaintiff's alone, and one that plaintiff has failed to meet in the case at bar. Plaintiff did not assert in its papers that it could not, absent jurisdictional discovery, accomplish its task; rather, plaintiff "belie[ved] that the current

---

subsidiary PCP, since PCP subsequently contracted to sell the Vernon facility to the City. (D.I. 21, ex. F) Documents of record indicate that PRP and PCP were known collectively as "Century Cast Plate, Inc." (Id., ex. K)

7

record (especially given Alcan's failure to illuminate the complicated web of corporations it controls) [was] sufficient for the [c]ourt to deny Alcan's motion to dismiss[.]" (D.I. 23 at 6) Having declined to seek jurisdictional discovery at the appropriate time, and having put forth no allegations of contacts or actions occurring in Delaware that could present a benefit to further discovery on those incidents, plaintiff's request for such discovery ("in the alternative" to its success in arguing the present motion) is denied. See Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 456 (3d Cir. 2003) (stating that a plaintiff's right to conduct jurisdictional discovery should be sustained "[i]f a plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts between the party and the forum state") (citation and internal quotations omitted); Hansen v. Neumueller GmbH, 163 F.R.D. 471, 476 (D. Del. 1995) ("[A] plaintiff may not rely on the bare allegations in his complaint to warrant further discovery") (citation omitted); Poe v. Babcock Int'l, PLC, 662 F. Supp. 4, 7 (M.D. Pa. 1985) ("Since plaintiff has met defendants' affidavit evidence with mere speculation, plaintiff's request for an opportunity to conduct discovery on the matter must be denied. It would be inappropriate for this court to allow plaintiff to conduct a fishing expedition in order to construct a basis for jurisdiction.").[3]

## IV. CONCLUSION

For the reasons stated above, Alcan's motion to dismiss is granted. An

---

[3]The court finds the cited authority from this district more persuasive than Munsell, in which the court ultimately "conclude[d] that it lack[ed] the facts necessary to decide the issue of personal jurisdiction" over the foreign defendant, and ordered discovery on the "non-conventional" parent-subsidiary and affiliate relationships of the "web-work" of corporations. 618 F. Supp. at 1386.

appropriate order shall issue.