## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ALCOA INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-451-SLR |
| | ) | |
| ALCAN ROLLED PRODUCTS-RAVENSWOOD LLC, f/k/a PECHINEY ROLLED PRODUCTS, LLC, PECHINEY CAST PLATE, INC., and CENTURY ALUMINUM COMPANY, | ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |
| ──────────────────── | ) ) | |
| ALCAN ROLLED PRODUCTS-RAVENSWOOD LLC, f/k/a PECHINEY ROLLED PRODUCTS, LLC, and PECHINEY CAST PLATE, INC., | ) ) ) ) | **DEMAND FOR JURY TRIAL** |
| | ) | |
| Counter-Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ALCOA INC. and CENTURY ALUMINUM COMPANY, | ) ) | |
| | ) | |
| Counter-Defendants. | ) ) | |

## ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIMS AND CROSS-CLAIMS OF ALCAN ROLLED PRODUCTS-RAVENSWOOD LLC AND PECHINEY CAST PLATE, INC. TO ALCOA INC.'S COMPLAINT FOR DECLARATORY JUDGMENT

Defendants Alcan Rolled Products-Ravenswood LLC and Pechiney Cast Plate, Inc. (the "Alcan Defendants"), hereby submit their Answer, Affirmative Defenses, Counterclaims and

Cross-Claims in response to the Complaint for Declaratory Judgment ("Complaint") filed by

Plaintiff Alcoa Inc. ("Plaintiff" or "Alcoa").

## PARTIES

1.    Plaintiff Alcoa is a corporation organized under the laws of the Commonwealth of Pennsylvania, having its principal place of business in the State of New York.

**ANSWER:** The Alcan Defendants admit that Alcoa is a Pennsylvania corporation.

The Alcan Defendants are without knowledge or information sufficient to form a belief as to

the remaining allegations in Paragraph 1, but answering further state that while the "Alcoa

Global Center" is located in New York, the "Alcoa Corporate Center" is located in

Pennsylvania.  Further answering, the Alcan Defendants note that Alcoa's brief in opposition

to the Alcan Defendants' motion to transfer venue states that Alcoa's "principal place of

business is in the neighboring state of Pennsylvania,"  (D.I. 25 at 6), thereby contradicting the

allegation in Paragraph 1 of the Complaint that Alcoa's principal place of business is in the

State of New York.

2.    Defendant Century Aluminum Company ("Century") is a corporation organized under the laws of Delaware, having its principal place of business in the State of California.

**ANSWER:** The Alcan Defendants admit the allegations set forth in Paragraph 2 of the

Complaint.

3.    Defendant Alcan Rolled Products-Ravenswood LLC ("Alcan Rolled Products"), formerly known as Pechiney Rolled Products, LLC, is a corporation organized under the laws of Delaware, having its principal place of business in the State of West Virginia. Alcan Rolled Products-Ravenswood LLC is a wholly-owned subsidiary of Pechiney Metals LLC and an indirect wholly-owned subsidiary of Alcan Inc.  Alcan Rolled Products-Ravenswood is a successor-in-interest to Pechiney Rolled Products, LLC.

**ANSWER:** The Alcan Defendants admit that Alcan Rolled Products-Ravenswood

LLC was formerly known as Pechiney Rolled Products, LLC.  The Alcan Defendants deny that

Alcan Rolled Products-Ravenswood LLC is a corporation, but admit that it is a limited liability

company organized under the laws of Delaware, having its principal place of business in the

State of West Virginia. The Alcan Defendants further admit that Alcan Rolled Products-

Ravenswood LLC is a wholly-owned subsidiary of Pechiney Metals LLC and an indirect

wholly-owned subsidiary of Alcan Inc. The Alcan Defendants deny the remaining allegations

set forth in Paragraph 3 of the Complaint.

     4.     Defendant Pechiney Cast Plate, Inc. is a corporation organized under the laws of
Delaware, having its principal place of business in the State of California. Pechiney Cast Plate,
Inc., is a wholly-owned subsidiary of Alcan Rolled Products-Ravenswood LLC.

     **ANSWER:** The Alcan Defendants admit that Pechiney Cast Plate, Inc. is a Delaware

corporation and is a wholly-owned subsidiary of Alcan Rolled Products-Ravenswood LLC.

The Alcan Defendants deny the remaining allegations set forth in Paragraph 4 of the

Complaint.

     5.     Defendant Alcan Inc. is a corporation organized under the laws of Canada, having
its principal place of business in Montreal, Quebec, Canada. Alcan Inc. produces, among other
things, aluminum and aluminum cast plate products, which it sells throughout the world.

     **ANSWER:** The Alcan Defendants admit that Alcan Inc. is a corporation organized

under the laws of Canada and has its principal place of business in Montreal, Quebec, Canada.

The Alcan Defendants further admit that Alcan Inc. produces and exports aluminum products

for sale outside Canada. The Alcan Defendants deny the remaining allegations set forth in

Paragraph 5 of the Complaint.

     6.     Alcan Inc. derives substantial revenue from products or services consumed in the
United States, including in the State of Delaware. Alcan Inc. engages in persistent corporate
operations in the State of Delaware, including through numerous subsidiaries that are
incorporated in the State.

**ANSWER:** The Alcan Defendants admit that Alcan Inc. derives revenue from products consumed in the United States, but deny that Alcan Inc. derives any revenue from products consumed in Delaware and deny the remaining allegations set forth in Paragraph 6 of the Complaint.

7.     Alcan Inc. operates in the United States and around the world through a complicated web of interlocking corporations, as described herein at Paragraphs 3-6 and 8. (Alcan Inc., Pechiney Cast Place, Inc., and Alcan Rolled Products-Ravenswood LLC may be collectively referred to herein as "Alcan.")

**ANSWER:** The Alcan Defendants deny the allegations set forth in Paragraph 7 of the Complaint.

8.     Aside from the Delaware Defendants named in this action, Alcan Corp. and Pechiney Metals LLC are Delaware subsidiaries owned and operated by Alcan Inc.

**ANSWER:** The Alcan Defendants admit that Pechiney Metals LLC is incorporated in Delaware, but deny the remaining allegations set forth in Paragraph 8 of the Complaint.

## JURISDICTION AND VENUE

9.     Jurisdiction arises under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and 28 U.S.C. §§ 1331 and 1332. There is complete diversity of citizenship between Alcoa and the Defendants, and the amount in controversy exceeds $75,000 exclusive of interest and costs.

**ANSWER:** The Alcan Defendants admit that Plaintiff contends that jurisdiction arises under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and 28 U.S.C. §§ 1331 and 1332, and that Plaintiff contends that the amount in controversy exceeds $75,000 exclusive of interest and costs. The Alcan Defendants deny the remaining allegations set forth in Paragraph 9 of the Complaint.

10.     Venue is proper in this district under 28 U.S.C. § 1391.

**ANSWER:** The Alcan Defendants admit that Plaintiff contends that venue is proper in this district under 28 U.S.C. § 1391. The Alcan Defendants deny the remaining allegations set forth in Paragraph 10 of the Complaint.

## FACTUAL BACKGROUND

### The Vernon Cast Plate Facility

11.    Prior to December 1998, Alcoa owned and operated a cast aluminum plate manufacturing and sales facility located in Vernon, California (the facility and the real property on which the facility is located is hereinafter referred to as the "Facility").

**ANSWER:** The Alcan Defendants admit the allegations set forth in Paragraph 11 of the Complaint.

12.    Pursuant to a Final Judgment among the United States of America, Alcoa, and Alumax Inc. dated June 15, 1998, Alcoa was ordered by the United States District Court for the District of Columbia to divest the Facility as an ongoing business in order to maintain competition within the relevant market. The Court ordered that the divestiture be accomplished in a manner to satisfy the United States that the Facility would be used by the purchaser as part of a viable, ongoing business engaged in the manufacture of cast plate and that the purchaser of the Facility would have the capability and intent of competing effectively in the manufacture and sale of cast plate.

