IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ALCOA INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-451-SLR |
| | ) | |
| ALCAN ROLLED PRODUCTS-RAVENSWOOD | ) | **TRIAL BY JURY** |
| LLC, f/k/a PECHINEY ROLLED PRODUCTS, LLC, | ) | **DEMANDED** |
| PECHINEY CAST PLATE, INC., and CENTURY | ) | |
| ALUMINUM COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |
| ALCAN ROLLED PRODUCTS-RAVENSWOOD | ) | |
| LLC, f/k/a PECHINEY ROLLED PRODUCTS, LLC, | ) | |
| and PECHINEY CAST PLATE, INC., | ) | |
| | ) | |
| Counter-Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ALCOA, INC. and CENTURY ALUMINUM | ) | |
| COMPANY, | ) | |
| | ) | |
| Counter-Defendants | ) | |
| CENTURY ALUMINUM COMPANY, | ) | |
| | ) | |
| Counterclaim and Cross-Claim Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ALCOA, INC., | ) | |
| | ) | |
| Counterclaim Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| ALCAN ROLLED PRODUCTS-RAVENSWOOD | ) | |
| LLC, f/k/a PECHINEY ROLLED PRODUCTS, LLC, | ) | |
| and PECHINEY CAST PLATE, INC., | ) | |
| | ) | |
| Cross-Claim Defendants. | ) | |

**ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIMS AND CROSS-CLAIMS OF CENTURY ALUMINUM COMPANY TO ALCOA, INC.'S COMPLAINT FOR <u>DECLARATORY JUDGMENT</u>**

Defendant Century Aluminum Company ("Century"), by and through its undersigned counsel, answers the allegations in Plaintiff's Complaint as follows:

<u>PARTIES</u>

1.      Century lacks sufficient knowledge or information to admit or deny the allegations contained in Paragraph 1 of the Complaint, and therefore denies them.

2.      Century admits the allegations of Paragraph 2.

3.      Century lacks sufficient knowledge or information to admit or deny the allegations contained in Paragraph 3 of the Complaint, and therefore denies them.

4.      Century lacks sufficient knowledge or information to admit or deny the allegations contained in Paragraph 4 of the Complaint, and therefore denies them.

5.      Century lacks sufficient knowledge or information to admit or deny the allegations contained in Paragraph 5 of the Complaint, and therefore denies them.

6.      Century lacks sufficient knowledge or information to admit or deny the allegations contained in Paragraph 6 of the Complaint, and therefore denies them.

7.      Century lacks sufficient knowledge or information to admit or deny the allegations contained in Paragraph 7 of the Complaint, and therefore denies them.

8.      Century lacks sufficient knowledge or information to admit or deny the allegations contained in Paragraph 8 of the Complaint, and therefore denies them.

JURISDICTION AND VENUE

9.     The allegations contained in Paragraph 9 constitute legal conclusions which do not require a response.  To the extent a response is required, Century denies the allegations in Paragraph 9.

10.     The allegations contained in Paragraph 10 constitute legal conclusions which do not require a response.  To the extent a response is required, Century denies the allegations in Paragraph 10.

FACTUAL BACKGROUND

11.     Century admits that Alcoa owned and operated a cast aluminum plate manufacturing and sales facility located in Vernon, California.  Except as expressly admitted, Century lacks sufficient knowledge or information to admit or deny the allegations contained in Paragraph 11 of the Complaint, and therefore denies them.

12.     Century lacks sufficient knowledge or information to admit or deny the allegations contained in Paragraph 12 of the Complaint, and therefore denies them.

13.     Century admits the allegations contained in Paragraph 13.

14.     Century denies the allegations contained in Paragraph 14 on the grounds that Plaintiff fails to set forth the precise or complete terms of the Agreement, which speaks for itself.

15.     Century denies the allegations of Paragraph 15.

16.     Century denies the allegations of Paragraph 16.

17.     Century admits the allegations of Paragraph 17.

18.     Century admits that Alcoa has provided Century with a copy of a letter that appears to be the document referenced in Paragraph 18.  Except as expressly admitted, Century denies the remaining allegations of Paragraph 18.

19.     Century denies the allegations of Paragraph 19.

20.     Century admits the allegations of Paragraph 20.

21.     Century admits that Century and Pechiney Rolled Products, LLC ("Pechiney Rolled Products") entered into an indemnification agreement dated September 20, 1999 ("Vernon Indemnification Agreement"), and that the agreement contained certain indemnification provisions.  Except as expressly admitted, Century denies the remaining allegations contained in Paragraph 21 on the grounds that Plaintiff fails to set forth the complete terms of the Agreement, which speaks for itself.

