**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ALCOA INC., | ) | |
|                 Plaintiff, | ) | |
| v. | ) | C.A. No. 06-451-SLR |
| | ) | |
| ALCAN ROLLED PRODUCTS- | ) | |
| RAVENSWOOD LLC, PECHINEY CAST | ) | |
| PLATE, INC., and | ) | |
| CENTURY ALUMINUM COMPANY, | ) | |
| | ) | |
|                 Defendants. | ) | |
| _____ | ) | |
| ALCAN ROLLED PRODUCTS- | ) | |
| RAVENSWOOD LLC, | ) | |
| and PECHINEY CAST PLATE, INC., | ) | |
| | ) | **DEMAND FOR JURY TRIAL** |
|                 Counterclaim and - | ) | |
|                 Cross-Claim Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| ALCOA INC. | ) | |
|                 Counterclaim | ) | |
|                 Defendant, | ) | |
| and | ) | |
| | ) | |
| CENTURY ALUMINUM COMPANY, | ) | |
| | ) | |
|                 Cross-Claim-Defendant. | ) | |
| _____ | ) | |
| CENTURY ALUMINUM COMPANY, | ) | |
|                 Counterclaim and | ) | |
|                 Cross-Claim Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| ALCOA INC., | ) | |
|                 Counterclaim Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| ALCAN ROLLED PRODUCTS- | ) | |
| RAVENSWOOD LLC, and PECHINEY | ) | |
| CAST PLATE, INC., | ) | |
| | ) | |
|                 Cross-Claim Defendants. | ) | |

**ANSWER AND AFFIRMATIVE DEFENSES OF ALCAN ROLLED PRODUCTS-**
**RAVENSWOOD LLC AND PECHINEY CAST PLATE, INC.**
**TO CENTURY ALUMINUM COMPANY'S CROSS-CLAIMS AND COUNTERCLAIMS**

Alcan Rolled Products-Ravenswood LLC and Pechiney Cast Plate, Inc. (the "Alcan Parties") hereby submit their Answers and Affirmative Defenses in response to the Cross-Claims filed against the Alcan Parties by Century Aluminum Company ("Century") on July 31, 2007 and to the Counterclaims for Declaratory Relief filed against the Alcan Parties by Century on August 13, 2007.

<u>CROSS-CLAIMS FOR DECLARATORY RELIEF AGAINST THE ALCAN PARTIES (FILED JULY 31, 2007)</u>

<u>PARTIES</u>

1.     Century Aluminum Company ("Century") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in the State of California.

**ANSWER:**  The Alcan Parties admit that Century is a Delaware corporation with its principal place of business in the State of California.

2.     Alcoa, Inc. ("Alcoa") is a corporation organized and existing under the laws of the State of Pennsylvania, with its principal place of business in the State of New York.

**ANSWER:**  The Alcan Parties admit that Alcoa is a Pennsylvania corporation.  The Alcan Parties are without knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 2, but answering further state that while the "Alcoa Global Center" is located in New York, the "Alcoa Corporate Center" is located in Pennsylvania. Further answering, the Alcan Parties note that Alcoa's brief in opposition to the Alcan Parties' motion to transfer venue states that Alcoa's "principal place of business is in the neighboring state of Pennsylvania,"  (D.I. 25 at 6), thereby contradicting the allegation in Paragraph 2 of Century's Counterclaims and Cross-Claims that Alcoa's principal place of business is in the State of New York.

3.    Alcan Rolled Products-Ravenswood LLC ("Alcan Rolled Products"), formerly known as Pechiney Rolled Products, LLC ("Pechiney Rolled Products") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in the State of California.

**ANSWER:** The Alcan Parties admit that Alcan Rolled Products-Ravenswood LLC

was formerly known as Pechiney Rolled Products, LLC.  The Alcan Parties deny that Alcan

Rolled Products-Ravenswood LLC is a corporation, but admit that it is a limited liability

company organized under the laws of Delaware.  The Alcan Parties deny the remaining

allegations set forth in Paragraph 3 of Century's Counterclaims and Cross-Claims.

4.    Pechiney Cast Plate, Inc. ("Pechiney Cast Plate") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in the State of California.

**ANSWER:** The Alcan Parties admit that Pechiney Cast Plate, Inc. is a Delaware

corporation.  The Alcan Parties deny the remaining allegations set forth in Paragraph 4 of

Century's Counterclaims and Cross-Claims.

## JURISDICTION AND VENUE

5.    This Court has subject matter jurisdiction over the counterclaims against Alcoa pursuant to 28 U.S.C. §§ 1331, 1332 and 1367.

**ANSWER:** The Alcan Parties admit the allegations set forth in Paragraph 5 of

Century's Counterclaims and Cross-Claims.

6.    The Court has subject matter jurisdiction over the cross-claims against Alcan Rolled Products and Pechiney Cast Plate (hereinafter collectively referred to as the "Alcan Defendants"), pursuant to 28 U.S.C. § 1367 because the cross-claims are so related to the claims asserted in the action within the original jurisdiction of the Court that they form part of the same case or controversy under Article III of the United States Constitution.

**ANSWER:** The Alcan Parties admit the allegations set forth in Paragraph 6 of

Century's Counterclaims and Cross-Claims.

7.      Venue is proper in this district and division for the counterclaims against Alcoa, pursuant to 28 U.S.C. § 1391, because Alcoa has consented to the propriety of venue in this Court by filing its claim for declaratory relief in this Court, in response to which these counterclaims are asserted.

**ANSWER:**  The Alcan Parties admit the allegations set forth in Paragraph 7 of

Century's Counterclaims and Cross-Claims.

8.      Venue is proper in this district and division for the cross-claims against the Alcan Defendants pursuant to 28 U.S.C. § 1391(a).

**ANSWER:**  The Alcan Parties admit the allegations set forth in Paragraph 8 of

Century's Counterclaims and Cross-Claims.

9.      An actual controversy exists between the parties under 28 U.S.C. §§ 2201 and 2202.

**ANSWER:**  The Alcan Parties admit the allegations set forth in Paragraph 9 of

Century's Counterclaims and Cross-Claims.

