IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ALCOA INC., ) | | |
| ) | | |
| Plaintiff, ) | | |
| ) | | |
| v. ) | | |
| ) | | |
| ALCAN ROLLED PRODUCTS-RAVENSWOOD ) | | |
| LLC, f/k/a PECHINEY ROLLED PRODUCTS, ) | | |
| LLC, PECHINEY CAST PLATE, INC., and ) | | |
| CENTURY ALUMINUM COMPANY, ) | | |
| ) | | |
| Defendants. ) | | |
| _____ ) | | |
| ALCAN ROLLED PRODUCTS-RAVENSWOOD ) | C.A. No. 06-451-JFB-SRF | |
| LLC, f/k/a PECHINEY ROLLED PRODUCTS, ) | | |
| LLC, and PECHINEY CAST PLATE, INC., ) | | |
| ) | | |
| Counter-Plaintiffs, ) | | |
| ) | | |
| v. ) | | |
| ) | | |
| ALCOA INC. and CENTURY ALUMINUM ) | | |
| COMPANY, ) | | |
| ) | | |
| Counter-Defendants. ) | | |
| ) | | |

## MEMORANDUM OPINION

I. **INTRODUCTION**

Presently before the court in this declaratory judgment action[1] is a motion for leave to amend by defendants, counter-claimants, and cross-claimants Constellium Rolled Products Ravenswood, LLC ("ARP")[2] and Pechiney Cast Plate, Inc. ("PCP") (together, "Pechiney").

---

[1] The present case involves a dispute over who is responsible for paying to remedy environmental contamination present at a cast aluminum manufacturing and sales facility in Vernon, California. (*See* D.I. 1)

[2] Constellium Rolled Products Ravenswood, LLC was formerly named Alcan Rolled Products-Ravenswood, LLC. (D.I. 143, Ex. A at ¶ 17) Because the case caption refers to Alcan Rolled

(D.I. 143) The motion seeks leave to amend Pechiney's cross-claims against defendant and cross-claim defendant Century Aluminum Company ("Century") pursuant to Federal Rules of Civil Procedure 15(a)(2) and 16(b). (*Id.*) Pechiney filed opening and reply briefs in support of its motion. (D.I. 144; D.I. 153, respectively) Century opposes the motion. (D.I. 151) For the following reasons, the court will grant Pechiney's motion for leave to amend its cross-claims.

## II. BACKGROUND

### A. The Parties

At the time this action was filed, plaintiff Alcoa Inc. ("Alcoa") was a corporation organized under the laws of the Commonwealth of Pennsylvania, with its principal place of business in the State of New York. (D.I. 1 at ¶ 1) Also, at the time this action was filed, defendant Century was a corporation organized under the laws of the State of Delaware, with its principal place of business in the State of California. (*Id.* at ¶ 2) Defendant ARP, formerly known as Pechiney Rolled Products, LLC ("PRP"), is a corporation organized under the laws of the State of Delaware, with its principal place of business in the State of West Virginia. (*Id.* at ¶ 3) ARP is a wholly-owned subsidiary of Pechiney Metals LLC and an indirect wholly-owned subsidiary of Alcan Inc. (*Id.*) Defendant PCP is a corporation organized under the laws of the State of Delaware, with its principal place of business in the State of California. (*Id.* at ¶ 4) PCP is a wholly-owned subsidiary of ARP. (*Id.*) Defendant Alcan Inc. ("Alcan") is a corporation organized under the laws of Canada, with its principal place of business in Montreal, Quebec, Canada. (*Id.* at ¶ 5)

### B. Facts

---

Products-Ravenswood, and not Constellium Rolled Products Ravenswood, the court will continue to address this party as Alcan Rolled Products-Ravenswood, LLC ("ARP").

