**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| ALCOA INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| ALCAN ROLLED PRODUCTS-RAVENSWOOD | ) |
| LLC, f/k/a PECHINEY ROLLED PRODUCTS, LLC, | ) |
| PECHINEY CAST PLATE, INC., and CENTURY | ) |
| ALUMINUM COMPANY, | ) |
| | ) |
| Defendants, | ) |
| | ) |
| ALCAN ROLLED PRODUCTS-RAVENSWOOD | ) |
| LLC, f/k/a PECHINEY ROLLED PRODUCTS, LLC, | ) |
| and PECHINEY CAST PLATE, INC., | ) |
| | ) |
| Counter-Plaintiffs, | ) |
| v. | ) |
| | ) |
| ALCOA, INC. and CENTURY ALUMINUM | ) |
| COMPANY, | ) |
| Counter-Defendants, | ) |
| | ) |
| | ) |
| CENTURY ALUMINUM COMPANY, | ) |
| | ) |
| Counterclaim and Cross-Claim Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| ALCOA, INC., | ) |
| | ) |
| Counterclaim Defendant, | ) |
| | ) |
| and | ) |
| | ) |
| ALCAN ROLLED PRODUCTS-RAVENSWOOD | ) |
| LLC, f/k/a PECHINEY ROLLED PRODUCTS, LLC, | ) |
| and PECHINEY CAST PLATE, INC., | ) |
| | ) |
| Cross-Claim and Counterclaim | ) |
| Defendants. | ) |

C.A. No. 06-451-JFB-SRF

TRIAL BY JURY
DEMANDED

**OPENING BRIEF IN SUPPORT OF ALCOA INC.  AND CENTURY ALUMINUM**
**COMPANY'S JOINT MOTION FOR AN ORDER DEFERRING**
**CERTAIN CHALLENGES TO PECHINEY-PROFFERED EXPERT**
**TESTIMONY OR IN THE ALTERNATIVE EXCLUDING CERTAIN**
**EXPERT TESTIMONY FROM SUCH EXPERTS**

YOUNG CONAWAY STARGATT & TAYLOR
LLP

Mary F. Dugan (No. 4704)
1000 N. King Street
Wilmington, DE 19801
(302) 571-5028
mdugan@ycst.com

OF COUNSEL:

Steven Grimes (admitted *pro hac vice*)
Stephanie B. Sebor (admitted *pro hac vice*)
Kelly E. Mannion (admitted *pro hac vice*)
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601
(312) 558-5600

*Attorneys for Century Aluminum Company*


RICHARDS, LAYTON & FINGER, P.A.

Steven J. Fineman (No. 4025)
Christine D. Haynes (No. 4697)
One Rodney Square
920 North King Street
P.O. Box 551
Wilmington, DE  19899-0551
fineman@rlf.com

OF COUNSEL:

Rene P. Tatro
David B. Sadwick
Tatro Tekosky Sadwick LLP
333 South Grand Avenue
Suite 4270
Los Angeles, CA  90071
renetatro@ttsmlaw.com
davidsadwick@ttsmlaw.com


*Attorneys for Alcoa Inc.*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT .........................................................................................................................3

I.     Pechiney's Problematic Expert Reports..............................................................................4

II.    Legal Opinions And Determinations By Expert Witnesses Are Improper.........................6

     A.    The Court—not Pechiney's experts—determines and explains the relevant and controlling law. ................................................................................................6

     B.    Pechiney cannot rely on an "ultimate issue" argument to save its experts' improper opinions. ................................................................................................8

III.   Assessing The Intent, State Of Mind, And/Or Knowledge Of Witnesses Or Regulators Is A "Classic Jury Function," Not An Expert Function. ...........................10

IV.   Factual Regurgitations Disguised As Expert Opinion Have No Place In This Trial.........12

V.    Offering Cumulative Expert Testimony Is Also Improper. ..............................................14

CONCLUSION.....................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AstraZeneca LP v. Tap Pharm. Prods., Inc.*,
  444 F. Supp. 2d 278 (D. Del. 2006)........................................................................10

*Bammerlin v. Navistar Int'l Transp. Co.*,
  30 F.3d 898 (7th Cir. 1994) ...................................................................................7

*Berckeley Inv. Group, Ltd. v. Colkitt*,
  455 F.3d 195 (3d Cir. 2006).................................................................................6, 9

*Calhoun v. Yamaha Motor Corp., U.S.A.*,
  350 F.3d 316 (3d Cir. 2003)....................................................................................4

*Dalgic v. Misericordia Univ.*,
  2019 U.S. Dist. LEXIS 111203 (M.D. Pa. July 3, 2019).................................6, 7, 12

*Daubert v. Merrell Dow Pharm., Inc.*,
  509 U.S. 579 (1993).............................................................................................1, 3

