## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ALCOA INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 06-451-JFB-SRF |
| v. | ) | |
| | ) | |
| ALCAN ROLLED PRODUCTS- | ) | |
| RAVENSWOOD LLC, f/k/a PECHINEY | ) | |
| ROLLED PRODUCTS LLC, PECHINEY CAST | ) | |
| PLATE INC., and CENTURY ALUMINUM | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS CONSTELLIUM ROLLED PRODUCTS RAVENSWOOD, LLC (FORMERLY ALCAN ROLLED PRODUCTS-RAVENSWOOD LLC, F/K/A PECHINEY ROLLED PRODUCTS LLC) AND PECHINEY CAST PLATE, INC.'S OPPOSITION TO ALCOA INC. AND CENTURY ALUMINUM COMPANY'S JOINT MOTION FOR AN ORDER DEFERRING CERTAIN CHALLENGES TO PECHINEY-PROFFERED EXPERT TESTIMONY

*Of Counsel:*

John D. Parker
BAKER & HOSTETLER LLP
Key Tower
127 Public Square, Suite 2000
Cleveland, OH 44114-1214
(216) 621-0200

Ryan D. Fischbach
BAKER & HOSTETLER LLP
11601 Wilshire Boulevard, Suite 1400
Los Angeles, CA 90025-0509
(310) 820-8800

Matthew D. Thurlow
BAKER & HOSTETLER LLP
1050 Connecticut Avenue, NW
Washington, DC 20036
(202) 861-1681

Dated: August 28, 2019

ASHBY & GEDDES
John G. Day (#2403)
Tiffany Geyer Lydon (#3950)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
jday@ashbygeddes.com
tlydon@ashbygeddes.com

*Attorneys for Defendants Constellium Rolled Products Ravenswood LLC (formerly Alcan Rolled Products-Ravenswood LLC, f/k/a Pechiney Rolled Products LLC) and Pechiney Cast Plate, Inc.*

{01481813;v1 }

# TABLE OF CONTENTS

**Page(s)**

I. INTRODUCTION ................................................................................................1

II. LEGAL STANDARD........................................................................................4

    A. The Court Set a *Daubert* Motion Deadline..............................................4

    B. Alcoa and Century's Request for a "Second Bite at the Apple" Is Improper..........5

III. ALCOA AND CENTURY'S FLAWED AND IMPROPER CHALLENGES ..................6

    A. Feigned Concerns Regarding "Background Facts" Supporting Expert Opinions........................................................................................6

        1. Alcoa and Century Argue Against a Strawman Proposition that Dr. Shields Intends to "Regurgitate" Countless Facts "Untied" to His Technical Opinions ...................................................................7

        2. Alcoa and Century's False Claims Regarding "Sleeper" Opinions and Meritless Questions Regarding Dr. Shields' "Expertise" ...........................9

    B. Alcoa and Century's False "Legal Opinions" Claims ...........................12

    C. Alcoa and Century's "State of Mind" Complaints Are Without Merit ................15

    D. Alcoa and Century's Argument Regarding Multiple Experts Is Incorrect, Premature and Improper ...................................................................17

IV. CONCLUSION................................................................................................20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Artesian Water Co. v. New Castle Cnty.*,
 659 F. Supp. 1269 (D. Del. 1987)...................................................................................15, 18

*Berckeley Inv. Group, Ltd. v. Colkitt*,
 455 F.3d 195 (3d Cir. 2006)...................................................................................................13

*Daubert v. Merrell Dow Pharms., Inc.*,
 509 U.S. 579 (1993)........................................................................................................ *passim*

*Elcock v. Kmart Corp.*,
 233 F.3d 734 (3d Cir. 2000).....................................................................................................5

*In re Fosamax Prods. Liab. Litig.*,
 645 F. Supp. 2d 164 (S.D.N.Y. 2009).......................................................................................8

*Krys v. Aaron*,
 112 F. Supp. 3d 181 (D.N.J. 2015) ...........................................................................................8

*Oxford Gene Tech. v. Mergen Ltd.*,
 345 F. Supp. 2d 431 (D. Del. 2004).......................................................................................14

*In re Rezulin Prods. Liab. Litig.*,
 No. 2843, 2004 U.S. Dist. LEXIS 3104 (S.D.N.Y. Feb. 27, 2004) .........................................17

*Rutz v. Novartis Pharm.*,
 No. 12-cv-0026-MJR-PMF, 2013 WL 1412276 (S.D. Ill. Apr. 8, 2013) ...........................5, 10

*Sonos, Inc. v. D&M Holdings Inc.*,
 297 F. Supp. 3d 501 (D. Del. 2017).......................................................................................14

*Taylor v. Shields*,
 No. 13-2241, 2017 WL 2633427 (E.D. Pa. June 19, 2017)...............................................5, 10

*United Healthcare Servs. v. Cephalon, Inc.*,
 No. 17-555, 2019 U.S. Dist. LEXIS 113756 (E.D. Pa. July 8, 2019).....................................18

**Rules**

Federal Rule of Civil Procedure 26 ............................................................................................7

Federal Rule of Evidence 401 ...............................................................................................2, 4

Federal Rule of Evidence 403.............................................................................................2, 4, 5

Federal Rule of Evidence 702.................................................................................................5, 6, 7

Federal Rule of Evidence 703....................................................................................................6, 7

Federal Rule of Evidence 704.....................................................................................................12

## I.      INTRODUCTION

Alcoa Inc. ("Alcoa") and Century Aluminum Company ("Century") bring a curious joint motion asserting admittedly "not 'classic' *Daubert*-type challenges" against certain aspects of three of Pechiney's experts' opening expert reports—that of Dr. Walter Shields, A.J. Gravel and John Woodyard.  Their Joint Motion for an Order Deferring Certain Challenges to Pechiney-Proffered Expert Testimony (D.I. 306) and Opening Brief in Support (D.I. 307) (collectively, the "Motion") are unsound and should be denied as an improper attempt to get a second bite at *Daubert* challenges immediately before trial.

