# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ALCOA INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| ALCAN ROLLED PRODUCTS-<br>RAVENSWOOD LLC, f/k/a PECHINEY<br>ROLLED PRODUCTS, LLC, PECHINEY CAST<br>PLATE, INC. and CENTURY ALUMINUM<br>COMPANY, | ) C.A. No. 06-451-JFB-SRF<br>)<br>)<br>)<br>) |
| | ) |
| Defendants. | ) |

**REPLY BRIEF IN SUPPORT OF ALCOA INC.'S AND CENTURY ALUMINUM COMPANY'S JOINT MOTION FOR AN ORDER DEFERRING CERTAIN CHALLENGES TO PECHINEY-PROFFERED EXPERT TESTIMONY OR IN THE ALTERNATIVE EXCLUDING CERTAIN EXPERT TESTIMONY FROM SUCH EXPERTS**

Steven J. Fineman (#4025)
Christine D. Haynes (#4697)
Richards Layton & Finger
One Rodney Square
920 North King Street
Wilmington, DE 19801
302-651-7700
fineman@rlf.com
haynes@rlf.com

OF COUNSEL:

René P. Tatro, Esq.
David B. Sadwick, Esq.
Juliet A. Markowitz, Esq.
Tatro Tekosky Sadwick LLP
333 S. Grand Ave. Ste. 4270
Los Angeles, CA 90071

*Attorneys for Plaintiff*

Dated: September 12, 2019

Mary F. Dugan (#4704)
Young, Conaway, Stargatt & Taylor LLP
1000 N. King Street
Wilmington, DE 19801
302-571-5028
mdugan@ycst.com

OF COUNSEL:

Steven Grimes
Stephanie B. Sebor
Kelly E. Mannion
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601
312-558-5600

*Attorneys for Century Aluminum Company*

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ...................................................................................................................1

ARGUMENT ...........................................................................................................................2

    I.    Contrary To Pechiney's Conflicting Positions, The Motion Is Neither Premature Nor Tardy. ................................................................................................2

    II.    Pechiney Does Not Disagree With The Legal Principles Addressed In The Motion. .............................................................................................................4

    III.    Movants' Concerns Over Factual Regurgitations Are Neither "Feigned" Nor "Straw Men." ........................................................................................................5

    IV.    Guidance Is Needed Regarding Potential Expert Opinions Interpreting Legal Documents And Offering Legal Conclusions. ................................................8

    V.    The State Of Mind Opinions Of Pechiney's Experts Are Not Admissible. ............9

    VI.    The Duplicative Expert Issue Is Real, And Will Need To Be Addressed At Some Point. ..........................................................................................................10

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Berckeley Investment Group, Ltd. v. Colkitt*,
   455 F.3d 195 (3d Cir. 2006) ..................................................................................................4, 9

*Daubert v. Merrell Dow Pharmaceuticals*,
   509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) .................................................. *passim*

*In re Fosamax Products Liability Litigation*,
   645 F. Supp. 2d 164 (S.D.N.Y. 2009) ........................................................................................5

*Liqwd, Inc. v. L'Oréal USA Inc.*,
   No. 17- 14-JFB-SRF (D. Del. June 25, 2019) .......................................................................4, 5

*Rutz v. Novartis Pharm. Corp.*,
   No. 12-cv-0026-MJR-PMF, 2013 WL 1412276 (S.D. Ill. Apr. 8, 2013) ..................................3

*Taylor v. Shields*,
   No. 13-2241, 2017 WL 2633427 (E.D. Pa. June 19, 2017),
   *aff'd*, 744 F. App'x. 83 (3d Cir. 2018) .......................................................................................3

**STATUTES & RULES**

Fed. R. Civ. P. .............................................................................................................................5, 6

RLF1 22005774v.1

## INTRODUCTION

Pechiney's liberal use of colorful rhetoric notwithstanding,[1] Alcoa and Century (collectively, "Movants") brought this motion in good faith, as early as possible, in an effort to give the Court and the parties the maximum opportunity to keep the trial efficient and the playing field as level as possible. While Movants are puzzled as to how the same motion can be both too early and too late, as Pechiney claims, it seems Pechiney may have misunderstood both the reasoning behind the motion and the relief requested.

