IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ALCOA, Inc.,<br><br>        Plaintiff,<br><br>  vs.<br><br>ALCAN ROLLED PRODUCTS-<br>RAVENSWOOD LLC, f/k/a PECHINEY<br>ROLLED PRODUCTS LLC, PECHINEY<br>CAST PLATE INC., and CENTURY<br>ALUMINUM COMPANY,<br><br>        Defendants. | **C.A. NO. 06-451-JFB-SRF**<br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court after oral argument on cross motions for summary judgment on claims arising under the Comprehensive Environmental Response Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9601, and the California Hazardous Substances Account Act, Cal. Health & Saf. ("HSAA") § 25363 [first provision et seq. (commonly known as "little CERCLA") (D.I. 370, 376, and 387) and for indemnification and/or breach of contract (D.I. 374, 381, 384, and 385). This case involves the cleanup of hazardous materials at the site of an aluminum cast plate manufacturing and sales facility in Vernon, California. The Court will address the necessity of a jury trial on its own motion.

I.      **BACKGROUND**

    **A.**     **Overview of Facts**

Plaintiff Alcoa, Inc. ("Alcoa") owned and operated the facility from 1937 to 1998, when it sold the property to defendant Century Aluminum Company ("Century") after

Alcoa was ordered to divest the plant as part of an anti-trust action.  Pursuant to an Acquisition Agreement, Alcoa sold the property to Century "as is, where is, with all faults" and Century assumed all environmental cleanup costs, with a few exceptions that required Alcoa to take certain remediation efforts in response to prior notices of violation and to obtain a "no further action" ("NFA") letter from the City of Vernon ("the City") Environmental Health Department ("EHD").  D.I. 380-1, Ex. 1, Acquisition Agreement at 24-25.  The NFA letter, dated September 2, 1999, noted that no further remedial action was required "based on the assumption that the information submitted in the documentation [provided by Alcoa] is complete and correct" and specifically stated that "[f]urther review or determinations may be necessary if subsequent information, which significantly affects any decision, is found."  D.I. 21, Declaration of Christine F. Roussel (Roussel Decl."), Ex. C, NFA letter at 1-2; *see* D.I. 48, Pechiney Answer, Counterclaim and Cross-claim at 14.

In 1999, Century sold the property to defendants Alcan Rolled Products-Ravenswood LLC, f/k/a Pechiney Rolled Products LLC and Pechiney Cast Plate Inc. (now a wholly-owned subsidiary of Alcan) (collectively, "Pechiney"), pursuant to a Stock and Asset Purchase Agreement ("Century-Pechiney Purchase Agreement") and a site-specific Indemnification Agreement.  "Vernon Indemnification Agreement."  D.I. 21-2, Roussel Decl., Ex. D; D.I. 21-3, *Id.*, Exs. D and E.  As part of the sale, Century agreed to provide Pechiney with indemnities similar to those Alcoa had provided to Century, including indemnification for environmental liabilities, provided that the cleanup was required "pursuant to environmental law or a directive or order of an authorized

2

governmental agency." D.I. 21-2, 21-3, Ex. D, Century-Pechiney Purchase Agreement at § 3.16(d), § 9.02.

Pechiney operated the facility until January 31, 2006, but denies using PCBs, TCEs or Stoddard Solvents in its operations. D.I. 48, Pechiney Answer, Counterclaim and Cross Claim. In 2006, Pechiney closed its operations and agreed to sell the site to the City. Pechiney and the City executed a sales agreement on March 6, 2006, that included representations that Pechiney would remediate the site. D.I. 21-4, Ex. F, Pechiney-City Agreement, Ex. G, Addendum. The City sent notices to both Pechiney and Alcoa concerning a need to remediate the site. D.I. 37-2, Ex. 3 & Ex. 6. Pechiney later performed demolition and excavation work at the site. D.I. 48. Pechiney also sent letters to Alcoa and Century demanding indemnification under the above contracts. Alcoa declined the indemnification request stating that any response costs were not pursuant to a directive or order and shortly thereafter, filed this action against both Pechiney and Century.

### B. Procedural History

On July 25, 2006, Alcoa filed this declaratory judgment action, seeking a declaration that it owes no liability to Century for the environmental contamination discovered at the site and a determination that Pechiney cannot recover remediation costs from Alcoa under CERCLA. D.I. 1, Complaint at 6-9; *see* D.I. 45, Memorandum Opinion ("Mem. Op.") at 1. In its complaint, Alcoa relates that defendant Century had asserted a claim for indemnity and defendant Alcan/Pechiney had threatened to bring CERCLA claims against it to recover costs associated with what Alcoa characterized as

Alcan's "development activities" at the facility.  D.I. 1, Complaint at 1.  Alcoa alleges it does not owe any indemnity to Century under the Acquisition Agreement because the basis for Century's demand involves subsequent actions undertaken by defendants Alcan and Pechiney.  *Id.* at 6-7.  Alcoa also contends it rejected Century's and or Pechiney's claims for indemnification under the acquisition agreement because the proposed development by [then Alcan] was "not required by the directives and orders of the EHD." *Id.* at 5,7.