**ANSWER:** The Alcan Defendants admit that a Final Judgment, dated June 15, 1998, was entered in a case captioned, *United States of America v. Aluminum Company of America*, No. 98-1497, and that this Final Judgment provided that Alcoa "divest the Alcoa Cast Plate Division as an ongoing business," (Final Judgment at 5), and that the divestiture "be accomplished by selling or otherwise conveying the Alcoa Cast Plate Division to a purchaser in such a way as to satisfy the United States, in its sole discretion, that the Alcoa Cast Plate Division can and will be used by the purchaser as part of a viable, ongoing business or businesses engaged in the manufacture of Cast Plate." (*Id.* at 7). Further answering, the Alcan Defendants admit that the Final Judgment also provided that the divestiture of the Alcoa Cast

Plate Division "shall be made to a purchaser for whom it is demonstrated to the United States'

sole satisfaction that: (1) the purchaser has the capability and intent of competing effectively in

the manufacture and sale of Cast Plate . . ." (*Id.*)   The Alcan Defendants deny the remaining

allegations set forth in Paragraph 12 of the Complaint.

<u>Alcoa's Sale to Century</u>

13.     On December 22, 1998, Alcoa and Century entered into an Acquisition
Agreement pursuant to which Century purchased the Facility from Alcoa (the "Century
Acquisition Agreement").

**ANSWER:**  The Alcan Defendants admit the allegations set forth in Paragraph 13 of

the Complaint.

14.     Alcoa conveyed the Facility to Century on an "as is, where is, with all faults"
basis, with no representations or warranties by Alcoa except as provided in the Agreement.

**ANSWER:**  The Alcan Defendants admit that Section 4.24 of the Century Acquisition

Agreement provides that, "except for the representatives and warranties contained in this

Agreement, the assets of the cast plate business are being conveyed on an 'as is, where is, with

all faults' basis," but deny the remaining allegations set forth in Paragraph 14 of the Complaint.

15.     Century agreed to assume all liabilities related to the Facility except as otherwise
provided in the Century Acquisition Agreement to the contrary.

**ANSWER:**  The Alcan Defendants deny the allegations set forth in Paragraph 15 of the

Complaint.

16.     Century assumed all environmental liabilities related to the Facility except as
otherwise provided in the Century Acquisition Agreement.

**ANSWER:**  The Alcan Defendants deny the allegations set forth in Paragraph 16 of the

Complaint.

17.    Pursuant to Section 10.03(c) of the Century Acquisition Agreement, Alcoa agreed to perform certain specified remedial actions.

**ANSWER:**  The Alcan Defendants admit that Section 10.03(c) of the Century

Acquisition Agreement provides that Alcoa "is responsible for and will complete the remedial

actions set forth below."  The Alcan Defendants deny the remaining allegations set forth in

Paragraph 17 of the Complaint.


18.    Alcoa completed the specified tasks and provided to Century documentation of such completion, including a copy of a "No Further Action" letter obtained from the City of Vernon Environmental Health Department ("Vernon EHD") dated September 2, 1999.

**ANSWER:**  The Alcan Defendants admit that Alcoa obtained a letter dated September

2, 1999 from the City of Vernon Environmental Health Department which noted that no further

remedial action was required "based on the assumption that the information submitted in the

documentation [provided by Alcoa] is complete and correct" and stated that "[f]urther review

or determinations may be necessary if subsequent information, which significantly affects any

decision, is found."  The Alcan Defendants deny the remaining allegations set forth in

Paragraph 18 of the Complaint.


19.    At the time of the closing of the Century Acquisition Agreement, the Facility was in compliance with all environmental regulations.

**ANSWER:**  The Alcan Defendants deny the allegations set forth in Paragraph 19 of the

Complaint.


Century's Sale of Facility to Pechiney

20.    On or about July 26, 1999, Century sold the Facility to an entity then known as Pechiney Rolled Products, LLC pursuant to a Stock and Asset Purchase Agreement dated as of July 26, 1999 (the "Pechiney Purchase Agreement").

**ANSWER:**  The Alcan Defendants admit that Century entered into a Stock and Asset

Purchase Agreement dated July 26, 1999 which included the sale of the Facility to Pechiney

7

Rolled Products. Further answering, the Alcan Defendants state that this transaction closed on

September 20, 1999. The Alcan Defendants deny the remaining allegations set forth in

Paragraph 20 of the Complaint.

21.     Century and Pechiney Rolled Products, LLC entered into a separate
indemnification agreement dated as of September 20, 1999 which related to the transfer of the
Facility under the Pechiney Purchase Agreement and under which Pechiney Cast Plate, Inc. was
named as an indemnified party.

**ANSWER:** The Alcan Defendants admit the allegations set forth in Paragraph 21 of

the Complaint.

22.     Subsequent to the Pechiney Purchase Agreement, Alcan Inc. acquired Pechiney,
S.A. Pechiney Rolled Products, LLC is now known as Alcan Rolled Products-Ravenswood LLC
and is indirectly a wholly-owned subsidiary of Alcan Inc.

**ANSWER:** The Alcan Defendants admit the allegations set forth in Paragraph 22 of

the Complaint.

<u>Alcan Intends to Disturb the Property</u>

23.     In November 2005, Alcan issued a public press release stating that Alcan was
closing the Facility effective January 21, 2006, and that Alcan was in negotiations to sell related
equipment and real estate to potential buyers.

**ANSWER:** The Alcan Defendants admit that in November 2005, Alcan Inc. issued a

public press release announcing that it was closing the Facility effective January 21, 2006, and

that it was in discussions for the sale of equipment and real estate to potential buyers. The

Alcan Defendants deny the remaining allegations set forth in Paragraph 23 of the Complaint.

24.     Alcan and/or its potential buyers intend to conduct demolition, excavation and
construction work on the site, and to change its use.

**ANSWER:** The Alcan Defendants admit that Pechiney Cast Plate, Inc. has conducted

and will continue to conduct demolition and excavation work at the Facility, including

environmental remediation work required to comply with orders issued by the City of Vernon

Environmental Health Department. The Alcan Defendants further admit that the City of

Vernon, the entity that has entered into an agreement to purchase the Facility, has stated an

intention to change the use of the Facility. The Alcan Defendants deny the remaining

allegations set forth in Paragraph 24 of the Complaint.

25.    By two letters dated April 17, 2006, Alcan demanded that Century indemnify
Alcan for any and all "Losses" incurred due to alleged "environmental conditions" at the Facility.
The letters assert indemnification rights under both the Pechiney Purchase Agreement and the
separate September 20, 1999 indemnification agreement.

**ANSWER:** The Alcan Defendants admit that in two letters, dated April 17, 2006,

Pechiney Rolled Products, LLC and Pechiney Cast Plate, Inc. demanded that Century

Aluminum Company indemnify them pursuant to the Pechiney Purchase Agreement and the

September 20, 1999 indemnification agreement for any "Losses" (as this term is defined in

these agreements), they have incurred or will incur with respect to or arising out of certain

environmental conditions at the Facility. The Alcan Defendants deny the remaining allegations

set forth in Paragraph 25 of the Complaint.

26.    Alcan sent another letter to Century dated April 24, 2006 requesting information
from Century regarding the source of PCBs allegedly detected at the Facility. The April 24, 2006
letter states that, "an invitation to bid on the demolition of the buildings at the [Facility] has been
issued to several demolition contractors. As part of the demolition, a work plan for the disposal
of waste containing PCBs . . . must be submitted to the United States Environmental Protection
Agency ...." The letter also makes reference to unspecified "soil remediation at the [Facility]."