22.     Century lacks sufficient knowledge or information to admit or deny the allegations contained in Paragraph 22 of the Complaint, and therefore denies them.

23.     Century lacks sufficient knowledge or information to admit or deny the allegations contained in Paragraph 23 of the Complaint, and therefore denies them.

24.     Century lacks sufficient knowledge of Alcan's and/or its potential buyers' intent to admit or deny the allegations contained in Paragraph 24 of the Complaint, and therefore denies them.

25.     Century admits that Century received two letters from Pechiney Rolled Products and Pechiney Cast Plate, Inc. ("Pechiney Cast Plate"), dated April 17, 2006, in which Pechiney Rolled Products and Pechiney Cast Plate asserted claims against Century for indemnity under the Stock and Asset Purchase Agreement and the Vernon Indemnification Agreement.  Except as

expressly admitted, Century denies the remaining allegations of Paragraph 25 on the grounds that Plaintiff fails to set forth the precise terms of the letters, which speak for themselves.

26.     Century admits that Century received a letter from Pechiney Rolled Products and Pechiney Cast Plate, dated April 24, 2006, in which Pechiney Rolled Products and Pechiney Cast Plate requested certain information regarding the source of PCBs at the Facility.  Except as expressly admitted, Century denies the remaining allegations of Paragraph 26 on the grounds that Plaintiff fails to set forth the precise terms of the letter, which speaks for itself.

27.     Century admits that, on May 8, 2006, Century sent a letter to Alcoa notifying Alcoa that Century has claims against Alcoa for indemnity under the Acquisition Agreement. Except as expressly admitted, Century denies the remaining allegations of Paragraph 26 on the grounds that Plaintiff fails to set forth the precise terms of the letter, which speaks for itself.

28.     Century admits the allegations of Paragraph 28.

29.     Century lacks sufficient knowledge or information to admit or deny the allegations contained in Paragraph 29 of the Complaint, and therefore denies them.

30.     The allegations contained in Paragraph 30 of Plaintiff's Complaint constitute legal conclusions, which do not require a response.  To the extent a response is required, Century denies the allegations of Paragraph 30.

RESPONSE TO FIRST CLAIM FOR RELIEF

31.     Century hereby incorporates its responses to the allegations contained in Paragraphs 1-30 of the Complaint as if fully rewritten herein.

32.     Century denies the allegations of Paragraph 32 and avers that the Century Acquisition Agreement and the indemnity provisions contained therein speak for themselves.

33.     Century denies the allegations of Paragraph 33 and avers that the Century Acquisition Agreement and the indemnity provisions contained therein speak for themselves.

34.     Century admits that Alcoa received a "No Further Action" letter from the City of Vernon, dated September 20, 1999.  Except as expressly admitted, Century denies the remaining allegations of Paragraph 34.

35.     Century admits that it is seeking indemnification from Alcoa pursuant to the Century Acquisition Agreement.  Except as expressly admitted, Century denies the remaining allegations of Paragraph 35.

36.     Century admits that it is seeking indemnification from Alcoa pursuant to the Century Acquisition Agreement.  Except as expressly admitted, Century denies the allegations of Paragraph 36.

37.     Century admits that Alcoa is contending that a "controversy exists between Alcoa and Century concerning the nature and extent of Alcoa's obligations, if any, to Century." Century denies the remaining allegations in Paragraph 37.

<u>RESPONSE TO SECOND CLAIM FOR RELIEF</u>

38.     Century hereby incorporates its responses to the allegations contained in Paragraphs 1-37 of the Complaint as if fully rewritten herein.

39.     Century denies the allegations of Paragraph 39.

40.     Century denies the allegations contained in Paragraph 40 except to admit that Alcoa received a "No Further Action" letter from the City of Vernon, dated September 20, 1999. Except as expressly admitted, Century denies the remaining allegations of Paragraph 40.

6

41.     Century lacks sufficient knowledge of Alcan's intent to admit or deny the allegations contained in Paragraph 41 of the Complaint, and therefore denies them.

42.     Century lacks sufficient knowledge or information to admit or deny the allegations contained in Paragraph 42 of the Complaint, and therefore denies them.

43.     Century lacks sufficient knowledge or information to admit or deny the allegations contained in Paragraph 43 of the Complaint, and therefore denies them.

44.     Century lacks sufficient knowledge or information to admit or deny the allegations contained in Paragraph 44 of the Complaint, and therefore denies them.

45.     Century admits that Alcoa is contending that "a controversy exists between Alcoa, Century and Alcan concerning the nature and extent of Alcoa's obligations, if any, regarding the costs of development activities at the Facility."  Century denies the remaining allegations in Paragraph 45.