## STATEMENT OF FACTS

10.     Alcoa operated the Vernon Facility as an aluminum cast plate and manufacturing plant and sales office from 1937 until 1998.

**ANSWER:**  The Alcan Parties admit the allegations set forth in Paragraph 10 of

Century's Counterclaims and Cross-Claims.

11.     Upon information and belief, Alcoa used various chemicals at the Vernon Facility, including but not limited to polychlorinated biphenyls ("PCBs"), trichoroethene ("TCE") and Stoddard solvent.  Those chemicals, among others, are currently present in the soil, subsurface structures and/or groundwater at the Vernon Facility.

**ANSWER:**  Upon information and belief, the Alcan Parties admit the allegations set

forth in Paragraph 11 of Century's Counterclaims and Cross-Claims.

12.     Upon information and belief, Alcoa spilled, leaked, disposed of or otherwise released the aforementioned chemicals into the soil, subsurface structures and/or groundwater of the Vernon Facility.

**ANSWER:** Upon information and belief, the Alcan Parties admit that Alcoa caused or

contributed to the spilling, leaking, disposal and release of PCBs, TCE, Stoddard Solvents and

other hazardous substances into the soil, subsurface structures, and/or groundwater during the

time it owned and operated the Vernon Facility. The Alcan Parties deny the remaining

allegations set forth in Paragraph 12 of Century's Counterclaims and Cross-Claims.

13.     An environmental investigation conducted by Alcoa in 1998 confirmed the presence of PCBs, Stoddard solvents, TCE and other hazardous substances in the soil, subsurface structures and/or groundwater at the Vernon Facility.

**ANSWER:** The Alcan Parties admit the allegations set forth in Paragraph 13 of

Century's Counterclaims and Cross-Claims.

14.     On December 22, 1998, Alcoa agreed to sell the Vernon Facility to Century pursuant to an acquisition agreement (the "Century Acquisition Agreement").

**ANSWER:** The Alcan Parties admit the allegations set forth in Paragraph 14 of

Century's Counterclaims and Cross-Claims.

15.     Under the Century Acquisition Agreement, Alcoa promised to "indemnify, defend and hold Century harmless from and against any all environmental liabilities" with respect to, among other things, any liabilities relating to contamination existing at the Vernon Facility on or before the date Century acquired the Vernon Facility from Alcoa to the extent (i) arising out of any "directives or orders" of a governmental agency, or (ii) arising out of any failure by Alcoa to comply with environmental legal requirements regarding the Vernon Facility.

**ANSWER:** The Alcan Parties admit that Section 10.03(a) of the Century Acquisition

Agreement provides that "Seller will, subject to the limitations set forth in Section 12.06,

indemnify, defend and hold Buyer, Affiliates of Buyer and Buyer's lenders harmless from and

against any and all Environmental Liabilities." Further answering, the Alcan Parties admit that

Section 10.01(e) defines "Environmental Liabilities" to include "all Losses (as defined in

Article 12 below) incurred or required to be paid as a result of or arising out of: (i) Hazardous

Substances that are or were at, upon, in or under the Real Property prior to the Closing due to

the actions or inactions of Seller or an Affiliate of Seller, the Cleanup of which either is

required by a directive or order of a governmental agency" and "(iii) acts, omissions or any

noncompliance with any Applicable Law by Seller or an Affiliate of Seller prior to the Closing

if Cleanup of Hazardous Substances either is required by a directive or order of a governmental

agency . . ." The Alcan Parties deny the remaining allegations set forth in Paragraph 15 of

Century's Counterclaims and Cross-Claims.

      16.     Alcoa also agreed to perform certain remediation activities under the Acquisition
Agreement. In particular, Sections 10.03(c)(1)-(4) and (6) of the Century Acquisition Agreement
required Alcoa to remediate certain hazardous substances, to the levels that would enable Alcoa
to secure from an authorized governmental agency a "no further action" ("NFA") letter. Such
obligations are independent of Alcoa's obligation to defend and indemnify Century against
liabilities relating to contamination existing at the Vernon Facility on or before the date Century
acquired the Vernon Facility from Alcoa to the extent (i) arising out of an "directives or orders"
of a governmental agency, or (ii) arising out of any failure by Alcoa to comply with
environmental legal requirements regarding the Vernon Facility.

    **ANSWER:** The Alcan Parties admit that Sections 10.03(c)(1)-(4) and (6) of the

Century Acquisition Agreement provide as follows:

> Activities Assumed by Seller.  Seller is responsible for and will
> complete the remedial actions set forth below. With respect to the
> remedial activities set forth in Sections 10.03(c)(1)-(4) and (6),
> Seller will remediate to the levels required by an authorized
> governmental agency to obtain a "no further action" statement (or
> other equivalent approval). . . .
>
>     (1)    Cleanup of all Releases of TPH and VOC known or
> suspected at the Real Property arising out of Stoddard solvent system
> contamination and one gasoline underground storage tank, as more fully
> described in Seller's Phase I Assessment of the Real Property or the
> reports referenced therein;

(2)    Cleanup of all Releases of Hazardous Substances near storm water outfalls #6 and 7, as more fully described in Seller's Phase I Assessment of the Real Property, including without limitation additional investigation and characterization of the condition of the Real Property as necessary and appropriate;

(3)    Cleanup of all Releases of PCB, VOC and TPH at the former waste disposal pit sump, as more fully described in Seller's Phase I Assessment of the Real Property or the reports referenced therein;

(4)    Investigation and Cleanup, as required by Applicable Law, of all Releases of PCB, VOC, arsenic and TPH in the subsurface soils inside and outside the southwest area of Building 112A by the scalper and planer equipment, as more fully described in Seller's Phase I Assessment of the Real Property;

. . . .

(6)    Investigation, characterization, and as required by Applicable Law, Cleanup of PCB and metals in the sludge and in the soil adjacent to the recirculating hot water system south of building 104.

The Alcan Parties deny the remaining allegations set forth in Paragraph 16 of Century's

Counterclaims and Cross-Claims.

17.    On September 2, 1999, the City of Vernon issued the NFA letter to Alcoa, in which the City concluded that, at that time, no further remediation action was required.