2

Prior to December 1998, Alcoa owned and operated a cast aluminum plate manufacturing and sales facility located in Vernon, California (the "Vernon Facility"). (*Id.* at ¶ 11) On December 2, 1998, Alcoa and Century entered into an acquisition agreement, pursuant to which Century purchased the Vernon Facility from Alcoa (the "Century Acquisition Agreement").[3] (*Id.* at ¶ 12) The Century Acquisition Agreement provided that the Vernon Facility was conveyed to Century in "as is" condition, however, Alcoa agreed to perform certain specified remedial actions to the property. (*Id.* at ¶¶ 16-17; D.I. 26, Ex. 1 at 25) Alcoa agreed to "remediate to the levels required by an authorized governmental agency to obtain a 'no further action' statement" or its equivalent. (D.I. 26, Ex. 1 at 25) Alcoa claims that it completed the remedial tasks and provided to Century documentation of its completion, including a "no further action" letter obtained from the City of Vernon Environmental Health Department ("EHD"), dated September 2, 1999. (D.I. 1 at ¶ 18) The Century Acquisition Agreement provides a twelve-year indemnification of Century by Alcoa for environmental liabilities, except as associated with the operation of Century's cast plate business. (D.I. 26, Ex. 1 at 24, 26)

On July 26, 1999, Century sold the Vernon Facility to an entity then known as PRP, pursuant to a Stock and Asset Purchase Agreement (the "Pechiney Purchase Agreement"). (D.I. 1 at ¶ 20) On September 20, 1999, Century and PRP entered into a separate indemnification agreement related to the transfer of the Vernon Facility under the Pechiney Purchase Agreement and under which PCP, a wholly-owned subsidiary of PRP, was also named as an indemnified party (the "Vernon Indemnification Agreement"). (*Id.* at ¶ 21) Subsequent to the Pechiney

---

[3] On June 12, 1998, Alcoa was ordered by the United States District Court for the District of Columbia to divest the Vernon Facility in order to maintain competition within the cast aluminum plate market. (D.I. 1 at ¶ 12) Alcoa was required to sell the Vernon Facility to a competitor who had the capability and intent to continue its business in the cast plate market. (*Id.*)

3

Purchase Agreement, Alcan acquired Pechiney, S.A. (*Id.* at ¶ 22) PRP was then subsequently known as ARP, and is indirectly a wholly-owned subsidiary of Alcan. (*Id.*)

In November 2005, Alcan announced that it was closing the Vernon Facility and was in negotiations to sell its equipment and real estate to potential buyers. (*Id.* at ¶ 23) According to Alcoa, Alcan and its potential buyers intended to conduct demolition, excavation, and construction work on the Vernon Facility site and to change its use. (*Id.* at ¶ 24) Particular environmental pollutants called polychlorinated biphenyls ("PCBs") were allegedly detected at the Vernon Facility. (*Id.* at ¶ 26) Alcan requested information from Century regarding the source of the PCBs, and informed it that, as part of any demolition work to take place at the Vernon Facility, a work plan for the disposal of waste containing PCBs must be submitted to the United States Environmental Protection Agency ("US EPA"). (*Id.* at ¶ 26) Century then asserted a demand for indemnity pursuant to the Century Acquisition Agreement to Alcoa on May 8, 2006; Alcoa rejected its demand on June 2, 2006, because the proposed development by Alcan is not "required by directives and orders of the EHD." (*Id.* at ¶¶ 27-28, 36)

Pechiney alleges that pursuant to the directive and order of various government agencies, including the EHD, the California Department of Toxic Substances Control ("DTSC"), and the US EPA, PCP conducted an investigation and remediation of certain environmental conditions at the Vernon Facility. (D.I. 142, Ex. A at ¶ 20)[4] Pechiney alleges that the investigation and remediation confirmed the presence of hazardous substances in soil, subsurface structures, and groundwater at the Vernon Facility. (*Id.*) PCP, through its consultant, submitted a Feasibility Study, dated July 20, 2007. (*Id.* at ¶ 21) DTSC also required approval and implementation of a

---

[4] The court cites to Pechiney's proposed First Amended Cross-Claims for the events that occurred after 2007. Because the case was stayed for eight years, the original pleadings do not address the events that occurred after 2007.