*In re Fosamax Prods. Liab. Litig.*,
  645 F. Supp. 2d 164 (S.D.N.Y. 2009)....................................................................12

*Highway Materials, Inc. v. Whitemarsh Twp.*,
  2004 WL 2220974 (E.D. Pa. Oct. 4, 2004)...............................................................6

*Jordan v. Temple Health Sys.*,
  2018 U.S. Dist. LEXIS 128747 (E.D. Pa. Aug. 1, 2018)..........................................8, 9

*Krys v. Aaron*,
  112 F. Supp. 3d 181 (D.N.J. 2015) ...................................................................4, 7, 9

*Kuhar v. Petzl Co.*,
  2018 U.S. Dist. LEXIS 204882 (D.N.J. Dec. 4, 2018) ...............................................9

*Liqwd, Inc. et al. v. L'Oréal USA Inc. et al.*,
  No. 17-cv-00014-JFB-SRF (D. Del. June 25, 2019) ....................................6, 10, 12

*Marx & Co. v. Diners' Club, Inc.*,
  550 F.2d 505 (2d Cir. 1977).....................................................................................7

*Owen v. Kerr-McGee Corp.*,
  698 F.2d 236 (5th Cir. 1983) ...................................................................................7

*Oxford Gene Tech., Ltd. v. Mergen Ltd.*,
    345 F. Supp. 2d 431 (D. Del. 2004)........................................................................13

*Pioneer Ctrs. Holding Co. ESOP & Trust v. Alerus Fin., N.A.*,
    858 F.3d 1324 (10th Cir. 2017) ...............................................................................7

*In re Rezulin Prods. Liab. Litig.*,
    2004 U.S. Dist. LEXIS 3104 (S.D.N.Y. Feb. 27, 2004)....................................10, 11

*In re Rezulin Prods. Liab. Litig.*,
    309 F. Supp. 2d 531 (S.D.N.Y. 2004).....................................................................13

*Robinson v. Hartzell Propeller Inc.*,
    326 F. Supp. 2d 631 (E.D. Pa. 2004) ......................................................................10

*SEC v. Lipson*,
    46 F. Supp. 2d 758 (N.D. Ill. 1998) ........................................................................13

*Specht v. Jensen*,
    853 F.2d 805 (10th Cir. 1988) ...............................................................................8, 9

*In re Trasylol Prods. Liab. Litig.*,
    709 F. Supp. 2d 1323 (S.D. Fla. 2010) ...............................................................12, 13

*United Healthcare Servs. v. Cephalon, Inc.*,
    2019 U.S. Dist. LEXIS 113756 (E.D. Pa. July 8, 2019).........................................14

*United States v. Bilzerian*,
    926 F.2d 1285 (2d Cir. 1991)....................................................................................7

*United States v. Caputo*,
    517 F.3d 935 (7th Cir. 2008) ....................................................................................7

*United States v. Leo*,
    941 F.2d 181 (3d Cir. 1991)......................................................................................9

*United States v. Libby*,
    461 F. Supp. 2d 3 (D.D.C. 2006) ............................................................................10

*United States v. McIver*,
    470 F.3d 550 (4th Cir. 2006) ....................................................................................7

*United States v. Zipkin*,
    729 F.2d 384 (6th Cir. 1984) ....................................................................................7

**Rules**

Fed. R. Evid. 401 ..................................................................................................................3

Fed. R. Evid. 403 ........................................................................................................3, 10, 14

Fed. R. Evid. 702 .................................................................................................4, 8, 9, 10, 4

Fed. R. Evid. 703 ..................................................................................................................4

Fed. R. Evid. 704 ..........................................................................................................8, 9, 10

## PRELIMINARY STATEMENT

Alcoa Inc. and Century Aluminum Company (collectively, "Movants") move the Court for an order deferring certain challenges to the testimony of the hired experts of Alcan Rolled Products-Ravenswood LLC, f/k/a Pechiney Rolled Products, LLC, and Pechiney Cast Plate, Inc. (collectively, "Pechiney"), specifically Walter Shields, A.J. Gravel, and John Woodyard.  The deferral requested will promote the efficient and just adjudication of this dispute.  As an alternative to deferral, Movants request that the Court direct Pechiney to limit the testimony of these witnesses to matters appropriate for expert testimony within the areas of their respective qualifications as determined by the Court.[1]

The U.S. Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and its progeny provide a flexible framework within which the Court can exercise its "gatekeeper" function of keeping from the fact finder opinion testimony of unqualified witnesses, opinion testimony which is not derived through a reliable methodology, and opinion testimony which is not "helpful" to the fact finder because it does not "fit" the case. *Daubert* does not, however, provide the exclusive set of criteria on which opinion testimony can be excluded.  It is for that reason that Movants make this motion to defer certain challenges which arguably could be shoehorned into the *Daubert* framework, but which are not "classic" *Daubert*-type challenges to purportedly technical opinion testimony.