Alcoa and Century claim to have the following principal "issues" with portions of the subject expert *reports* (not the experts' actual proposed testimony):

- Statements detailing the background facts that are relevant to their opinions—or as Alcoa and Century put it, "regurgitate" "purported (but selectively 'spun' facts)";

- "Interpret laws/regulations (*i.e.*, identify 'relevant' or 'controlling' laws or regulations…)" and "[i]nterpret contacts" including "what a contract required a party to do or refrain from doing;" and

- Purported opinions regarding the "intent, state of mind and knowledge of parties, witnesses," etc.  D.I. 307, p. 2.

They also raise an irrelevant and hypocritical, not to mention premature, "concern" regarding purported possible duplication of testimony from overlapping experts at trial.

The Motion is both procedurally and substantively flawed.  Much of the Motion is based on Alcoa and Century's contorted reading of Pechiney's experts' reports—not what the reports actually say, let alone the experts' actual, proffered opinions.  Further, Alcoa and Century concede that their Motion is not ripe, claiming with more than a little sarcasm that, "[i]f Pechiney intends to 'play by the rules,' and limit" their experts from allegedly trying to usurp the role of the Court and/or fact finder—something Pechiney's experts are not seeking to do—"then no further motion practice will be necessary."  D.I. 307, p. 3.  Alcoa and Century's position is quite

ironic because their own experts engage in rampant fact regurgitation, legal and regulatory opinion-making, and unsupported and counterfactual speculation.  If what Alcoa and Century are merely seeking is a declaration that the Court will hold Pechiney's experts—as it will hold Alcoa and Century's experts—to only providing "proper expert testimony at trial" and not violating FRE 401 and 403, Pechiney believes this Motion is wholly unnecessary.[1]

Setting aside for the moment that Alcoa and Century misconstrue and improperly assume how and to what matters Pechiney's experts Shields, Gravel and Woodyard will testify to in this matter, what is clear is that Alcoa's experts Anton Arulanantham, Ph.D., Michael C. Kavanaugh, Ph.D., Christopher Hunt, Ronald Hamburger, and Gaynor Dawson, and Century's expert Jon Rohrer, do many, if not all of the same things Alcoa and Century accuse Pechiney's experts of, and often many times worse.  Given the nature of Alcoa and Century's proffered experts and their expert reports in this matter, calling the Motion hypocritical would be an understatement.

For example, while Alcoa and Century complain about background facts set forth in Pechiney's experts' reports, their experts provide a much more extensive "regurgitation" of facts in their reports, including, for example, Rohrer's 169-page, 10-point-font, single-spaced, 900+ footnote "fact" section.  Alcoa and Century's experts also explicitly claim to identify "relevant" or "controlling" laws or regulations (*see, e.g.*, D.I. 302-1, Ex. A (Expert Report of Anton Raviraj Arulanantham ("Arulanantham Report")), p. 20-24 and D.I. 302-2, Ex. F (Expert Report of Jon Rohrer ("Rohrer Report")), p. 166-176)) and claim to interpret contracts (*see* Rohrer Report, p.

---

[1] Pechiney notes the parties had a meet and confer to discuss the filing of anticipated *Daubert* motions, not *quasi-Daubert* motions.  Further, at that time, Alcoa and Century simply inquired if Pechiney intended to withdraw Shields, Woodyard and Gravel entirely—an obviously hollow request—and did not raise their purported concerns over the matters covered by the Motion.  If they had, and if they are actually bringing this Motion in good faith, then many of the matters raised in the Motion may well have been resolved and Alcoa and Century could have saved the Court (as well as Pechiney) the time and effort now required to address their improper Motion.

200-201 and Expert Report of Gaynor Dawson ("Dawson Report"),[2] p. 6-9)—two other issues Alcoa and Century raise in the Motion.  Further, Alcoa and Century argue that none of Pechiney's experts "have first-hand knowledge of the facts at issue, are trained as lawyers or legal experts, or have ever served as regulators."  D.I. 307, p. 2.  Yet, the exact same things can be said about each one of Alcoa and Century's experts.[3]

Alcoa and Century want to limit Pechiney's experts from providing the factual or legal context and background for their opinions.  At the same time, Alcoa and Century believe their own experts should have the unfettered right to tell a one-sided story based on hyperbole and speculation.  As discussed more fully in Pechiney's *Daubert* motions, Alcoa and Century's experts draw upon a narrow, self-serving set of facts and unrealistic regulatory interpretations to arrive at a results-driven conclusion which would have led to leaving tens of thousands of tons of hazardous waste in place at the Vernon Site during redevelopment, contrary to the demands of the United States Environmental Protection Agency ("EPA") and the California Department of Toxic Substances Control ("DTSC").  Of course, their conclusion that no contamination needed to be removed from the Vernon Site—an approach never replicated in practice in the real world—just happens to coincide *exactly* with Alcoa and Century's interest in continuing to avoid

---

[2] Opposition Appendix of Exhibits ("Opp. Appx."), Ex. AU.

[3] Pechiney notes that Alcoa's expert, Arulanantham, did serve, some time ago, as a "regulator" with the California Regional Water Quality Control Board, an agency that is *not* relevant to or involved in this matter.  Arulanantham did not work at any of the agencies actually overseeing the cleanup of the Site as a "regulator."  Further, the fact that he may have once served as a "regulator" does not qualify him to opine on what any *other* regulator, especially at different agencies and with different roles, may or may not do.  *See* D.I. 302-2, Ex. J (Deposition of Anton Raviraj Arulanantham ("Arulanantham Depo."), 572:22-573:17 (admitting that different regulators may apply different standards).  His speculation as to what the relevant regulators would do in this matter is just as improper as that of Century's non-regulator expert, Rohrer, who does the same thing.  *Both* should be excluded from offering any such opinions in this matter. *See* Pechiney's motions to exclude both Rohrer's and Arulanantham's improper, speculative "alternative remedy" theories.  D.I. 296 and 298.

responsibility for any environmental costs associated with the severe environmental contamination they left at the Site or Century's contractual indemnity obligations relating to same.