In a case as expert-intensive as this, the Court and the parties face a daunting task in establishing and enforcing a uniform set of "ground rules" that will apply not only to Pechiney's experts, but to all experts. Movants recognize that their experts' testimony will be judged under the same standards as that of Pechiney's experts, and are prepared to live by the same rules as Pechiney in presenting expert testimony — even though Pechiney did not raise any of the concerns at issue in this motion in its *Daubert* motions addressing Movants' experts. Pechiney does not clarify whether it agrees that all parties' experts should follow consistent standards. It is unclear whether Pechiney prefers to have a free-for-all at trial or have all parties tailor their experts' testimony according to rules that are settled now. Movants prefer the latter.

Movants believe it beneficial to the management of this litigation if the Court, at this stage, orders all parties to identify for each other and the Court, with more specificity than provided in their experts' reports, what expert testimony they intend to submit at trial. That request is one of the main purposes of this motion. If, as Pechiney seems to imply in some places in the Opposition, it does *not* intend to have its experts testify to regurgitated and spun "facts,"

---

[1] No fewer than fifteen times in its Opposition (D.I. 335), Pechiney uses the terms "ridiculous," "ironic," "hypocritical," and "straw man," among other phrases, to describe this motion and the positions of the moving parties.

1

then that part of the motion is indeed moot (provided there is a mechanism for holding all the parties to that standard). However, in other places, Pechiney seems to argue that it is entitled to have its experts offer at trial a lengthy regurgitation of spun "facts," replete with sleeper opinions presented under the guise of "facts." If that is the case, then the motion is both appropriate and timely so the parties can shape their presentations efficiently, according to the same set of rules.

This motion is in no way an attempt to get a "second bite" at any apple, including the *Daubert* one, as Pechiney repeatedly charges in its Opposition. D.I. 335 at 1, 4 n.4, 5-6. Movants teed up the issues now (such as Shields' lack of qualifications to give legal opinions) so that, if the Court prefers to address them at this time under the auspices of *Daubert,* it can do so on an adequate record.[2] Alternatively, if the Court prefers to defer these types of challenges to a later date, the Court can do that, possibly after sending the parties "back to the drawing board" with an established set of ground rules. Transparency and efficiency are the driving goals of the motion. Without the type of guidance requested by this motion, trial threatens to be disorganized and convoluted for the Court and the parties, and even more so for any jury.

## ARGUMENT

**I.      Contrary To Pechiney's Conflicting Positions, The Motion Is Neither Premature Nor Tardy.**

Movants do not question the Court's authority and discretion to manage and enforce the schedule of events in the litigation. Filing the motion now does not do so. Just the opposite; Movants intended to provide the Court the maximum amount of time possible to grapple with the issues presented by the motion and endemic in the parties' expert proof. Providing clarity to the parties will allow them to focus on presenting streamlined, efficient cases to the Court. And

---

[2] There is no basis for Pechiney's "waiver" claim (D.I. 335 at 6, 11), since these challenges were timely presented in accordance with the *Daubert* schedule, in sufficient detail for the Court to rule on them, if the Court deems it appropriate to do so at this time.

Movants timely filed the motion at the earliest appropriate opportunity, within the deadline for filing *Daubert* motions.[3]

In all events, Pechiney's timing argument omits a key part of the title of the motion and the request for relief. The motion does not merely request deferral. It clearly requests, in both the title and the motion, an order "IN THE ALTERNATIVE EXCLUDING CERTAIN EXPERT TESTIMONY FROM SUCH EXPERTS." D.I. 306. Thus, to the extent the Court determines that there should be no deferral, Movants presented a record with sufficient detail to allow the Court to rule now that the testimony of Pechiney's experts at issue here should be excluded.[4]