In response, defendant Alcan Inc. ("Alcan") filed a motion to dismiss for lack of personal jurisdiction.  D.I. 12.  The Court granted that motion on a showing that Alcan, Inc., a Canadian corporation headquartered in Montreal, was a holding company with no operations in the United States and no business, operations, property or employees in Delaware.  D.I. 46, Mem. Op. at 4.  The Court noted, however, that Alcan did not challenge the Court's jurisdiction over its subsidiary, Pechiney, which was incorporated in Delaware, and the case proceeded against Pechiney.  *Id.*

Defendant Century filed a motion to dismiss for failure to join the City of Vernon as an indispensable party.  D.I. 19, Motion.  The Court denied the motion finding that:

> Based upon the record before the court, it appears that the City has, in its official capacity, separately requested that plaintiff and Alcan remediate the Vernon facility.  Whether either, or both, of these requests constitute a "directive or order" as contemplated by the acquisition agreement may be a question of fact (or semantics); it does not necessarily require that the City be a party to this action.

D.I. 45, Mem. Op. at 11.  The Court noted in a footnote that:

> The 2006 purchase agreement between the City and Alcan also requires that the Vernon facility be remediated.  D.1. 21, ex. G at § 26.7.  Because the City unquestionably had the authority to demand remediation pursuant

to Ordinance 961, the fact that the City's contract specified remediation as a condition precedent does not render the City necessary and indispensable to the inquiry of who pays for that remediation. The court need not determine which "hat" the City was wearing when it requested remediation from Alcan, as Century suggests, only whether the City made a request under Ordinance 961. D.I. 41 at 16.

D.I. 45 at 10 n.11. In ruling on the motions, the Court acknowledged that Alcoa invoked CERCLA as the basis of its claim but did not rely on any particular provision of the statute, noting that Alcoa's grounds for a judgment that it owed no liability to Pechiney were relatively unclear. D.I. 45, Mem. Op. at 12 n.15. The defendants also moved to transfer venue to the Southern District of California (D.I. 14, Motion) and that motion was denied. D.I. 42, Mem. Op.

After the Court ruled on the motions, Pechiney filed its response to Alcoa's complaint, asserting affirmative defenses, counterclaims against Alcoa for cost recovery under 42 U.S.C. § 9607 ("CERCLA § 107"), for contribution under the California Hazardous Substances Account Act, Cal. Health & Saf. Code (HSAA) § 25363(e), equitable indemnification, negligence, and trespass, and a cross-claim against Century for indemnification under the Century-Pechiney Purchase Agreement and the Vernon Indemnification Agreement. D.I. 48, Answer, Affirmative Defenses, Counterclaims and Cross Claim. As affirmative defenses to Alcoa's CERCLA claims, Pechiney asserted it was a third-party act under 42 U.S.C. § 9607(B)(3) and it was an innocent holder under 42 U.S.C. § 9601(35). It did not assert it had contribution immunity under 42 U.S.C. § 9613(f)(2).

Alcoa filed an answer to Pechiney's cost recovery counterclaims on August 13, 2007. D.I. 52, Answer, Affirmative Defenses, and Counterclaims. Alcoa denied liability

5

for Pechiney's cost recovery claim under CERCLA § 107 and its contribution claim under HSAA, thought it admitted it had owned and operated the site and did not dispute that hazardous substances had been found in the soil there. *Id.* at 4-5, 8. Alcoa asserted the affirmative defense of third-party liability under 42 U.S.C. § 9607(b)(3) and it sought an equitable allocation under both CERCLA and the HSAA. *Id.* at 8. Further, it asserted counterclaims against Pechiney for contribution "from a person who is liable under CERCLA § 107" under 42 U.S.C. § 9613(f)(1), and under the HSAA, § 25363(e). *Id.* at 14-15. It also asserted a counterclaim for unjust enrichment contending that Pechiney's CERCLA claims, if successful, would reap a windfall by forcing Alcoa to pay for redevelopment costs for which Pechiney should be responsible. *Id.* at 16.

Defendant Century also filed an answer, cross-claims and counterclaims against Alcoa and Pechiney. D.I. 51, D.I. 49. It denied any obligation to indemnify Pechiney, asserting contractual defenses, and counterclaims against Alcoa for defense and indemnification, breach of the Acquisition Agreement, and failure to mitigate and asserted a cost recovery and contribution claim against Pechiney and Alcoa. It asserted no releases occurred while it owned the property. D.I. 52 at 16-23.