**ANSWER:** The Alcan Defendants admit that Pechiney Rolled Products, LLC and

Pechiney Cast Plate, Inc. sent a letter, dated April 24, 2006, to Century Aluminum Company,

that the letter requested information from Century Aluminum Company regarding the source of

all PCBs detected at the Facility, and that the letter contains the language quoted in Paragraph

26. The Alcan Defendants deny the remaining allegations set forth in Paragraph 26 of the Complaint.

### Century's Demand for Indemnity From Alcoa

27. By letter to Alcoa dated May 8, 2006, Century asserted a claim for indemnity under Article 10 of the Century Acquisition Agreement. The letter states that such indemnity claims relate to the alleged presence of hazardous substances at the Facility as described in the Alcan letters dated April 17, 2006 and April 24, 2006.

**ANSWER:** The Alcan Defendants admit that the May 8, 2006 letter from Century

Aluminum Company to Alcoa states: "This is to inform you that Century has claims against

Alcoa for indemnity under Article 10 of the Acquisition Agreement. The claims for indemnity

relate to the presence of polychlorinated byphenyls at the Real Property as more fully

described in the two attached letters dated April 17, 2006 and the attached letter dated April 24,

2006, each from Jenkens and Gilchrist, LLP (the 'Letters')." The Alcan Defendants deny the

remaining allegations set forth in Paragraph 27 of the Complaint.

28. By a letter dated June 2, 2006, Alcoa rejected Century's demand for indemnification.

**ANSWER:** The Alcan Defendants admit the allegations set forth in Paragraph 28 of

the Complaint.

### Alcan/Pechiney's Threat to Initiate Litigation Against Alcoa

29. On May 24, 2006, counsel for Alcan, John Cermak, left a voicemail message for Claire Miller, counsel for Alcoa, stating that in addition to pursuing Century, Alcan may look to Alcoa to pay for certain development costs at the Facility. During a subsequent telephone conversation between Mr. Cermak and Ms. Miller, Mr. Cermak stated that in addition to Alcan's claim for contractual indemnity from Century, Alcan would file a lawsuit asserting claims directly against Alcoa unless Alcoa admitted liability for the costs alleged by Alcan.

**ANSWER:** The Alcan Defendants admit that John Cermak left a voicemail message

for Claire Miller, counsel for Alcoa, on May 24, 2006 and that Cermak believes that this

message most likely related to an invitation to Alcoa to attend a presentation by the environmental consulting firm Geomatrix concerning the conditions at the Facility. The Alcan Defendants admit that John Cermak had a subsequent telephone conversation with Claire Miller regarding the Facility in which they discussed Alcoa's liability for environmental remediation costs at the Facility independent of the contracts for the sale of the Facility. The Alcan Defendants deny the remaining allegations set forth in Paragraph 29 of the Complaint.

30.    A real, ripe, and justiciable controversy exists between Alcoa and the Defendants.

**ANSWER:**  The Alcan Defendants admit that Plaintiff is contending that a real, ripe, and justiciable controversy exists between Alcoa and the defendants. The Alcan Defendants deny the remaining allegations set forth in Paragraph 30 of the Complaint.

## FIRST CLAIM FOR RELIEF

### Alcoa is Not Liable to Century Under the Acquisition Agreement

31.    Alcoa incorporates herein by reference Paragraphs 1 through 30 as if set forth in their entirety.

**ANSWER:**  The Alcan Defendants incorporate herein by reference their answers to Paragraphs 1 through 30 of the Complaint as if set forth in their entirety.

32.    The Century Acquisition Agreement sets forth the agreement of Alcoa and Century with respect to the condition of the Facility which was delivered at the closing date and the allocation of liabilities as between the parties.

**ANSWER:**  The Alcan Defendants admit that the Century Acquisition Agreement contains terms relating to the condition of the Facility and the allocation of liabilities between Alcoa and Century Aluminum Company. The Alcan Defendants deny the remaining allegations set forth in Paragraph 32 of the Complaint.

33.    Alcoa sold the Facility to Century on an "as is, where is, with all faults" basis, subject to the express provisions of the Century Acquisition Agreement. Except for express indemnification provisions set forth therein, the Agreement shifts all environmental liabilities to Century and Century assumed all post-closing liabilities regarding the Facility.

**ANSWER:** The Alcan Defendants admit that Section 4.24 of the Century Acquisition

Agreement provides that, "EXCEPT FOR THE REPRESENTATIONS AND WARRANTIES

CONTAINED IN THIS AGREEMENT, THE ASSETS OF THE CAST PLATE BUSINESS

ARE BEING CONVEYED ON AN 'AS IS, WHERE IS, WITH ALL FAULTS' BASIS." The

Alcan Defendants further state that Section 10.03(a) of the Agreement provides that the "Seller

will, subject to the limitations set forth in Section 12.06, indemnify, defend and hold Buyer,

Affiliates of Buyer and Buyer's lenders harmless from and against any and all Environmental

Liabilities." Further answering, the Alcan Defendants admit that under Section 9.08, Century

Aluminum Company agreed to pay the Assumed Liabilities set forth on Schedule 1.01(c), and

that Schedule 1.01(c) included "Environmental liabilities of Buyer as described in Article 10."

The Alcan Defendants admit further that Section 10.05 states, "Except as otherwise provided in

this Agreement, as of the date of this Agreement, Buyer will assume all environmental

liabilities associated with the operation of the Cast Plate Business." The Alcan Defendants

deny the remaining allegations set forth in Paragraph 33 of the Complaint.


34.    Alcoa has completed all of the specific remedial actions required in Section 10.03(c) of the Century Acquisition Agreement, obtained a "No Further Action" letter from the City of Vernon with regard thereto, and provided other proof of completion of such remedial actions.

**ANSWER:** The Alcan Defendants admit that Alcoa obtained a letter from the City of

Vernon Environmental Health Department, dated September 2, 1999, which noted that no

further remedial action was required "based on the assumption that the information submitted

in the documentation [provided by Alcoa] is complete and correct" and which stated that

"[f]urther review or determinations may be necessary if subsequent information, which

significantly affects any decision, is found." The Alcan Defendants deny the remaining

allegations set forth in Paragraph 34 of the Complaint.

35.    Century has demanded indemnification for any losses incurred as the result of Alcan's development project at the Facility. Alcoa does not owe such an indemnity under the Century Acquisition Agreement because the basis of Century's demand arises out of the subsequent actions of Alcan.

ANSWER: The Alcan Defendants admit that Century Aluminum Company has

demanded indemnification from Alcoa, but deny the remaining allegations set forth in

Paragraph 35 of the Complaint.

36.    In addition, Alcoa does not owe such an indemnity under the Century Acquisition Agreement because the proposed development is not "required by directives and/or orders of the Vernon Environmental Health Departments," as alleged in Century's May 8, 2006 letter.

ANSWER: The Alcan Defendants deny the allegations set forth in Paragraph 36 of the

Complaint.

37.    A controversy exists between Alcoa and Century concerning the nature and extent of Alcoa's obligations to Century.

ANSWER: The Alcan Defendants admit that Plaintiff is contending that a controversy

exists between Alcoa and Century Aluminum Company concerning the nature and extent of

Alcoa's obligations to Century Aluminum Company. The Alcan Defendants deny the

remaining allegations set forth in Paragraph 37 of the Complaint.

## SECOND CLAIM FOR RELIEF

### Alcoa is Not Responsible for the Costs of Development at the Facility

38.    Alcoa incorporates herein by references Paragraphs 1 through 37 as if set forth in their entirety.

**ANSWER:** The Alcan Defendants incorporate herein by reference their answers to Paragraphs 1 through 37 of the Complaint as if set forth in their entirety.

39.    Prior to the sale of the Facility to Century, Alcoa performed an appropriate environmental remediation of the Facility in the context of the ongoing operation of the cast plate manufacturing facility.  At the time of the closing of the Century Acquisition Agreement, the Facility was in regulatory compliance.

**ANSWER:** The Alcan Defendants deny the allegations set forth in Paragraph 39 of the Complaint.

40.    Alcoa completed the remediation of the Facility required under the Century Acquisition Agreement and obtained a No Further Action letter from the regulatory authority.