46.     Century admits that Alcoa's Complaint purports to seek a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.  Century denies that Alcoa is entitled to declaratory judgment in Alcoa's favor.  Except as expressly admitted, Century denies the remaining allegations of Paragraph 46.

47.     Century admits that Alcoa's Complaint purports to seek a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.  Century denies that Alcoa is entitled to declaratory judgment in Alcoa's favor.  Except as expressly admitted, Century denies the remaining allegations of Paragraph 47.

<u>RESPONSE TO THIRD CLAIM FOR RELIEF</u>

48.     Century hereby incorporates its responses to the allegations contained in Paragraphs 1-47 of the Complaint as if fully rewritten herein.

49.     Century denies the allegations of Paragraph 49.

50.     Century denies the allegations of Paragraph 50, and avers that all claims asserted by Century against Alcoa in this action are subject to Alcoa's indemnity obligations pursuant to the Century Acquisition Agreement.

51.     Century denies the allegations of Paragraph 51.

52.     The allegations in Paragraph 52 of Plaintiff's Complaint constitute legal conclusions which do not require a response.  To the extent a response is required, Century denies the allegations in Paragraph 52.

53.     Century admits that Alcoa is contending that "a controversy exists between Alcoa, Century concerning the nature and extent of Century's obligations to Alcoa."  Century denies the remaining allegations in Paragraph 53.

54.     In response to Plaintiff's prayer for relief, Century denies that Plaintiff is entitled to any of the relief sought in the Complaint, and Century requests that the Complaint be dismissed.

55.     Century denies all allegations of the Complaint not expressly responded to herein.

## **AFFIRMATIVE DEFENSES**

For its affirmative defenses, Century alleges as follows:

## FIRST AFFIRMATIVE DEFENSE

Plaintiff's claims are barred because they fail to state a claim upon which relief may be granted.

## SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by contractual limitations or the applicable statutes of limitation.

## THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims are barred due to a lack of ripeness of dispute.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the doctrine of estoppel.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by bad faith and the doctrine of unclean hands.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred to the extent that it failed to perform remediation obligations pursuant to Section 10.03 of the Vernon Acquisition Agreement.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred to the extent that it failed to comply with applicable laws and regulations.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred to the extent that it failed to mitigate costs, damages and losses.

DB02:6150972.1                                                                    065500.1001

<u>NINTH AFFIRMATIVE DEFENSE</u>

Plaintiff's claims are barred because Century did not own or operate any facility at which any hazardous substances were disposed of, at the time of the alleged disposal, pursuant to 42 U.S.C. § 9607(a)(2) or relevant state law counterparts to federal Superfund law.

<u>TENTH AFFIRMATIVE DEFENSE</u>

Plaintiff's claims are barred because Century did not cause the release or threat of release of a hazardous substance; the release or threat of release and the damages resulting therefrom were caused solely by an act or omission of a third party, pursuant to 42 U.S.C. § 9607(b)(3) or relevant state law counterparts to federal Superfund law.

<u>ELEVENTH AFFIRMATIVE DEFENSE</u>

Century asserts all other defenses that are, or that may become, available to it under Rules 8(c) and 12(b) of the Federal Rules of Civil Procedure.

<u>TWELFTH AFFIRMATIVE DEFENSE</u>

Century reserves the right to amend its Answer to supplement the affirmative defenses stated herein if, in the course of discovery, further affirmative defenses are revealed.

WHEREFORE, Century respectfully prays that all relief sought herein by Plaintiff be denied and such claims be dismissed with prejudice; that Century be awarded its costs, including reasonable attorneys' fees, in defending against this action; and for other such relief as the Court may deem proper.

DB02:6150972.1                                                                              065500.1001

## COUNTERCLAIMS AND CROSS-CLAIMS FOR DECLARATORY RELIEF

Century Aluminum Company hereby submits these counterclaims for declaratory relief against Alcoa, Inc. and cross-claims against Alcan Rolled Products-Ravenswood LLC and Pechiney Cast Plate, Inc. and alleges as follows:

### The Parties

1.      Century Aluminum Company ("Century") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in the State of California.

2.      Alcoa, Inc. ("Alcoa") is a corporation organized and existing under the laws of the State of Pennsylvania, with its principal place of business in the State of New York.

3.      Alcan Rolled Products-Ravenswood, LLC ("Alcan Rolled Products"), formerly known as Pechiney Rolled Products, LLC ("Pechiney Rolled Products") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in the State of California.

4.      Pechiney Cast Plate, Inc. ("Pechiney Cast Plate") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in the State of California.

### Jurisdiction and Venue

5.      This Court has subject matter jurisdiction over the counterclaims against Alcoa pursuant to 28 U.S.C. §§ 1331, 1332 and 1367.