**ANSWER:**  The Alcan Parties admit that Alcoa obtained a letter dated September 2, 1999 from the City of Vernon Environmental Health Department which noted that no further remedial action was required "based on the assumption that the information submitted in the documentation [provided by Alcoa] is complete and correct" and stated that "[f]urther review or determinations may be necessary if subsequent information, which significantly affects any decision, is found."  The Alcan Parties deny the remaining allegations set forth in Paragraph 17 of Century's Counterclaims and Cross-Claims.

18.    On July 26, 1999, after having owned the Vernon Facility for a period of seven months, Century entered into a Stock and Asset Purchase Agreement with Pechiney Rolled Products ("Stock and Asset Purchase Agreement"), pursuant to which, *inter alia*, Century sold the

shares of Century Cast Plate, Inc. ("Century Cast Plate") to Pechiney Rolled Products. Thereafter, Century Cast Plate was renamed Pechiney Cast Plate.

      **ANSWER:** The Alcan Parties admit the allegations set forth in Paragraph 18 of

Century's Counterclaims and Cross-Claims.

      19.    Century and Pechiney Rolled Products also entered into a separate indemnity agreement (the "Vernon Indemnification Agreement"), relating to the transfer of the Vernon Facility and under which Century agreed to indemnify Pechiney Rolled Products to the same extent that Alcoa had agreed to indemnify Century with respect to historical environmental issues at the Vernon Facility.

      **ANSWER:** The Alcan Parties admit that Century and Pechiney Rolled Products, LLC

entered into a separate indemnification agreement dated as of September 20, 1999 which

related to the transfer of the Vernon Facility under the Stock and Asset Purchase Agreement.

The Alcan Parties deny the remaining allegations set forth in Paragraph 19 of Century's

Counterclaims and Cross-Claims.

      20.    Subsequently, Alcan, Inc. acquired Pechiney, S.A., and on September 5, 2005, Pechiney Rolled Products was renamed as Alcan Rolled Products. Alcan Rolled Products is a wholly-owned subsidiary of Alcan Inc.

      **ANSWER:** The Alcan Parties admit the allegations set forth in Paragraph 20 of

Century's Counterclaims and Cross-Claims.

      21.    In November 2005, Alcan Rolled Products decided to cease manufacturing operations at, and sell, the Vernon Facility.

      **ANSWER:** The Alcan Parties deny the allegations set forth in Paragraph 21 of

Century's Counterclaims and Cross-Claims.

      22.    On March 20, 2006, Alcan Rolled Products and the City of Vernon executed a Stock and Asset Purchase Agreement under which the City of Vernon agreed to purchase the Vernon Facility. Per the terms of that agreement, Alcan Rolled Products agreed to undertake certain activities to prepare the site for the City of Vernon's anticipated development plans for the property, including remediation activities relating to such activities. Alcan Rolled Products and

8

the City of Vernon agreed to mutually establish a remediation work plan sufficient to allow the City's Health Department to issue a certification of closure.

> **ANSWER:** The Alcan Parties admit that on March 20, 2006, Pechiney Cast Plate, Inc. and the City of Vernon entered into an Agreement for Purchase of Real Estate, under which the City of Vernon agreed to purchase the Vernon Facility. The Alcan Parties further admit that Pechiney Cast Plate, Inc. has conducted and will continue to conduct demolition and excavation work at the Facility and, pursuant to directives and orders of the City of Vernon Environmental Health Department, has conducted and will continue to conduct environmental remediation. The Alcan Parties deny the remaining allegations set forth in Paragraph 22 of Century's Counterclaims and Cross-Claims.

23.     The City of Vernon Environmental Health Department is authorized to act on behalf of the State of California in environmental matters as a Certified Unified Program Agency ("CUPA"), Cal. Health & Safety Code, ch. 6-11, §§ 25404-25404.8 (2006); Cal. Code regs. Tit. 27 § 15100 *et seq.* (2006).

> **ANSWER:** The Alcan Parties admit that the City of Vernon Environmental Health Department is a Certified Unified Program Agency ("CUPA"), under Cal. Health & Safety Code, ch. 6-11, §§ 25404-25404.8 (2006); Cal. Code regs. Tit. 27 § 15100 *et seq.* (2006). Further answering, the Alcan Parties state that the remaining allegations set forth in Paragraph 23 of Century's Counterclaims and Cross-Claims set forth legal conclusions for the court to decide, but to the extent a response is necessary, the Alcan Parties admit these allegations.

24.     Pursuant to that authority (under Sections 13.66, 13.67, and 13.68 of City of Vernon Ordinance No. 961), on March 28, 2006, the City of Vernon sent Alcan Rolled Products a letter, requiring, among other things, that Alcan Rolled Products prepare a closure work plan for the Vernon Facility. The plan required, *inter alia*, sampling and testing protocols to determine the presence or absence of hazardous materials/wastes residues on equipment, structures and premises and remediation plans, if necessary.

**ANSWER:**  The Alcan Parties admit that on March 28, 2006, the City of Vernon

Environmental Health Department sent a letter to Pechiney Cast Plate, Inc. (not Alcan Rolled

Products) stating that the Department had received information that Pechiney Cast Plate had

discontinued its business at the Facility, and that, "As a Hazardous Materials Establishment, a

closure report is required as specified by the Hazardous Materials Monitoring Ordinance No.

961, Sections 13.66, 13.67 and 13.68 (attachment)."  Further answering, the Alcan Parties

admit that this letter also stated that, "This letter is an **Official Notice** to provide us with the

details of a closure work plan by April 25, 2006," and that an "acceptable closure work plan"

should include, among other things, "sampling and testing protocols to determine the presence

or absence of hazardous materials/wastes residues on equipment, structures and premises."

The Alcan Parties deny the remaining allegations contained in Paragraph 24 of Century's

Counterclaims and Cross-Claims.

25.    On July 26, 2006, the City of Vernon Health Department issued an order to Alcan
Rolled Products mandating the cleanup at the Facility (the "Order").  The Order stated that it was
"an official notice, ordering Pechiney" to perform the following actions, *inter alia*, at the Vernon
Facility: adequately remove any hazardous material and residue; properly remedy any hazardous
material contamination from the subsurface structures, soil, or ground water at the site; and
properly dispose of any hazardous waste generated by the clean-up, demolition or site
remediation.