Remedial Action Plan for the Vernon Facility. (*Id.*) A Remedial Action Plan, dated June 28, 2012, evaluating potential remedial alternatives and proposing a remedy to address the contamination present at the Vernon Facility was submitted by PCP's consultant, on its behalf, to DTSC and approved. (*Id.*) The US EPA also required additional work relating to PCBs at the Vernon Facility, which was completed in 2015. (*Id.* at ¶ 22)

### C. Procedural History

On July 25, 2006, Alcoa filed this declaratory judgment action against Alcan, ARP, PCP, and Century. (D.I. 1) Alcoa seeks a declaratory judgment that it owes no liability to Century for the environmental contamination discovered at the Vernon Facility. (*Id.* at ¶¶ 31-37) Alcoa also seeks a declaratory judgment that Pechiney, who acquired the Vernon Facility from Century and engaged in the remediation of the Vernon Facility, cannot recover from Alcoa such remediation efforts under the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601, *et seq.* ("CERCLA"). (*Id.* at ¶¶ 38-47) On July 23, 2007, ARP and PCP filed its answer to the complaint with crossclaims against Century and counterclaims against Alcoa. (D.I. 48) On September 18, 2007, the court entered a scheduling order wherein "all motions to amend the pleadings shall be filed on or before December 15, 2007." (D.I. 72) On October 7, 2008, the case was stayed pending approval of the Feasibility Study/Remedial Action Plan submitted to the DTSC and to the US EPA. (D.I. 100) On June 22, 2012, the case was administratively closed until further order of the court. (D.I. 112) On June 30, 2016, the stay was lifted and the case was reopened. (D.I. 117) On July 26, 2016, the court entered an Amended Scheduling Order, wherein the deadline to amend the pleadings was June 30, 2017. (D.I. 123) On June 30, 2017, Pechiney filed the present motion for leave to amend its cross-claims against Century. (D.I. 143)

5

Fact discovery closed on September 28, 2017. (D.I. 123) Trial is set for February 19, 2019. (*Id.*)

## III. LEGAL STANDARD

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that after a responsive pleading has been filed, a party may amend its pleading "only with the opposing party's written consent or the court's leave," and "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The decision to grant or deny leave to amend lies within the discretion of the court. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). The Third Circuit has adopted a liberal approach to the amendment of pleadings. *See Dole v. Arco*, 921 F.2d 484, 487 (3d Cir. 1990). In the absence of undue delay, bad faith, or dilatory motives on the part of the moving party, the amendment should be freely granted, unless it is futile or unfairly prejudicial to the non-moving party. *See Foman*, 371 U.S. at 182; *In re Burlington*, 114 F.3d at 1434.

## IV. DISCUSSION

### A. Undue Delay

The court does not find that Pechiney's proposed amended cross-claims are unduly delayed. Century argues that Pechiney's motion is unduly delayed because "they waited eleven years after the case began, and nine and a half years after the first deadline to seek to amend pleadings, to try to assert the new cross-claims." (D.I. 151 at 8) Pechiney's purported failure to explain their delay in not filing their motion to amend under the first scheduling order in 2007 is insufficient to deny leave to amend under the facts of the present case. (D.I. 72) "The mere passage of time does not require that a motion to amend a complaint be denied on grounds of delay." *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001). Moreover,

Pechiney did not simply sit idle for eleven years; the case was stayed for eight years – from 2008 to 2016. After the stay was lifted and the case was reopened, the court entered a new scheduling order, which included a new deadline to amend the pleadings. (D.I. 123) Pechiney filed its motion for leave to amend on June 30, 2017 - the last day available under the amended case schedule. Although Pechiney filed its motion on the very deadline set by the scheduling order, it was, nonetheless, timely. Because Pechiney's motion for leave to amend was filed within the deadline set forth in the amended scheduling order, this generally precludes a finding of undue delay. *See Invensas Corp. v. Renesas Elecs. Corp.*, 2013 WL 1776112, at *3 (D. Del. Apr. 24, 2013) (granting plaintiff's motion to amend and finding no undue delay when plaintiff filed on the last day set by the scheduling order for the filing of amendments to pleadings); *Butamax Advanced Biofuels LLC v. Gevo, Inc.*, 2012 WL 2365905, at *2 (D. Del. June 21, 2012) (holding that a motion to amend filed on the deadline for amended pleadings was 'filed timely and, therefore, there can be no unfair prejudice to defendant').