Specifically, Pechiney has submitted voluminous reports from multiple experts which, under the guise of providing technical expert opinion:

---

[1]   At this time, Movants are also jointly moving to exclude the testimony of Gravel outright, primarily on qualifications and methodology grounds (the "Gravel Motion").  To the extent the Court grants the Gravel Motion in its entirety, the relief requested herein will be mooted as to Gravel.  In addition, Alcoa (but not Century) is separately moving to exclude the testimony of Woodyard (the "Woodyard Motion") at this time.  Alcoa respectfully requests relief on the Woodyard Motion now, as opposed to a deferral.

- Regurgitate scores of pages of purported (but selectively "spun") facts—which facts are really within the sole province of lay witnesses to offer, and of the fact finder to weigh (*see, e.g.*, Ex. 1, Shields Tr. at 29:14-19, 29:25–30:3, 30:11-18)[2];

- Opine on the intent, state of mind, and knowledge of parties, witnesses and regulatory agencies;

- Interpret laws/regulations (*i.e.*, identify "relevant" or "controlling" laws or regulations and state what they "mean"), before then purporting to determine whether or not a party complied with or violated those laws or regulations (*see, e.g.*, *id.* at 32:7–33:6); and

- Interpret contracts (*i.e.*, state what contracts terms and provisions "mean" or what a contract required a party to do or refrain from doing), and then determine whether or not a party complied with the contract as the expert interprets those purported contractual requirements.

Some of Pechiney's technical experts have a variety of "hard science" degrees.  None of those experts, however, have first-hand knowledge of the facts at issue, are trained as lawyers or legal experts, or have ever served as regulators.  And none of these purported experts are psychologists or psychiatrists with superior abilities to assess someone's state of mind, knowledge, intent, or truthfulness—this responsibility, in any event, being entrusted to the fact finder.

Looking, for example, at the third bullet point above (these putative experts' belief that the Court needs to be "schooled" by the expert's supposedly superior knowledge of laws and regulations), it is apparent that these experts do not have the qualifications to render such legal opinions about laws or regulations.  That point begs the question of why Pechiney's experts are offering the Court gratuitous assistance on legal interpretation which the Court has not requested. Even if the Court might find such assistance useful if it were derived through a reliable methodology, these experts fail to provide a valid methodology for their legal opinions and "determinations."  Lacking qualifications and methodology, these opinions cannot be trusted to

---

[2]  "Ex." refers to the exhibits appended to the Declaration of Mary F. Dugan in support of this joint motion, filed contemporaneously herewith.

be helpful to the Court because they do not pass muster under *Daubert* criteria.

Further, at some level even more fundamental than *Daubert*, these putative opinions are inadmissible under Federal Rules of Evidence ("FRE") 401 and 403, and other legal principles governing appropriate testimony by a non-fact witness. Variously, Pechiney's experts' opinions:

- Usurp the role of the Court in identifying and explaining the relevant laws and regulations;

- Usurp the role of the fact finder in *applying* the relevant laws and regulations (as explained by the Court); and

- Usurp the role of the fact finder by offering extensive, biased regurgitations of facts, as well as subjective (and speculative) statements about witnesses' and regulators' intent, knowledge, or state of mind.

If Pechiney truly expects to go forward with this evidence as presented to date, Movants will challenge it under FRE 401 and 403, as well as under *Daubert*. If Pechiney intends to "play by the rules," and limit these inappropriate intrusions into the exclusive provinces of the Court and fact finder, then no further motion practice will be necessary. Accordingly, rather than engage on these issues at this time, Movants now seek an order: (1) deferring until a later date (closer to the motions *in limine* deadline) motions on the matters addressed herein; and (2) directing the parties to meet/confer to agree on a procedure to address the matters raised herein. Movants request, in the alternative, that the Court direct Pechiney to limit the testimony of its expert witnesses to matters appropriate for expert testimony within the areas of their technical qualifications, if any.[3]

## **ARGUMENT**

In seeking to color historical facts and mental states with a Pechiney-glossed brush, Pechiney's experts do not provide technical opinions or apply specialized expertise to explain

---

[3] Movants do not concede, for example, that Gravel has any technical qualifications of relevance to this lawsuit, as further detailed in the Gravel Motion.

complicated matters for the fact finder.  To the contrary, they are attempting to re-write, or at least re-imagine, the historical events of this case in a way that makes their client look less culpable.  This is improper.  *See Calhoun v. Yamaha Motor Corp., U.S.A.*, 350 F.3d 316, 320-21 (3d Cir. 2003) (expert testimony must be based on "scientific," "technical" or "other specialized" knowledge) (citing Fed. R. Evid. 702).  Consistent with these principles, an expert may not render a legal opinion, provide testimony concerning the "state of mind" of another person or entity, or simply "regurgitate" record evidence in a light favorable to its client.  *See, e.g.*, *Krys v. Aaron*, 112 F. Supp. 3d 181, 203 (D.N.J. 2015).