If Alcoa or Century had met and conferred before filing their Motion, Pechiney would have readily stipulated to what Alcoa and Century claim is their underlying concern—ensuring that all parties' experts provide only "proper expert testimony at trial" and do not violate FRE 401 and 403.  Further, Pechiney fully expects that the Court would enforce such a position with or without Alcoa and Century's unnecessary, let alone ironic, Motion.  If, on the other hand, which it appears may be the case, what Alcoa and Century are really seeking to secure is a one-sided, "second-bite" at *Daubert* motions, closer to trial, expecting their actual *Daubert* motions will be denied,[4] then the Motion is entirely improper and should be denied.

## II.    LEGAL STANDARD

### A.    The Court Set a *Daubert* Motion Deadline

The Court has clearly established, as set forth in its Case Scheduling Orders, a separate *Daubert*-motion deadline for challenges to preclude expert testimony.  *See, e.g.,* D.I. 123 at p. 3 (setting a separate "*Daubert* motion" filing deadline).  The deadline to file *Daubert* challenges against a party's expert was extended several times by stipulation of the parties, but has included a date unique from other motions, including motions *in limine*.  The operative Case Scheduling

---

[4] Alcoa has filed a separate, actual *Daubert* motion challenging certain of Mr. Woodyard's opinions in this matter (D.I. 312) and Alcoa and Century have jointly filed yet another, separate *Daubert* motion challenging Mr. Gravel's opinions and qualifications in this matter (D.I. 291). This Motion, as to both Mr. Woodyard and Mr. Gravel, is duplicative and an apparent attempt to make an end-run around the Court's briefing limitations and to take a "second swipe" at Pechiney's experts.  Pechiney is addressing the substance of those other motions in its oppositions to those motions and will not waste the Court's time rehashing those points here as Alcoa and Century have attempted to do in their Motion.

Order provided that the deadline to file *Daubert* motions was July 31, 2019.  D.I. 287 at p. 1.

The deadline to file motions *in limine* is not until February 7, 2020.  *Id.* at 2. Therefore, all

motions seeking to exclude expert testimony or evidence based on *Daubert*-style challenges,

including FRE 702, were required to have been filed by the Court's *Daubert*-motion deadline.

*Taylor v. Shields*, No. 13-2241, 2017 WL 2633427, at *3-4 (E.D. Pa. June 19, 2017) (denying, as

untimely, a party's *Daubert* motion disguised as a motion *in limine*) *aff'd* 744 Fed. Appx. 83 (3d

Cir. 2018); *Rutz v. Novartis Pharm.*, No. 12-cv-0026-MJR-PMF, 2013 WL 1412276, at *1 (S.D.

Ill. Apr. 8, 2013).  Other challenges to evidence to be presented at trial, such as under FRE 403,

are subject to the motion *in limine* deadline.  Challenges to expert testimony based an expert's

qualifications, training or expertise or that such experts are offering improper "legal" opinions

are *Daubert* challenges, which Alcoa and Century were required to bring, if at all, by the

*Daubert*-motion deadline set by the Court.

### B.    Alcoa and Century's Request for a "Second Bite at the Apple" Is Improper

Attempting to avoid the Court's *Daubert*-motion deadline, Alcoa and Century claim that

the purported challenges in their Motion are "not 'classic' *Daubert*-type challenges to purported

technical opinion testimony."  D.I. 307, p. 1.  They are only partially correct.  Some of their

purported challenges, which they want to defer past the Court-set *Daubert*-motion deadline, are

quintessential *Daubert* challenges, such as challenging the qualifications of Pechiney's experts.

For example, they claim that Pechiney expert Dr. Shields "lacks expertise" to offer opinions

regarding a DTSC order or Toxic Substances Control Act ("TSCA") regulations.  D.I. 307, p. 5.

Qualification to provide expert testimony *is* precisely a *Daubert* challenge.  *See, e.g.*, *Elcock v.

Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000) (The Third Circuit has identified three

requirements for admission of expert testimony under *Daubert* including: "qualifications,

reliability, and fit.").  As Alcoa and Century failed to timely make such a challenge under *Daubert* as to Dr. Shields—and did not substantively do so in the Motion—they have waived any such challenges to Dr. Shields' testimony in this matter.

## III.   ALCOA AND CENTURY'S FLAWED AND IMPROPER CHALLENGES

### A.   Feigned Concerns Regarding "Background Facts" Supporting Expert Opinions

Alcoa and Century complain that certain of Pechiney's experts' opening reports contain discussion of relevant background facts.  For example, they complain that Dr. Shields' opening report contains what they call "40 single-spaced pages of what he characterizes as 'facts.'"  D.I. 307, p. 5.  They claim this background section in Dr. Shields' opening report does not constitute "opinions."  *Id.*  They are correct.  Dr. Shields never said it did.  Similarly, they complain that Pechiney's experts Mr. Gravel and Mr. Woodyard also reference background information relevant to their opinions in their reports as well.  *See, e.g.*, D.I. 307, p. 14 (claiming that Pechiney's experts' reports include background fact sections "including with respect to site history, site contamination, and site remediation. (*E.g.*, Ex. 2, Shields Report at pp. 4-36; Ex. 3, Gravel Report at pp.5-8 and C-1–C-30; Ex. 5, Woodyard Report at pp. 7-10).)"

 As an expert is required to do, these background sections provide Alcoa and Century, as well as the Court, with the underlying facts upon which the experts' opinions rely.  Alcoa and Century themselves admit that it is "proper for an expert to explain the 'facts or data' underlying his opinion as necessary," citing to Fed. R. Evid. 702 and 703.  D.I. 307, p. 14.  As Dr. Shields testified, "I think, obviously, my opinions need to rely on the facts of the case."[5]  Alcoa and Century even admit that many of those facts are "not disputed."  D.I. 307, p. 5.

---

[5] D.I. 308-1, Ex. 1 (Deposition of Walter J. Shields, Ph.D. ("Shields Depo."), 29:21-22.