---

[3] The two cases cited by Pechiney for the proposition that a motion implicating any *Daubert* issues which is not filed by the *Daubert* deadline in the Amended Scheduling Order is "dead on arrival" do not stand for that principle. Pechiney claims that *Taylor v. Shields*, No. 13-2241, 2017 WL 2633427, at *3-4 (E.D. Pa. June 19, 2017), *aff'd*, 744 F. App'x. 83 (3d Cir. 2018) "den[ies] as untimely, a party's *Daubert* motion disguised as a motion *in limine*." D.I. 335 at 5. But Pechiney does not provide the Court with key language from both the district court and the Third Circuit. The district court said it was denying the motion as untimely, but then fully considered and denied the motion *on the merits*: "we acknowledge our responsibility to make certain that evidence to be presented before the jury calling for expert opinions must be properly vetted and must meet the requirements of Fed. R. Civ. P. 702. We will not rest our determination here solely upon the procedural deficiency of Taylor's failure to present his *Daubert* motion in a timely manner. While we undertook this responsibility prior to ruling on the motion *in limine*, … we take this opportunity to more fully detail our reasoning on this issue." 2017 WL 2633427 at *4. The Third Circuit noted exactly the same thing: "Additionally, the Magistrate Judge initially dismissed Taylor's *Daubert* motion as untimely, but later, in his opinion denying Taylor a new trial, the Magistrate Judge explained his decision at length. He acknowledged that in spite of enforcing pre-trial deadlines, he did not neglect his underlying gatekeeper duty, namely, to ensure that Dr. Arden's expert testimony met the requirements of Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)." 774 F. App'x at 87. In the Illinois case that Pechiney cites, *Rutz v. Novartis Pharm. Corp.*, No. 12-cv-0026-MJR-PMF, 2013 WL 1412276, at *1 (S.D. Ill. Apr. 8, 2013), Judge Reagan had a specific rule that "all *Daubert* 'motions (seeking to exclude expert testimony / evidence) ***must*** be filed by the dispositive motion deadline,' not the deadline for motions *in limine*. ***See*** http://www.ilsd.uscourts.gov/documents/Reagan.pdf." (emphasis supplied). That is not the case here.

[4] Notably, in its *Daubert* motions concerning Movants' experts, Pechiney did not raise the challenges presented by this motion. Accordingly, if the merits of this motion are decided now and Pechiney is bound by its position regarding waiver, it will be Pechiney — and not Movants — that suffers a waiver.

3

Pechiney's procedural challenge to the motion also is curious. There is no rule that *Daubert* challenges be presented in a motion directed to each expert individually, and Pechiney cites none. Courts frequently deal with *Daubert* motions that address multiple experts, especially where, as here, the same principles apply to the testimony of multiple experts. Because Walter Shields, John Woodyard and A.J. Gravel all cross some of the same boundaries of appropriate testimony, dealing with those transgressions in one fell swoop, rather than in three separate (and piecemeal) motions, is the more efficient approach. Pechiney followed the same joint motion approach in its *Daubert* motion challenging experts Christopher Hunt and Ronald Hamburger.[5]

## II.     Pechiney Does Not Disagree With The Legal Principles Addressed In The Motion.

In the Opening Brief (D.I. 307), Movants posited a principle that should have been uncontroversial; *i.e.*, that the Court, not Pechiney's experts, determines and explains the relevant and controlling law. D.I. 307 at 6. Of the thirteen cases cited and discussed in the Opening Brief for this proposition, starting with this Court's opinion in *Liqwd, Inc. v. L'Oréal USA Inc.*, No. 17- 14-JFB-SRF (D. Del. June 25, 2019), Pechiney mentions only one of them, *Berckeley Investment  Group, Ltd. v. Colkitt*, 455 F.3d 195 (3d Cir. 2006), and then only to say, in effect, that "courts let this happen all the time."

Likewise, as set forth in the Opening Brief, assessing the intent, state of mind, and/or knowledge of witnesses or regulators is a "classic jury function," not an expert function. D.I. 307 at 10. The five cases cited in that discussion, including *Liqwd* and others, are not addressed at all by Pechiney, except to the extent it again claims that its "experts are not doing that" — the uncontroverted examples cited by Movants notwithstanding.

---

[5] *See* D.I. 300. By Pechiney's own reasoning, its combined motion would be improper and should be dismissed. While Movants do not agree with Pechiney, if Pechiney's argument is deemed to have merit, then its challenge to Dr. Hunt and Mr. Hamburger is equally flawed.