The parties jointly sought a stay of the action on October 3, 2008, representing to the court that "the quantum of environmental liabilities was uncertain" pending approval of the Department of Toxic Substances Control ("DTSC") and the City of a Feasibility Study/Remediation Action Plan" (FS/RAP) that had been submitted by Pechiney to the DTSC and the United States Environmental Protection Agency ("EPA"), the outcome of which was uncertain. D.I. 100. Based on those representations, the Court stayed the

action.  Text entry dated October 7, 2008.  On June 22, 2012, the Court administratively

closed the case until further order.  D.I. 112.  On periodic reports from the parties, the

case remained stayed for eight years.  D.I. 102, 105, 107, 109, 111, 115, and 116.  The

record shows that the parties were all notified and involved in the FS/RAP process and

Alcoa had submitted supplemental information requested by the DTSC.  D.I. 102, Letter

submitted to the Court dated July 9, 2009.

The Court lifted the stay on June 30, 2016, and the case was reopened.  D.I. 117.

Pechiney was later permitted to amend its Answer and Cross Claim against Century to

include a prayer for attorney fees and defense costs as a remedy.  D.I. 143, Motion; D.I.

202, Order.  The facts related in the order include additional factual allegations of events

that occurred during the stay, as set forth on Pechiney's proposed amended cross-claim,

as follows:

> Pechiney alleges that pursuant to the directive and order of various
> government agencies, including the EHD, the California Department of
> Toxic Substances Control ("DTSC"), and the US EPA, PCP conducted an
> investigation and remediation of certain environmental conditions at the
> Vernon Facility.  (D.I. 142, Ex. A at ¶ 20).  Pechiney alleges that the
> investigation and remediation confirmed the presence of hazardous
> substances in soil, subsurface structures, and groundwater at the Vernon
> Facility.  *Id.*  PCP, through its consultant, submitted a Feasibility Study,
> dated July 20, 2007.  (*Id.* at ¶ 21)  DTSC also required approval and
> implementation of a Remedial Action Plan for the Vernon Facility.  (*Id.*)  A
> Remedial Action Plan, dated June 28, 2012, evaluating potential remedial
> alternatives and proposing a remedy to address the contamination present
> at the Vernon Facility was submitted by PCP's consultant, on its behalf, to
> DTSC and approved.  (*Id.*)  The US EPA also required additional work
> relating to PCBs at the Vernon Facility, which was completed in 2015.  (*Id.*
> at ¶ 22)

D.I. 202, Mem. Op. at 4-5.  Pechiney did not assert contribution claim immunity as an affirmative defense to Alcoa's CERCLA claims in its amended pleading.  D.I. 142, Ex. A, First Amended Cross Claims.

The record shows that in April 2007, the DTSC, the state agency responsible for cleanup, asserted jurisdiction over the site, and issued an Imminent and Substantial Endangerment Determination and Consent Order in July 2010 ("DTSC Order").  D.I. 303-1, Ex. W, DTSC Order at 1.  The DTSC Order found Pechiney was a responsible party under HSAA § 25325.5 and required Pechiney to clean up the hazardous substances at the site.  *Id.* at 9.  In the order, the DTSC noted that Alcoa was a prior owner of the property and stated that:

> Between 1990 and 1999, Alcoa conducted a number of Investigations at the Property, and found soil containing petroleum hydrocarbons (including Stoddard solvent), metals, PCBs, and VOCs.  Alcoa's investigations also identified PCBs in concrete (30 milligrams per kilogram [mg/kg]) and trichloroethene (TCE), 1,2-dlchloroethane (OCA), and chloroform in groundwater beneath the southwestern portion of the Property (Parcel 7).
>
> Between November and December 2005, a Phase II Investigation was conducted by [Pechiney] as the initial remedial Investigation at the Property. During the initial remedial investigation, soil containing PCBs, TCE, and metals and concrete containing PCBs were identified at the Property. These hazardous substances were found at higher concentrations than those previously detected in areas Investigated by Alcoa and in areas not Investigated by Alcoa.

*Id.* at 4.  Hazardous substances, including total petroleum hydrocarbons (TPH), including Stoddard solvent, polychlorinated biphenyls (PCBs), volatile organic compounds (VOCs) and metals, primarily arsenic, were found in concrete slabs, soil, storm water outfalls, soil and gravel drainage areas, groundwater and soil vapor.  *Id.* at 4-5.  The substances were identified as carcinogenic or toxic and routes of human exposure were found to be direct

8

ingestion, dermal exposure and inhalation of particulates. *Id.* at 6. Further review and approval by the DTSC is contemplated in the order. *Id.* at 16-19, 22, 25. The DTSC reserves the right to unilaterally modify the order. *Id.* at 27. The DTSC order also provides that:

> Nothing In this Order shall constitute or be construed as a satisfaction or release from liability for any conditions or claims arising as a result of past, current or future operations of Respondent. Nothing in this Order is intended or shall be construed to limit the rights of any of the parties with respect to claims arising out of or relating to the deposit or disposal at any other location of substances removed from the Site. Nothing in this Order Is Intended or shall be construed to limit or preclude DTSC from taking any action authorized by law to protect public health or safety or the environment and recovering the cost thereof. Notwithstanding compliance with the terms of this Order, Respondent may be required to take further actions as are necessary to protect public health and the environment.