**ANSWER:** The Alcan Defendants admit that Alcoa obtained a letter from the City of Vernon Environmental Health Department, dated September 2, 1999, which noted that no further remedial action was required "based on the assumption that the information submitted in the documentation [provided by Alcoa] is complete and correct" and which stated that "[f]urther review or determinations may be necessary if subsequent information, which significantly affects any decision, is found." The Alcan Defendants deny the remaining allegations set forth in Paragraph 40 of the Complaint.

41.    Alcan stated its intent to conduct various development activities at the Facility, including demolition, excavation and construction work on the site which will disturb soil and buildings located at the Facility.

**ANSWER:** The Alcan Defendants admit that Pechiney Cast Plate, Inc. has conducted and will continue to conduct demolition and excavation work at the Facility, and, pursuant to directives and orders of the City of Vernon Environmental Health Department, has conducted and will continue to conduct environmental remediation.  The Alcan Defendants deny the remaining allegations set forth in Paragraph 41 of the Complaint.

42.    Alcan has asserted that Alcoa is liable to Alcan for certain costs arising from Alcan's development activities at the Facility.

**ANSWER:** The Alcan Defendants admit that they have asserted that Alcoa is responsible for certain costs arising from Alcoa's activities at the Facility. The Alcan Defendants deny the remaining allegations set forth in Paragraph 42 of the Complaint.

43.    Alcan threatened to bring claims directly against Alcoa, including without limitation claims under the Comprehensive Environmental Response Compensation and Liability Act, 42 U.S.C. §§ 9601 et seq. ("CERCLA"), to recover costs associated with Alcan's development activities at the Facility.

**ANSWER:** The Alcan Defendants admit that they have asserted that Alcoa may be liable under CERCLA for environmental remediation costs incurred at the Facility. The Alcan Defendants deny the remaining allegations set forth in Paragraph 43 of the Complaint.

44.    Any such development activities at the Facility are due solely to the actions of Alcan and/or other owners of the Facility subsequent to Alcoa, and such activities are not the responsibility of Alcoa.

**ANSWER:** The Alcan Defendants deny the allegations set forth in Paragraph 44 of the Complaint.

45.    A controversy exists between Alcoa, Century and Alcan concerning the nature and extent of Alcoa's obligations, if any, regarding the costs of development activities at the Facility.

**ANSWER:** The Alcan Defendants admit that Plaintiff is contending that a controversy exists between Alcoa, Century Aluminum Company and the Alcan Defendants concerning the nature and extent of Alcoa's responsibility for remediation costs arising from Alcoa's activities at the Facility. The Alcan Defendants deny the remaining allegations set forth in Paragraph 45 of the Complaint.

46.    Alcoa seeks a declaration that Alcoa has no liability to Alcan or Century for the costs of Alcan's development activities at the Facility, under CERCLA or otherwise.

**ANSWER:** The Alcan Defendants admit that Alcoa is seeking a declaration that it has no liability to the Alcan Defendants or Century Aluminum Company for remediation costs arising from Alcoa's activities at the Facility. The Alcan Defendants deny the remaining allegations set forth in Paragraph 46 of the Complaint.

47.    In the alternative, in the event that the Court were to determine that Alcoa bears any responsibility under CERCLA or otherwise for the costs of Alcan's development activities at the Facility, Alcoa seeks a declaration as to the allocation of responsibility for such costs as between Alcoa, Century, and Alcan under CERCLA and/or other governing law.

**ANSWER:** The Alcan Defendants admit that Alcoa seeks a declaration as to the allocation of responsibility for remediation costs between Alcoa, Century Aluminum Company, and the Alcan Defendants under CERCLA and/or other governing law. The Alcan Defendants deny the remaining allegations set forth in Paragraph 47 of the Complaint.

## <u>THIRD CLAIM FOR RELIEF</u>

<u>Century is Liable to Alcoa Under the Acquisition Agreement</u>

48.    Alcoa incorporates herein by reference Paragraphs 1 through 47 as if set forth in their entirety.

**ANSWER:** The Alcan Defendants incorporate herein by reference their answers to Paragraphs 1 through 47 of the Complaint as if set forth in their entirety.

49.    Except for express indemnification provisions set forth therein, the Century Acquisition Agreement shifts all environmental liabilities to Century and Century assumed all post-closing liabilities regarding the Facility.

**ANSWER:** The Alcan Defendants deny the allegations set forth in Paragraph 49 of the Complaint. Further answering, the Alcan Defendants state that Section 10.03(a) of the Century Acquisition Agreement provides that the "Seller will, subject to the limitations set forth in Section 12.06, indemnify, defend and hold Buyer, Affiliates of Buyer and Buyer's lenders harmless from and against any and all Environmental Liabilities." The Alcan

Defendants further state that under Section 9.08, Century Aluminum Company agreed to pay the Assumed Liabilities set forth on Schedule 1.01(c), and that Schedule 1.01(c) included "Environmental liabilities of Buyer as described in Article 10." In addition, Section 10.05 states that "Except as otherwise provided in this agreement, as of the date of this Agreement, Buyer will assume all environmental liabilities associated with the operation of the Cast Plate Business."

50.     Century owes Alcoa a duty of indemnity under the Century Acquisition Agreement for claims asserted against Alcoa which fall within Century's assumed liabilities.

**ANSWER:** The Alcan Defendants deny the allegations set forth in Paragraph 50 of the Complaint. Further answering, the Alcan Defendants state that Section 12.02(c) of the Century Acquisition Agreement provides that the "Buyer agrees to indemnify, defend and hold harmless Seller, from and against any Loss arising out of or based upon or in connection with or as a result of . . . the assertion against Seller of any liability or obligation included in the Assumed Liabilities."

51.     In the event that the Court were to determine that Alcoa is liable to Alcan under CERCLA or otherwise for costs arising from Alcan's development activities at the Facility, in full or in part, Alcoa is entitled to indemnity from Century for such liability because it is a post-closing liability assumed by Century under the Century Acquisition Agreement and does not fall within Alcoa's obligations under the express indemnification provisions of the Acquisition Agreement.

**ANSWER:** The Alcan Defendants deny the allegations set forth in Paragraph 51 of the Complaint.

52.     Century has implicitly rejected its obligation to indemnify Alcoa through Century's demand that Alcoa indemnify Century for any purported losses incurred as the result of Alcan's development project at the Facility.

**ANSWER:** The Alcan Defendants deny the allegations set forth in Paragraph 52 of the Complaint.

53.    A controversy exists between Alcoa and Century concerning the nature and extent of Century's obligations to Alcoa.

**ANSWER:** The Alcan Defendants admit that Plaintiff is contending that a controversy exists between Alcoa and Century Aluminum Company concerning the nature and extent of Century Aluminum Company's obligations to Alcoa. The Alcan Defendants deny the remaining allegations set forth in Paragraph 53 of the Complaint.

## AFFIRMATIVE DEFENSES

The Alcan Defendants assert the following affirmative defenses:

### First Affirmative Defense
### (Failure to State a Claim)

54.    The Complaint for Declaratory Judgment fails to state a claim against the Alcan Defendants upon which relief can be granted.

### Second Affirmative Defense
### (Conformance with Governing Law and Industry Standards)

55.    The Alcan Defendants allege that they have conformed to and performed any and all obligations imposed by applicable statutes, regulations, permits and industry standards to the full extent of their responsibilities.

### Third Affirmative Defense
### (Not an Owner or Operator at Time of Alleged Disposal)

56.    The Alcan Defendants allege that they are not liable to Alcoa because they did not own or operate any facility at which any hazardous substances were disposed of, at the time of the alleged disposal, pursuant to CERCLA § 107(a)(2), 42 U.S.C. § 9607(a)(2).

### Fourth Affirmative Defense
### (Act of Third Party)

57.     The Alcan Defendants allege that they are not liable to Alcoa because the release or threat of release of a hazardous substance and the damages resulting therefrom were caused solely by an act or omission of a third party, pursuant to CERCLA § 107(b)(3), 42 U.S.C. § 9607(b)(3).