6.      The Court has subject matter jurisdiction over the cross-claims against Alcan Rolled Products and Pechiney Cast Plate (hereinafter collectively referred to as the "Alcan

Defendants"), pursuant to 28 U.S.C. § 1367 because the cross-claims are so related to the claims asserted in the action within the original jurisdiction of the Court that they form part of the same case or controversy under Article III of the United States Constitution.

7.    Venue is proper in this district and division for the counterclaims against Alcoa, pursuant to 28 U.S.C. § 1391, because Alcoa has consented to the propriety of venue in this Court by filing its claim for declaratory relief in this Court, in response to which these counterclaims are asserted.

8.    Venue is proper in this district and division for the cross-claims against the Alcan Defendants pursuant to 28 U.S.C. § 1391(a).

9.    An actual controversy exists between the parties under 28 U.S.C. §§ 2201 and 2202.

**Statement of Facts**

10.    Alcoa operated the Vernon Facility as an aluminum cast plate and manufacturing plant and sales office from 1937 until 1998.

11.    Upon information and belief, Alcoa used various chemicals at the Vernon Facility, including but not limited to polychlorinated biphenyls ("PCBs"), trichoroethene ("TCE") and Stoddard solvent.  Those chemicals, among others, are currently present in the soil, subsurface structures and/or groundwater at the Vernon Facility.

12.    Upon information and belief, Alcoa spilled, leaked, disposed of or otherwise released the aforementioned chemicals into the soil, subsurface structures and/or groundwater of the Vernon Facility.

065500.1001

13.    An environmental investigation conducted by Alcoa in 1998 confirmed the presence of PCBs, Stoddard solvents, TCE and other hazardous substances in the soil, subsurface structures and/or groundwater at the Vernon Facility.

14.    On December 22, 1998, Alcoa agreed to sell the Vernon Facility to Century pursuant to an acquisition agreement (the "Century Acquisition Agreement").

15.    Under the Century Acquisition Agreement, Alcoa promised to "indemnify, defend and hold Century harmless from and against any all environmental liabilities" with respect to, among other things, any liabilities relating to contamination existing at the Vernon Facility on or before the date Century acquired the Vernon Facility from Alcoa to the extent (i) arising out of any "directives or orders" of a governmental agency, or (ii) arising out of any failure by Alcoa to comply with environmental legal requirements regarding the Vernon Facility.

16.    Alcoa also agreed to perform certain remediation activities under the Acquisition Agreement.  In particular, Sections 10.03(c)(1)-(4) and (6) of the Century Acquisition Agreement required Alcoa to remediate certain hazardous substances, to the levels that would enable Alcoa to secure from an authorized governmental agency a "no further action" ("NFA") letter.  Such obligations are independent of Alcoa's obligation to defend and indemnify Century against liabilities relating to contamination existing at the Vernon Facility on or before the date Century acquired the Vernon Facility from Alcoa to the extent (i) arising out of any "directives or orders" of a governmental agency, or (ii) arising out of any failure by Alcoa to comply with environmental legal requirements regarding the Vernon Facility.

17.    On September 2, 1999, the City of Vernon issued the NFA letter to Alcoa, in which the City concluded that, at that time, no further remediation action was required.

18.    On July 26, 1999, after having owned the Vernon Facility for a period of seven months, Century entered into a Stock and Asset Purchase Agreement with Pechiney Rolled

Products ("Stock and Asset Purchase Agreement"), pursuant to which, *inter alia*, Century sold the shares of Century Cast Plate, Inc. ("Century Cast Plate") to Pechiney Rolled Products. Thereafter, Century Cast Plate was renamed Pechiney Cast Plate.

19.     Century and Pechiney Rolled Products also entered into a separate indemnity agreement (the "Vernon Indemnification Agreement"), relating to the transfer of the Vernon Facility and under which Century agreed to indemnify Pechiney Rolled Products to the same extent that Alcoa had agreed to indemnify Century with respect to historic environmental issues at the Vernon Facility.

20.     Subsequently, Alcan, Inc. acquired Pechiney, S.A., and on September 5, 2005, Pechiney Rolled Products was renamed as Alcan Rolled Products.  Alcan Rolled Products is a wholly-owned subsidiary of Alcan, Inc.

21.     In November 2005, Alcan Rolled Products decided to cease manufacturing operations at, and sell, the Vernon Facility.