**ANSWER:**    The Alcan Parties admit that on July 26, 2006, the City of Vernon Health

Department issued an order to Pechiney Cast Plate, Inc. mandating the clean-up at the Facility

(the "Order").  Further answering, the Alcan Parties admit that this Order stated that it was an

"official notice ordering Pechiney to perform the following actions relative to the property at

3200 Fruitland Avenue, Vernon" and that these actions included, "Adequately remove any

hazardous material;" "Adequately remove any hazardous materials residue;" "Properly remedy

any hazardous material contamination from the subsurface structures, soil, or ground water at

the site;" and "Properly dispose of any hazardous waste generated by the clean-up, demolition

or site remediation." The Alcan Parties deny the remaining allegations set forth in Paragraph

25 of Century's Counterclaims and Cross-Claims.

26.    The Order expressly superseded any prior decisions the City of Vernon had made
with respect to site closure and remediation matters, stating as follows: "Compliance with this
order will bring Pechiney into accord with the Code of the City of Vernon, Section 13.67, which
specifies that upon termination of hazardous material activity at a property, all hazardous
materials and hazardous material residues shall be properly removed from equipment, structures,
and premises. Please be advised that compliance with the Code of the City of Vernon, Section
13.67, which is part of Vernon Ordinance No. 961, is required, irrespective of any previous
closure letters issued with respect to this property, to the extent that subsequently discovered
information (as is the case here) affects any prior closure decision."

**ANSWER:** The Alcan Parties admit that the Order issued by the City of Vernon

Health Department on July 26, 2006 to Pechiney Cast Plate, Inc. contains the following

language: "Compliance with this order will bring Pechiney into accord with the Code of the

City of Vernon, Section 13.67, which specifies that upon termination of hazardous material

activity at a property, all hazardous materials and hazardous material residues shall be properly

removed from equipment, structures, and premises. Please be advised that compliance with the

Code of the City of Vernon, Section 13.67, which is part of Vernon Ordinance No. 961, is

required, irrespective of any previous closure letters issued with respect to this property, to the

extent that subsequently discovered information (as is the case here) affects any prior closure

decision." The Alcan Parties deny the remaining allegations set forth in Paragraph 26 of

Century's Counterclaims and Cross-Claims.

27.    The Order is a "directive or order" of a governmental agency. The City of
Vernon and the City of Vernon Health Department are governmental agencies. The Order
requires remediation of contaminants that existed at the Vernon Facility before Century acquired
the Vernon Facility. The Order therefore triggers Alcoa's indemnity obligations to Century
regardless of any defenses Alcoa may have regarding the appropriateness of Alcan Rolled
Products' cleanup activities and costs, and regardless of whether Alcan Rolled Products' activities
at the site are deemed by the Court to be development, rather than remediation, costs. With

respect to such indemnity obligations, Alcoa has a fiduciary duty to defend Century against any claims made by the Alcan Defendants, and to raise any defenses relating thereto.  Alcoa's failure to do so is a *per se* breach of its indemnity obligation owing to Century.

**ANSWER:** The Alcan Parties admit that the City of Vernon and the City of Vernon Health Department are governmental agencies, and that the July 26, 2006 Order of the City of Vernon Health Department is a "directive or order" of a governmental agency.  Upon information and belief, the Alcan Parties further admit that the contaminants the Order seeks remediation of existed at the Vernon Facility before Century acquired the Vernon Facility.  Further answering, the Alcan Parties state that the remaining allegations in Paragraph 27 of Century's Counterclaims and Cross-Claims set forth legal conclusions for the court to decide, but that to the extent a response is necessary, the Alcan Parties deny these allegations.

## FIRST COUNTERCLAIM AGAINST ALCOA
(Alcoa Is Contractually Obligated to Defend and Indemnify Century)

28-35.        The Alcan Parties will not respond to Century's First Counterclaim against Alcoa as it seeks no relief against them.

## SECOND COUNTERCLAIM AGAINST ALCOA
(Alcoa's Failure to Adequately Remediate the Soil, Subsurface Structures and/or Groundwater Obligates It to Defend and Indemnify Century)

36-43.        The Alcan Parties will not respond to Century's Second Counterclaim Against Alcoa as it seeks no relief against them.

## THIRD COUNTERCLAIM AGAINST ALCOA[1]
(Century is Not Liable For Response Costs Under 42 U.S.C. § 9607 and 42 U.S.C. § 9613 (CERCLA) and Its State Law Counterparts)

44.        Century repeats and realleges paragraphs 1-43 above as if fully set forth herein.

---

[1] Although this Counterclaim purports to be against Alcoa, the claims for relief incorporate the Alcan Parties.

**ANSWER:** The Alcan Parties incorporate herein by reference their answers to Paragraphs 1 through 43 of Century's Counterclaims and Cross-Claims as if set forth in their entirety.

45. Century brings this cause of action pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, to obtain a declaration of its rights and interests under the agreement with Alcoa.

**ANSWER:** The Alcan Parties admit that Century brings this cause of action pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.* The Alcan Parties deny the remaining allegations set forth in Paragraph 45 of Century's Counterclaims and Cross-Claims.

46. As set forth above, an actual, substantial, legal controversy has arisen and now exists between Century and Alcoa as to their respective rights and duties under the Century Acquisition Agreement.

**ANSWER:** The Alcan Parties admit that Century is contending that an actual, substantial, legal controversy has arisen and now exists between Century and the Alcan Parties as to their respective rights under the Stock and Purchase Agreement. The Alcan Parties deny the remaining allegations set forth in Paragraph 46 of Century's Counterclaims and Cross-Claims.

47. Alcoa was the owner of the Vernon Facility within the meaning of Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), during times when hazardous substances were released and/or disposed of at the Vernon Facility.

**ANSWER:** The Alcan Parties admit the allegations set forth in Paragraph 47 of Century's Counterclaims and Cross-Claims.

48. Alcoa was the operator of the Vernon Facility within the meaning of Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), during times when hazardous substances were released and/or disposed of at the Vernon Facility, because Alcoa managed, directed or otherwise conducted operations, including operations specifically related to the acquisition, storage, use and disposal (including leakage) of hazardous substances.