Century argues the Third Circuit holds that "even without considering whether there is any prejudice to the opposing party, leave to amend should be denied if the moving party could have asserted the new claims much earlier," and relies on *Lorenz v. CSX*, 1 F.3d 1406 (3d Cir. 1993). (D.I. 151 at 8) In *Lorenz*, the Third Circuit affirmed the District Court's denial of a proposed amendment because the "proposed amendment was requested three years after the action was filed and nearly two years after the complaint was amended for the second time." *Lorenz*, 1 F.3d at 1414. However, the instant case is not analogous to *Lorenz*. In denying the plaintiff's motion for leave to amend, the *Lorenz* court noted that most of the facts were available to plaintiff before she filed her original complaint, and plaintiff failed to take advantage of numerous opportunities to correct any deficiencies in her claim. Based on these facts, the court

7

found plaintiff's delay was unreasonable. *Id.* Unlike in *Lorenz*, this is Pechiney's first motion to amend, not its third, and it is not in response to a motion to dismiss or motion for summary judgment, wherein the moving party is seeking to "fix" an otherwise deficient or defective claim to avoid dismissal. *Id.* at 1410. The other cases relied upon by Century are also distinguishable for similar reasons, that is, the motions to amend were the parties' third time filing leave to amend, filed in response to motions to dismiss or motions for summary judgment, or were filed after the close of discovery. *See Estate of Oliva ex rel. McHugh v. New Jersey*, 604 F.3d 788, 797 (3d Cir. 2010) (third attempt to amend complaint filed in response to a motion for summary judgment); *USX Corp. v. Barnhart*, 395 F.3d 161, 167-68 (3d Cir. 2004) (third attempt to amend complaint filed in response to a motion for summary judgment); *Asahi Glass Co. v. Guardian Indus. Corp.*, 276 F.R.D. 417, 420 (D. Del. 2011) (motion for leave filed six months after the deadline to amend the pleadings and after the close of fact discovery). Thus, the court does not find that Pechiney's proposed amended cross-claims are unduly delayed.

### B. Prejudice

The court does not find that Pechiney's proposed amended cross-claim would prejudice Century. In the Third Circuit, the non-moving party "must do more than merely claim prejudice; it must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the amendments been timely." *Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir. 1989) (internal quotation marks omitted). In order to make the required showing of prejudice, regardless of the stage of the proceedings, the non-moving party is required to demonstrate that its ability to present its case would be seriously impaired were amendment allowed. *Dole*, 921 F.2d at 488 (citing *Bechtel*, 886 F.2d at 652). The court must

8

consider "whether allowing an amendment would result in additional discovery, cost, and preparation to defend against new facts or new theories." *Cureton*, 252 F.3d at 273.

Here, Pechiney's proposed amendment does not assert cross-claims that are unrelated or disconnected from the original cross-claims against Century. Instead, Pechiney intends to "clarify the scope of the recovery that Pechiney is seeking under the existing cross-claims." (D.I. 153 at 9) The original cross-claims seek indemnification from Century under the Pechiney Purchase[5] and Vernon Indemnification[6] Agreements, and Century has been aware of these claims since July 23, 2007. (D.I. 48) Century was essentially on "notice" of the scope of damages claimed, even if not previously expressly stated in the original pleadings, by virtue of Pechiney's citing to the indemnification clauses for "Losses" under the Pechiney Purchase and Vernon Indemnification Agreements. The proposed amendment now seeks to take the explicit language defining the term "Losses" in these agreements and add it to the amended pleadings, making clear Pechiney's intent to claim damages for attorneys' and consultants' fees and expenses.