## I.       Pechiney's Problematic Expert Reports

The problems with Pechiney's experts raised in this motion are effectively illustrated through the reports and testimony of Dr. Walter Shields, but these issues—and legal principles proscribing them—apply with equal force to the reports and testimony of putative experts A.J. Gravel and John Woodyard.

Shields is a Washington-based "Certified Professional Soils Scientist" with degrees in Forest Resources and Soil Science, who purports to give expert opinions on a variety of matters in this case, including contaminant releases, environmental disclosures, Toxic Substances Control Act ("TSCA") requirements, and Pechiney's remediation efforts—all topics largely addressed by Pechiney's other experts.  In an attempt to distinguish his duplicative testimony from the testimony of other Pechiney experts, Shields testified that he is the "big picture" guy. (Ex. 1, Shields Tr. at 338:8-13).  Nonetheless, Shields testified that he would defer to Pechiney designees Renee Kalmes on risk assessment, John Woodyard on polychlorinated biphenyls ("PCBs"), Peter Mesard on soil vapor extraction system design and on-site contribution, and A.J. Gravel on National Contingency Plan ("NCP") compliance.  (*See id.* at 336:18–343:12, 429:9-10, 467:9-13, 559:13-23, 202:19–203:1, 216:11-13, 234:22–235:3, 240:14-21).

While Shields may have the training and experience to provide *technical* opinions in certain areas, a point not addressed in this motion, he is unequivocally ***not*** competent to give legal opinions, to opine on the mental states of Alcoa, Pechiney, or regulatory agencies, or to give lengthy regurgitations of "facts" of which he has no firsthand knowledge (and many of which are not disputed, although Shields' subjective recounting of those facts certainly is contested). (*See id.* at 31:15-24, 38:3-7). Despite this, Shields opens his expert report with nearly 40 single-spaced pages of what he characterizes as "facts," which he testified are not "opinions." (*Id.* at 29:11-19, 30:11-15). Shields even admits that much of what he characterizes as "opinion" is "primarily fact." (*Id.* at 344:11–345:25, 346:14-18, 366:13–25).[4] And, embedded within Shields' lengthy fact regurgitations are numerous non-technical, improper, "sleeper" opinions. For example, Shields':

- discussion of the DTSC order is an improper opinion that he lacks expertise to offer (Ex. 2, Shields Report at p.26);

- speculation about Pechiney's state of mind and expectation is improper (*id.* at p.31 (last para.) to p.32);

- discussion of TSCA regulations and what they mean is an improper legal opinion that he lacks expertise to offer (*id.* at pp.34-36); and

- speculation about Alcoa's state of mind is improper (*id.* at p.36 (last para.)).

Gravel, too, masks improper legal opinions and speculation within extended litanies of selected "facts." He speculates, for example, about regulators' intent concerning the adequacy of Pechiney's remedial investigation, about what the City of Vernon and/or DTSC "ordered" or "directed" or "required" Pechiney to do in terms of site remediation, and about Pechiney's motivations concerning its FS/RAP submissions (Ex. 3, Gravel Report at pp. C-2, C-6 – C-9, C-

---

[4] Gravel's report also contains nearly 40 single-spaced pages of what he admits are "facts," not opinions. (Ex. 3, Gravel Report at pp. 5-8 and C-1 – C-30; Ex. 4, Gravel Tr. at 25:20–26:12).

13).   As with Shields, and for the reasons discussed below, Gravel's "fact" recitations are improper.

## II.   Legal Opinions And Determinations By Expert Witnesses Are Improper.

### A.   The Court—not Pechiney's experts—determines and explains the relevant and controlling law.

Legal "determinations" by Pechiney's experts are inadmissible under controlling case law.  This Court recently summarized the law on this issue as follows: "An expert's opinion on a legal conclusion is neither necessary nor controlling.  An expert cannot usurp the role of the judge or jury."  Ex. 7 at 4, Opinion in *Liqwd, Inc. et al. v. L'Oréal USA Inc. et al.*, No. 17-cv-00014-JFB-SRF, D.I. 906 (D. Del. June 25, 2019) (citation and quotation omitted).  Accordingly, the district court "must ensure that an expert does not testify as to the governing law of the case" or "as to how he would apply the law to the facts[.]"  *Id.* at 9-10 (citing *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 217 (3d Cir. 2006)); *see also Highway Materials, Inc. v. Whitemarsh Twp.*, 2004 WL 2220974, at *20 (E.D. Pa. Oct. 4, 2004) (same).