Despite that, they argue that Dr. Shields does not have first-hand knowledge of those facts. *Id.* But, he never claimed he did. In fact, none of the experts in this matter, including those from Alcoa and Century, have "first-hand knowledge" of any such facts. Testifying experts in environmental matters rarely do. Further, there is no requirement that an expert have first-hand knowledge of facts to rely on those facts in order to render their expert opinions. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 (1993) ("Unlike an ordinary witness, . . . an expert witness is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation.").

That said, this argument is particularly ironic coming from Century, whose expert, Jon Rohrer, has a "Background/Bases"—*i.e.*, "fact"—section in his opening report that is nearly 170, single-spaced pages long, in an incredibly small font, that includes well over 900 footnotes, purporting to set forth a comprehensive factual backdrop for this matter.[6] Rohrer's treatise is more than double the *combined* factual sections of Dr. Shields (33 pages), Mr. Gravel (33 pages), *and* Mr. Woodyard (3½ pages).[7]

### 1.    Alcoa and Century Argue Against a Strawman Proposition that Dr. Shields Intends to "Regurgitate" Countless Facts "Untied" to His Technical Opinions

Alcoa and Century cannot honestly criticize Dr. Shields for complying with FRE 702 and 703 and FRCP 26 by providing the factual basis and underlying assumptions for his technical opinions in his opening report. So they create a strawman argument instead. They claim that "[l]engthy factual regurgitations by expert witnesses, untied to technical expertise, are likewise

---

[6] *See* Ex. D.I. 302-2, Ex. F, (Rohrer Report), p. 8-176.
[7] Alcoa and Century complain that Mr. Gravel also includes a factual background section to his report, Gravel Report, Appendix, C, which they claim is similarly improper. *See*, D.I. 307, p. 5, fn. 4. As noted in the Motion, Mr. Gravel himself "admits" that section of his report is not purporting to offer opinions, it is simply stating "facts."

improper." D.I. 307, p. 12. They argue that "even a technical expert 'will not be permitted to merely read, selectively quote from, or 'regurgitate' the evidence.'" D.I. 307, p. 12, citing to *In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164, 192 (S.D.N.Y. 2009) (finding that "to the extent such evidence is admissible, it should be presented to the jury directly"). Not only is this a quintessential strawman argument, it is legally incorrect. Dr. Shields does not have an "opinion" presenting 33-pages of background facts—they are just that, background facts. Alcoa and Century themselves concede that "it may be proper for an expert to explain the 'facts and data' underlying his opinion as necessary." D.I. 307, p. 14. That is exactly what Dr. Shields is doing in his opening report. Further, Dr. Shields has not stated that he intends to and does not intend to "merely read, selectively quote from, or 'regurgitate' the evidence" at trial, as Alcoa and Century appear to allege. *Id.*, p. 12. As such, as Alcoa and Century readily admit, this is a premature, unripe "claim" through which they seek to preclude Pechiney's experts from doing something they have not even indicated that they intend to do.[8]

Further, given the far worse "violation" of this alleged *rule* by Alcoa and Century's experts, apparently Alcoa and Century want the Court to preemptively preclude Pechiney's experts from doing the very same thing their experts intend to do, only to a much greater degree. Alcoa and Century's request for such relief is improper and premature, not to mention

---

[8] A similar argument was raised by a party challenging an expert's report in *Krys v. Aaron*, 112 F. Supp. 3d 181, 195 n. 15 (D.N.J. 2015)—a case relied upon by Alcoa and Century in their Motion. In that case, the plaintiff argued that the expert's "Relevant Facts" section of his expert report should be excluded because it contained "improper findings of fact" that "invade[d] the province of the jury." *Id.* The court found plaintiff's argument completely "without merit," finding that (1) defendants were not relying on the expert for a "factual narrative" on its version of events, (2) the Federal Rules of Evidence and Third Circuit law allow experts to base opinions on disputed facts, and (3) to the extent such testimony was sought, the court can "instruct the jury on the use and weight" of such testimony. The fact that Alcoa and Century may dispute certain of the facts Dr. Shields relied upon in forming his opinions does not support exclusion.

hypocritical, and should be denied.

### 2.   Alcoa and Century's False Claims Regarding "Sleeper" Opinions and Meritless Questions Regarding Dr. Shields' "Expertise"

Alcoa and Century also claim, without any support, let alone citations to Dr. Shields' deposition testimony regarding his opinions in this matter, that aside from his actual opinions, his opening report purportedly contains other, "non-technical, improper, '*sleeper*' opinions" in his factual background section.  D.I. 307, p. 5 (emphasis added).  This is another strawman argument that is both factually and legal flawed.

First, Alcoa and Century claim that Dr. Shields' background facts contain "sleeper" opinions relating to the order issued by the DTSC to Pechiney requiring the cleanup of the Site (the "DTSC Order") and EPA's TSCA regulations regarding the PCB-contamination Alcoa and Century left at the Site.  Alcoa and Century assert, without any support, that Dr. Shields, with nearly 35-years' experience in this very field, "lacks expertise" to opine on an order from an environmental regulatory body, such as the DTSC, or application of an environmental regulation, such as TSCA.  D.I. 307, p. 5.  Alcoa and Century make this argument despite the fact that earlier on the *same page* of their Motion they concede that "Shields may have the training and experience to provide *technical* opinions in certain areas, a point not addressed in this motion…."  D.I. 307, p. 5 (emphasis in original).