The legal principles underlying Movants' challenge to lengthy factual regurgitations (D.I. 307 at 12-14) also received short shrift from Pechiney, with *Liqwd* and the other cited cases getting only one mention. That single mention — a citation to *In re Fosamax Products Liability Litigation*, 645 F. Supp. 2d 164 (S.D.N.Y. 2009) (D.I. 335 at 8) — simply dismisses this oft-applied principle as "legally incorrect," yet provides no authority establishing that supposed error. Movants' application of the rule that "the Court will not permit [an expert] to summarize witness testimony just for the sake of summarizing it or offering inappropriate opinions," remains undisturbed. *Liqwd*, No. 17- 14-JFB-SRF, slip op. at 12.

Pechiney misses the point addressed in the Opening Brief (D.I. 307 at 8-10) when it argues that its experts' testimony is not inadmissible under the Federal Rule of Evidence ("FRE") 703 "just because" it includes an "ultimate issue." D.I. 335 at 12-13. Movants agree that the improper opinion testimony may not be on an ultimate issue. Movants included this (admittedly) anticipatory discussion so Pechiney would not try to place its experts' improper testimony into any safe harbor provided by FRE 703. If Pechiney is not trying to do so, then the issue is moot. If Pechiney is trying to do so, it is a misapplication and should be prohibited.

### III. Movants' Concerns Over Factual Regurgitations Are Neither "Feigned" Nor "Straw Men."

Like several of its experts, Pechiney attempts to read Movants' minds, characterizing the motion as "feigned concern" and a "straw man." D.I. 335 at 6-9. These accusations notwithstanding, Pechiney still has not provided the Court, or Movants, with a useful roadmap through the scores of pages in its experts' reports setting forth what it now characterizes as "background facts." The Opposition leaves the Court, and Movants, guessing about how much (if any) of these "facts" Pechiney intends to have its experts (who lack any personal knowledge) testify about during trial. Pechiney had the opportunity to so explain in its Opposition, but chose

not to do so, instead attempting to deflect the Court's attention by attacking Movants' experts who, according to Pechiney, ran afoul of the same rule.

The issue raised by the motion is neither feigned nor a straw man. It is real. This trial will be long and complicated enough without Pechiney's (or anyone else's) experts *seriatim* regurgitating and/or spinning "facts" that should be presented by percipient witnesses.[6] That is why well-established legal authority forbids such a practice. If Pechiney had stated, in response to this motion, that it intends to have Shields testify according to the following hypothetical examination, the ruling would be simple:

> Q: Dr. Shields, have you familiarized yourself with the site, and the documents and testimony of fact witnesses related to the site?
> A: Yes I have. I have spent __ hours doing so, and I have reviewed __ documents and pages of testimony. I have done everything I felt I needed to do to prepare myself to provide the opinions I'm going to provide.
> Q: OK…what opinions have you prepared?
> A: My opinions are….

If Shields is going to testify in that manner — and *not* engage in regurgitating and spinning as his report and testimony seem to foretell — then the problem is solved. But, considering the extent to which Shields details his "take" on the facts and then "spins" those

---

[6] That is why Movants noted in the Opening Brief that Pechiney's experts do not have personal, first-hand knowledge of the facts they apparently propose to recite. Movants are cognizant of the provisions of FRE 703, which provides:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

However, Rule 703 does not provide license to use expert testimony to simply repeat or spin facts, or to attempt to "shoehorn" otherwise inadmissible evidence into the record unless the probative value substantially outweigh the prejudice.

6

purported facts, seeking the Court's determination on this issue with respect to his testimony, and that of Pechiney's other experts at issue, seems timely, prudent, and fair.[7]

Pechiney defends Shields' testimony by arguing that "it is legally incorrect" that "'even a technical expert 'will not be permitted to merely read, selectively quote from, or regurgitate' the evidence.'" D.I. 335 at 8. In other words, Pechiney's position is that it is fine for Shields (and its other experts) "to merely read, selectively quote from, or regurgitate the evidence." Pechiney's approach portends a large waste of trial time, and a strategy to usurp the role of the fact finder.