*Id.* at 25

### C.  Law

Congress enacted CERCLA in part "to force polluters to pay for costs associated with remedying their pollution." *United States v. Alcan Alum. Corp.*, 964 F.2d 252, 258 (3d Cir. 1992). "Two provisions of [CERCLA]—§§ 107(a) and 113(f)—allow private parties to recover expenses associated with cleaning up contaminated sites." *United States v. Atl. Research Corp.*, 551 U.S. 128, 131 (2007); *see also Cranbury Brick Yard, LLC v. United States of Am.*, 943 F.3d 701, 704 (2019).

Under CERCLA § 107, a private party, including a "potentially responsible party" ("PRP"), is allowed to recover expenses it has incurred in cleaning up a contaminated site. 42 U.S.C. § 9607(a); *United States v. Atl. Research Corp.*, 551 U.S. 128, 131 (2007). Section 107(a) lists the four classes of people liable for response costs: the facility's

current owner or operator; any person who owned or operated the facility "at the time of disposal" of a hazardous substance; one who arranged for disposal or arranged for transport for disposal of a hazardous substance; and one who accepts hazardous substances for transport. 42 U.S.C. § 9607(a)(1)-(4). Those people or entities are liable for --

> (A) all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan;[1]

> (B) any other necessary costs of response incurred by any other person consistent with the national contingency plan[.]

42 U.S.C. § 9607(a)(4). If a cost-recovery suit under CERCLA § 107 succeeds, the defendants are strictly as well as jointly and severally liable. *Cranbury Brick Yard, LLC v. United States*, 943 F.3d 701 (3d Cir. 2019). In order to spread responsibility among those entities, CERCLA provides for reimbursement of costs incurred by the government or a liable PRP through a cause of action under § 107 for "cost recovery" from PRPs for any necessary costs incurred as the result of a release of a hazardous substance. *Asarco LLC v, Atl. Richfield Co.*, 866 F.3d 1108, 1115 (9th Cir. 2017). Section 107(a) is limited to recovery of response costs the suing PRP itself directly incurred. *Id.*; *see Atl. Research*, 551 U.S. at 139, ("[Section] 107(a) permits recovery of cleanup costs but does not create a right to contribution."). To recover under CERCLA, a plaintiff must prove that the costs it incurred at a site were "necessary" for the cleanup." *Asarco*, 866 F.3d at 1116

---

[1] The National Oil and Hazardous Substances Pollution Contingency Plan ("NCP"), 40 C.F.R. § 300, affords a rebuttable presumption the expenses incurred under the direction and/or order of governmental agencies are necessary. *Id.*

n.3; *see also Regional Airport Auth. of Louisville v. LFG, LLC*, 460 F.3d 697, 703 (6th Cir. 2006). There is general agreement that "necessary" requires that an actual and real threat to human health or the environment exist before initiating a response action. *Reg. Airport*, 460 F.3d at 703. *Id.*

If a polluter is or may be liable under CERCLA, or has settled its liability with the states or federal government, it may sue other polluters for contribution under either 42 U.S.C. § 9613(f)(1) (responsible party) or § 9613(f)(3) (settling party). *See Cranbury*, 943 F.3d at 705. Cost recovery and contribution are similar and somewhat overlapping remedies. *Id.* Polluters may bring both kinds of claims against one another. *Id.*; *see Atl. Research*, 551 U.S. at 141.

CERCLA Section 113(f)(1) provides for contribution as follows:

> <u>Any person</u> may seek contribution from <u>any other person who is liable</u> or potentially liable under section 9607(a) of this title, <u>during or following any civil action under section 9606 of this title or under section 9607(a) of this title</u>. Such claims shall be brought in accordance with this section and the Federal Rules of Civil Procedure, and shall be governed by Federal law. In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate. Nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under section 9606 of this title or section 9607 of this title.

42 U.S.C. § 9613(f)(1) (emphasis added). A polluter who settles its CERCLA liability with the federal or state government enjoys immunity under 42 U.S.C. § 9613(f)(2) from

ontribution claims.[2] *Cranbury*, 943 F.3d at 705. As to persons not party to the settlement, CERCLA provides:

> A person who has resolved its liability to the United States or a State for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement may seek contribution from any person who is not party to a settlement referred to in paragraph (2).

42 U.S.C. § 9613(f)(3)(B). A polluter who enjoys immunity from contribution claims under § 9613(f)(20 cannot bring a cost recovery claim, but may only bring a contribution claim. *Cranbury*, 743 F.3d at 705*; see Agere Sys., Inc. v. Advanced Envtl. Tech. Corp.*, 602 F.3d 204, 229 (3d Cir. 2010)). "[T]he *Agere Systems* rule helps apportion cleanup costs equitably by keeping polluters from using their immunity as both sword and a shield." *Id.* Without that rule, settling polluters could wield the immunity § 9613(f)(2) offensively to escape liability by imposing on-hundred percent of its liability on a nonsettling polluter through joint and several liability under § 9607(a). *See Cranbury*, 743 F.3d at 706.