### Fifth Affirmative Defense
### (Innocent Holder of Land)

58.     The Alcan Defendants allege that they are not liable to Alcoa because Alcan Rolled Products-Ravenswood LLC and Pechiney Cast Plate, Inc. are innocent holders of land and meet the statutory criteria set forth in CERCLA § 101(35), 42 U.S.C. § 9601(35).

### Sixth Affirmative Defense
### (Equitable Allocation)

59.     The Alcan Defendants allege that they are not liable for any other person's fair, equitable, and/or proportionate share of any relief to which Alcoa may be entitled.  Any claims for damages by Alcoa should be reduced in accordance with those factors recognized under CERCLA § 113(f), 42 U.S.C. § 9613(f), for allocation of costs and damages among the parties by virtue of the "Gore Factors" and/or other equitable considerations.

### Seventh Affirmative Defense
### (*De Minimus* Harm)

60.     If any hazardous substances from the Alcan Defendants were or are present, which the Alcan Defendants deny, then the amount of, and/or the harm or relief attributable to, such hazardous substances is *de minimus*.

## Eighth Affirmative Defense
### (Divisibility of Harm)

61.    The Alcan Defendants are not liable, jointly and severally or otherwise, for any releases, harms, or costs that are divisible from any releases, harms, or costs allegedly attributable to Alcoa.

## Ninth Affirmative Defense
### (Cause)

62.    No act or omission of the Alcan Defendants or of any person or entity for whom the Alcan Defendants may be responsible was the legal cause of any release, threatened release, or any injuries or costs for which damages or other relief is sought in this action.

## Tenth Affirmative Defense
### (Proximate Cause)

63.    No act or omission of the Alcan Defendants or of any person or entity for whom the Alcan Defendants may be responsible was the proximate cause of any release, threatened release, or any injuries or costs for which damages or other relief is sought in this action.

## Eleventh Affirmative Defense
### (Independent, Intervening, and/or Superseding Cause)

64.    No act or omission of the Alcan Defendants was a substantial factor in bringing about any alleged injuries or damages, or  was a contributing cause thereof.  Any losses or damages for which damages or other relief is sought in this action were the result of independent, intervening, or superseding forces and/or actions or omissions of third parties over which the Alcan Defendants had no control, in which the Alcan Defendants did not in any way participate, and for which the Alcan Defendants are not liable.

**Twelfth Affirmative Defense**
**(Contributory and Comparative Negligence)**

65.     Any and all injury or damages were caused, in whole or in part, by the negligence, carelessness, lack of due care, fault, and/or failure to execute legal responsibilities of Alcoa and/or its predecessors in interest, agents, employees, contractors, departments, instrumentalities, tenants and/or third parties.  Accordingly, the Complaint for Declaratory Judgment, and each claim therein, is barred, in whole or in part, by Alcoa's and/or third parties' contributory or comparative faults.

**Thirteenth Affirmative Defense**
**(Actions Authorized by Law)**

66.     The Alcan Defendants are not liable to Alcoa because any of their acts and/or omissions which are the basis for Alcoa's claims were authorized by statute, regulation, ordinance, or other law.

**Fourteenth Affirmative Defense**
**(Compliance with Laws)**

67.     The Alcan Defendants are not liable to Alcoa because they acted reasonably and with due care and complied with all applicable statutes, regulations, ordinances, and/or other laws.

**Fifteenth Affirmative Defense**
**(Failure to Join Necessary and/or Indispensable Parties)**

68.     Alcoa's Complaint for Declaratory Judgment is barred by Alcoa's failure to join all necessary and/or indispensable parties needed for a just adjudication of the subject matter of this action.

21

## Sixteenth Affirmative Defense
### (Unclean Hands)

69.    Alcoa's Complaint for Declaratory Judgment, and each claim therein, is barred, in whole or in part, by the doctrine of unclean hands.

## Seventeenth Affirmative Defense
### (Undue Delay)

70.    Alcoa has, contrary to its legal and equitable obligations, failed to take effective action to abate environmental hazards at the Facility for many years, a delay that has  increased the costs of abatement, resulting in prejudice to the Alcan Defendants.  Given this delay on the part of Alcoa, an award of equitable injunctive relief against the Alcan Defendants would be inappropriate and inequitable.

## Eighteenth Affirmative Defense
### (Failure to Mitigate)

71.    The Complaint for Declaratory Judgment, and each claim therein, is barred, in whole or in party, by Alcoa's failure to mitigate any alleged damages.

## Nineteenth Affirmative Defense
### (Set-Off)

72.    The Alcan Defendants are entitled to an offset against any liability for the greater of (1) any amounts actually paid by any person for any of the costs and/or damages alleged in the Complaint for Declaratory Judgment, or (2) the equitable share of the liability of any person or entity that has received or hereafter receives a release from liability or a covenant not to sue with respect to any of the injuries, costs and damages alleged in the Complaint for Declaratory Judgment.

**Twentieth Affirmative Defense**
**(Contribution or Indemnity)**

73.     The Alcan Defendants are entitled, according to proof, to contribution or

indemnity from Alcoa or any other party pursuant to CERCLA and common law, and such

contribution or indemnity would offset or eliminate any liability of the Alcan Defendants.


**Twenty-First Affirmative Defense**
**(No Liability)**

74.     The Alcan Defendants are not liable, jointly and severally or otherwise, for relief

to which Alcoa may be entitled against any other party.

**Twenty-Second Affirmative Defense**
**(Aggravation of Harm)**

75.     Alcoa has caused any release or threatened release of any hazardous substances or

otherwise has aggravated the alleged harm or threat of exposure to any hazardous substances.

Any recovery by Alcoa for such harm should be barred or reduced accordingly.

**Twenty-Third Affirmative Defense**
**(Reservation of Rights)**

76.     The Complaint for Declaratory Judgment does not describe its claims or events

with sufficient particularity to allow the Alcan Defendants to ascertain what other affirmative

defenses may exist, and the Alcan Defendants therefore reserve the right to assert all affirmative

defenses which may pertain to the Complaint for Declaratory Judgment once the precise nature

of the claims is ascertained.  The Alcan Defendants also reserve the right to assert all other

defenses that arise in discovery, at trial or otherwise.

**Twenty-Fourth Affirmative Defense**
**(Reliance upon Other Parties' Defenses)**

77.    All affirmative defenses raised by any other party, to the extent applicable to the Alcan Defendants, are incorporated by reference as if fully set forth herein.

WHEREFORE, Alcan Rolled Products-Ravenswood LLC and Pechiney Cast Plate, Inc. respectfully request that this Court enter judgment in their favor, dismissing Plaintiff's claims and awarding the Alcan Defendants attorney's fees, costs and such other relief as this Court deems just and proper.

## COUNTERCLAIMS AND CROSS-CLAIMS

Alcan Rolled Products-Ravenswood LLC and Pechiney Cast Plate, Inc.(referred to hereinafter as the "Alcan Counter-Plaintiffs") hereby submit these Counterclaims against Alcoa Inc. and Cross-Claims against Century Aluminum Company and allege as follows:

### NATURE OF ACTION

1.    Pursuant to Rule 13 of the Federal Rules of Civil Procedure, and for its Counterclaims against Alcoa, the Alcan Counter-Plaintiffs seek to recover the costs they have incurred and will incur to remediate the hazardous substances found in soil, subsurface structures and groundwater at the cast aluminum plate manufacturing and sales facility located in Vernon, California (the "Alcoa Site"), which Alcoa owned and operated for more than 60 years.

2.    The Alcan Counter-Plaintiffs have therefore asserted a cost recovery claim under § 107 of the Comprehensive Environmental Response, Compensation and Liability Act, ("CERCLA"), 42 U.S.C. § 9607, a contribution claim under the Hazardous Substances Account Act, California Health & Safety Code § 25363, subd. (e), and common law claims for equitable indemnity, nuisance, negligence and trespass.