22.     On March 20, 2006, Alcan Rolled Products and the City of Vernon executed a Stock and Asset Purchase Agreement under which the City of Vernon agreed to purchase the Vernon Facility.  Per the terms of that agreement, Alcan Rolled Products agreed to undertake certain activities to prepare the site for the City of Vernon's anticipated development plans for the property, including remediation activities relating to such activities.  Alcan Rolled Products and the City of Vernon agreed to mutually establish a remediation work plan sufficient to allow the City's Health Department to issue a certificate of closure.

23.     The City of Vernon Environmental Health Department is authorized to act on behalf of the State of California in environmental matters as a Certified Unified Program Agency ("CUPA"), Cal. Health & Safety Code, ch. 6-11, §§ 25404-25404.8 (2006); Cal. Code Regs. tit. 27 § 15100 *et seq.* (2006).

14

24.     Pursuant to that authority (under Sections 13.66, 13.67, and 13.68 of City of Vernon Ordinance No. 961), on March 28, 2006, the City of Vernon sent Alcan Rolled Products a letter, requiring, among other things, that Alcan Rolled Products prepare a closure work plan for the Vernon Facility.  The plan required, *inter alia*, sampling and testing protocols to determine the presence or absence of hazardous materials/wastes residues on equipment, structures and premises and remediation plans, if necessary.

25.     On July 26, 2006, the City of Vernon Health Department issued an order to Alcan Rolled Products mandating the cleanup at the Facility (the "Order").  The Order stated that it was "an official notice, ordering Pechiney" to perform the following actions, *inter alia*, at the Vernon Facility:   adequately remove any hazardous material and residue; properly remedy any hazardous material contamination from the subsurface structures, soil, or ground water at the site; and properly dispose of any hazardous waste generated by the clean-up, demolition or site remediation.

26.     The Order expressly superseded any prior decisions the City of Vernon had made with respect to site closure and remediation matters, stating as follows: "Compliance with this order will bring Pechiney into accord with the Code of the City of Vernon, Section 13.67, which specifies that upon termination of hazardous material activity at a property, all hazardous materials and hazardous material residues shall be properly removed from equipment, structures, and premises.  Please be advised that compliance with the Code of the City of Vernon, Section 13.67, which is part of Vernon Ordinance No. 961, is required, irrespective of any previous closure letters issued with respect to this property, to the extent that subsequently discovered information (as is the case here) affects any prior closure decision."

27.     The Order is a "directive or order" of a governmental agency.  The City of Vernon and the City of Vernon Health Department are governmental agencies.  The Order requires remediation of contaminants that existed at the Vernon Facility before Century acquired

the Vernon Facility.  The Order therefore triggers Alcoa's indemnity obligations to Century

regardless of any defenses Alcoa may have regarding the appropriateness of Alcan Rolled

Products' cleanup activities and costs, and regardless of whether Alcan Rolled Products'

activities at the site are deemed by the Court to be development, rather than remediation, costs.

With respect to such indemnity obligations, Alcoa has a fiduciary duty to defend Century against

any claims made by the Alcan Defendants, and to raise any defenses relating thereto.  Alcoa's

failure to do so is a *per se* breach of its indemnity obligation owing to Century.

### FIRST COUNTERCLAIM  AGAINST ALCOA
**(Alcoa Is Contractually Obligated to Defend and Indemnify Century)**

28.    Century repeats and realleges paragraphs 1-27 above as if fully set forth herein.

29.    Century brings this cause of action pursuant to the Declaratory Judgment Act, 28

U.S.C. § 2201 *et seq.*, to obtain a declaration of its rights and interests under the agreement with

Alcoa.

30.    As set forth above, an actual, substantial, legal controversy has arisen and now

exists between Century and Alcoa as to their respective rights and duties under the Century

Acquisition Agreement.

31.    As specified in Section 10.03 of the Century Acquisition Agreement, Alcoa

agrees to indemnify Century for certain Environmental Losses with respect to hazardous

substances located at the Vernon Facility prior to closing of the Century Acquisition Agreement,

the cleanup of which is "required by a directive or order of a governmental agency or if the

parties hereto agree that Cleanup is reasonably required pursuant to Applicable Law."

32.    The City of Vernon Health Department issued the Order requiring various

remediation activities at the Vernon Facility.

33.     The City of Vernon Health Department is a governmental agency, and its cleanup Order regarding hazardous substances located at the Vernon Facility (which hazardous substances all came to be present at the site during Aloca's ownership and operation of the Vernon Facility) therefore triggers Alcoa's obligation to indemnify and defend Century for liabilities associated with Alcan Rolled Products' remedial activities at the site.

34.     The Order also triggers Alcoa's obligation to indemnify Century for "reasonable attorneys' fees" and "costs and expenses," as provided in Article 12 of the Century Acquisition Agreement, in connection with Century's defense in this matter and its pursuit of indemnity rights owed, but rejected, by Alcoa.