**ANSWER:** The Alcan Parties admit the allegations set forth in Paragraph 48 of Century's Counterclaims and Cross-Claims.

49.    Alcoa arranged for the disposal or treatment of hazardous substances at the Vernon Facility, within the meaning of Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), because Alcoa, by contract, agreement or otherwise, arranged for disposal or treatment of hazardous substances owned or possessed by Alcoa at the Vernon Facility; and/or Alcoa owned and supplied raw materials containing hazardous substances for use in production at the Vernon Facility.  At the time hazardous substances were released, Alcoa owned or controlled the work done at the Vernon Facility, the generation of hazardous substances was inherent in the production process conducted at the Vernon Facility.

**ANSWER:** The Alcan Parties lack sufficient knowledge or information to admit or deny the allegations set forth in Paragraph 49 of the Counterclaims and Cross-Claims, and therefore deny them.

50.    Section 107(a)(4)(B) of CERCLA, 42 U.S.C. § 9607(a)(4)(B), provides that any "[c]overed persons. . . shall be liable for . . . any other necessary costs of response incurred by any other person consistent with the national contingency plan."

**ANSWER:** The Alcan Parties admit the allegations set forth in Paragraph 50 of Century's Counterclaims and Cross-Claims.

51.    Alcoa is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

**ANSWER:** The Alcan Parties admit the allegations set forth in Paragraph 51 of Century's Counterclaims and Cross-Claims.

52.    The Vernon Facility is a "facility" within the meaning of Section 101(9) of CERLCA, 42 U.S.C. § 9601(9).

**ANSWER:** The Alcan Parties admit the allegations set forth in Paragraph 52 of Century's Counterclaims and Cross-Claims.

53.     During Alcoa's ownership of the Vernon Facility, releases or threatened releases of hazardous substances into the environment occurred at the Vernon Facility within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22).

**ANSWER:** The Alcan Parties admit the allegations set forth in Paragraph 53 of Century's Counterclaims and Cross-Claims.

54.     Century acquired ownership of the Vernon Facility after the release and/or disposal of hazardous substances occurred at the Vernon Facility.

**ANSWER:** The Alcan Parties admit that releases and/or disposals of hazardous substances occurred at the Vernon Facility before Century acquired ownership of the Facility. Further answering, the Alcan Parties lack sufficient knowledge or information to admit or deny that all the releases and/or disposals of hazardous substances at the Vernon Facility occurred at the Vernon Facility before Century acquired ownership of the Facility and therefore deny the remaining allegations set forth in Paragraph 54 of Century's Counterclaims and Cross-Claims.

55.     No release of hazardous substances into the soil or groundwater occurred at the Vernon Facility during Century's interim ownership or operation of the Vernon Facility.

**ANSWER:** The Alcan Parties lack sufficient knowledge or information to admit or deny the allegations set forth in Paragraph 55 of Century's Counterclaims and Cross-Claims, and therefore deny them.

56.     Because Century did not own the Vernon Facility at the time of the release and/or disposal of any hazardous substances at the site, Century is not a liable party within the meaning of 42 U.S.C. § 9607(a) and its state law counterparts.

**ANSWER:** The Alcan Parties lack sufficient knowledge or information to admit or deny the allegations set forth in Paragraph 56 of Century's Counterclaims and Cross-Claims, and therefore deny them.

57.     This Court has the power to adjudicate the rights of the parties with respect to this controversy, and the issuance of declaratory relief will help resolve the legal relations at issue

15

between the parties and will afford them relief from the uncertainties giving rise to their present disputes. This Court should therefore grant declaratory relief under 28 U.S.C. § 2201 and hold that Century is not jointly and severally liable for cleanup of the hazardous substances under 42 U.S.C. § 9607 and its state law counterparts, and that Alcoa is jointly and severally liable for cleanup of the hazardous substances under 42 U.S.C. § 9607 or, in the alternative, that Alcoa and/or the Alcan Defendants are subject to *pro rata* allocation of up to one-hundred percent of the cleanup costs at the site under 42 U.S.C. § 9613(f). Century further requests that the Court award Century such further relief as this Court may deem just and proper.

      **ANSWER:** The Alcan Parties admit that Century is contending that this Court has the

power to adjudicate the rights of the parties with respect to this controversy, and the issuance

of declaratory relief will help resolve the legal relations at issue between the parties and will

afford them relief from the uncertainties giving rise to their present disputes. The Alcan

Parties deny the remaining allegations set forth in Paragraph 57 of Century's Counterclaims

and Cross-Claims.

## FIRST CROSS-CLAIM AGAINST THE ALCAN DEFENDANTS
(Century Is Not Liable for Development Costs at the Vernon Facility under the Stock and Asset Purchase Agreement)

     58.    Century repeats and realleges paragraphs 1-57 above as if fully set forth herein.

      **ANSWER:** The Alcan Parties incorporate herein by reference their answers to

Paragraphs 1 through 57 of Century's Counterclaims and Cross-Claims as if set forth in their

entirety.

     59.    Century brings this cause of action pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, to obtain a declaration of its rights and interests under the agreement with the Alcan Parties.

      **ANSWER:** The Alcan Parties admit that Century brings this cause of action pursuant

to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.* The Alcan Parties deny the

remaining allegations set forth in Paragraph 59 of Century's Counterclaims and Cross-Claims.

60.     As set forth above, an actual, substantial, legal controversy has arisen and now exists between Century and the Alcan Defendants as to their respective rights and duties under the Stock and Asset Purchase Agreement.

**ANSWER:** The Alcan Parties admit that Century is contending that an actual,

substantial, legal controversy has arisen and now exists between Century and the Alcan Parties

as to their respective rights under the Stock and Purchase Agreement. The Alcan Parties deny

the remaining allegations set forth in Paragraph 60 of Century's Counterclaims and Cross-

Claims.