Century argues that the proposed amendment would prejudice Century because it "would face untold millions of dollars of unexpected potential liability, eleven years after the case began,

---

[5] Pechiney plead in its original cross-claim that "pursuant to Section 9.02(iii) of the Pechiney Purchase Agreement, Century must indemnify [PRP] and its affiliates, successors and assigns, which includes [ARP], for Losses that arise from environmental matters that are not disclosed in Section 3.16(a) of the Disclosure Schedule...." (D.I. 48 at ¶ 65) Section 9.02(a) of the Pechiney Purchase Agreement defines "Losses" to include reasonable attorneys' and consultants' fees and expenses. (D.I. 21, Ex. D, Pt. 2 at 34)

[6] Pechiney plead in its original cross-claim that, per the Vernon Indemnification Agreement, "Century must indemnify [ARP] and its affiliates, successors, and assigns for certain losses relating to environmental remediation, including losses resulting from Alcoa's failures to fulfill its duties and obligations under the [Century Acquisition Agreement]." (D.I. 48 at ¶ 72) The Vernon Indemnification Agreement incorporates the definition of "Losses" provided in Article 12 of the Century Acquisition Agreement, which provides that "Losses" includes reasonable attorneys' and consultants' fees, as well as "reasonable costs of investigation and feasibility studies incurred." (D.I. 21, Ex. B at 27)

9

at a time when document requests were finished six months ago, document productions are complete or nearly so, and only a few months of discovery remain under the current scheduling order [at the time of the filing of Century's brief]." (D.I. 151 at 11) Again, Pechiney's cross-claims against Century were always stated to be subject to the Pechiney Purchase and Vernon Indemnification Agreements, wherein "Losses" are defined to include attorneys' and consultants' fees and expenses. (*See* D.I. 48) As such, this language should be of no surprise to Century, and cannot be an "unexpected potential liability." Moreover, this added language does not create a new claim against Century. Nor is the court convinced that amendment opens the door to additional burdensome discovery. The record does not offer more than conclusory assertions about what, if any, additional discovery is necessary.

Century has not demonstrated that its ability to present its case would be seriously impaired if the amendment is allowed. There is nothing in the record to suggest that Pechiney's proposed amendment will create such a hardship for Century, and, therefore, the court does not find prejudice.

### C. Futility

The court does not find that Pechiney's proposed amended cross-claims are futile. An amendment is futile if it is frivolous, fails to state a claim upon which relief can be granted, or "advances a claim or defense that is legally insufficient on its face." *Koken v. GPC Int'l, Inc.*, 443 F. Supp. 2d 631, 634 (D. Del. 2006). The standard for assessing futility of amendment under Fed. R. Civ. P. 15(a) is the same standard of legal sufficiency applicable under Fed. R. Civ. P. 12(b)(6). *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). Specifically, the amended pleading must fail to state a claim upon which relief could be granted even after the district court "tak[es] all pleaded allegations as true and view[s] them in a light most favorable to the

10

plaintiff." *Winer Family Trust v. Queen*, 503 F.3d 319, 331 (3d Cir. 2007); *see also Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 175 (3d Cir. 2010).

Century does not argue that Pechiney's proposed amendment is futile, as it cannot. (*See* D.I. 151) Indemnification has been in issue in the case since the original cross-claims were plead. Permitting Pechiney to aver the purported scope of the indemnity claim as inclusive of attorneys' and consultants' fees and costs is not akin to stating a futile claim in this instance. Pechiney's proposed amendment sufficiently pleads facts that state a plausible claim for recovery of attorneys' and consultants' fees and expenses. Thus, the proposed amended cross-claims are not futile.

## V. CONCLUSION

For the foregoing reasons, Pechiney's motion for leave to amend is GRANTED. (D.I. 143) An Order consistent with this Memorandum Opinion shall issue.

This Memorandum Opinion is filed pursuant to 28 U.S.C. § 636(b)(1)(A), Fed. R. Civ. P. 72(a), and D. Del. LR 72.1(a)(2). The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Memorandum Opinion. Fed. R. Civ. P. 72(a). The objections and responses to the objections are limited to ten (10) pages each.

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, www.ded.uscourts.gov.

Dated: December 1, 2017

Sherry R. Fallon
UNITED STATES MAGISTRATE JUDGE