In applying these principles, courts within the Third Circuit have excluded expert testimony that purports to interpret and apply federal regulations.  In *Berckeley*, for example, the Third Circuit deemed inadmissible certain testimony from defendant's expert, a "former counsel for the SEC with expertise in offshore securities transactions."  455 F.3d at 218.  In particular, the court held that testimony "as to the legal effect of the various SEC pronouncements regarding Rule 144 and Regulation S" was "inadmissible as improper legal opinions."  *Id.*  In addition, testimony that "it was reasonable for [plaintiff] to have believed that it was entitled to the Section 4(1) exemption" was "inadmissible because it concerns [plaintiff's] legal duties resulting from the various SEC pronouncements."  *Id.*

More recently, in *Dalgic v. Misericordia University*, the District Court for the Middle

District of Pennsylvania held that an expert's testimony "as to the meaning of" certain immigration regulations, as well as his interpretation of regulatory phrases, was not admissible. *See* 2019 U.S. Dist. LEXIS 111203, *25, 34-35 (M.D. Pa. July 3, 2019).  In so holding, the *Dalgic* court noted:

> [T]estimony concerning [an expert's] understanding of the applicable federal regulations          is … not a subject for which expert testimony is proper.  Indeed, "[t]he meaning of federal regulations is not a question of fact, to be resolved by the jury after a battle of experts.  It is a question of law, to be resolved by the court.

*Id.* (quoting *Bammerlin v. Navistar Int'l Transp. Co.*, 30 F.3d 898, 900 (7th Cir. 1994)); *see also Krys*, 112 F. Supp. 3d at 191-93 (testimony that a party "acted in compliance with and/or in violation of applicable legal duties" is improper).

Similar holdings are legion within the Third Circuit, and other Circuits are in accord. *See, e.g.*, *United States v. Caputo*, 517 F.3d 935, 942 (7th Cir. 2008) ("The 'expert' would have testified about the meaning of the statute and regulations.  That's a subject for the court, not for testimonial experts.  The only legal expert in a federal courtroom is the judge."); *Marx & Co. v. Diners' Club, Inc.*, 550 F.2d 505, 509-10 (2d Cir. 1977) ("legal opinions as to the meaning of the contract terms at issue" are inadmissible); *Pioneer Ctrs. Holding Co. ESOP & Trust v. Alerus Fin., N.A.,* 858 F.3d 1324, 1342 (10th Cir. 2017) ("an expert may not state his or her opinion as to legal standards nor may he or she state legal conclusions drawn by applying the law to the facts.") (citation omitted); *United States v. McIver*, 470 F.3d 550, 561-62 (4th Cir. 2006) ("opinion testimony that states a legal standard or draws a legal conclusion by applying law to the facts is generally inadmissible."); *United States v. Bilzerian*, 926 F.2d 1285, 1294-95 (2d Cir. 1991) (same); *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983) (same); *United States v. Zipkin*, 729 F.2d 384, 387 (6th Cir. 1984) (same).

The court in *Specht v. Jensen*, 853 F.2d 805 (10th Cir. 1988), articulates the universal rule recognized in every Circuit in this way:

> [A]n expert's testimony is proper under Rule 702 if the expert does not attempt to define the legal parameters within which the jury must exercise its fact-finding function. However, when the purpose of testimony is to direct the jury's understanding of the legal standards upon which their verdict must be based, the testimony cannot be allowed. In no instance can a witness be permitted to define the law of the case.

*Id.* at 809-10.

These principles make clear that Shields cannot testify, for example, that Alcoa "violated" TSCA, or "inappropriately" applied TSCA standards, just as he cannot testify about what TSCA "means" or "requires." (*E.g.*, Ex. 2, Shields Report at pp. 44-45). The same is true for Woodyard, who also proffers legal conclusions as to the meaning of TSCA and the application of TSCA's requirements to Alcoa's conduct. (*E.g.*, Ex. 5, Woodyard Report at pp. 3-6, 10-14 (opining that Alcoa's PCB cleanup was "not compliant with either the pre-1998 regulations and/or the Mega Rule provisions")). *See Jordan v. Temple Health Sys.*, 2018 U.S. Dist. LEXIS 128747, *3 (E.D. Pa. Aug. 1, 2018) (precluding testimony "as to the legal effect of federal regulations" as well as "on the meaning of terms in a statute or regulation or the application of such terms to specified conduct") (citation omitted).

## B.    Pechiney cannot rely on an "ultimate issue" argument to save its experts' improper opinions.

Movants recognize that an otherwise qualified and proper expert technical opinion is not excludable under FRE 704 "*just* because it embraces an ultimate issue." Fed. R. Evid. 704(a) (emphasis supplied). That limited safe harbor, however, does not give *carte blanche* for experts to opine on legal standards and/or legal compliance, or to give opinions on matters that the fact finder can judge equally well.