Alcoa and Century also complain in the Motion that Dr. Shields is "not competent to testify as to the meaning" of the DTSC Order.  D.I. 307, p. 11-12, citing to Expert Report of Walter J. Shields, dated June 15, 2018 ("Shields Report") (D.I. 308-1, Ex. 2), p. 49-50.  That is actually what Dr. Shields' experience, training and expertise have prepared him to do.  Dr. Shields is a principal scientist at Exponent in its Environmental & Earth Sciences Practice.[9]  That

---

[9] D.I. 308-1, Ex. 2 (Shields Report), p. 1.

practice includes providing "consulting services in the areas of contaminant transport and fate, dose reconstruction, environmental forensics, industrial archeology, apportionment, remedial engineering and cost evaluations, and regulatory compliance."[10]  Dr. Shields holds a B.S. in Forest Science, a M.S. in Forest Resources (emphasis in soil science), and a Ph.D. in Soil Science and is a Certified Professional Soil Scientist, who has been practicing in this field for nearly 35 years.[11]  Dr. Shields has, in fact, spent decades conducting and managing environmental studies throughout the United States, including implementation of CERCLA investigations, cost-effective remediation approaches, and negotiations with state and federal agencies.[12]  As a consultant for both state and federal environmental regulators, as well as regulated companies, he has assisted in the development, interpretation and implementation of various types of environmental remediation orders.[13]  There can be no serious debate that he is qualified based on his training, experience and expertise to discuss the DTSC Order—an order addressing the investigation and cleanup of environmental contamination at the Site.  Indeed, not only is this what he has been trained to do, but it is what he has done for nearly 35 years.

Further, Alcoa and Century base their entire Motion on the premise that they would like the chance to raise these issues closer to trial, if necessary, because they are "not 'classic' *Daubert*-type challenges."  Whether or not Dr. Shields is qualified to render certain opinions— *i.e.*, does he have sufficient training, expertise, skill and "experience"—is exactly the type of challenge a party is required to make at the *Daubert* stage.  *Taylor*, 2017 WL 2633427, at *3-4; *Rutz*, 2013 WL 1412276, at *1.  It also is exactly the same type of challenge that Alcoa and

---

[10] *Id*.

[11] *See* D.I. 308-1, Ex. 2 (Shields Report), p. 2, Ex. 1 thereto (Dr. Shields' *Curriculum Vitae*).

[12] *Id*.

[13] *Id.*

Century opted to bring against Mr. Gravel.[14]  There is no explanation in the Motion why such a challenge should be made for Mr. Gravel now, but reserved until closer to trial for Dr. Shields. As Alcoa and Century failed to make a motion as to Dr. Shields' qualifications by the *Daubert*-motion deadline, they have waived any challenges as to Dr. Shields' qualifications to render the opinions he is actually offering in this matter.

Second, there is no basis to *reserve* arguments regarding Dr. Shields' reliance on facts to support his opinions.  For example, Dr. Shields noted in his report that the DTSC issued an "Imminent and Substantial Endangerment Determination and Consent Order" to Pechiney on July 6, 2010.  Are Alcoa and Century contesting that undisputed fact?  That is the title of the order.[15]  Dr. Shields then quotes from that written Order and summarizes the DTSC's express findings and directives in the Order.  Alcoa and Century apparently take issue with Dr. Shields' summary, which is that the Order "mandated that Pechiney clean up the Site and established preliminary remedial action objectives that included the remediation of shallow soil vapor with COCs above site-specific remediation goals, the remediation of shallow and deeper soils above site-specific remediation goals, and the remediation of PCB-impacted concrete"[16]  Further, as Dr. Shields points out in his report, DTSC made the following express finding, for example: "Response action is necessary to abate a public nuisance and/or to protect and preserve the public health," *i.e.*, Pechiney needs to clean up the Site to (abate) a public nuisance (the chemicals of concern, COCs) specifically identified in the DTSC Order.).[17]  If Alcoa and Century have an issue, it is with the clear findings by the independent government agency

---

[14] *See* D.I. 291, 292.
[15] *See* D.I. 303-1, Ex. W, p. 1.
[16] D.I. 308-1, Ex. 2 (Shields Report), p. 49-50 (specifically citing to the Order itself).
[17] D.I. 308-1, Ex. 2 (Shields Report), p. 49.

overseeing the remediation of the Site, the DTSC, not Dr. Shields' reference and/or citation to same.

Similarly, Alcoa and Century's swipes at Mr. Gravel's opening report and the background facts recited therein is equally improper.[18]  Unlike with Dr. Shields, Alcoa and Century filed an actual *Daubert* motion challenging Mr. Gravel's qualifications and opinions in this matter.[19]  Any arguments they have with respect to the propriety of Mr. Gravel's opinions, qualifications, etc., should have been raised in that motion.  Further, to the extent such arguments were raised in Alcoa and Century's *Daubert* motion against Mr. Gravel, Pechiney incorporates herein by reference and refers the Court to its opposition to that motion to address the substance of such arguments.

### B.    Alcoa and Century's False "Legal Opinions" Claims

Next, Alcoa and Century assert in their Motion that Dr. Shields "cannot testify, for example, that Alcoa 'violated' TSCA, or 'inappropriately' applied TSCA standards, just as he cannot testify about what TSCA 'means' or 'requires.[20]  They claim that is because of the prohibition on experts opining on ultimate issues.[21]  Moreover, these are not "ultimate issues." Pechiney's claims against Alcoa, for example, arise under CERCLA, *not* TSCA, and whether or not Alcoa failed to comply with or violated TSCA, while relevant to certain issues in dispute, is

---

[18] For example, Alcoa and Century argue in the Motion as follows: "Gravel, too, masks improper legal opinions and speculation within extended litanies of selected 'facts.' He speculates, for example, about regulators' intent concerning the adequacy of Pechiney's remedial investigation, about what the City of Vernon and/or DTSC 'ordered' or 'directed' or 'required' Pechiney to do in terms of site remediation, and about Pechiney's motivations concerning its FS/RAP submissions (Ex. 3, Gravel Report at pp. C-2, C-6 – C-9, C-13)."  Motion, p. 5-6.

[19] *See, e.g.*, D.I. 291.

[20] *E.g.*, D.I. 308-1, Ex. 2, (Shields Report), p. 44-45.