Pechiney's attempt to defend this type of factual regurgitation, as well as legal opinions, from experts with the dismissive response that "it is done all the time" does not justify it being done here, in this trial. Nor does Shields' thirty years of experience grant him *carte blanche* to usurp the fact finder's role and improperly consume trial time.

This motion is necessary and constructive at this time so the Court can resolve this issue before trial and give the parties advance directions, rather than risk having the parties get bogged down *during* trial. Having raised the issue, Movants are at peace with the Court resolving it how and when the Court chooses, although Movants are not waiving any objections based on these legal principles by not insisting on a ruling now. If deferring to the Court on the timing of a ruling will be considered grounds for Pechiney to assert there has been a waiver, Movants respectfully request that the Court not defer the ruling.

---

[7] Pechiney's response attempts to level this same criticism against Movants' experts about supposedly "regurgitating" facts before the jury. Pechiney did not express this concern before filing its Opposition, as this issue appears nowhere in Pechiney's *Daubert* motions. Nonetheless, as pointed out in the Opening Brief, an expert is entitled to explain "facts or data" underlying the opinion, but cannot "use expert testimony as a storytelling vehicle." D.I. 307 at 14. Movants appreciate this distinction for their respective experts, but judicial intervention is necessary to ensure this concept is followed by Pechiney as well.

## IV. Guidance Is Needed Regarding Potential Expert Opinions Interpreting Legal Documents And Offering Legal Conclusions.

Pechiney does not contest the five key points on which Movants based the request for relief regarding Pechiney's experts' legal opinions, including Shields' opinions about the DTSC order that Pechiney addresses throughout its Opposition (*see, e.g.*, D.I. 335 at 9, 10, 11-12):

- The Court is the interpreter of legal documents.
- The DTSC order is a legal document (it even has a caption); so are regulations and contracts.[8]
- Shields does not have a law degree or legal training, nor expertise or experience as a regulator applying orders such as this one.
- The Court has not requested a legal opinion from Shields or anyone else on the DTSC order, or on any law or regulation.
- Other than *ipse dixit,* none of the Pechiney experts provides a valid, reliable methodology for their legal determinations.

*See* D.I. 307 at 2.

Dozens (if not hundreds) of technical documents and reports abound in this case. The DTSC order is not one of them; it is a legal document. Thus, an opinion such as Shields and other Pechiney experts seek to give (*i.e.*, that someone has complied (or not) with an order or regulation *as the witness interprets those things*) is a legal opinion. Shields' significant academic credentials in soil science do not provide him with the qualifications to give such an opinion.

Movants disagree with Pechiney's assertion that "[t]here can be no serious debate that [Shields] is qualified based on his training, experience and expertise to discuss the DTSC Order." D.I. 335 at 10. While there may be some things bordering on the DTSC order that Shields could discuss (*e.g.*, what an environmental sample means), he is not qualified to *interpret* the DTSC

---

[8] Movants do not dispute that the DTSC order exists. However (and Shields may not know this), that order is tainted. The record, including documents produced by Pechiney and testimony by Pechiney-affiliated witnesses, is replete with evidence that Pechiney was the instigator and primary author of the DTSC order with the intention of using it to trigger and underpin Pechiney's attempts to recover its expenditures in this litigation. *See* Declaration of Christine D. Haynes filed herewith, Exhs. 1 and 2.

8

order or *determine compliance with it*, as he purports to do. Shields has no legal training, experience, or expertise.

There is a difference between legal opinions, such as those Pechiney's experts propose to give, and testimony about "customs and practices" (such as were allowed in *Berckeley* and discussed by Pechiney). *See* D.I. 335 at 13, citing *Berckeley Inv. Grp.*, 455 F.3d at 218. Shields (and Pechiney's other experts) do not simply say, "this is the custom and practice" (or even "this is the custom and practice, and my opinion is that Century and/or Alcoa did not perform in accordance with it.").[9] Instead, Pechiney's experts say, "this is what the law (or regulation) requires, and Century and/or Alcoa violated it," or "this is what the contract requires, and [a particular party] did [or did not] perform that requirement." Such testimony runs afoul of the prohibition on an expert providing a legal opinion and/or usurping the role of the judge or fact finder. Pechiney's experts all cross that line into forbidden territory. And whether or not (as Pechiney argues) courts "courts routinely allow technical experts like Dr. Shields and Mr. Woodyard" to usurp the roles of the Court and fact finders (D.I. 335 at 13) is of no moment here, where Movants object to that usurpation and request the enforcement of the rules of evidence.[10]