As the Supreme Court has made clear, § 113 is available only to those who have been sued. *Reg. Airport*, 460 F.3d at 703 n. 4. The "response action" referred to in §

---

[2] That statute provides:

(2) Settlement

A person who has resolved its liability to the United States or a State in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement. Such settlement does not discharge any of the other potentially liable persons unless its terms so provide, but it reduces the potential liability of the others by the amount of the settlement.

42 U.S.C. § 9613(f)(2). This section confers what is generally known as contribution immunity.

113(f)(3)(B) need not have been initiated pursuant to CERCLA.[3]  *Trinity Indus., Inc. v. Chicago Bridge and Iron Co*, 735 F.3d 131, 136 (3d Cir. 2013) (stating a state-initiated response action will suffice).  The statute of limitations for an action under § 107(a) is six years, whereas the statute of limitations for an action under § 113(f)(1) is three years.  *Cranbury*, 743 F.3d at 710; 42 U.S.C. § 113(g) & (3).

> The Third Circuit explains:
>
> In a typical CERCLA lawsuit, this is how cost-recovery and contribution claims would interact:  because cost-recovery actions impose joint-and-several liability, both companies would theoretically be on the hook for 100% of the billion-dollar liability.  While joint-and-several liability helps compensate fully those who clean up pollution, it sometimes leads to inequitable results.
>
> Fortunately, CERCLA has an answer:  the two companies could cross-claim for contribution and ask the court to split the bill between them in proportion to their percentages of fault.  But litigation is costly and time consuming.  So CERCLA encourages polluters to settle with the government to get cleanups started sooner.  Contribution-claim immunity under § 9613(f)(2) promotes those efficient settlements.

*Id.* at 706.  When a private party asserts a contribution claim, the claim is subject to the Court's broad discretion to allocate costs among liable parties, using such equitable factors as the court should deem appropriate.  *Id.* at 705.  The HSAA is the California

---

[3] "'Response' is a term of art under CERCLA and means "remove, removal, remedy, and remedial action." *Asarco*, 866 F.3d at 1116 n.3; *see* 42 U.S.C. § 9601(25).  A "removal" means, inter alia, "the cleanup" or removal of released hazardous substances from the environment" and any actions that may be necessary "in the event of the threat of release of hazardous substances into the environment."  *Id.* at 115-16; *see* § 9601(23)).  "A 'remedial action" means, inter alia, "actions consistent with permanent remedy taken instead of or in addition to removal actions . . . to prevent or minimize the release of hazardous substances so that they do not migrate to cause substantial danger to present or future public health or welfare or the environment." *Id.*; *see* § 9601(24).  With some exceptions, a "release" under CERCLA means "any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment (including the abandonment or discarding of barrels, containers, and other closed receptacles containing any hazardous substance or pollutant or contaminant)" *Id.* 1116 n.3; *see* 42 U.S.C. § 9601(22).

counterpart to CERCLA and incorporates many CERCLA concepts. *Foster-Gardner, Inc.*
*v. Nat'l Union Fire Ins. Co.*, 18 Cal 4th 857,865 (1998).

"The right to a jury trial in federal court, regardless of whether the claim arises
under state law, presents a question of federal law." *In re City of Phila. Litig.*, 158 F.3d
723, 726 (3d Cir. 1998). "[A] jury trial is not available in a claim brought under section
9607 [of CERCLA]." *See Hatco Corp. v. W.R. Grace & Co. Conn.*, 59 F.3d 400, 412 (3d
Cir. 1995). "Under CERCLA, 42 U.S.C. § 9607(e), 'agreements to indemnify or hold
harmless are enforceable between [private] parties but not against the government.'"
*Hatco*, 59 F.3d at 404 (quoting *Smith Land & Improvement Corp. v. Celotex Corp.*, 851
F.2d 86, 89 (3d Cir. 1988)). Although these private agreements cannot nullify a party's
underlying CERCLA liability, they are effective to shift the ultimate financial loss. *Id.*

### D. Cross-Motions on CERCLA (D.I. 370, 376, and 387).

Pechiney seeks a determination by the Court: (1) that Alcoa is liable to Pechiney
under CERCLA § 107(a) for costs Pechiney incurred to clean up Alcoa's pollution at a
former aluminum cast plate facility in Vernon, California (the "Site"); (2) that Pechiney is
entitled to a declaratory judgment as to Alcoa's liability for Pechiney's future response
costs under CERCLA § 113(g); and (3) that Pechiney's response costs are presumed to
be necessary and consistent with the NCP because they were incurred under the
direction and/or order of governmental agencies. D.I. 370. It argues that undisputed
evidence establishes the elements of Alcoa's liability under § 107 of CERCLA—-(1) that
the Site is a "facility"; (2) a "release" or "threatened release" of a "hazardous substance"
from the Site has occurred; (3) Alcoa is a "covered person" within the meaning of

CERCLA; and (4) Pechiney incurred some "response costs," with the amount to be determined later.