3.     Pursuant to Rule 13(g) of the Federal Rules of Civil Procedure, and for its cross-claims against Defendant Century Aluminum Company, Pechiney Cast Plate, Inc., the current owner of the Alcoa Site, asserts claims for indemnification for all losses arising from, or otherwise related to, the presence of hazardous substances in soil, subsurface structures and/or groundwater at the Alcoa Site, based on the terms of the Stock and Asset Purchase Agreement, dated July 26, 1999, and the Vernon Indemnification Agreement, dated September 20, 1999.

### THE PARTIES

4.     Upon information and belief, Alcoa Inc. ("Alcoa") is a Pennsylvania corporation with corporate offices located at 201 Isabella Street, Pittsburgh, Pennsylvania 15212 which are referred to by Alcoa as the "Alcoa Corporate Center."

5.     Alcan Rolled Products–Ravenswood LLC ("Alcan Rolled Products") is a Delaware limited liability company with its principal place of business at Century Road, P.O. Box 68, Ravenswood, West Virginia 26164.

6.     Pechiney Cast Plate, Inc. ("Pechiney Cast Plate") is a Delaware corporation with offices at 3200 Fruitland Avenue, Vernon, California 90058.

7.     Upon information and belief, Century Aluminum Company ("Century") is a Delaware corporation, with its principal place of business at 2511 Garden Road, Monterey, California 93940.

### JURISDICTION AND VENUE

8.     The Alcan Counter-Plaintiffs' counterclaims against Alcoa arise in part under CERCLA, a federal statute, and jurisdiction therefore exists under 28 U.S.C. § 1331. Jurisdiction also exists under 28 U.S.C. § 1332, as there is complete diversity of citizenship between Alcoa, and the Alcan Counter-Plaintiffs, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

9.      Jurisdiction exists under 28 U.S.C. § 1367 for the Alcan Counter-Plaintiffs' cross-claims against Century for indemnity because these cross-claims are so related to the claims asserted in the action within the original jurisdiction of the Court that they form part of the same case or controversy under Article III of the United States Constitution.

10.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b).

## FACTS

11.     The Alcoa Site was owned and operated by Alcoa as an aluminum cast plate manufacturing plant and sales office from 1937 to 1998.  On December 22, 1998, Alcoa entered into an agreement to sell the Alcoa Site to Century.

12.     Upon information and belief, Alcoa used various chemicals in its manufacturing operations at the Alcoa Site, including but not limited to polychlorinated biphenyls ("PCBs"), trichloroethene ("TCE"), and Stoddard solvent.  These and other chemicals are now present in the soil, subsurface structures and/or the groundwater at the Alcoa Site.

13.     Upon information and belief, Alcoa caused or contributed to the spilling, leaking, disposal and release of PCBs, TCE, Stoddard solvents and other hazardous substances into the soil, subsurface structures, and/or groundwater during the more than 60 years that it owned and operated the Alcoa Site.

14.     In 1998, Alcoa conducted an environmental investigation of the conditions of the site in anticipation of the sale of the Alcoa Site to Century.  This investigation confirmed the presence of PCBs, Stoddard solvents, TCE and other hazardous substances in the soil, subsurface structures and/or groundwater at the Alcoa Site.

15.     Century purchased the Alcoa Site from Alcoa on December 22, 1998. Approximately seven months later, Century entered into an agreement, dated July 26, 1999, to sell the shares of the entity that owned the Alcoa Site, Century Cast Plate, Inc., to Pechiney

Rolled Products.  At the closing of the transaction on September 20, 1999, Century Cast Plate

Inc. became a subsidiary of Pechiney Rolled Products.

16.    On October 13, 1999, the corporate name of Century Cast Plate Inc. was changed

to Pechiney Cast Plate, Inc.

17.    On September 5, 2005, Pechiney Rolled Products was renamed as Alcan Rolled

Products-Ravenswood, LLC.

18.    Pechiney Cast Plate operated the Alcoa Site until approximately January 31,

2006.

19.    During the time when Pechiney Cast Plate operated the Alcoa Site, PCBs, TCE

and Stoddard solvents were not used at the Alcoa Site.

20.    The City of Vernon Environmental Health Department has been delegated

authority to act on behalf of the State of California in environmental matters as a Certified

Unified Program Agency ("CUPA"), Cal. Health & Safety Code, ch. 6-11, §§ 25404-25404.8

(2006); Cal. Code Regs. tit. 27 § 15100 et seq. (2006).

21.    Pursuant to the directive of the City of Vernon Environmental Health Department

and as required by applicable municipal ordinances, Pechiney Cast Plate conducted an

investigation of certain environmental conditions at the Alcoa Site.  This investigation confirmed

the presence of hazardous substances in soil, subsurface structures, and/or groundwater at the

Alcoa Site.

22.    On March 28, 2006, the City of Vernon Environmental Health Department

directed Pechiney Cast Plate to comply with Hazardous Materials Monitoring Ordinance No.

961, Sections 13.66, 13.67 and 13.68 by, among other things, providing a closure work plan that

in part obligated Pechiney Cast Plate to document the necessary steps to address the

contamination that might be present at the Alcoa Site. The City of Vernon Environmental Health Department acknowledged that the "ongoing environmental assessment work currently being conducted by Geomatrix will fulfill many of the requirements for a Certificate of Closure" as required by the applicable municipal ordinance. Geomatrix is the environmental consultant that has conducted the environmental investigation and assessment of the Alcoa Site on behalf of Pechiney Cast Plate.

23.      On July 26, 2006, Lewis Pozzebon of the City of Vernon Environmental Health Department issued an order directing Pechiney Cast Plate to take certain actions necessary to ensure that the Alcoa Site will be in compliance with certain municipal environmental ordinances, including but not necessarily limited to, Section 13.67 of Hazardous Materials Monitoring Ordinance No. 961. The letter conveying the order states that "[c]ompliance with this order will bring Pechiney into accord with the Code of the City of Vernon, Section 13.67, which specifies that upon termination of hazardous material activity at the property, all hazardous materials and hazardous material residues shall be properly removed from equipment, structures, and premises."

24.      As part of its ongoing efforts to comply with the March 28, 2006 and July 26, 2006 orders, Pechiney Cast Plate, through its consultant, Geomatrix, will, in the near future, submit a Feasibility Study and Remedial Action Plan to evaluate potential remedial alternatives and to propose a remedy to address the contamination present in soil, subsurface structures and groundwater at the Alcoa Site.

25.      The California Department of Toxic Substances Control also requires approval and implementation of a Remedial Action Plan for the Alcoa Site. A Revised Scheduling Order issued by the Energy Resources Conservation and Development Commission of the State of

California on May 2, 2007 in connection with the application for certification for the Vernon power plant project by the City of Vernon, states "Regarding waste management, the Phase II Environmental Site Assessment indicates that site remediation is necessary to treat contaminated soils and groundwater at the Project site. The Department of Toxic Substances Control requires approval and implementation of a Remedial Action Plan, which could further delay the schedule."

## FIRST COUNTERCLAIM AGAINST ALCOA
### (Cost Recovery Under CERCLA § 107(a))

26.     The Alcan Counter-Plaintiffs incorporate and reallege the allegations set forth in paragraphs 1 - 25 of their Counterclaims and Cross-Claims as if fully set forth herein.

27.     CERCLA § 107(a)(2) imposes liability on any "person" who at the time of a disposal of any hazardous substances owned or operated any facility at which such hazardous substances were disposed of for, *inter alia*, all necessary response costs incurred by a person consistent with the National Contingency Plan, and damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing the same.

28.     The Alcoa Site is a facility as defined in CERCLA § 101((9).

29.     Alcoa is a "person" as defined by CERCLA § 101(21).

30.     Alcoa is a liable person within the meaning of CERCLA § 107(a), as the operator of the Alcoa Site at the time of disposal and/or release of hazardous substances.

31.     "Hazardous substances" as defined in CERCLA § 101(4) are present in the soil, subsurface structures, and/or groundwater at the Alcoa Site.