35.     This Court has the power to adjudicate the rights of the parties with respect to this controversy, and the issuance of declaratory relief will help resolve the legal relations at issue between the parties and will afford them relief from the uncertainties giving rise to their present disputes. This Court should therefore grant declaratory relief under 28 U.S.C. § 2201 and hold that Alcoa must indemnify and defend Century for and against any and all liabilities, costs and expenses arising out of remedial activities required under governmental orders or directives issued with respect to the Vernon Facility.

## SECOND COUNTERCLAIM AGAINST ALCOA
### (Alcoa's Failure to Adequately Remediate the Soil, Subsurface Structures and/or Groundwater Obligates It to Defend and Indemnify Century)

36.     Century repeats and realleges paragraphs 1-35 above as if fully set forth herein.

37.     Century brings this cause of action pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, to obtain a declaration of its rights and interests under the agreement with Alcoa.

DB02:6150972.1                                                    065500.1001

38.    As set forth above, an actual, substantial, legal controversy has arisen and now exists between Century and Alcoa as to their respective rights and duties under the Century Acquisition Agreement.

39.    As specified in Section 10.03(d) of the Century Acquisition Agreement, Alcoa agrees to indemnify Century for "any and all liabilities, obligations, responsibilities, losses, damages, deficiencies, costs of Cleanup, remediation or compliance, other costs and expenses, fines, penalties, restitutions and monetary sanctions sustained, incurred or required to be paid by [Century] as a result of [Alcoa's] failure to complete any or all of the items listed in Section 10.03(c)."

40.    Under Section 10.03(c), Alcoa is obligated to complete certain remedial actions, including, *inter alia*, investigation and cleanup of all releases of PCBs, VOCs, TPH and arsenic at specified locations at the Vernon Facility.

41.    Alcoa failed to adequately perform the remedial actions required under Section 10.03(a) of the Century Acquisition Agreement, as evidenced by the City of Vernon's Order in which it stated that "subsequently discovered information" required compliance with the Code of the City of Vernon, Section 13.67, "irrespective of any previous closure letters issued with respect to this property."

42.    Alcoa's failure to adequately perform those remedial actions obligates Alcoa to defend and indemnify Century for "any and all liabilities, obligations, responsibilities, losses, damages, deficiencies, costs of Cleanup, remediation or compliance, other costs and expenses, fines, penalties, restitutions and monetary sanctions sustained," pursuant to Section 10.03(d) of the Century Acquisition Agreement.

43.    This Court has the power to adjudicate the rights of the parties with respect to this controversy, and the issuance of declaratory relief will help resolve the legal relations at issue

between the parties and will afford them relief from the uncertainties giving rise to their present disputes. This Court should therefore grant declaratory relief under 28 U.S.C. § 2201 and hold that Alcoa must indemnify and defend Century for and against any and all liabilities arising out of Alcoa's failure to adequately perform remedial actions specified in Section 10.03(c) of the Century Acquisition Agreement.

**THIRD COUNTERCLAIM AGAINST ALCOA**
**(Century Is Not Liable For Response Costs Under 42 U.S.C. § 9607 and 42 U.S.C. § 9613**
**(CERCLA) and Its State Law Counterparts)**

44.      Century repeats and realleges paragraphs 1-43 above as if fully set forth herein.

45.      Century brings this cause of action pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, to obtain a declaration of its rights and interests under the agreement with Alcoa.

46.      As set forth above, an actual, substantial, legal controversy has arisen and now exists between Century and Alcoa as to their respective rights and duties under the Century Acquisition Agreement.

47.      Alcoa was the owner of the Vernon Facility within the meaning of Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), during times when hazardous substances were released and/or disposed of at the Vernon Facility.

48.      Alcoa was the operator of the Vernon Facility, within the meaning of Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), during times when hazardous substances were released and/or disposed of at the Vernon Facility, because Alcoa managed, directed or otherwise conducted operations, including operations specifically related to the acquisition, storage, use and disposal (including leakage) of hazardous substances.

49.      Alcoa arranged for the disposal or treatment of hazardous substances at the Vernon Facility, within the meaning of Section 107(a) of CERCLA, 42 U.S.C. § 9607(a),

19

because Alcoa, by contract, agreement or otherwise, arranged for disposal or treatment of hazardous substances owned or possessed by Alcoa at the Vernon Facility; and/or Alcoa owned and supplied raw materials containing hazardous substances for use in production at the Vernon Facility.  At the time hazardous substances were released, Alcoa owned or controlled the work done at the Vernon Facility, the generation of hazardous substances was inherent in the production process conducted at the Vernon Facility.