61.     Under Section 9.05 of the Stock and Asset Purchase Agreement, the Alcan Defendants are obligated to "mitigate to the extent practicable, any environmental Loss for which indemnification is claimed." The Alcan Defendants are further obligated to consult with Century "with a view to determining what Remedial Action, if any, is required, and any Remedial Action and any compliance activities shall be designed to assure the most cost effective action possible, consistent with applicable Environmental Laws."

**ANSWER:** The Alcan Parties admit that Section 9.05(a) of the Stock and Asset

Purchase Agreement provides that, "The Sellers and the Purchaser shall consult with a view to

determining what Remedial Action, if any is required, and any Remedial Action and any

compliance activities shall be designed to assure the most cost effective action possible,

consistent with applicable Environmental Laws," and that "The Purchaser shall mitigate to the

extent practicable, any environmental Loss for which indemnification is claimed. If the

Purchaser, by expenditure of money, reasonably can mitigate or otherwise reduce or eliminate

any environmental Loss for which indemnification otherwise would be claimed, the Purchaser

shall take such action and shall be entitled to prompt reimbursement from the Seller for such

expenditures and all related expenses." The Alcan Parties deny the remaining allegations set

forth in Paragraph 61 of Century's Counterclaims and Cross-Claims.

62.    The Alcan Defendants have performed and intend to perform various development activities at the Vernon Facility, including demolition, excavation and construction work on the site.

**ANSWER:**  The Alcan Parties admit that Pechiney Cast Plate, Inc. has conducted and will continue to conduct demolition and excavation work at the Vernon Facility, including environmental remediation work required to comply with the orders and directives issued by the City of Vernon Environmental Health Department.  The Alcan Parties deny the remaining allegations set forth in Paragraph 62 of Century's Counterclaims and Cross-Claims.

63.    The Alcan Defendants' development activities have disturbed and will disturb soil and buildings at the Vernon Facility, which the Alcan Defendants have alleged have caused them to perform remediation activities in respect of hazardous substances present at the Vernon Facility prior to Century's seven-month ownership of the Vernon Facility.

**ANSWER:**  The Alcan Parties admit that Pechiney Cast Plate, Inc. has conducted and will continue to conduct demolition and excavation work at the Vernon Facility, including environmental remediation work required to comply with the orders and directives issued by the City of Vernon Environmental Health Department.  The Alcan Parties deny the remaining allegations set forth in Paragraph 63 of Century's Counterclaims and Cross-Claims.

64.    The Alcan Defendants have breached their contractual obligation to mitigate remedial costs and to confer with Century in advance of performing any remediation at the Vernon Facility, and Century has been prejudiced thereby.

**ANSWER:**  The Alcan Parties deny the allegations set forth in Paragraph 64 of Century's Counterclaims and Cross-Claims.

65.    In addition, pursuant to Section 9.05 of the Stock and Asset Purchase Agreement, the Alcan Defendants are not entitled to indemnification unless, among other limitations set forth in the agreement, the remediation arises out of an investigation that is required by applicable environmental laws.  Except as otherwise provided in the Order, the Alcan Defendants' investigations at the Vernon Facility were not required by applicable environmental laws.

**ANSWER:** The Alcan Parties deny the allegations set forth in Paragraph 65 of Century's Counterclaims and Cross-Claims.

66.     In addition, Century's agreement to indemnify the Alcan Defendants pursuant to Section 9.02(a)(xi)(D) of the Stock and Asset Purchase Agreement in respect of PCB contamination at the Vernon Facility is not triggered unless, in addition to other conditions and limitations set forth in the agreement, the contamination results from or arises out of operations at the Vernon Facility "in each case requiring investigation or remediation or other action under applicable Environmental Laws." Except as otherwise provided in the Order, the Alcan Defendants' investigations, remediation and other actions regarding PCBs at the Vernon Facility were not required under applicable environmental laws.

**ANSWER:** The Alcan Parties admit that Section 9.02(a)(xi)(D) provides that Century shall indemnify each Purchaser Indemnified Party for any loss arising from "Liabilities under Environmental Laws relating to or arising out of . . . (D) any on-site PCB contamination existing or occurring on or before the closing at the Vernon Owned Real Property, or any off-site PCB contamination, whether existing or occurring before or after the Closing, resulting from or arising out of operations at the Vernon Owned Real Property on or before the Closing, in each case requiring investigation or remediation or other action under applicable Environmental Law." The Alcan Parties deny the remaining allegations set forth in Paragraph 66 of Century's Counterclaims and Cross-Claims.

67.     In addition, Century has no obligation to indemnify the Alcan Defendants with respect to any remedial costs and expenses otherwise eligible for reimbursement under the indemnity provisions of the Stock and Asset Purchase Agreement unless and until the aggregate amount for certain losses, including those sought by the Alcan Defendants in their Cross-Complaint, exceeds $2,000,000. The Alcan Defendants have not alleged that they have incurred reimbursable costs exceeding $2,000,000.

**ANSWER:** The Alcan Parties admit that Section 9.02(c) provides that "The Sellers shall not be required to indemnify any Purchaser Indemnified Party under . . . (3) Section 9.02(a)(iii) (except to the extent a claim relates to or arises from the Excluded Liabilities set forth in Section 2.02(b)(vi) (other than Section 2.02(b)(vi)(C) or Section 9.02(a)(xi) (other than

Section 9.02(a)(xi)(C)), for which there is no indemnity limit) . . , unless such claim or demand

involves Losses in excess of $50,000 and (y) the aggregate amount of all Losses for which

indemnity is due exceeds $2,000,000, after which (subject to Section 9.06) the Sellers shall be

obligated for all Losses of the Purchaser Indemnified Parties in excess of such amount." The

Alcan Parties deny the remaining allegations set forth in Paragraph 67 of Century's

Counterclaims and Cross-Claims.

      68.    This Court has the power to adjudicate the rights of the parties with respect to this
controversy, and the issuance of declaratory relief will help resolve the legal relations at issue
between the parties and will afford them relief from the uncertainties giving rise to their present
disputes. This Court should therefore grant declaratory relief under 28 U.S.C. § 2201 and hold
that Century has no liability to the Alcan Defendants under the Stock and Asset Purchase
Agreement for the costs of the Alcan Defendants' development activities at the Vernon Facility,
under CERCLA and its state law counterparts, or otherwise.