On the one hand, for example, under appropriate circumstances and to the extent otherwise relevant and helpful to the trier of fact, an expert witness may properly draw upon his expertise and testify as to "customs and practices" within the relevant field to assist the fact finding process.  *See United States v. Leo*, 941 F.2d 181, 196-97 (3d Cir. 1991); *Krys*, 112 F. Supp. 3d at 193 (using expertise to "unpack[] the intricacies of [a] complex litigation" is permissible); *see also Specht*, 853 F.2d at 808 (testimony that "assist[s] the jury's understanding and weighing of the evidence" may be proper).  Rule 704 does not, however, authorize an expert to "give his opinion as to what was required under the law, or whether the defendant complied with" the law, *Berckeley*, 455 F.3d at 218, or to cherry-pick record facts as "highly relevant" (in the expert's opinion) to the liability determination.  *Jordan*, 2018 U.S. Dist. LEXIS 128747 at *6-7 ("None of these opinions are admissible, as they relate directly to the legal duties existing under the ADA, and unduly infringe on the judge's lawgiving and jury's fact-finding.").

Similarly, if the trier of fact can readily understand a given issue (whether "ultimate" or not), the rules of evidence do not sanction the admission of expert testimony.  *See Kuhar v. Petzl Co.*, 2018 U.S. Dist. LEXIS 204882, *14 (D.N.J. Dec. 4, 2018) ("expert testimony covering an area known and within the knowledge of a layperson is not helpful" under Rule 702).  For example, if an "ultimate issue" was whether Alcoa released substances onto the property, Alcoa would not object to an opinion being given on that topic by a qualified expert employing a reliable methodology.[5]  In contrast, if an "ultimate issue" was whether Movants disclosed certain environmental conditions to Pechiney—and Shields purports to offer opinions on this issue (*e.g.*,

---

[5]  Alcoa gives this example for illustrative purposes only, without conceding that it requires technical expertise to assess such an issue.  Even in this example, however, Alcoa would still object to extensive and biased recitations of facts by multiple experts as a waste of time and needlessly cumulative—and particularly so if the given issue was not in dispute.  *See Kuhar*, 2018 U.S. Dist. LEXIS 204882 at *14 (observing that proposed expert testimony is not helpful if it addresses facts that "are apparently not in dispute.").

Ex. 2, Shields Report at pp. 41-44)—such an issue can (and should) be addressed by lay witnesses and/or documentary evidence.  There is no need for expert testimony.  *See id.* (observing that proposed expert testimony is not helpful if it "merely addresses a fact question that does not require expert testimony").  Accordingly, Rule 704 does not save such testimony from exclusion.  *See* Fed. R. Ev. 704 *Advisory Committee Notes* ("The abolition of the ultimate issue rule does not lower the bars so as to admit all opinions.  Under Rules 701 and 702, opinions must be helpful to the trier of fact, and Rule 403 provides for exclusion of evidence which wastes time.").

## III.   Assessing The Intent, State Of Mind, And/Or Knowledge Of Witnesses Or Regulators Is A "Classic Jury Function," Not An Expert Function.

As noted above, courts have consistently recognized that the "question of intent is a classic jury question and not one for experts."  *Robinson v. Hartzell Propeller Inc.*, 326 F. Supp. 2d 631, 648 (E.D. Pa. 2004) (citation omitted).  An expert may not testify "as to the state of mind of multiple witnesses and parties."  Ex. 7 at 11, Opinion in *Liqwd, Inc. et al. v. L'Oréal USA Inc. et al.*, No. 17-cv-00014-JFB-SRF, D.I. 906 (D. Del. June 25, 2019) (citing *AstraZeneca LP v. Tap Pharm. Prods., Inc.*, 444 F. Supp. 2d 278, 293 (D. Del. 2006) ("Expert witnesses are not permitted to testify regarding the defendant's intent, motive, or state of mind, or evidence by which such state of mind may be inferred") (citation omitted)); *see also United States v. Libby*, 461 F. Supp. 2d 3, 7 (D.D.C. 2006) ("Expert testimony will . . . be precluded if [it] would usurp the jury's role as the final arbiter of the facts, such as testimony on witness credibility and state of mind") (collecting cases).  This principle applies not only to individual intent, but also to corporate intent: that is, proffered opinions "on the intent, motives or states of mind of corporations, regulatory agencies and others have no basis in any relevant body of knowledge or expertise" and are inadmissible.  *In re Rezulin Prods. Liab. Litig.*, 2004 U.S. Dist. LEXIS 3104,

*22 (S.D.N.Y. Feb. 27, 2004).