[21] *Id.*  (That is the wrong legal standard, which Alcoa and Century tacitly acknowledge in their Motion, because Rule 704 allows testimony on ultimate issues.)

not dispositive or an "ultimate issue" in this case.  Alcoa and Century also argue that another

Pechiney expert, Mr. Woodyard, "also proffers legal conclusions as to the meaning of TSCA and

the application of TSCA's requirements to Alcoa's conduct."[22]  Alcoa and Century are

incorrect.[23]  Even they concede that "an expert witness may properly draw upon his expertise

and testify as to 'customs and practices' within the relevant field to assist the fact finding

process."[24]  Further, courts routinely allow technical experts like Dr. Shields and Mr. Woodyard

to provide testimony regarding the applicable laws and regulations that support their testimony,

including expert testimony regarding corporate "compliance with customs and practices that

implicate legal duties."  *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 218 (3d Cir. 2006).

That said, Alcoa and Century's complaints in the Motion continue to be more projection.

For example, they claim that "if an 'ultimate issue' was whether [Alcoa and Century] disclosed

certain environmental conditions to Pechiney—and Shields purports to offer opinions on this

issue (*e.g.*, D.I. 308-1, Ex. 2 (Shields Report), p. 41-44)—such an issue can (and should) be

addressed by lay witnesses and/or documentary evidence.  There is no need for expert

testimony."[25]  If this is the standard that Alcoa and Century wish to live by, then Pechiney

assumes Century will immediately *withdraw* the proffered opinion of its expert, Jon Rohrer, who

purports to opine on the exact same subject, *i.e.*, the content and extent of the written disclosures

by Century in Schedule 3.16(a) of its purchase agreement with Pechiney.[26]  Further, what is

---

[22] D.I. 307, p. 8.

[23] Note, this argument is redundant of and is covered by Alcoa's separately filed *Daubert* motion to exclude portions Mr. Woodyard's opinions.  *See* D.I. 312.  As noted above, Pechiney's response to those arguments is set forth in and fully addressed in its opposition to that motion.

[24] D.I. 307, p. 9.

[25] D.I. 307, p. 9-10 (emphasis added).

[26] *See* D.I. 302-2, Ex. F (Rohrer Report), p. 200, Opinion No. 18 (arguing that "[v]irtually all of the areas at the Site where Pechiney is claiming to have incurred environmental costs were disclosed in documents set forth in Schedule 3.16(a) of the Century/Pechiney Agreement.").

worse, as set forth in Pechiney's separately filed *Daubert* motion to exclude certain of Rohrer's

opinions and its brief in support, (D.I. 296, 297), Rohrer bases this opinion not on the actual

disclosures set forth in Schedule 3.16(a), but on dozens of other materials *not* included in

Schedule 3.16(a) and his own, subjective interpretation of their meaning.[27]

 Further, Alcoa and Century's own experts purport to identify the "applicable law and

regulations" and opine on both in their expert reports.  For example, Alcoa's expert,

Arulanantham, has an entire section of this report entitled "Relevant Regulatory Context" in

which he purports to opine on the relevant laws and regulations that governed remediation of the

Site.[28]  Arulanantham purports to detail which regulations, laws, and regulatory bodies are

relevant to the contamination of the Site and its cleanup.  That said, Arulanantham does not even

include the most relevant regulation governing the primary contaminant at the Site, PCBs, which

is TSCA.[29]

---

[27] Mr. Rohrer's methodology is also flawed in other ways, including that he ignores information that directly conflicts with his conclusion, including statements in the actual Schedule 3.16(a) documents that Alcoa had addressed or remediated previously referenced contamination.  He also ignores that for other areas, the disclosures in the Schedule 3.16(a) documents state that the areas were tested and found to have no contamination by Alcoa, but when Pechiney investigated the Site, it encountered Alcoa's historical contamination in the same areas and had to expend substantial sums to clean it up.  He also cites to statements that contamination could *possibly* exist—not that it *actually* existed—as constituting a "disclosure" that such contamination actually existed under the parties' agreement.  Further, he admits that he relied upon information and documents wholly outside those in Schedule 3.16(a) to form his opinions.  *See* D.I. 303-1, Ex. M (Deposition of Jonathan W. Rohrer), 694:18-695:8, 714:5-716:9, 719:2-21, 724:18-725:3. Rohrer's attempt to expand upon the express disclosures in the parties' contract and interpret and construe that explicit language is not helpful to the jury and is not admissible.  *See, e.g.*, *Sonos, Inc. v. D&M Holdings Inc.,* 297 F. Supp. 3d 501, 521 (D. Del. 2017) (*quoting Oxford Gene Tech. v. Mergen Ltd.*, 345 F. Supp. 2d 431, 443 (D. Del. 2004)).

[28] D.I. 302-1, Ex. A (Arulanantham Report), p. 20-24; Opp. Appx., Ex. AW (Arulanantham Depo.), 456:10-459:2.

[29] *See, e.g.,* D.I. 302-1, Ex. A (Arulanantham Report), p. 20-24; Opp. Appx., Ex. AW (Arulanantham Depo.), 459:7-461:2.

Similarly, Century's expert, Rohrer, devotes 11 single-spaced pages of his opening Report to a section he entitles "Applicable Guidance/Requirements," discussing what he claims are the applicable "environmental laws and policies" relevant to Pechiney's remediation of the Site and opines that the "ultimate goal of environmental cleanup regulations are to limit exposure to hazardous chemicals . . . " and then opines on which "regulatory agencies and policies" governed the Site "under environmental law."[30]  Rohrer then proceeds to discuss his views on various regulatory agencies, regulations and laws, including stating that "any decisions regarding PCB approvals must be made by the USEPA, even if a state agency is in charge of a cleanup."[31]  Rohrer also notes that the "[r]equirements for cleanup of PCB remediation waste are established in 40 CFR § 761.61" of the TSCA regulations.[32]  Further, Rohrer purports to serve as the judge and jury, stating that for cost recovery under CERCLA section 107(a)—*a claim not even directed against his client*—that "cost of response actions incurred by a private party must be consistent with the National Contingency Plan to be recoverable under CERCLA."[33]  That said, he is not even legally correct.  *See, e.g., Artesian Water Co. v. New Castle Cnty.*, 659 F. Supp. 1269, 1294 (D. Del. 1987) (monitoring and evaluation costs are not subject to NCP requirements), *aff'd* 851 F.2d 643.