## V. The State Of Mind Opinions Of Pechiney's Experts Are Not Admissible.

When an expert opines, as Shields does, about what someone "expects" or "had to do" (even if relying on a quote from something someone wrote), the expert is offering an inappropriate and unqualified opinion on state of mind. That is the unique and sole province of

---

[9] An example of this type of testimony is that proffered by Century's expert, Jon Rohrer, in opinions 4 and 5 of his opening report.

[10] Pechiney's use of the Opposition to attack the credentials and methodology of Movants' experts is not relevant, accurate, timely, or appropriate. One reason Movants made the motion and requested this guidance is so that everyone would play by the same set of rules; Movants did not expect that the testimony of Pechiney's experts would be limited according to the rules of evidence while Movants' experts would not.

9

the fact finder. No fact finder needs to have Shields tell them what Pechiney (or Century or Alcoa) "expected," or what someone was thinking. That is not expertise that Shields has, or something beyond the ken of lay jurors. Triers of fact are assigned the responsibility for, and are capable of, making these assessments; lay jurors make such assessments multiple times every day. Experts have no special capacity to provide guidance on such determinations.

## VI.     The Duplicative Expert Issue Is Real, And Will Need To Be Addressed At Some Point.

Pechiney does not deny that there is overlap among its experts, or that this is an issue the Court and parties will have to confront. So the questions are simply, "when" and "how"?[11]

Movants framed this point through Shields, because he admittedly has nothing new to add to Pechiney's issue-specific expert witnesses to whom Shields, the self-described "big picture" guy, said he intended to defer. Given the topics that Pechiney's other experts cover and the detail they provide, Shields' "big picture" is duplicative and cumulative. Pechiney's proffer of Shields is a prejudicial effort to unduly influence the trier of fact through repetition.

Movants view the record provided by the motion (especially as to Shields) as sufficiently complete, so the Court could rule now that no "big picture" summary of the opinions provided by other Pechiney experts as Shields proposes to give is needed, and none will be allowed. To the extent (and on such timing and with such ground rules as the Court provides), the parties need to work together to eliminate cumulative or duplicative expert opinions, Movants stand ready to do so.

---

[11] In its Opposition, Pechiney complains for the first time about opinions it perceives to be duplicative among Movants' experts. As with other issues addressed by this motion, Movants recognize that they will live by the same rules established for Pechiney; Movants are willing to work with the Court and with Pechiney to conform their expert proof to whatever procedures the Court sets on whatever timetable the Court sets.

10

| | |
|---|---|
| */s/ Steven J. Fineman* | */s/ Mary F. Dugan* |
| Steven J. Fineman (#4025) | Mary F. Dugan (#4704) |
| Christine D. Haynes (#4697) | Young, Conaway, Stargatt & Taylor LLP |
| Richards Layton & Finger | 1000 N. King Street |
| One Rodney Square | Wilmington, DE 19801 |
| 920 North King Street | 302-571-5028 |
| Wilmington, DE 19801 | mdugan@ycst.com |
| 302-651-7700 | |
| fineman@rlf.com | OF COUNSEL: |
| haynes@rlf.com | |
| | Steven Grimes |
| OF COUNSEL: | Stephanie B. Sebor |
| | Kelly E. Mannion |
| René P. Tatro, Esq. | WINSTON & STRAWN LLP |
| David B. Sadwick, Esq. | 35 West Wacker Drive |
| Juliet A. Markowitz, Esq. | Chicago, IL 60601 |
| Tatro Tekosky Sadwick LLP | 312-558-5600 |
| 333 S. Grand Ave. Ste. 4270 | |
| Los Angeles, CA 90071 | *Attorneys for Century Aluminum Company* |

*Attorneys for Plaintiff*

Dated:  September 12, 2019

11