Alcoa responds that Pechiney's response costs were not necessary to respond to an actual and real threat and it asserts a joint cross-motion for summary judgment together with Pechiney for a judgment in its favor on that issue. D.I. 376. They argue that Pechiney's costs are not recoverable as a matter of law because the site did not pose an actual threat to public health or safety when Pechiney committed to its redevelopment plan in 2006. They contend that Pechiney's decision to remove the concrete cap on the site, as part of its contractual obligations to the City, created the danger to public health.[4] Alcoa also argues in a separate motion that Pechiney cannot assert a claim for cost recovery under § 107, but is limited to contribution under § 113. D.I. 387. It contends that the DTSC order affords Pechiney contribution claim immunity under 42 U.S.C. § 9613(f)(2) and therefore its § 9607(a) claim is extinguished under Third Circuit caselaw.

In response to Pechiney's summary judgment motion, Alcoa also argues that the DTSC Order does not provide Pechiney with a presumption of NCP compliance because discovery has exposed Pechiney's scheming with the City of Vernon that irreparably taints that Order.[5] It argues that the issue of "necessary costs" is inextricably intertwined with

---

[4] Alcoa and Century also argue that Pechiney lacks sufficient evidence to show that $7 million of the $26 million it expended were for remediation rather than redevelopment, based on Pechiney's own expert's testimony, and that Pechiney's inadequate accounting bars recovery of the $ 7 million. Pechiney responds that Alcoa and Century misconstrue its expert's testimony.

[5] In that vein, Alcoa argues that in previously concealed machinations, Pechiney manufactured an ersatz CERCLA claim, enlisting the willingness of its contractual partner, the City of Vernon, to facilitate an unethical scheme whereby Pechiney promised to do work far exceeding that warranted by the Facility's environmental condition in pursuit of profits.

the issue of Pechiney's compliance with the NCP. Also, it argues, regardless of any presumption, that there is significant evidence of more cost-effective alternatives that were not adequately considered or implemented which rebuts any presumption and, at a minimum, creates a triable issue of fact.

In response to Alcoa's argument that it is barred from pursuing a § 1607(a) claim, Pechiney responds that neither statutory "trigger" for a CERCLA § 113(f) contribution claim has occurred—Pechiney is not subject to a "civil action" under §§ 106 or 107 and only orders that "resolve" a party's liability to the government are "settlements" that trigger § 113(f)(3)(B). It also contends there is no dispute that Pechiney's § 107 claim was proper when filed and states that it did not release or dispose of hazardous substances at the site. In response to the joint motion, Pechiney argues that for Alcoa and Century to pretend, long after the fact, that the site cleanup was completely unnecessary and should not have taken place is absurd and contrary to the facts and the law. It argues that Alcoa and Century knew all along that the site would require a costly cleanup and that is why the both Alcoa and Century negotiated indemnification agreements for the environmental cleanup at the site, with both Alcoa and Century retaining future cleanup liability.

## II.    Discussion

The Court finds Pechiney has not established it is entitled to judgment as a matter of law on its CERCLA cost recovery claim. D.I. 370. It has not established the elements of a cost recovery claim as a matter of law. Though there may be no dispute that the site is a facility, that a release has occurred, that Alcoa is a covered person, and that response costs were incurred, there are genuine disputes relating to Alcoa's defenses and

counterclaims/cross-claims. Alcoa continues to maintain that the site was properly remediated when sold to Century and assets the defense that a third party is responsible. There are genuine issues of fact as to the timing and causation of the contamination, the adequacy of Alcoa's earlier remediation, and whether and to what extent Pechiney's expenditures were necessary as defined in CERCLA.

Evidence in the record shows that both Pechiney and Alcoa were notified of potential liability in 2006 by the City. Alcoa owned the property for more than 50 years and admits that it used PCBs and Stoddard solvent in its operations, so it cannot credibly claim it is not a potentially responsible party under CERCLA. Both Alcoa and Pechiney are former owners of the property. Clearly a release of hazardous substances occurred, but the timing and the nature of the release is disputed. Whether Pechiney's decision to change the use of the property and conduct demolition and excavation triggers CERCLA liability is also a matter of dispute.

With respect to Alcoa's assertion that Pechiney's § 107 claim is precluded and Pechiney is limited to a contribution remedy (D.I. 387), the Court finds Alcoa's position is without merit. Alcoa put its liability under CERCLA § 107 at issue by seeking a determination that it had no CERCLA liability in the declaratory judgment action, by asserting an affirmative defense of third-party liability, and by asserting counterclaims of cost recovery and contribution against Pechiney. Alcoa's denial of any liability under CERCLA is a claim based on CERCLA § 107.