32.     As a direct result of Alcoa's operations at the Alcoa Site, there have been "releases" or threats of releases of the above-referenced "hazardous substances" into the environment at the Alcoa Site, as those terms are defined in CERCLA §§ 101(14) and 101(22).

33.    As a direct and proximate result of these releases, the Alcan Counter-Plaintiffs

have incurred necessary costs of response for the investigation, evaluation and remediation of the

environmental conditions at the Alcoa Site and will continue to incur such costs.

34.    All of the Alcan Counter-Plaintiffs' costs have been, and will continue to be,

incurred consistent with the National Contingency Plan.

35.    Alcoa is liable for response costs incurred to date by the Alcan Counter-Plaintiffs,

as well as future response costs incurred by the Alcan Counter-Plaintiffs which are consistent

with the National Contingency Plan.

## SECOND COUNTERCLAIM AGAINST ALCOA
### (Contribution Under the HSAA)

36.    The Alcan Counter-Plaintiffs incorporate and reallege the allegations set forth in

paragraphs 1 - 35 of their Counterclaims and Cross-Claims as if fully set forth herein.

37.    Alcoa is a liable party as defined in the California Health and Safety Code,

§ 25323.5 and is thereby liable in contribution and/or indemnity for response costs incurred by

the Alcan Counter-Plaintiffs pursuant to California Health and Safety Code, § 25363, subd. (e).

38.    The Alcoa Site is a "Site," as defined in the California Health and Safety Code,

§ 25323.9.

39.    A "release," as defined in the California Health and Safety Code, § 25320, has

occurred.

40.    The release was of a "hazardous substance," as defined in the California Health

and Safety Code, § 25316.

41.    The Alcan Counter-Plaintiffs have incurred, and will continue to incur, costs for

the investigation, evaluation and remediation of the environmental conditions of the Alcoa Site.

42.     All of the Alcan Counter-Plaintiffs' costs have been incurred consistent with the National Contingency Plan.

43.     As required by the City of Vernon Environmental Health Department and applicable municipal ordinances, in the interest of an expeditious cleanup and acting in good faith, the Alcan Counter-Plaintiffs have incurred, and will continue to incur, costs necessary to respond to the release or threatened release of hazardous substances from the Alcoa Site consistent with the National Contingency Plan in an amount to be proved at trial.

44.     Alcoa is liable to the Alcan Counter-Plaintiffs for contribution and/or indemnity under California Health and Safety Code §§ 25363, subd. (e) and 25323.5 for some or all amounts that the Alcan Counter-Plaintiffs have incurred and may, in the future, incur as the result of the release or threatened release of hazardous substances at the Alcoa Site.

## THIRD COUNTERCLAIM AGAINST ALCOA
### (Equitable Indemnity)

45.     The Alcan Counter-Plaintiffs incorporate and reallege the allegations set forth in paragraphs 1 - 44 of their Counterclaims and Cross-Claims as if fully set forth herein.

46.     As a result of Alcoa's improper use of the Alcoa Site, the release of hazardous substances, including but not limited to PCBs, TCE, and Stoddard solvents, has occurred, and the Alcan Counter-Plaintiffs have suffered and will continue to suffer liability, damages, costs and expenses for which they are entitled to indemnification from Alcoa.

## FOURTH COUNTERCLAIM AGAINST ALCOA
### (Nuisance)

47.     The Alcan Counter-Plaintiffs incorporate and reallege the allegations set forth in paragraphs 1 - 46 of their Counterclaims and Cross-Claims as if fully set forth herein.

48.     The release of hazardous substances, including but not limited to PCBs, TCE, and Stoddard solvents by Alcoa at the Alcoa Site, has unreasonably and substantially interfered with

and obstructed the Alcan Counter-Plaintiffs' free use and enjoyment of the property and other rights of private occupancy, thereby constituting a nuisance within the meaning of California Civil Code sections 3479 and 3481, which nuisance is continuing and abatable.

49.    Alcoa, as a prior owner and operator of the Alcoa Site, neglected to abate the continuing nuisance on the Alcoa Site.

50.    The Alcan Counter-Plaintiffs have not consented and do not consent to this nuisance.

51.    Alcoa should have known that the Alcan Counter-Plaintiffs, or any other future owner of the Alcoa Site, would not consent to the nuisance.

52.    As a direct and proximate result of the continuing nuisance, the Alcan Counter-Plaintiffs have been and will continue to be damaged.

## FIFTH COUNTERCLAIM AGAINST ALCOA
### (Negligence)

53.    The Alcan Counter-Plaintiffs incorporate and reallege the allegations set forth in paragraphs 1 - 52 of their Counterclaims and Cross-Claims as if fully set forth herein.

54.    As an operator of a Facility, Alcoa had a duty to manage and maintain the Alcoa Site in a safe condition and to prevent injury to the Alcoa Site so that future owners of the Alcoa Site could freely enjoy the use and possession of the Alcoa Site.

55.    Alcoa failed to exercise ordinary and reasonable care in the performance of those duties, in that, notwithstanding that it knew or should have known of the contaminated condition of the Alcoa Site, it did not prevent injury to the Alcoa Site or remediate the condition so that future owners of the Alcoa Site could freely enjoy the use and possession of the Alcoa Site.

56.     As a direct and proximate result of Alcoa's negligence, the Alcoa Site has been and continues to be contaminated, and the Alcan Counter-Plaintiffs have incurred and will continue to incur damages as described above.

## SIXTH COUNTERCLAIM AGAINST ALCOA
### (Trespass)

57.     The Alcan Counter-Plaintiffs incorporate and reallege the allegations set forth in paragraphs 1 - 56 of their Counterclaims and Cross-Claims as if fully set forth herein.

58.     The acts and/or omissions of Alcoa have caused hazardous substances, including but not limited to PCBs, TCE, and Stoddard solvents, to be deposited at and beneath the Alcoa Site in a manner that has caused significant property damage, and has failed to remove them at any time since the Alcan Counter-Plaintiffs acquired the Alcoa Site.

59.     Upon information and belief, the Alcan Counter-Plaintiffs allege that Alcoa knew or should have known that its acts and/or omissions would result in the release of hazardous substances, including but not limited to PCBs, TCE, and Stoddard solvents, at and beneath the Alcoa Site.

60.     The Alcan Counter-Plaintiffs have a possessory interest in the Alcoa Site.  The current contamination of the Alcoa Site constitutes a wrongful entry onto the Alcoa Site.

61.     As a result of the acts of continuing trespass caused by Alcoa on the Alcoa Site, the Alcan Counter-Plaintiffs have been damaged as alleged above.

## FIRST CROSS-CLAIM AGAINST CENTURY
### (Indemnification under the Pechiney Purchase Agreement)

62.     The Alcan Counter-Plaintiffs incorporate and reallege the allegations set forth in paragraphs 1 - 61 of their Counterclaims and Cross-Claims as if fully set forth herein.

63.     On July 26, 1999, Century sold the shares of the company that owned the Alcoa Site to Pechiney Rolled Products pursuant to a Stock and Asset Purchase Agreement (the "Pechiney Purchase Agreement"). Pechiney Rolled Products then changed the name of this company to Pechiney Cast Plate, Inc.

64.     Pechiney Rolled Products changed its name and began doing business as Alcan Rolled Products-Ravenswood LLC ("Alcan Rolled Products") effective September 9, 2005, after its parent Pechiney S.A. was acquired by Alcan Inc.

65.     Pursuant to Section 9.02(iii) of the Pechiney Purchase Agreement, Century must indemnify Pechiney Rolled Products and its affiliates, successors and assigns, which includes Alcan Rolled Products, for Losses that arise from environmental matters that are not disclosed in Section 3.16(a) of the Disclosure Schedule, including:

> (A) any Releases of Hazardous Material requiring an investigation or remediation under any applicable Environmental Law at, on, under, migrating from (but only to the extent migrating on or prior to the Closing) or to, or transported from (but only to the extent transported on or prior to the Closing) the Real Property. . .;
>
> (B) any Environmental Claim arising at any time that relates to the Sellers, Century CP, the Business or the Real Property on or prior to the Closing; or
>
> (C) any noncompliance with or violation of any applicable Environmental Law or Environmental Permit relating in any way to the Sellers or the Business on or prior to the Closing, or any continuation of such violation or non-compliance after the Closing.