50.     Section 107(a)(4)(B) of CERCLA, 42 U.S.C. § 9607(a)(4)(B), provides that any "[c]overed persons. . . shall be liable for . . . any other necessary costs of response incurred by any other person consistent with the national contingency plan."

51.     Alcoa is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

52.     The Vernon Facility is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

53.     During Alcoa's ownership of the Vernon Facility, releases or threatened releases of hazardous substances into the environment occurred at the Vernon Facility within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22).

54.     Century acquired ownership of the Vernon Facility after the release and/or disposal of hazardous substances occurred at the Vernon Facility.

55.     No release of hazardous substances into the soil or groundwater occurred at the Vernon Facility during Century's interim ownership or operation of the Vernon Facility.

56.     Because Century did not own the Vernon Facility at the time of the release and/or disposal of any hazardous substances at the site, Century is not a liable party within the meaning of 42 U.S.C. § 9607(a) and its state law counterparts.

57.    This Court has the power to adjudicate the rights of the parties with respect to this controversy, and the issuance of declaratory relief will help resolve the legal relations at issue between the parties and will afford them relief from the uncertainties giving rise to their present disputes.  This Court should therefore grant declaratory relief under 28 U.S.C. § 2201 and hold that Century is not jointly and severally liable for cleanup of the hazardous substances under 42 U.S.C. § 9607 and its state law counterparts, and that Alcoa is jointly and severally liable for cleanup of the hazardous substances under 42 U.S.C. § 9607 or, in the alternative, that Alcoa and/or the Alcan Defendants are subject to a *pro rata* allocation of up to one-hundred percent of the cleanup costs at the site under 42 U.S.C. § 9613(f).  Century further requests that the Court award Century such further relief as this Court may deem just and proper.

### FIRST CROSS-CLAIM AGAINST THE ALCAN DEFENDANTS
**(Century Is Not Liable for Development Costs at the Vernon Facility under the Stock and Asset Purchase Agreement)**

58.    Century repeats and realleges paragraphs 1-57 above as if fully set forth herein.

59.    Century brings this cause of action pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, to obtain a declaration of its rights and interests under the agreement with the Alcan Defendants.

60.    As set forth above, an actual, substantial, legal controversy has arisen and now exists between Century and the Alcan Defendants as to their respective rights and duties under the Stock and Asset Purchase Agreement.

61.    Under Section 9.05 of the Stock and Asset Purchase Agreement, the Alcan Defendants are obligated to "mitigate to the extent practicable, any environmental Loss for which indemnification is claimed."  The Alcan Defendants are further obligated to consult with Century "with a view to determining what Remedial Action, if any, is required, and any

Remedial Action and any compliance activities shall be designed to assure the most cost effective action possible, consistent with applicable Environmental Laws."

62.    The Alcan Defendants have performed and intend to perform various development activities at the Vernon Facility, including demolition, excavation and construction work on the site.

63.    The Alcan Defendants' development activities have disturbed and will disturb soil and buildings at the Vernon Facility, which the Alcan Defendants have alleged have caused them to perform remediation activities in respect of hazardous substances present at the Vernon Facility prior to Century's seven-month ownership of the Vernon Facility.

64.    The Alcan Defendants have breached their contractual obligation to mitigate remedial costs and to confer with Century in advance of performing any remediation at the Vernon Facility, and Century has been prejudiced thereby.

65.    In addition, pursuant to Section 9.05 of the Stock and Asset Purchase Agreement, the Alcan Defendants are not entitled to indemnification unless, among other limitations set forth in the agreement, the remediation arises out of an investigation that is required by applicable environmental laws.  Except as otherwise provided in the Order, the Alcan Defendants' investigations at the Vernon Facility were not required by applicable environmental laws.

66.    In addition, Century's agreement to indemnify the Alcan Defendants pursuant to Section 9.02(a)(xi)(D) of the Stock and Asset Purchase Agreement in respect of PCB contamination at the Vernon Facility is not triggered unless, in addition to other conditions and limitations set forth in the agreement, the contamination results from or arises out of operations at the Vernon Facility "in each case requiring investigation or remediation or other action under applicable Environmental Laws."  Except as otherwise provided in the Order, the Alcan

Defendants' investigations, remediation and other actions regarding PCBs at the Vernon Facility were not required under applicable environmental laws.

67.     In addition, Century has no obligation to indemnify the Alcan Defendants with respect to any remedial costs and expenses otherwise eligible for reimbursement under the indemnity provisions of the Stock and Asset Purchase Agreement unless and until the aggregate amount for certain losses, including those sought by the Alcan Defendants in their Cross-Complaint, exceeds $2,000,000.  The Alcan Defendants have not alleged that they have incurred reimbursable costs exceeding $2,000,000.