     **ANSWER:**  The Alcan Parties admit that Century is contending that this Court has the

power to adjudicate the rights of the parties with respect to this controversy, and that the

issuance of declaratory relief will help resolve the legal relations at issue between the parties

and will afford them relief from the uncertainties giving rise to their present disputes. The

Alcan Parties deny the remaining allegations set forth in Paragraph 68 of Century's

Counterclaims and Cross-Claims.

### SECOND CROSS-CLAIM AGAINST THE ALCAN DEFENDANTS
(Century Is Not Liable for Development Costs at the Vernon Facility under the Vernon
Indemnification Agreement)

     69.    Century repeats and realleges paragraphs 1-68 above as if fully set forth herein.

     **ANSWER:**  The Alcan Parties incorporate herein by reference their answers to

Paragraphs 1 through 68 of Century's Counterclaims and Cross-Claims as if set forth in their

entirety.

70.    Century brings this cause of action pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*., to obtain a declaration of its rights and interests under the agreement with the Alcan Defendants.

**ANSWER:**  The Alcan Parties admit that Century brings this cause of action pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*.  The Alcan Parties deny the remaining allegations set forth in Paragraph 70 of Century's Counterclaims and Cross-Claims.

71.    As set forth above, an actual, substantial, legal controversy has arisen and now exists between Century and the Alcan Defendants as to their respective rights and duties under the Vernon Indemnification Agreement.

**ANSWER:**  The Alcan Parties admit that Century is contending that an actual, substantial, legal controversy has arisen and now exists between Century and the Alcan Parties as to their respective rights under the Stock and Purchase Agreement.  The Alcan Parties deny the remaining allegations set forth in Paragraph 71 of Century's Counterclaims and Cross-Claims.

72.    As specified in Section 1.2(a)(i) of the Vernon Indemnification Agreement, Century agrees to indemnify the Alcan Defendants for certain Environmental Losses to the same extent Alcoa is obligated to indemnify Century.

**ANSWER:**  The Alcan Parties admit that Section 1.2(a)(i) of the Vernon Indemnification Agreement provides "Notwithstanding anything to the contrary herein or in the Purchase Agreement, Century shall indemnify, defend and hold harmless the Purchaser Indemnified Parties from and against: (a) any and all Losses incurred or required to be paid as a result of or arising out of: (i) Hazardous Substances that are or were at, upon, in or under the Real Property prior to the Closing due to the actions or inactions of Alcoa or an Affiliate of Alcoa, the Cleanup of which either is required by a directive or order of a government agency or if the parties hereto agree that Cleanup is reasonably required pursuant to Applicable Law."

The Alcan Parties deny the remaining allegations set forth in Paragraph 72 of Century's

Counterclaims and Cross-Claims.

73.    If Alcoa is not obligated to indemnify Century, pursuant to the Century
Acquisition Agreement, for costs associated with the Alcan Defendants' activities at the Vernon
Facility, Century is likewise not obligated to indemnify the Alcan Defendants pursuant to the
Vernon Indemnification Agreement.

**ANSWER:**  The Alcan Parties deny the allegations set forth in Paragraph 73 of

Century's Counterclaims and Cross-Claims.

74.    This Court has the power to adjudicate the rights of the parties with respect to this
controversy, and the issuance of declaratory relief will help resolve the legal relations at issue
between the parties and will afford them relief from the uncertainties giving rise to their present
disputes.  This Court should therefore grant declaratory relief under 28 U.S.C. § 2201 and hold
that Century has no liability to the Alcan Defendants under the Vernon Indemnification
Agreement for the costs of the Alcan Defendants' development activities at the Vernon Facility,
under CERCLA and its state law counterparts, or otherwise.

**ANSWER:**  The Alcan Parties admit that Century is contending that this Court has the

power to adjudicate the rights of the parties with respect to this controversy, and that the

issuance of declaratory relief will help resolve the legal relations at issue between the parties

and will afford them relief from the uncertainties giving rise to their present disputes.  The

Alcan Parties deny the remaining allegations set forth in Paragraph 74 of Century's

Counterclaims and Cross-Claims.

## COUNTERCLAIMS FOR DECLARATORY RELIEF AGAINST THE ALCAN PARTIES (FILED AUGUST 13, 2007)

Century hereby incorporates, as counterclaims against the Alcan Cross-Plaintiffs,
Century's cross-claims for declaratory relief against the Alcan Cross-Plaintiffs, as set forth in
the Answer, Affirmative Defenses, Counterclaims and Cross-claims of Century Aluminum
Company to Alcoa Inc.'s Complaint for Declaratory Judgment, filed on July 31, 2007.

**ANSWER:**    The Alcan Parties incorporate herein by reference their answers to
Paragraphs 1 through 74 of Century's Counterclaims and Cross-Claims as if set forth in their

entirety as their response to Century's Counterclaims for Declaratory Relief filed against the Alcan Parties by Century on August 13, 2007.

## AFFIRMATIVE DEFENSES

The Alcan Parties assert the following affirmative defenses:

### First Affirmative Defense
### (Failure to State a Claim)

Century's Cross-Claims for Declaratory Judgment fail to state a claim against the Alcan Parties upon which relief can be granted.

### Second Affirmative Defense
### (Conformance with Governing Law and Industry Standards)

The Alcan Parties allege that they have conformed to and performed any and all obligations imposed by applicable statutes, regulations, permits and industry standards to the full extent of their responsibilities.

### Third Affirmative Defense
### (Not an Owner or Operator at Time of Alleged Disposal)

The Alcan Parties allege that they are not liable because they did not own or operate any facility at which any hazardous substances were disposed of, at the time of the alleged disposal, pursuant to CERCLA § 107(a)(2), 42 U.S.C. § 9607(a)(2).

### Fourth Affirmative Defense
### (Act of Third Party)

The Alcan Parties allege that they are not liable because the release or threat of release of a hazardous substance and the damages resulting therefrom were caused solely by an act or omission of a third party, pursuant to CERCLA § 107(b)(3), 42 U.S.C. § 9607(b)(3).