For this reason, expert testimony concerning whether a fact was "suppressed" or "downplayed," or concerning what a party "knew" or "determined" at a given point in time—such as what Shields purports to offer in this case (Ex. 2, Shields Report at pp. 39-40, 41-42)—is inadmissible.  *Id.* at *21 n.38, 40 & *44.  As the *Rezulin* court explained in excluding similar expert testimony, to permit such opinion testimony would allow the expert "to argue, based on other non-technical evidence, from the witness stand."  *Id.* at *45.  Such testimony "pertains to lay matters which a jury is capable of understanding and deciding without the expert's help.  It is no more than arguments and conclusory statements about questions of fact masquerading behind a veneer of technical language."  *Id.* (citations and quotations omitted).  As with Shields' conclusory statements concerning Alcoa's purported "downplaying" of certain facts related to site conditions, "[i]t is for counsel to make the arguments about the significance of [a party's] conduct or omissions . . .  and not for an expert to testify as to whether the company did or did not do something."  *Id.* at *45-46.

In a similar manner, Pechiney's experts—who have no first-hand knowledge of the facts and no regulatory training or expertise, and who are (at best) repeating lay witness testimony and/or documentary evidence—should not be allowed to testify concerning regulators' motivations, including whether or not they "ordered" or "directed" or "required" site remediation or a specific remedial approach, and, if so, why.  *See id.* at *25-26, 46 (excluding "repetitions of facts and speculative inferences" about intent, and noting that "an expert who . . . lacks personal knowledge may only testify about the underlying facts if he is actually bringing to bear his scientific expertise") (citation omitted).  For example, Shields is not competent to testify as to the meaning of the "DTSC order" in this case, just as Woodyard is not competent to testify as to

11

Pechiney's motivations in submitting a PCB cleanup plan to the EPA, or what EPA approval of the same means in the context of this case.  (*E.g.*, Ex. 2, Shields Report at pp. 49-50, 52; Ex. 6, Woodyard Rebuttal Report at pp. 9-10 (opining that Pechiney's PCB cleanup approach "was largely independent of [its] redevelopment plan")).

## IV.    Factual Regurgitations Disguised As Expert Opinion Have No Place In This Trial.

Lengthy factual regurgitations by expert witnesses, untied to technical expertise, are likewise improper.  While an expert "may rely on testimony of others that support his relevant opinions," "the Court will not permit him to summarize witness testimony just for the sake of summarizing it or offering inappropriate opinions."  Ex. 7 at 12, Opinion in *Liqwd, Inc. et al. v. L'Oréal USA Inc. et al.*, No. 17-cv-00014-JFB-SRF, D.I. 906 (D. Del. June 25, 2019).  Similarly, an expert cannot opine as to whether a party did or did not do something; "[t]here is no basis for such an opinion, and it will not assist the trier of fact in making their determinations."  *Id*. "Unless the expertise adds something, the expert is at best, offering a gratuitous opinion, and at worst is exerting undue influence on the jury."  *Id*. (citations omitted).

Courts have consistently recognized that even a technical expert "will not be permitted to merely read, selectively quote from, or 'regurgitate' the evidence."  *In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164, 192 (S.D.N.Y. 2009) (finding that "to the extent such evidence is admissible, it should be presented to the jury directly"); *Dalgic,* 2019 U.S. Dist. LEXIS 111203 at *31 (discussing the same).  In *In re Trasylol Products Liability Litigation*, for example, the court precluded an expert from "reguritat[ing]" a factual narrative of regulatory history and summaries of the defendant's internal documents.  709 F. Supp. 2d 1323 (S.D. Fla. 2010).  The court explained that such "facts should be presented to the jury directly," rather than allowing the expert to "assume[ ] the role of Plaintiffs' advocate in her presentation of the facts and invade[ ]

the province of the jury." *Id.* at 1346.  The court summarized:

> Dr. Parisian's major role in this litigation appears to be that of
> Plaintiffs' advocate rather than expert. Her expertise is not required
> to present the factual narrative to the jury, and she has no expertise
> that allows her to infer Bayer's and the FDA's knowledge and
> intent and present those inferences to the jury. Therefore, Dr.
> Parisian generally does not offer testimony involving "scientific,
> technical, or other specialized knowledge" that would assist the
> trier of fact to understand the evidence or to determine a fact in
> issue.

*Id*. at 1347; *see also Oxford Gene Tech., Ltd. v. Mergen Ltd.*, 345 F. Supp. 2d 431 (D. Del. 2004)

("Expert testimony may not be used merely to repeat or summarize what the jury independently

has the ability to understand") (quoting *SEC v. Lipson*, 46 F. Supp. 2d 758, 763 (N.D. Ill. 1998)).

A similar narrative recital of "selected regulatory events" was the centerpiece of a

challenge to proposed expert testimony in *In re Rezulin Products Liability Litigation*, 309 F.