**C.    Alcoa and Century's "State of Mind" Complaints Are Without Merit**

Alcoa and Century also attempt to contort Dr. Shields' factual recitation into a claim that he is attempting to opine on Pechiney and Alcoa's "state of mind."  D.I. 307, p. 5.  Again, he is not.  For example, they claim that Dr. Shields is attempting to opine on Pechiney's "state of

---

[30] D.I. 302-2, Ex. F (Rohrer Report), 166.
[31] D.I. 302-2, Ex. F (Rohrer Report), 172.
[32] D.I. 302-2, Ex. F (Rohrer Report), p. 172.
[33] D.I. 302-2, Ex. F (Rohrer Report), p. 173.

mind" because he simply noted in his background fact section that Pechiney's Remedial Action Plan stated that Pechiney expected to find a certain level of PCB contamination at the Site, *i.e.*, "approximately 120 tons of concrete and 1,600 tons of soil containing PCBs greater than 50 mg/kg." Dr. Shields then recites what Pechiney actually "had to remove and dispose of," as set forth in Pechiney's Completion Reports submitted to the DTSC and EPA—*i.e.*, "15,209 tons of concrete and 21,297 tons of soil containing PCBs greater than 50 mg/kg."[34]  Those are *facts*, not "sleeper opinions" as to Pechiney's "state of mind." Dr. Shields then notes that, based on those undisputed facts, the PCB contamination at the Site exceeding 50 mg/kg was "greater than what was expected." Is that the assertion that Alcoa and Century take issue with?

The other alleged "speculation" Alcoa and Century take issue with relates to Alcoa's purported "state of mind." D.I. 307, p. 5 (citing to Shields Report, p. 36). This portion of Dr. Shields' report, however, simply *quotes* from an *Alcoa* submission to EPA commenting on proposed amendments to the TSCA PCB regulations (59 FR 62788). By quoting Alcoa, Alcoa and Century claim that Dr. Shields is improperly providing a "sleeper opinion" as to Alcoa's "state of mind." Are Alcoa and Century really claiming that it is improper for an expert to reference a party's own government submission on a relevant environmental regulation in the background section of an opening expert report? This position, like the rest of the Motion, borders on the ridiculous. Perhaps that is why they do not cite to any supporting authority.

Alcoa and Century also challenge certain verbs used in Dr. Shields' opening expert report. *See, e.g.*, D.I. 307, p. 11. For example, they complain that Dr. Shields used terms such as "suppressed" and "downplayed" with respect to Alcoa's and its consultant's conclusion that certain contaminants (*e.g.*, TCE) found at the Site originated from an "off-site source" when at

---

[34] D.I. 308-1, Ex. 2 (Shields Report), p. 31-32.

the same time they failed to disclose, let alone note, Alcoa's own, historical use of that very same

contaminant (TCE) in that very portion of the Site.  As a preliminary matter, while Dr. Shields

does use the term "downplayed," he did not use the term "suppressed."  That term does not even

appear in his report.  Regardless, Dr. Shields, given his training and extensive experience in this

field, is basing this opinion on his *technical* expertise and the impact of Alcoa's actions (not

intent or motive) based on the underling, cited facts.  He is not attempting to testify as to Alcoa's

"intent, motives or state of mind," rather, his opinion relates to what Alcoa actually did and the

impact those actions had.[35]  Further, his opinion would be valuable in assisting the trier of fact in

evaluating the nature of Alcoa's technical, environmental disclosures and what information

Alcoa provided and what information—which would also have been technically relevant and

Alcoa has actually admitted to in this case—Alcoa did not include.  Pechiney agrees that *why*

Alcoa chose to conceal that information will be left to the trier of fact to decide.

### D.   Alcoa and Century's Argument Regarding Multiple Experts Is Incorrect, Premature and Improper

Alcoa and Century's final complaint is that "Pechiney cannot be allowed to use multiple

expert witnesses to opine on the same subject matter."  D.I. 307, p. 14.  They argue, for example,

that certain aspects of Dr. Shields' report in this matter covers *topics* "largely addressed by

Pechiney's other experts."  D.I. 307, p. 4.  They also argue that "both Shields and Gravel offer

testimony concerning the purported efficiency and/or cost-effectiveness of Pechiney's

remediation, while both Shields and Woodyard offer opinions concerning Alcoa's PCB cleanup

---

[35]  Alcoa and Century cite to *In re Rezulin Prods. Liab. Litig.*, No. 2843, 2004 U.S. Dist. LEXIS 3104, at *22 (S.D.N.Y. Feb. 27, 2004) in the Motion, (D.I. 307, p. 10-11), for the proposition that opinions "'on the intent, motives or states of mind of corporations, regulatory agencies and others have no basis in any relevant body of knowledge or expertise' and are inadmissible."  Dr. Shields is not opining on Alcoa's "intent, motives or states of mind," rather, his focus is on what Alcoa did and the effect those actions had on its disclosures, based on Dr. Shields' training and experience.

and related regulatory compliance." *Id*. at 14.  They go on to conclude that "[u]nder principles of judicial economy and fairness, Pechiney should not be permitted to present multiple experts with the same opinions." *Id*.  This is yet another, factually and legally flawed, red-herring argument.

Pechiney is not seeking to provide duplicative expert opinions.  For example, as Dr. Shields made clear at his deposition, he is *not* seeking to and will not be providing duplicative testimony at trial; he intends to defer to other Pechiney experts on certain, specific matters.  In fact, Alcoa and Century concede as much in their Motion:  "Shields testified that he would defer to Pechiney designees Renee Kalmes on risk assessment, John Woodyard on polychlorinated biphenyls (PCBs), Peter Mesard on soil vapor extraction system design and on-site contribution, and A.J. Gravel on National Contingency Plan (NCP) compliance."  D.I. 307, p. 4.