Contrary to Alcoa's assertion, the Court finds the DTSC order is not a settlement that affords contribution immunity to Pechiney under § 9613(f)(2). In contrast to the order

17

at issue in *Cranbury*, the DTSC order did not expressly confer contribution immunity, and, in fact, expressly disclaimed it. Moreover, Pechiney did not assert a contribution immunity as a claim or defense. Of course, at the time it filed its original pleading, it could not have because the order had not yet issued. However, it was fully aware of the order when it filed its motion to amend its pleading and did not raise it then. Accordingly, § 113(f)(3)(B) is not applicable in these circumstances. Pechiney's contribution claim is instead premised on § 9613(f)(1)—it would seek contribution from another party liable under § 9607. Any contribution claim would arise "during or following any civil action under . . . section 9607(a)" 42 U.S.C. § 9607(f)(1). This is such an action.

Alcoa's liability under § 9607 is the heart of this action. Assuming Alcoa is found jointly and severally liable, Pechiney can assert its claim for contribution. Except for the odd alignment of parties caused by Alcoa's preemptive filing of the action as one seeking declaratory relief, this case is similar to the ordinary case, as set out in *Cranbury*: because cost-recovery actions impose joint-and-several liability, both companies (as admitted owners/operators of the property) would "theoretically be on the hook for 100% of the cleanup liability." *Cranbury*, 743 F.3d at 706. To avoid an inequitable result, the two companies can cross claim for contribution and ask the court to split the bill between them in proportion to their fault. *Id.* That is the present posture of the case.

The Court also rejects Alcoa's and Century's argument that Pechiney's response costs were not necessary to respond to an actual and real threat. The Court finds the contention that the lack of any threat to health and safety entitles Alcoa and Century to a summary judgment is untenable. That contention is not borne out by the facts. The

record shows that both Alcoa and Pechiney were notified in 2006 by the City Environmental Health Department that hazardous material remediation was necessary. As present and former owners, both were regarded as potentially responsible parties under CERCLA. Alcoa has not shown as a matter of law that the remediation it undertook in 1998 and 1999 was adequate to protect health and safety. The DTSC order makes a factual determination that the site was hazardous to health in 2005-2006. Alcoa's reliance on the NFA letter is misplaced because the regulatory authority reserved the right to change its determination if circumstances changed.

To the extent it is relevant, there are also disputes of fact on Alcoa's assertions of collusion and unethical conduct by Pechiney. The Court's earlier finding that the City had the authority, wearing its regulatory hat, to order removal or remediation by Pechiney is the law of the case. Whether, if proven, allegations of collusion, impropriety, bad faith or improper motives affect the parties' CERCLA liability can be pursued as part of the Court's consideration, in its broad discretion, of cost allocation among liable parties using the equitable factors that the Court deems appropriate.

### A. Summary Judgment - Contract/Indemnification

#### 1. Pechiney's and Century's Cross-Motions (D.I. 374 and D.I. 381)

Pechiney seeks partial summary judgment in its favor on its breach of contract claim against Century. D.I. 374. It argues that Century was required under the Indemnification Agreement § 10.03 to indemnify for (1) the Alcoa 7 items, (2) offsite cost and (3) non-voluntary costs. Pechiney contends that Century admits through its expert's testimony that Pechiney incurred over $5 million in costs cleaning up the Alcoa 7 items,

and $10 million in offsite and non-voluntary costs and Pechiney seeks a determination as a matter of law that it is entitled to judgment in that amount.

Century disputes that contention and moves for summary judgment in its favor on Pechiney's contractual indemnification claim. D.I. 381. Century contends that Pechiney's recovery for breach of contract is barred by its bad faith and its own breach of the implied covenant of good faith and fair dealing. It argues Pechiney's alleged collusion with the City and unethical scheme to pass its redevelopment costs off on Century bars Pechiney's recovery. Century also contends that it is undisputed that Pechiney failed to consult or coordinate with Century prior to contractually assuming the obligation to undertake remediation at the site before in the sale agreement with the City on March 20, 2006, as required under the contract at issue. Further, it argues that Pechiney's costs were not required by environmental law or by a cleanup order from an authorized governmental agency as required under the Indemnification Agreement.

In response, Pechiney asserts that Century has an indemnity obligation under the Purchase Agreement as well as the Indemnification Agreement and argues that Century's interpretation of "consultation" is too narrow. It also argues it did consult with Century and tendered the indemnification claim. Also, it contends that Century earlier admitted that the DTSC order was a governmental order under the indemnification agreement. It vigorously denies any purported nefarious motives in the remediation efforts but argues that motive is nevertheless irrelevant in connection with its indemnification claim. It states that Century seeks to distract from its own wrongful conduct and breach of express contractual obligations.

20

The Court generally defers ruling on indemnity before the underlying liability of the parties is determined, but the Court can nevertheless dispose of certain issues of contract interpretation as a matter of law. The Court agrees with Pechiney that Century's interpretation of its duty to consult is overly restrictive and finds as a matter of law that Century's right to indemnity is not barred by any failure to consult with Century prior to executing the sale agreement with the City. Whether or not its remediation costs were incurred under the sales contract or not is a matter of no consequence because the City had the right to order the remediation under environmental law and under its ordinance. The Court's earlier finding on that issue is law of the case. Further, the Court rejects the contention that the remediation was not required by an order or directive. Pechiney's efforts were undertaken pursuant to the mandate of a governmental agency. Whether and what costs should be indemnified can be resolved after the equitable determination of CERCLA liability by the Court. Further, the Court can address Century's bad faith arguments after the CERCLA issues are resolved. At this point, neither party has shown it is entitled to judgment as a matter of law on those allegations.