66.     The Pechiney Purchase Agreement provided Alcan Rolled Products, as a successor to Pechiney Rolled Products, with a specific indemnity relating to PCB contamination that did not exclude Losses associated with environmental matters described in Section 3.16(a) of the Disclosure Schedule. Section 9.02(a)(xi)(D) provides that Century shall indemnify each Purchaser Indemnified Party for any loss arising from "Liabilities under Environmental Laws relating to or arising out of . . . (D) any on-site PCB contamination existing or occurring on or

before the closing at the Vernon Owned Real Property, or any off-site PCB contamination, whether existing or occurring before or after the Closing, resulting from or arising out of operations at the Vernon Owned Real Property on or before the Closing, in each case requiring investigation or remediation or other action under applicable Environmental Law." The Vernon Owned Real Property is the Alcoa Site.

67.    Century further agreed, in Section 3.16(d) of the Pechiney Purchase Agreement, to "hold the Purchaser harmless for, all Liabilities relating to or arising from . . . (iv) any on-site PCB contamination existing or occurring on or before the Closing at the Real Property, . . . in each case requiring investigation or remediation or other action under applicable Environmental Law; it being understood that for purposes of this clause 3.16(d)(iv), "Environmental Laws" include regulations adopted by the state of West Virginia or the State of California, as the case may be, or a subdivision thereof, after the Closing Date pursuant to statutes enacted before the Closing Date."

68.    Upon information and belief, releases of PCBs, TCE, Stoddard solvents and other Hazardous Materials occurred at the Alcoa Site during the period that Alcoa operated the Alcoa Site, and prior to Century's sale of the Alcoa Site to Pechiney Rolled Products. As a result of these releases, the City of Vernon Environmental Health Department has ordered that the Alcan Counter-Plaintiffs investigate and remediate contamination caused by these releases in accordance with environmental regulations that were in effect at the time of the closing.

69.    In compliance with these orders from the City of Vernon Environmental Health Department, the Alcan Counter-Plaintiffs have suffered losses and will continue to suffer losses that are covered by the indemnification provisions contained in the Pechiney Purchase Agreement and are therefore entitled to indemnification from Century.

70.    Pechiney Rolled Products and Pechiney Cast Plate provided Century with prompt written notice of their claims for indemnity pursuant to Section 9.04 of the Pechiney Purchase Agreement.  Because Century rejected these claims for indemnity, the Alcan Counter-Plaintiffs have been forced to prosecute this action.

**SECOND CROSS-CLAIM AGAINST CENTURY**
**(Indemnification Under the Vernon Indemnification Agreement)**

71.    The Alcan Counter-Plaintiffs incorporate and reallege the allegations set forth in paragraphs 1 - 70 of their Counterclaims and Cross-Claims as if fully set forth herein.

72.    On September 20, 1999, Century and Pechiney Rolled Products entered into a separate indemnification agreement (the "Vernon Indemnification Agreement"), under which Century must indemnify Alcan Rolled Products and its affiliates, successors and assigns for certain losses relating to environmental remediation, including losses resulting from Alcoa's failures to fulfill its duties and obligations under the December 22, 1998 Acquisition Agreement between Alcoa and Century (the "Century Acquisition Agreement").  Section 1.2 of the Vernon Indemnification Agreement provides as follows:

> Environmental Indemnification.  Notwithstanding anything to the contrary herein or in the Purchase Agreement, Century shall indemnify, defend and hold harmless the Purchaser Indemnified Parties from and against:
>
> (a)    any and all Losses incurred or required to be paid as a result of or arising out of:
>
> (i)    Hazardous Substances that are or were at, upon, in or under the Real Property prior to the Closing due to the actions or inactions of Alcoa or an Affiliate of Alcoa, the Cleanup of which either is required by a directive or order of a government agency or if the parties hereto agree that Cleanup is reasonably required pursuant to Applicable Law,
>
> . . . .

       (iii)    acts, omissions or any noncompliance with any Applicable Law by Alcoa or an Affiliate of Alcoa prior to the Closing if Cleanup of Hazardous Substances either is required by a directive or order of a governmental agency or if the parties hereto agree that Cleanup is reasonably required pursuant to Applicable Law; and

       (b)    any and all liabilities, obligations, responsibilities, losses, damages, deficiencies, costs of Cleanup, remediation or compliance, other costs and expenses, fines, penalties, restitutions and monetary sanctions sustained, incurred or required to be paid by any Purchaser Indemnified Party as a result of Alcoa's failure to complete any or all of the remedial actions contained in paragraphs (1) through (7) of Section 10.03(c) of the Alcoa Agreement.

73.    Upon information and belief, prior to "Closing" (as that term is defined in the Vernon Indemnification Agreement), PCBs, TCE, Stoddard solvents and other Hazardous Substances were present in soil, subsurface structures, and groundwater at the Alcoa Site due to the actions or inactions of Alcoa when Alcoa owned and operated the Alcoa Site.  Because PCBs, TCE, Stoddard solvents and other hazardous substances used by Alcoa are still present at the Alcoa Site, the Alcan Counter-Plaintiffs also allege, on information and belief, that Alcoa failed to complete the remedial actions required by Section 10.03(c) of the Century Purchase Agreement.

74.    Pechiney Cast Plate has been required to undertake the "Cleanup" (as that term is defined in the Vernon Indemnification Agreement) of these hazardous substances at the Alcoa Site pursuant to the directives and orders of the City of Vernon Environmental Health Department, a government agency, and is therefore entitled to indemnification from Century pursuant to the Vernon Indemnification Agreement.

75.    This Cleanup has resulted in a "Loss" to the Alcan Counter-Plaintiffs as that term is defined in the Vernon Indemnification Agreement.

76.    Pechiney Rolled Products and Pechiney Cast Plate provided Century with prompt written notice of their claims for indemnity pursuant to Section 1.2 of the Vernon

Indemnification Agreement.  Because Century rejected this demand, the Alcan Counter-Plaintiffs have been forced to prosecute this action.

## PRAYER FOR RELIEF

WHEREFORE, the Alcan Counter-Plaintiffs pray for judgment against Alcoa and Century as follows:

1.      For all response costs and other costs incurred by the Alcan Counter-Plaintiffs in connection with the environmental contamination of the Alcoa Site, including but not limited to past and future costs to investigate, assess, monitor and remediate environmental contamination at the Alcoa Site;

2.      For a declaratory judgment that Alcoa is liable under Section 107(a) of CERCLA for the response costs and other costs incurred by the Alcan Counter-Plaintiffs to investigate, assess, monitor and remediate the environmental contamination at the Alcoa Site;

3.      For a judgment ordering Century to indemnify and hold the Alcan Counter-Plaintiffs harmless with respect to all past and future liability, costs, losses, obligations or commitments arising out of the environmental contamination of the Alcoa Site;

4.      For the costs of the litigation, including reasonable attorney and expert witness fees; and

5.      For such relief as this Court deems just and proper.

ASHBY & GEDDES

/s/ *John G. Day*

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
Lauren E. Maguire (I.D. #4261)
500 Delaware Ave., 8th Floor
P.O. Box 1150
Wilmington, DE 19899
Telephone:  (302) 654-1888
Facsimile:  (302) 654-2067
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Defendants Alcan Rolled
Products-Ravenswood LLC, f/k/a Pechiney
Rolled Products, LLC, and Pechiney Cast
Plate, Inc.*

*Of Counsel:*

Richard P. Steinken
Shelley Smith
Steven M. Siros
JENNER & BLOCK LLP
330 N. Wabash Avenue
Chicago, IL 60611
Telephone: (312) 222-9350
Facsimile: (312) 840-7631

Dated:  July 23, 2007
182516.1