68.     This Court has the power to adjudicate the rights of the parties with respect to this controversy, and the issuance of declaratory relief will help resolve the legal relations at issue between the parties and will afford them relief from the uncertainties giving rise to their present disputes.  This Court should therefore grant declaratory relief under 28 U.S.C. § 2201 and hold that Century has no liability to the Alcan Defendants under the Stock and Asset Purchase Agreement for the costs of the Alcan Defendants' development activities at the Vernon Facility, under CERCLA and its state law counterparts, or otherwise.

### SECOND CROSS-CLAIM AGAINST THE ALCAN DEFENDANTS
**(Century Is Not Liable for Development Costs at the Vernon Facility under the Vernon Indemnification Agreement)**

69.     Century repeats and realleges paragraphs 1-68 above as if fully set forth herein.

70.     Century brings this cause of action pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, to obtain a declaration of its rights and interests under the agreement with the Alcan Defendants.

71.     As set forth above, an actual, substantial, legal controversy has arisen and now exists between Century and the Alcan Defendants as to their respective rights and duties under the Vernon Indemnification Agreement.

72.     As specified in Section 1.2(a)(i) of the Vernon Indemnification Agreement, Century agrees to indemnify the Alcan Defendants for certain Environmental Losses to the same extent Alcoa is obligated to indemnify Century.

73.     If Alcoa is not obligated to indemnify Century, pursuant to the Century Acquisition Agreement, for costs associated with the Alcan Defendants' activities at the Vernon Facility, Century is likewise not obligated to indemnify the Alcan Defendants pursuant to the Vernon Indemnification Agreement.

74.     This Court has the power to adjudicate the rights of the parties with respect to this controversy, and the issuance of declaratory relief will help resolve the legal relations at issue between the parties and will afford them relief from the uncertainties giving rise to their present disputes.  This Court should therefore grant declaratory relief under 28 U.S.C. § 2201 and hold that Century has no liability to the Alcan Defendants under the Vernon Indemnification Agreement for the costs of the Alcan Defendants' development activities at the Vernon Facility, under CERCLA and its state law counterparts, or otherwise.

## PRAYER FOR RELIEF

WHEREFORE, Century prays for judgment against Alcoa and the Alcan Defendants as follows:

A.     For the entry of a declaratory judgment against Alcoa holding that Alcoa must defend and indemnify Century for and against all costs necessary to bring the Vernon Facility into compliance with the standards articulated in governmental orders or directives issued with respect to the Vernon Facility;

B.     For the entry of a declaratory judgment against Alcoa holding that Alcoa must defend and indemnify Century for and against all costs arising from Alcoa's failure to adequately remediate the Vernon Facility;

C.      For the entry of a declaratory judgment against Alcoa holding that Century is not liable for response costs under 42 U.S.C. § 9607 or 42 U.S.C. § 9613, or relevant state law counterparts to federal Superfund law;

D.      For the entry of a declaratory judgment against the Alcan Defendants holding that Century has no liability to the Alcan Defendants under the Stock and Asset Purchase Agreement, or under CERCLA and its state law counterparts, for the costs of the Alcan Defendants' development and other activities at the Vernon Facility;

E.      For the entry of a declaratory judgment against the Alcan Defendants holding that Century has no liability to the Alcan Defendants under the Vernon Indemnification Agreement, or under CERCLA and its state law counterparts, for the costs of the Alcan Defendants' development and other activities at the Vernon Facility;

F.      For the costs and expenses of this litigation, including all reasonable attorneys' fees and expert witness fees; and

G.      For such other relief as this Court deems just and proper.

### <u>DEMAND FOR A JURY TRIAL</u>

Century hereby demands a trial by jury on all issues so triable.

Dated:  July 31, 2007                    YOUNG CONAWAY STARGATT
                                            & TAYLOR, LLP


                                         */s/ Christian Douglas Wright*_____
                                         Christian Douglas Wright (No. 3554)
                                         Mary F. Dugan (No. 4704)
                                         The Brandywine Building
                                         1000 West Street, 17th Floor
                                         P.O. Box 391
                                         Wilmington, DE  19899-0391
                                         (302) 571-6600
                                         cwright@ycst.com
                                         mdugan@ycst.com

                                         OF COUNSEL:

                                         LATHAM & WATKINS LLP
                                         Robert M. Howard
                                         James R. Barrett
                                         Mark A. Miller
                                         Robyn L. Ginsberg
                                         555 Eleventh Street, N.W., Suite 1000
                                         Washington, D.C. 20004-1304
                                         (202) 637-2200

                                         *Attorneys for Century Aluminum Company*

DB02:6150972.1                                                           065500.1001