### Fifth Affirmative Defense
### (Innocent Holder of Land)

The Alcan Parties allege that they are not liable because Alcan Rolled Products-Ravenswood LLC and Pechiney Cast Plate, Inc. are innocent holders of land and meet the statutory criteria set forth in CERCLA § 101(35), 42 U.S.C. § 9601(35).

### Sixth Affirmative Defense
### (Equitable Allocation)

The Alcan Parties allege that they are not liable for any other person's fair, equitable, and/or proportionate share of any relief to which Century may be entitled. Any claims for damages by Century should be reduced in accordance with those factors recognized under CERCLA § 113(f), 42 U.S.C. § 9613(f), for allocation of costs and damages among the parties by virtue of the "Gore Factors" and/or other equitable considerations.

### Seventh Affirmative Defense
### (*De Minimus* Harm)

If any hazardous substances from the Alcan Parties were or are present, which the Alcan Parties deny, then the amount of, and/or the harm or relief attributable to, such hazardous substances is *de minimus*.

### Eighth Affirmative Defense
### (Cause)

No act or omission of the Alcan Parties or of any person or entity for whom the Alcan Parties may be responsible was the legal cause of any release, threatened release, or any injuries or costs for which damages or other relief is sought in this action.

## Ninth Affirmative Defense
### (Proximate Cause)

No act or omission of the Alcan Parties or of any person or entity for whom the Alcan Parties may be responsible was the proximate cause of any release, threatened release, or any injuries or costs for which damages or other relief is sought in this action.

## Tenth Affirmative Defense
### (Independent, Intervening, and/or Superseding Cause)

No act or omission of the Alcan Parties was a substantial factor in bringing about any alleged injuries or damages, or was a contributing cause thereof.  Any losses or damages for which damages or other relief is sought in this action were the result of independent, intervening, or superseding forces and/or actions or omissions of third parties over which the Alcan Parties had no control, in which the Alcan Parties did not in any way participate, and for which the Alcan Parties are not liable.

## Eleventh Affirmative Defense
### (Actions Authorized by Law)

The Alcan Parties are not liable because any of their acts and/or omissions which are the basis for Century's cross-claims were authorized by statute, regulation, ordinance, or other law.

## Twelfth Affirmative Defense
### (Compliance with Laws)

The Alcan Parties are not liable because they acted reasonably and with due care and complied with all applicable statutes, regulations, ordinances, and/or other laws.

## Thirteenth Affirmative Defense
### (Failure to Join Necessary and/or Indispensable Parties)

Century's Cross-Claims for Declaratory Judgment are barred by the failure to join all necessary and/or indispensable parties needed for a just adjudication of the subject matter of this action.

## Fourteenth Affirmative Defense
### (Failure to Mitigate)

The Cross-Claims for Declaratory Judgment, and each claim therein, are barred, in whole or in party, by Century's failure to mitigate any alleged damages.

## Fifteenth Affirmative Defense
### (Set-Off)

The Alcan Parties are entitled to an offset against any liability for the greater of (1) any amounts actually paid by any person for any of the costs and/or damages alleged in the Complaint for Declaratory Judgment, or (2) the equitable share of the liability of any person or entity that has received or hereafter receives a release from liability or a covenant not to sue with respect to any of the injuries, costs and damages alleged in the Complaint for Declaratory Judgment.

## Sixteenth Affirmative Defense
### (Contribution or Indemnity)

The Alcan Parties are entitled, according to proof, to contribution or indemnity from Century or any other party pursuant to CERCLA and common law, and such contribution or indemnity would offset or eliminate any liability of the Alcan Parties.

## Seventeenth Affirmative Defense
### (No Liability)

The Alcan Parties are not liable, jointly and severally or otherwise, for relief to which Century may be entitled against any other party.

## Eighteenth Affirmative Defense
### (Aggravation of Harm)

Century has caused any release or threatened release of any hazardous substances or otherwise has aggravated the alleged harm or threat of exposure to any hazardous substances. Any recovery by Century for such harm should be barred or reduced accordingly.

## Nineteenth Affirmative Defense
### (Reservation of Rights)

The Cross-Claims for Declaratory Judgment do not describe Century's claims or events with sufficient particularity to allow the Alcan Parties to ascertain what other affirmative defenses may exist, and the Alcan Parties therefore reserve the right to assert all affirmative defenses which may pertain to the Cross-Claims for Declaratory Judgment once the precise nature of the claims is ascertained. The Alcan Parties also reserve the right to assert all other defenses that arise in discovery, at trial or otherwise.

## Twentieth Affirmative Defense
### (Legally Deficient and Duplicative Counterclaim)

The Counterclaims for Declaratory Relief filed by Century against the Alcan Parties on August 13, 2007, which incorporate and reallege Century's cross-claims against the Alcan Parties, are duplicative and an improper pleading under Rule 13 of the Federal Rules of Civil Procedure, and should therefore be stricken.

## Twenty-First Affirmative Defense
### (Reliance upon Other Parties' Defenses)

All affirmative defenses raised by any other party, to the extent applicable to the Alcan Parties, are incorporated by reference as if fully set forth herein.


WHEREFORE, Alcan Rolled Products-Ravenswood LLC and Pechiney Cast Plate, Inc. respectfully request that this Court enter judgment in their favor, dismissing Century's Cross-Claims and Counterclaims for Declaratory Relief, and awarding the Alcan Parties their attorneys' fees, costs and such other relief as this Court deems just and proper.

ASHBY & GEDDES

/s/ *John G. Day*
_____

Steven J. Balik (# 2114)
John G. Day (# 2403)
Tiffany Geyer Lydon (# 3950)
500 Delaware Ave., 8th Floor
P.O. Box 1150
Wilmington, DE 19899
Telephone:  (302) 654-1888
Facsimile:  (302) 654-2067
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Defendants Alcan Rolled
Products-Ravenswood LLC, f/k/a Pechiney
Rolled Products, LLC, and Pechiney Cast
Plate, Inc.*

*Of Counsel:*

Richard P. Steinken
Shelley Smith
Steven M. Siros
JENNER & BLOCK LLP
330 N. Wabash Avenue
Chicago, IL 60611
Telephone: (312) 222-9350
Facsimile: (312) 840-7631

Dated:  August 20, 2007
183366.1