Supp. 2d 531 (S.D.N.Y. 2004).  Characterizing the expert's "history of Rezulin" as "merely a

narrative of the case which a juror is equally capable of constructing" and as "background," the

court concluded that:

> Such material, to the extent it is admissible, is properly presented
> through percipient witnesses and documentary evidence. An expert
> is not required, for example, to comment that the transcript of the
> December 11, 1996 Advisory Committee "noted" in response to
> certain animal data, that "at least in rats we have reason to be
> concerned about what might happen ultimately in liver, a target
> tissue." Likewise, the glosses that Dr. Gale interpolates into his
> narrative are simple inferences drawn from uncomplicated facts
> that serve only to buttress plaintiffs' theory of the case. As
> plaintiffs' Rezulin "historian," therefore, Dr. Gale does no more
> than counsel for plaintiff will do in argument, *i.e.,* propound a
> particular interpretation of [defendant]'s conduct. Accordingly, Dr.
> Gale's testimony relating to the "history of Rezulin" is
> inadmissible.

*Id*. at 551 (citations omitted).

The same result should be reached here with respect to the lengthy (and cumulative)

13

factual regurgitations proposed by Pechiney's experts, including with respect to site history, site contamination, and site remediation.  (*E.g.*, Ex. 2, Shields Report at pp. 4-36; Ex. 3, Gravel Report at pp.5-8 and C-1–C-30; Ex. 5, Woodyard Report at pp. 7-10).  While it may be proper for an expert to explain the "facts or data" underlying his opinion as necessary, *see* Fed. R. Evid. 702 and 703, it is entirely inappropriate to use expert testimony as a storytelling vehicle.

## V.  Offering Cumulative Expert Testimony Is Also Improper.

In a similar manner, Pechiney cannot be allowed to use multiple expert witnesses to opine on the same subject matter or, worse still, to engage in the same improper factual narration of Pechiney's case for it.  As noted above, Shields admitted at his deposition that "there certainly is some overlap" between his testimony and the testimony of Pechiney's other experts, specifically, Kalmes (risk assessment), Mesard (soil vapor extraction and on-site contribution), Gravel (NCP compliance), and Woodyard (PCBs).  (Ex. 1, Shields Tr. at 337:6 – 338:13).  Both Mesard and Shields, for example, purport to give testimony concerning Alcoa's "blame" of off-site sources for groundwater TCE contamination.  In addition, both Shields and Gravel offer testimony concerning the purported efficiency and/or cost-effectiveness of Pechiney's remediation, while both Shields and Woodyard offer opinions concerning Alcoa's PCB cleanup and related regulatory compliance.  Under principles of judicial economy and fairness, Pechiney should not be permitted to present multiple experts with the same opinions.  *See* Fed. R. Evid. 403 (even relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . undue delay, wasting time, or needlessly presenting cumulative evidence"); *see also United Healthcare Servs. v. Cephalon, Inc.*, 2019 U.S. Dist. LEXIS 113756, *42 (E.D. Pa. July 8, 2019) (prohibiting party from presenting "multiple expert witnesses on the same issue" at trial).  Movants trust that Pechiney will recognize the cumulative nature of its expert witness portfolio, and will adjust its presentation of evidence to comply with the Federal Rules of

Evidence.

## **CONCLUSION**

For the foregoing reasons, Movants seek an order: (1) deferring until a later date (closer to the motions *in limine* deadline) motions on the matters addressed herein; and (2) directing the parties to meet/confer to agree on a procedure to address the matters raised herein.  Movants request, in the alternative, that the Court direct Pechiney to limit the testimony of its expert witnesses to matters appropriate for expert testimony within the areas of their technical qualifications.

Dated:  July 31, 2019                    YOUNG CONAWAY STARGATT & TAYLOR LLP

/s/ *Mary F. Dugan*
Mary F. Dugan (No. 4704)
1000 N. King Street
Wilmington, DE 19801
(302) 571-5028
mdugan@ycst.com

OF COUNSEL:
Steven Grimes (admitted *pro hac vice*)
Stephanie B. Sebor (admitted *pro hac vice*)
Kelly E. Mannion (admitted *pro hac vice*)
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601
(312) 558-5600

*Attorneys for Century Aluminum Company*

Dated:  July 31, 2019                    RICHARDS, LAYTON & FINGER, P.A.

/s/ *Steven J. Fineman*
Steven J. Fineman (No. 4025)
Christine D. Haynes (No. 4697)
One Rodney Square
920 North King Street
P.O. Box 551

Wilmington, DE  19899-0551
fineman@rlf.com

OF COUNSEL:
Rene P. Tatro
David B. Sadwick
Tatro Tekosky Sadwick LLP
333 South Grand Avenue
Suite 4270
Los Angeles, CA  90071
renetatro@ttsmlaw.com
davidsadwick@ttsmlaw.com


*Attorneys for Alcoa Inc.*