To support their false, strawman argument that Pechiney intends to present multiple expert witness with the same opinions, Alcoa and Century cite to *United Healthcare Servs. v. Cephalon, Inc.*, No. 17-555, 2019 U.S. Dist. LEXIS 113756, *42 (E.D. Pa. July 8, 2019).  D.I. 307, p. 14.  That decision, however, involves a complex matter with very different facts that are not present in this case, involving objections to a party's attempt to designate multiple experts after the close of discovery.[36]  Even though the experts were disclosed late, the court in that matter denied the motion to exclude all but one expert, and only excluded her in part because she was offering a new liability theory that would prejudice the other party—not because she was covering the same topic as other experts.  *See, e.g.*, *id*. at *32, 34.  The court then, after making

---

[36]  In *United Healthcare Servs., v. Cephalon*, the experts at issue were all late-disclosed experts or experts offering new opinions that were not previously subject to discovery. 2019 U.S. Dist. LEXIS 113756, *4.  Further, in that matter, unlike the present case, there was prior, related litigation that complicated matters and the parties had contemplated an effort to "streamline the [current] litigation" through adoption of certain, prior expert opinions and not to offer new expert testimony.  *Id*. at *6-7.  When United Healthcare sought to add five to seven *new* experts, the other side objected.  *Id*. at *15.

its substantive ruling generally denying the requests to exclude the late-disclosed experts, made

the passing statement seized on by Alcoa and Century in *dicta*: "I nonetheless remind [the party

proffering the late disclosed experts] that, at trial, it will likely not be allowed to present multiple

expert witnesses on the same issue." *Id.,* at * 42.  Given Alcoa's duplicative proffered experts

(including Arulanantham, Dawson and Kavanaugh), who have not indicated they plan to limit

their duplicative and overlapping opinions in any way, and given Dr. Shields' clear testimony

that he is not duplicating and will be deferring on specific issues to other Pechiney experts, this

entire argument applies with much greater relevancy and force to Alcoa's proffered experts than

to Pechiney's.

As with the other arguments in their Motion, Alcoa and Century's criticism of Pechiney

on this subject is ironic.  Alcoa has proffered multiple experts, each providing arguably

duplicative and/or at a minimum, overlapping opinions.  For example, Alcoa's experts purport to

provide opinions on the following, overlapping topics:

- Arguing that remediation costs incurred by Pechiney at the Site were not necessary, *i.e.*, Pechiney's work was "voluntary" or driven by "redevelopment" and cost more than needed to address environmental conditions;[37]

- Arguing that the DTSC-ordered Stoddard solvent soil vapor extraction remedy at the Site was unnecessary;[38] and

- Arguing that the chlorinated solvent contamination (*i.e.*, TCE) found at the Site is largely, if not entirely, derived from releases off-site and/or activities not associated with Alcoa's ownership.[39]

---

[37] *see, e.g.,* Opp. Appx., Ex. AT (Kavanaugh Report), Op. 2, p. 15-18; Opp. Appx., Ex. AU (Dawson Report), Op. 5, p. 5, 11-12); D.I. 302-1 Ex. A (Arulanantham Report), Ops. 1, 2, 4, 5, 8, p. 34-41.
[38] *see, e.g.*, D.I. 302-1, Ex. A (Arulanantham Report), Op. 14, p. 44; Opp. Appx., Ex. AT (Kavanaugh Report), Op. 3, p. 19-21.
[39] Opp. Appx., Ex. AU (Dawson Report), Op. 9, p. 6, 14-15); Ex. AT (Kavanaugh Report), Op. 4, p. 22-25.

Further, given Alcoa and Century's "joint" Motion here, let alone their coordinated and intertwined opposition to paying for the remediation of the mess they left at the Site, to the extent Alcoa's redundant witnesses' opinions overlap with and are redundant of Century's purported "jack-of-all-trades" hydrogeologist Jon Rohrer's opinions, who himself purports to offer 21 primary opinions in this matter on a sprawling litany of subjects, Alcoa and Century should be held to the same standard.  If Alcoa and Century truly believe that related or potentially duplicative opinions are improper and a waste of the Court's time, Alcoa and Century have a lot of work to do to pare down and eliminate many of their own experts' purported opinions in this matter—to the extent those opinions survive Pechiney's timely *Daubert* challenges.

Finally, Alcoa and Century state that they "trust that Pechiney will recognize the cumulative nature of its expert witness portfolio, and will adjust its presentation of evidence to comply with the Federal Rules of Evidence."  D.I. 307, p. 14-15.  If that is the case, then why did they waste Pechiney's time (not to mention the Court's time) with this Motion?  Given Dr. Shields' deposition testimony and his deferral on certain points to other Pechiney experts, Pechiney already has.  Further, Pechiney likewise expects that the parties will work to efficiently present their cases and that Alcoa and Century will abide by the same principal and will not attempt to present multiple experts addressing the same issue at trial, particularly given the multiple, overlapping and redundant opinions presented to date by their experts.  If they do not, Pechiney expects that the Court will address any such issues at the appropriate time.

IV.    **CONCLUSION**

Based on the foregoing, Pechiney respectfully requests that the Court deny Alcoa and Century's Joint Motion for an Order Deferring Certain Challenges to Pechiney-Proffered Expert Testimony.

ASHBY & GEDDES

*/s/ Tiffany Geyer Lydon*

*Of Counsel:*

_____

John D. Parker
BAKER & HOSTETLER LLP
Key Tower
127 Public Square, Suite 2000
Cleveland, OH  44114-1214
(216) 621-0200

John G. Day (#2403)
Tiffany Geyer Lydon (#3950)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
jday@ashbygeddes.com
tlydon@ashbygeddes.com

Ryan D. Fischbach
BAKER & HOSTETLER LLP
11601 Wilshire Boulevard, Suite 1400
Los Angeles, CA  90025-0509
(310) 820-8800

*Attorneys for Defendants Constellium Rolled Products Ravenswood, LLC (formerly Alcan Rolled-Products-Ravenswood LLC, f/k/a Pechiney Rolled Products LLC) and Pechiney Cast Plate, Inc.*

Matthew D. Thurlow
BAKER & HOSTETLER LLP
1050 Connecticut Avenue, Suite 1100
Washington, D.C.  20036-5304
(202) 861-1500

Dated:  August 28, 2019