**2.      Alcoa's and Century's Cross-Motions**

Alcoa and Century have resolved the issues presented in their motions for summary judgment (D.I. 384 and 385) by stipulation, leaving only one issue for resolution by the Court: whether the pleadings in this case satisfy the procedural requirements of Article 12 of the Century/Alcoa Agreement (D.I .380-1).[6] The parties have cross-moved

---

[6] Pursuant to the Stipulation, Alcoa and Century agree to the interpretation of most provisions of the indemnification clause of the Acquisition Agreement. D.I. 420. Notably, they agree that, as between

for summary judgment seeking a to-be-determined amount of defense costs from the other party and have agreed to defer a ruling on that issue except with respect to Alcoa's argument that the pleadings in this case satisfy Alcoa's obligation to provide notice to Century regarding Century's duty to defend and indemnify Alcoa. This issue relates to Century's assertion that Century satisfied the conditions for indemnification while Alcoa did not. The Century/Alcoa Agreement mandates "delivery of a written declaration to Indemnitor requesting indemnification and specifying to the extent available the basis on which indemnification is sought" to trigger an indemnity obligation; failure to object "by delivery of a written notice" within 30 days is deemed acceptance. D.I. 380-1, Ex. 1 at 29, Section 12.03(a) & (b). The record shows that Century sent a letter to Alcoa to "inform [Alcoa] that Century has claims against Alcoa for indemnity" on May 8, 2006. Century asserts the letter is the required written declaration. Alcoa responded in a June 2 letter stating: "nothing provided in your letter dated May 8, 2006 . . . establishes any basis of liability on the part of Alcoa [and] we reject any and all claims for indemnification."

Alcoa argues that on the undisputed record, Alcoa timely objected to any arguable claim for indemnification or defense by Century. Century argues that there is no evidence Alcoa ever made a claim for indemnification from Century, and thus this argument fails out of the gate. It argues that Alcoa's failure to provide the written declaration to Century bars Alcoa from seeking indemnification under §12.06(a), so Century has no obligation to defend or indemnify Alcoa.

Century and Alcoa, Century is not a "responsible party" under CERCLA independent of any obligations Century might have to Alcoa under the Century/Alcoa Agreement. *Id.*

The Alcoa/Century Agreement requires that a "claim for indemnification . . . must be made by Indemnitee by delivery of a written declaration to Indemnitor." (Ex. 1, § 12.03(a) (emphasis added)). The Court determines as a matter of law that Alcoa's complaint in this action satisfies that provision and provides adequate notice to Century that Alcoa is asserting rights to indemnification. The pleading qualifies as notice of a claim for indemnification, but to the extent such notice would have triggered a duty to defend, Alcoa waived or disclaimed that duty by suing Century. One can hardly expect an alleged indemnitor to defend while it is simultaneously being sued.

### III. Jury Trial

The Court addresses the issue of a jury trial on its own motion. The parties have requested a jury trial and the matter is set for a trial in front of a jury. The Court finds the CERCLA liability and contribution issues are equitable issues to be determined by the court. A trial that includes evidence for the court concerning CERCLA issues and evidence for a jury concerning questions of fact relating to indemnification contract would be unmanageable. The jury would undoubtedly be confused by all the arguments, counterarguments, and supporting evidence intertwined between CERCLA and contract liability. Accordingly, the Court will defer the determination of contract and indemnification factual issues, other than those addressed above, until after the CERCLA liability is determined. Whether there are genuine issues of fact for determination by a jury can be addressed at or during the trial, and if there are remaining jury issues, a jury trial on those issues can be scheduled at a later date. In view of the fact that the parties have not been afforded an opportunity to address the jury trial issue, the parties may file a response to

the jury trial issue within seven days of the date of this order and the Court will reconsider its ruling at that time.  In the event there is a bench trial, for judicial economy, the court will conduct the trial in the District of Nebraska.

IT IS ORDERED:

1.      The parties' motions for summary judgment (D.I. 370, 374, 376, 381, 384, 385, and 387) are granted in part and denied in part as set forth in this Memorandum and Order.

2.      On the Court's own motion, the parties' demands for a jury trial are stricken. The matter is set for a bench trial before the undersigned at the Roman Hruska Federal Courthouse, 111 South 18th Plz., Omaha, Nebraska on March 23, 2020 at 9:00 a.m.

3.      The parties may object or otherwise respond to the Court's jury trial ruling within seven days of the date of this order.


 Dated this14th day of February, 2019.

                                        BY THE COURT:

                                        s/ Joseph F. Bataillon_____
                                        Senior United States District Judge